**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
SPERO HARITATOS,                                        :
                                                        :
                        Plaintiff,                      :        05 Civ. 930 (DNH/GJD)
                                                        :
            - against -                                 :
                                                        :
HASBRO, INC.                                            :
and TOYS "R" US-NY LLC,                                 :
                                                        :
                        Defendants.                     :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**BRIEF IN SUPPORT OF DEFENDANTS'**
**REQUEST FOR A PROTECTIVE ORDER**
**TO COVER CONFIDENTIAL DISCOVERY**

Kim J. Landsman, Esq. (Bar Roll No. 513,364)
Michael D. Sant'Ambrogio, Esq. (Bar Roll No. 513,363)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone:  212-336-2980

Attorneys for Defendant Hasbro, Inc.

## Table of Contents

**Page**

Introduction ...................................................................................................................2

Background ...................................................................................................................2

Nature of the Case.......................................................................................................2

Prior Proceedings ........................................................................................................4

Argument .....................................................................................................................4

      A.      There is No Need for the Complication of Two Tiers ...............................4

      B.      Inside and Outside Counsel Should Be Treated Equally .........................5

      C.      Designating a Deposition Transcript Will Speed Up the Depositions
            and Lead to More Judicious Designations ................................................7

      D.      The Protective Order Should Protect Privileged
            Attorney Work Product..............................................................................8

      E.      Appropriate Remedies for Future Differences Over Issues
            Should Be Left to the Court's Discretion .................................................9

Conclusion…… ...........................................................................................................9

Defendant Hasbro, Inc. hereby submits this brief in support of its request that the Court enter the protective order attached hereto as Exhibit A. Attached hereto as Exhibit B is a redlined version showing by deletions and underlining the differences between the two sides' proposals.[1]

## INTRODUCTION

In the Rule 16 pretrial conference that occurred on November 10, 2005, the parties informed the Court that they agreed on the need for a protective order for discovery concerning confidential information but disagreed on some important terms. As the Court will see, there are five issues, listed below in roughly descending order of importance:

1.      whether the order is one or two tiered,

2.      whether all counsel are treated equally,

3.      the procedure for designating deposition testimony confidential,

4.      whether there is any need to disclose non-testifying experts, and

5.      whether the order should invite motions for sanctions.

We believe that a brief description of the issues in the case will be helpful in understanding our view of the disputes over the protective order.

## BACKGROUND

**Nature of the Case**

Over the past 53 years, Hasbro's CANDY LAND trademark has become well-known to generations of children (and their parents) who have grown up playing the CANDY LAND board games. Indeed, the CANDY LAND board game is so well-known that the game

---

[1]      As stated at the November 16, 2005 conference, defendants Toys "R" Us concurs with our position.

was recently inducted into the National Toy Hall of Fame at Rochester's Strong Museum, where it joined the ranks of thirty-four games that have achieved "icon-status."  According to the museum, CANDY LAND is probably the first board game played by most American kids in the last half of the 20th century.

Because of its widespread popularity, Hasbro has used and licensed the CANDY LAND trademark to market products other than board games that are a natural extension of the previous use.  This litigation, for example, arises from Hasbro's license to Toys "R" Us (TRU) to use of the mark on signage in the candy department of its Times Square store.  This is a natural extension of the CANDY LAND board game, in which players move plastic gingerbread man pieces along a Rainbow Path towards King Kandy and his Candy Castle.  Along the way, players navigate a series of "confectionary" places, such as the Peppermint Forest, the Lollipop Woods, Peanut Brittle House, the Molasses Swamp, and the Gumdrop Pass, and meet a variety of candied characters, such as Mr. Mint, Gramma Nutt, Princess Lolly, and Lord Licorice.  Indeed, the CANDY LAND mark is written in a distinctive candy-cane design, further emphasizing the obvious connection to candy.

Plaintiff Spero T. Haritatos operates a candy store out of his home in Rome, New York.  The retail side of the candy store, which Plaintiff's mother Nora Haritatos started in the 1970s, is called Nora's Candy Shop, and it appears, from discovery taken in a Trademark Office proceeding, that Plaintiff began to call the candy-making side of the business Candyland in the 1980s.  Plaintiff alleges that the use of Hasbro's famous CANDY LAND trademark with its distinctive candy-cane design in connection with the candy department in TRU's Times Square

store, and more generally in connection with edible products, will cause consumers to believe that the products originate with, are associated with, or are endorsed by Haritatos's candy store.

Given that Candyland is a natural, descriptive name for a candy store, it is not surprising that Mr. Haritatos is merely one of dozens who have used that name for a retail candy store. This fact can be easily verified by an Internet search for the name or by a more formal trademark search.

**Prior Proceedings**

Although this litigation was only recently commenced, Hasbro and Haritatos have been in adversary proceedings for more than a year over Hasbro's application to register the CANDY LAND mark for beverages. A certain amount of discovery was taken in that proceeding, though Haritatos persuaded the Trademark Trial and Appeal Board to stay the administrative proceedings before it could hear Hasbro's motion to compel the discovery Haritatos had refused to supply.

**ARGUMENT**

**A.      There Is No Need for the Complication of Two Tiers**

Hasbro and Haritatos are not competitors and it is unlikely that they ever will be. Hasbro does not operate retail stores, nor does it sell its products to Haritatos. Put frankly, Haritatos' confidential information is of absolutely no business value to Hasbro. Moreover, the issues in this litigation are not of the level of complexity that would require a multi-tiered protective order distinguishing what may and may not be disclosed to inside counsel.

The principal confidentiality concerns are (1) to prevent the disclosure of confidential information to third parties who constitute real competitors and (2) to prevent

disclosure of confidential business information of Hasbro to TRU's business people and vice-versa. Hasbro and TRU both have a very legitimate interest in preventing disclosure of business information to the business people of the other. Restricting access to attorneys, whether in-house or outside counsel, adequately protects against such disclosures, and additional complexity is not necessary.

**B.    <u>Inside and Outside Counsel Should Be Treated Equally</u>**

In-house counsel, like retained counsel, are officers of the court and are bound by the same Code of Professional Responsibility and subject to sanctions. <u>U.S. Steel Corp. v. United States</u>, 730 F.2d 1465, 1468 (Fed. Cir. 1984). It is well-established that the "[d]enial or grant of access . . . cannot rest on a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order." <u>Id</u>. The determinative factor is whether in-house counsel is involved in "competitive decision-making" – i.e., whether counsel participates in decision-making regarding pricing, marketing, or design made in light of similar or corresponding information about a competitor. <u>Id</u>. at 1468 & n.3.

The analysis set forth in <u>U.S. Steel</u> has been widely adopted in, for example, <u>Brown Bag Software v. Symantec Corp.</u>, 960 F.2d 1465, 1470 (9th Cir. 1992); <u>Volvo Penta of the Americas, Inc. v. Brunswick Corp.</u>, 187 F.R.D. 240, 243 n.1 (E.D. Va. 1999) ("U.S. Steel and its progeny have done much to make the 'competitive decision-making' factor the sine qua non of the in-house counsel analysis, regardless of other factors that potentially garner in favor of restricting in-house access"); <u>Amgen, Inc. v. Elanex Pharm., Inc.</u>, 160 F.R.D 134, 138-39 (W.D. Wash. 1994) (competitive decision-making is the "determinative factor in this analysis"); <u>Fluke Corp. v. Fine Instruments Corp.</u>, No. C94-5736, 1994 WL 739705, at *5 (W.D. Wash., October

6, 1994) (competitive decision-making is the determinative factor in this analysis); <u>Glaxo Inc. v. Genpharm Pharm., Inc.</u>, 796 F.Supp. 872, 874 (E.D.N.C. 1992) (the "decisive factor in denying in-house counsel access is whether the in-house counsel is involved in 'competitive decision-making'"); and <u>Carpenter Tech. Corp. v. Armco, Inc.</u>, 132 F.R.D. 24, 27 (E.D. Pa. 1990) (in-house counsel's access to confidential information "should turn on the in-house counsel's involvement in 'competitive decision-making'");

Moreover, the "denial of access sought by in-house counsel on the sole ground of status as a corporate officer is error." <u>Matsushita Elec. Indus. Co., Ltd. v. United States</u>, 929 F.2d 1577 (Fed. Cir. 1991). In <u>Matsushita</u>, the Federal Circuit rejected the lower court's assessment that a general counsel's status as Senior Vice President and Secretary, which brought him into regular contact with executives who made policy and competitive decisions, was sufficient to exclude him from access to confidential competitive information. <u>Id</u>. at 1580-81. Rather, access to confidential information may be denied only on the basis of an individual assessment and only where a specific lawyer for a party is involved in competitive decision-making. <u>U.S. Steel</u>, 730 F.2d at 1468.

We are prepared to show that Hasbro's in-house counsel are employed as lawyers to serve the legal needs of Hasbro. They are not responsible for creating, initiating, proposing, or developing advertising, marketing, or new products. Hasbro employs people specifically trained (and presumably expert) in those areas to provide those functions. Accordingly, Hasbro's in-house counsel are not involved in competitive decision-making as defined by U.S. Steel and its progeny.

Finally, in assessing whether or not to restrict access of in-house counsel, the Court should consider Hasbro's need for the assistance and the direction of its Legal Department. See Glaxo, 796 F. Supp. at 874.  The fact that outside counsel may have access to confidential materials does not obviate the need of in-house counsel for the same access.  See, e.g., Amgen, 160 F.R.D at 138-39 (inside counsel entitled to access to defendant's confidential information, notwithstanding the "sizable cadre of outside lawyers" retained by the plaintiff).  To properly assist outside counsel in this litigation, to participate in Hasbro's trial team, and to provide strategic direction and decisions on behalf of their client, Hasbro's Legal Department needs access to whatever material information may affect their decisions, regardless of whether that information is confidential or not.

In sum, there is no reason to impair Hasbro's ability to defend itself adequately in this litigation by denying Hasbro's in-house counsel access to confidential materials.

**C.     Designating  a Deposition Transcript Will Speed Up
        the Depositions and Lead to More Judicious Designations.**

Plaintiff's proposal would require counsel to make all confidential designations of deposition answers to be made on the record of the deposition.  Defendants' proposal would simply permit counsel to reserve the right to make designations within twenty days after receiving the transcript.

Plaintiff's proposal will slow down depositions while the defending counsel decides whether to deem something confidential; it may even lead to protracted breaks while counsel consults with his client on whether the information to be disclosed is confidential.  Aside from slowing down the procedure, it gives defending counsel an unwarranted opportunity to

coach the witness on the answer to the question and also an incentive to designate more information confidential (due to the necessity to make the decision on the spot) than he would upon review of the transcript and further reflection.

Our proposal will facilitate more efficient depositions and more judicious confidentiality designations.

**D.**     **The Protective Order Should Protect Privileged Attorney Work Product.**

Defendants' proposal permits independent consultants and experts access to confidential materials, if necessary, so long as they have first sign an undertaking.  This requirement ensures the experts' and consultants' compliance with the terms of the protective order entered by the Court.  Defendants' proposal does not require that the undertaking be disclosed to the other party, as Haritatos proposes, inasmuch as this would disclose the other party's legal strategy, which is highly privileged attorney work product, to the other side.  See Exxon Corp. v. F.T.C., 476 F. Supp. 713, 718 (D.D.C. 1979) (the identity of experts consulted by a party in litigation constitutes attorney work product because it might disclose an attorney's appraisal of factual evidence).

Any experts whose testimony is intended to be used at trial, of course, would be disclosed pursuant to Fed. R. Civ. P. 26(a)(2).  Non-testifying experts or consultants would not generally be disclosed.

Moreover, Haritatos has no need for such disclosures.  The purpose of disclosing the names and occupations of independent experts and consultants to the other side is to provide an opportunity for objections if the experts or consultants are not truly independent – *e.g.,* if they are employees of or consultants with a party's competitors.  Defendants' proposed protective

order requires that independent experts and consultants not be employees of or consultants with competitors of the parties.  There is no legitimate fear of violation especially where, as here, the plaintiff is merely the operator of one, small candy store.

Accordingly, the protective order should not invade privileged attorney work product by requiring the disclosure of undertakings by non-testifying independent experts and consultants to the other side.

**E.      Appropriate Remedies for Future Differences Over Issues
Should Be Left to the Court's Discretion.**

Plaintiff appears to want a difference of opinion over confidentiality designations to subject the party that loses to a subsequent ruling on sanctions.  We think that this will just invite more motions about a party's good faith and further protract the proceedings.  The Court has the authority, both inherently and under the Federal Rules, to assess sanctions for improper conduct, and there is no need to invite the parties to argue that on every discovery motion.

## CONCLUSION

For these reasons, we respectfully request that the Court enter defendants' proposed confidentiality order.

Dated:  November 22, 2005

/s/ Kim J. Landsman
Kim J. Landsman
(Bar Roll No. 513,364)
Michael D. Sant'Ambrogio
(Bar Roll No. 513,363)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone:  212-336-2980
Facsimile:  212-336-2985


*Attorneys for Defendant Hasbro, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing **HASBRO'S**

**RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF**

**DOCUMENTS AND THINGS** to be filed electronically, with copies sent electronically to the

counsel set forth below on November 22, 2005:

Robert E. Purcell, Esq.
Attorney for Plaintiff Spero Haritatos
Wall Marjama & Bilinski LLP
101 South Salina Street, Suite 400
Syracuse, New York  13202
(315) 425-9000

and

John G. McGowan Esq.
Attorney for Defendant Toys "R" Us
One Lincoln Center
Syracuse, New York  13202-1355
(315) 218-8121

/s/ Michael D. Sant'Ambrogio
Michael D. Sant'Ambrogio