**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SPERO HARITATOS, an Individual,

        Plaintiff,

v.

HASBRO, INC., a Rhode Island corporation and
TOYS "R" US-NY LLC, a New York limited
Liability corporation,
            Defendants.

Case No. 05-CV-930 (DNH/GJD)

---

### PLAINTIFF'S OBJECTIONS TO THE ORDER OF
### MAGISTRATE JUDGE DIBIANCO DATED DECEMBER 5, 2005

Plaintiff, Spero Haritatos, by and through his undersigned attorneys, hereby objects pursuant to Fed. R. Civ. P. 72(a) the Order of Judge DiBianco dated December 5, 2005 pertaining to a proposed protective order regarding confidential information in the instant lawsuit.

Specifically, Plaintiff objects to two aspects of the Order. First, Plaintiff objects to a one-tier confidentiality designation and to the nature of the party representatives that may have access to confidential information. Second, Plaintiff objects to the lack of a requirement that consulting experts be identified prior to revealing confidential information to them.

Judge DiBianco required the parties to submit briefs on these issues simultaneously, without any opportunity for submitting opposition or reply briefs, and Judge DiBianco issued his Order without any oral argument.

### Overview

Plaintiff and his predecessors-in-interest have been using the trade name and trademark "CANDYLAND" in connection with candy since about 1920. They have sold candy from their

various stores in the Rome, New York area, and in addition, they have shipped their candy throughout the United States for several decades. One of Plaintiff's candy products shipped under the "CANDYLAND" trademark and trade name is relatively famous and known as "Turkey Joints".

Defendant Hasbro, Inc. ("Hasbro") and its predecessors-in-interest apparently have manufactured and marketed a board game known as "CANDY LAND" since about 1950. Also apparently, until the last couple of years, Hasbro has never attempted to use or license the "CANDY LAND" mark in connection with any edible products, and especially not in connection with candy.

About two years ago Defendant Hasbro contacted Plaintiff about purchasing his federally registered rights in the trademark "CANDYLAND" in connection with "candy" products. Hasbro's negotiations were not successful. Despite the failed negotiations, Hasbro embarked on a program to license the "CANDY LAND" mark for a variety of products unrelated to board games, including various edible products. As part of that program, Hasbro licensed Defendant Toys "R" Us-NY LLC ("TRU") to use the "CANDY LAND" mark in connection with a variety of candy products.

Plaintiff brings this lawsuit complaining that Hasbro's attempted and actual licensing activities in connection with edible products (including candy) as well as TRU's use of the "CANDY LAND" mark in connection with candy constitute unfair competition and trademark infringement.

Plaintiff's company (operated under the trade name and trademark "CANDYLAND") consists of Plaintiff, his wife, and a few employees. In contrast, both Hasbro and TRU are huge multi-national corporations. Plaintiff does not have any in-house legal counsel.

### The Tiers Of Confidentiality And The Party Representatives
### To Whom Confidential Information May Be Disclosed

Plaintiff proposed a standard, two-tier level of confidentiality designations, one for "CONFIDENTIAL" materials defined as "sensitive information, generally unknown, and unavailable to the public", and another, higher tier for "OUTSIDE COUNSEL ONLY" that would pertain to "any trade secret information". Plaintiff proposed that for "CONFIDENTIAL" materials, one non-lawyer representative of each party could have access to such information. Plaintiff further proposed that Plaintiff's wife be included together with Plaintiff as being a "representative".

Defendants[1] proposed a single tier of confidentiality for both sensitive and trade secret information. Defendants urged that absolutely no non-lawyer representatives of either party have access to such information, but that any and all of their current and future in-house attorneys should have access to such information. Defendants contended that their outside counsel is incapable of handling this lawsuit without the assistance of not just one in-house counsel, but all in-house counsel.

Judge DiBianco ruled that a single tier of confidentiality would apply, that none of Plaintiff's representatives could have access to any of that information, and that all of the Defendants' in-house counsel could have access to all of that information. Judge DiBianco's analysis relied on several false and flawed presumptions. His Order states that Hasbro makes toys and does not sell candy. However, portions of Hasbro's own website indicate a host of different types of candy products that it offers. A copy of the relevant website pages are attached hereto as Exhibit "A". Moreover, Judge DiBianco's Order fails to appreciate the fact that TRU has in fact been selling candy under the "CANDY LAND" trademark.

---

[1] TRU did not file a brief, but simply joined in Hasbro's brief.

From these false presumptions, Judge DiBianco falsely concluded that Hasbro "simply does not 'compete' with plaintiff in any obvious way.", and he totally ignored whether TRU was competing with Plaintiff in any obvious way.

Judge DiBianco also concluded without any evidentiary support that his "review of the facts presented . . . shows that there is a remote chance that in-house counsel for <u>Hasbro, Inc.</u> takes any role in decision-making" (emphasis added). However, there was no evidence of the role of any of Hasbro's in-house counsel. Moreover, Judge DiBianco failed to make any analysis with regard to in-house counsel for <u>TRU</u>. Also, since Hasbro's and TRU's proposed protective order would allow any and all types of confidential information to be reviewed by any and all of their respective present and future in-house counsel, it would appear to be incredible that such an encompassing group of employee attorneys would not have any role in "decision-making". Furthermore, Judge DiBianco's analysis is flawed in that he placed the burden on <u>Plaintiff</u> to show otherwise. Given the early stage of this litigation and the lack of discovery, Plaintiff could not possibly have possession, custody, control of information regarding the decision-making role of each and every present and future in-house counsel for both Hasbro and TRU. Rather, the burden should be on each of the Defendants to make any such showing, which they have not done other than in bald, conclusory (and patently false) allegations.

Plaintiff proposes that there be two tiers of confidentiality, the lower tier of which would be disclosed to one internal, non-lawyer representative for each party (which would include Plaintiff and his wife), and the higher tier of which would not be disclosed to any parties or their in-house legal counsel.

## Identification of Consulting Experts Prior to Their
## Receipt of Confidential Information

Plaintiff has requested prior identification of consulting experts prior to the disclosure of any confidential information to them – just as testifying experts are treated.  Under Plaintiff's proposal, consulting experts would not need to be identified to the other party unless and until there is a desire to provide that consulting expert with any confidential designated information. Plaintiff's proposal would help ensure that the consulting expert is truly "independent", that is, not an employee or consultant of a party and not someone who has been a consultant within the last year for any competitor of any party.

Plaintiff provided to Judge DiBianco a copy of Magistrate Judge Peebles's decision in Sears Petroleum & Transport Corp. v. Archer Daniels Midland Co., 03-CV-1120 (N.D.N.Y. June 28, 2005) in which Magistrate Judge Peebles ruled in identical circumstances that consulting experts should be identified to opposing parties before they are provided with confidential designated information.  Magistrate Judge DiBianco offered no distinction between the facts of this case and the facts before Magistrate Judge Peebles, nor does he distinguish or criticize Magistrate Judge Peebles's legal analysis.  Rather, Magistrate Judge DiBianco inexplicably ruled that Plaintiff made no showing that there are exceptional circumstances that warrant changing the general rule that non-testifying experts need not be disclosed, despite the exceptional circumstance of confidential information being provided to them.

Plaintiff believes that the protective order should treat both consulting experts and testifying experts identically insofar as prior identification before their receipt of any confidential designated information.

## Conclusion

WHEREFORE, Plaintiff prays that the Court modify Magistrate Judge DiBianco's Order

accordingly.

Respectfully submitted,

Date:  December 15, 2005

Robert E. Purcell, Esq. (Bar. Roll No. 510,595)
Indranil Mukerji, Esq. (Bar Roll No. 511,738)
Denis J. Sullivan, Esq. (Bar Roll No. 512,997)
WALL MARJAMA & BILINSKI LLP
101 South Salina St., Suite 400
Syracuse, NY 13202
Telephone:     (315) 425-9000
Facsimile:      (315) 425-9114

*Attorneys for Plaintiff, Spero Haritatos*