UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                :
SPERO HARITATOS,                                :
                                                :
                       Plaintiff,               :   05 Civ. 930 (DNH/GJD)
                                                :
             - against -                        :
                                                :
HASBRO, INC.                                    :
and TOYS "R" US-NY LLC,                         :
                                                :
                       Defendants.              :
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**BRIEF IN OPPOSITION TO PLAINTIFF'S
OBJECTIONS TO THE DECEMBER 5, 2005, ORDER
<u>OF MAGISTRATE JUDGE DIBIANCO</u>**

Kim J. Landsman (Bar Roll No. 513,364)
Michael D. Sant'Ambrogio (Bar Roll No. 513,363)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone:  212-336-2980

Attorneys for Defendant Hasbro, Inc.

Defendant Hasbro, Inc. ("Hasbro") respectfully submits this brief in opposition to Plaintiff Spero Haritatos' Objections To the Order of Magistrate Judge DiBianco Dated December 5, 2005 ("Objections").[1] Judge DiBianco's December 5, 2005, Order is attached hereto as Exhibit A. A protective order conforming to the parties' prior agreements and Magistrate Judge DiBianco's Order is attached as Exhibit B.

## INTRODUCTION

Plaintiff's attempt to overly complicate discovery was correctly rejected by Magistrate Judge DiBianco. There is no need for two tiers because there is no need to distinguish between "trade secrets" and "sensitive information." Plaintiff does not compete with either of the defendants and nothing in the nature of secret formulas or trade secrets will be at issue; the case will not, for example, turn on or require disclosure of the recipe for plaintiff's chocolate Turkey Joints (if the recipe is, indeed, secret).

In a similar vein, there is neither need nor justification for distinguishing between inside and outside counsel. Both are officers of the court, and the members of Hasbro's legal department function as lawyers; they do not make business decisions.

Finally, disclosing the identify of non-testifying expert witnesses and giving the other side the right to hold up disclosure is an unnecessary burden where, as here, the protective order will explicitly require independence and the adverse sides do not compete.

Simply put, Plaintiff is trying to make a mountain out of a molehill.

---

[1] We are authorized to inform the Court that Defendant Toys "R" Us concurs with Hasbro's position and will not file a separate brief.

## FACTUAL BACKGROUND

### Hasbro's Famous CANDY LAND Board Game

Over the past 53 years, Hasbro's CANDY LAND trademark has become well-known to generations of children (and their parents) who have grown up playing the CANDY LAND board game. Indeed, the CANDY LAND board game is so well-known that the game was recently inducted into the National Toy Hall of Fame at Rochester's Strong Museum, where it joined the ranks of thirty-four games that have achieved "icon-status." According to the museum, CANDY LAND is probably the first board game played by most American kids in the last half of the 20th century.

### Plaintiff's Candy Store

Plaintiff Spero T. Haritatos operates a candy store out of his home in Rome, New York. The retail side of the candy store, which Plaintiff's mother Nora Haritatos started in the 1970s, is called Nora's Candy Shop, and it appears, from discovery taken in a Trademark Office proceeding, that Plaintiff began to call the candy-making side of the business Candyland in the 1980s.

Given that Candyland is a natural, descriptive name for a candy store, it is not surprising that Mr. Haritatos is merely one of dozens who have used that name for a retail candy store. This fact can be easily verified by an Internet search for the name or by a more formal trademark search.

### Nature of the Case

Plaintiff alleges that the use of Hasbro's famous CANDY LAND trademark with its distinctive candy-cane design in connection with signage in the candy department of the Toys

3

"R" Us ("TRU") Times Square, New York retail store infringes his Candyland mark.  Plaintiff alleges that this natural expansion of Hasbro's famous trademark will cause consumers to believe that the products sold in the candy department of a store in Times Square originate with, are associated with, or are endorsed by Haritatos's candy store in Rome.

**Prior Proceedings**

In the Rule 16 pretrial conference on November 10, 2005, the parties informed the Court that they agreed on the need for a protective order for discovery concerning confidential information but disagreed on some important terms, listed below in roughly descending order of importance:

1. whether the order is one or two tiered;
2. whether all counsel are treated equally;
3. the procedure for designating deposition testimony confidential;
4. whether there is any need to disclose non-testifying experts; and
5. whether the order should invite motions for sanctions.

After the issues were briefed by the parties, Magistrate Judge DiBianco generally opted for simplicity over unnecessary complexity.  He held that a single-tier protective order in which all counsel are treated equally and only counsel are granted access to confidential information is appropriate in this case.  In addition, Judge DiBianco ruled that confidential information elicited during deposition testimony should be designated confidential on the record during the deposition, that the identity of non-testifying experts need not be disclosed, and that it is unnecessary to include a paragraph in the protective order proposed by Plaintiff that the Court "shall impose sanctions" under certain circumstances.

On December 15, 2005, Plaintiff objected to Magistrate Judge DiBianco's ruling that a single-tier protective order in which all counsel are treated equally is appropriate in this case and that the identity of non-testifying experts need not be disclosed.  Plaintiff has not objected to any other aspects of Judge DiBianco's Order.  For the reasons discussed below, Plaintiff's objections are unfounded.

## ARGUMENT

A. **A Single-Tier Protective Order is Appropriate.**

Magistrate Judge DiBianco's Order correctly notes that Hasbro and Haritatos are not competitors and it is unlikely that they ever will be.  The same is true of TRU and Haritatos.  Hasbro makes toys and games; it does not operate retail stores, nor does it sell its products to Haritatos.  TRU is one of the country's largest retailers of toys and games; it has no involvement with Haritatos and cannot be said to compete with him in any meaningful way.

Plaintiff himself recognizes in his Objections that his candy store, which is operated out of his home, has but a "few employees" other than himself and his wife, while Hasbro and TRU are both large multi-national corporations.  Put frankly, Haritatos' confidential information is of absolutely no business value to Hasbro or TRU.  Moreover, the issues in this litigation are not of the level of complexity that would require a multi-tiered protective order distinguishing what may and may not be disclosed to inside counsel.

The principal confidentiality concerns in this case are (1) to prevent the disclosure of confidential information to third parties who constitute real competitors and (2) to prevent disclosure of confidential business information of Hasbro to TRU's business people and vice-versa.  Hasbro and TRU both have a very legitimate interest in preventing disclosure of business

information to the business people of the other.  Restricting access to attorneys, whether in-house or outside counsel, adequately protects against such disclosures, and additional complexity is not necessary.

Plaintiff contends that the Court erred in concluding that neither Hasbro nor TRU compete with Haritatos because Hasbro's products allegedly include candy and TRU has used the CANDY LAND mark in connection with its candy department in its Times Square, New York Store.  But whether or not Hasbro or TRU's many products include candy, defendants are not competitors of Haritatos in any meaningful sense of the term.  Hasbro competes with other large toy and game companies, such as Mattel, Inc., while TRU competes with other large retail chains, such as Wal-Mart and K-Mart.

Hasbro and TRU deal with each other through numerous arms-length transactions involving toys and games manufactured by Hasbro and sold by TRU.  Defendants do not, however, compete with the candy store that Haritatos operates out of his home in Rome, New York.  Plaintiff's suggestion to the contrary is purely wishful thinking.

Moreover, as Magistrate Judge DiBianco correctly noted, "[t]here is no question of manufacturing or processing secrets [in this case] as in many patent and trademark cases. There is no issue of pricing or distribution of a particular product."  Order at 4.  Indeed, the only information that Plaintiff has so far designated confidential in the Trademark Trial and Appeal Board Proceedings are financial figures relating to sales, revenues, advertising, promotional expenditures, and the like.  Such information is of no competitive value to either Hasbro or TRU because neither compete with Haritatos.  Accordingly, restricting access to attorneys, whether in-house or outside counsel, adequately protects against disclosures to the real competitors of the

6

parties. A two-tiered order will only unnecessarily burden the parties in making their confidentiality designations.

**B.      Inside and Outside Counsel Should Be Treated Equally.**

Magistrate Judge DiBianco's order correctly ruled that in house and outside counsel should be treated the same under the protective order. In-house counsel, like retained counsel, are officers of the court and are bound by the same Code of Professional Responsibility and subject to sanctions. United States Steel Corp. v. United States, 730 F.2d 1465, 1468 (Fed. Cir. 1984). It is well-established that the "[d]enial or grant of access . . . cannot rest on a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order." Id. The determinative factor is whether in-house counsel is involved in "competitive decision-making" – i.e., whether counsel participates in decision-making regarding pricing, marketing, or design made in light of similar or corresponding information about a competitor. Id. at 1468 & n.3.

The analysis set forth in U.S. Steel has been widely adopted in, for example, Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992); Volvo Penta of the Americas, Inc. v. Brunswick Corp., 187 F.R.D. 240, 243 n.1 (E.D. Va. 1999) ("U.S. Steel and its progeny have done much to make the 'competitive decision-making' factor the sine qua non of the in-house counsel analysis, regardless of other factors that potentially garner in favor of restricting in-house access"); Amgen, Inc. v. Elanex Pharm., Inc., 160 F.R.D 134, 138-39 (W.D. Wash. 1994) (competitive decision-making is the "determinative factor in this analysis"); Fluke Corp. v. Fine Instruments Corp., No. C94-5736, 1994 WL 739705, at *5 (W.D. Wash., October 6, 1994) (competitive decision-making is the determinative factor in this analysis); Glaxo Inc. v.

7

Genpharm Pharm., Inc., 796 F.Supp. 872, 874 (E.D.N.C. 1992) (the "decisive factor in denying in-house counsel access is whether the in-house counsel is involved in 'competitive decision-making'"); and Carpenter Tech. Corp. v. Armco, Inc., 132 F.R.D. 24, 27 (E.D. Pa. 1990) (in-house counsel's access to confidential information "should turn on the in-house counsel's involvement in 'competitive decision-making'").

Moreover, the "denial of access sought by in-house counsel on the sole ground of status as a corporate officer is error." Matsushita Elec. Indus. Co., Ltd. v. United States, 929 F.2d 1577 (Fed. Cir. 1991). In Matsushita, the Federal Circuit rejected the lower court's assessment that a general counsel's status as Senior Vice President and Secretary, which brought him into regular contact with executives who made policy and competitive decisions, was sufficient to exclude him from access to confidential competitive information. Id. at 1580-81. Rather, access to confidential information may be denied only on the basis of an individual assessment and only where a specific lawyer for a party is involved in competitive decision-making. U.S. Steel, 730 F.2d at 1468.

Plaintiff complains that there is no evidence of the role of any of Hasbro's in-house counsel or any analysis with regard to TRU's in-house counsel. Plaintiff further complains that Judge DiBianco should have placed the burden on defendants to make a showing regarding "the decision-making role of each and every present and future in-house counsel for both Hasbro and TRU." Plaintiff's proposal is clearly absurd and designed only to make matters as protracted as possible.

United States Steel and its progeny make clear that in-house and outside counsel are to be treated the same, unless there is evidence that in-house counsel are involved in

8

competitive decision-making. Hasbro represented in its brief and is prepared to show that Hasbro's in-house counsel are employed as lawyers to serve the legal needs of Hasbro. Hasbro's lawyers are not responsible for creating, initiating, proposing, or developing advertising, marketing, or new products. Hasbro employs people specifically trained (and presumably expert) in those areas to provide those functions. Indeed, Plaintiff is aware that Hasbro submitted a declaration to this effect in the proceeding before the Trademark Trial and Appeal Board. Accordingly, Hasbro's in-house counsel are not involved in competitive decision-making as defined by U.S. Steel and its progeny.

Moreover, as noted above, neither TRU nor Hasbro compete with Haritatos' candy store and none of Haritatos' confidential information—e.g., his sales, revenues, and expenditures—is of any competitive value to either Hasbro or TRU. Thus, granting access to only counsel, whether in-house or outside counsel, sufficiently protects against the disclosure of confidential information to real competitors.

Finally, in assessing whether or not to restrict access of in-house counsel, the Court should consider Hasbro's need for the assistance and the direction of its Legal Department. See Glaxo, 796 F. Supp. at 874. The fact that outside counsel may have access to confidential materials does not obviate the need of in-house counsel for the same access. See, e.g., Amgen, 160 F.R.D at 138-39 (inside counsel entitled to access to defendant's confidential information, notwithstanding the "sizable cadre of outside lawyers" retained by the plaintiff). To properly assist outside counsel in this litigation, to participate in Hasbro's trial team, and to provide strategic direction and decisions on behalf of their client, Hasbro's Legal Department needs

9

access to whatever material information may affect their decisions, regardless of whether that information is confidential or not.[2]

In sum, there is no reason to impair Hasbro's ability to defend itself adequately in this litigation by denying Hasbro's in-house counsel access to confidential materials.

**D.**     **The Protective Order Should Protect Privileged Attorney Work Product.**

Magistrate Judge DiBianco's Order permits independent consultants and experts access to confidential materials, if necessary, so long as they have first signed an undertaking. This requirement ensures the experts' and consultants' compliance with the terms of the protective order entered by the Court.  The Court's Order does not require that the undertaking be disclosed to the other party, as Haritatos proposes, inasmuch as this would disclose to the other side an adverse party's legal strategy, which is highly privileged attorney work product.  See Exxon Corp. v. F.T.C., 476 F. Supp. 713, 718 (D.D.C. 1979) (the identity of experts consulted by a party in litigation constitutes attorney work product because it might disclose an attorney's appraisal of factual evidence).

Any experts whose testimony is intended to be used at trial, of course, would be disclosed pursuant to Fed. R. Civ. P. 26(a)(2).  Non-testifying experts or consultants would not generally be disclosed.

---

[2]     Defendants have not, as Plaintiff states, "contended that their outside counsel is incapable of handling this lawsuit without the assistance of not just one in-house counsel, but all in-house counsel."  Plaintiff's Brief at 3.  Defendants have not contended that outside counsel has to consult with every lawyer in their respective law firms, but Plaintiff does not argue that only specified lawyers of the law firms of record should have access.  The point is that with outside, as with inside, counsel there no need or justification for restricting which lawyers or para-professionals in the law firm or legal department outside counsel needs consult at any time or on any given issue.

Haritatos has no need for such disclosures. The purpose of disclosing the names and occupations of independent experts and consultants to the other side is to provide an opportunity for objections if the experts or consultants are not truly independent—e.g., if they are employees of or consultants with a party's competitors. The Court's order requires that independent experts and consultants not be employees of or consultants with the parties or competitors of the parties within the last year. There is no legitimate fear of violation, especially where, as here, the plaintiff is merely the operator of one, small candy store.

Haritatos complains that Magistrate Judge DiBianco did not distinguish this case from Sears Petroleum & Transport Corp. v. Archer Daniels Midland Co., 03-CV-1120 (N.D.N.Y. June 28, 2005) (order granting protective order). Interestingly, in Sears Petroleum, Plaintiff's law firm took the opposite position and "vigorously oppose[d]" the disclosure of non-testifying experts. Id. at 3. Plaintiff claims that the circumstances in Sears Petroleum and the present case are "identical," but curiously, he has not described those circumstances, nor are they apparent from the exhibit that Plaintiff attached to his letter brief. A review of the pleadings in Sears Petroleum, however, suggests that Plaintiff is either misreading or misrepresenting the case.

Sears Petroleum was a patent infringement suit in which the parties' de-icing products directly competed with each other. Here, of course, the plaintiff and the defendants do not compete with each other and there is no technical proprietary information that is likely to be produced in discovery.

Moreover, contrary to Plaintiff's assertion, Magistrate Judge DiBianco did review the order in Sears Petroleum and the holding of Bank of New York v. Meridien Biao Bank

11

Tanzania, Ltd., 171 F.R.D. 135, 145 (S.D.N.Y. 1997), upon which Sears Petroleum relied, and reasoned that non-testifying experts may be disclosed "in exceptional circumstances," e.g., "where there is reason to believe that the potential witnesses [or experts] may have a vested interest in appropriating or misusing the information." Order at 6 (quoting Sears Petroleum, supra, at 4). Magistrate Judge DiBianco correctly concluded, however, that Plaintiff had not presented any such evidence in the present case. Moreover, because Plaintiff and defendants are not competitors in any meaningful sense of the word, there is no reason to believe that independent non-testifying consultants will misappropriate confidential information so long as they have not been employees or consultants of the parties or competitors of the parties within the last year.

Accordingly, the protective order should not invade privileged attorney work product by requiring the disclosure of undertakings by non-testifying independent experts and consultants to the other side.

## CONCLUSION

For these reasons, we respectfully request that the Court affirm Magistrate Judge DiBianco's December 5, 2005, Order so that the proposed confidentiality order attached as Exhibit B may be entered and the parties can proceed with discovery.

Dated:  January 10, 2006

        /s/ Kim J. Landsman_____
Kim J. Landsman
(Bar Roll No. 513,364)
Michael D. Sant'Ambrogio
(Bar Roll No. 513,363)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone:  212-336-2980
Facsimile:  212-336-2985

*Attorneys for Defendant Hasbro, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing **HASBRO'S BRIEF IN OPPOSITION TO PLAINTIFF'S OBJECTIONS TO THE DECEMBER 5, 2005, ORDER OF MAGISTRATE JUDGE DIBIANCO** to be filed electronically, with copies sent electronically to the counsel set forth below on January 10, 2006:

Robert E. Purcell, Esq.
Attorney for Plaintiff Spero Haritatos
Wall Marjama & Bilinski LLP
101 South Salina Street, Suite 400
Syracuse, New York  13202
(315) 425-9000

and

John G. McGowan Esq.
Attorney for Defendant Toys "R" Us
One Lincoln Center
Syracuse, New York  13202-1355
(315) 218-8121

/s/ Michael D. Sant'Ambrogio
Michael D. Sant'Ambrogio