UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SPERO HARITATOS,

                              Plaintiff,

vs.                                                 6:05-CV-930
                                                                 (J. Hurd)

HASBRO, INC., et al.,

                              Defendants.

---

## ORDER

Presently before the court is a dispute over the contents of the parties' proposed confidentiality orders. At the Rule 16 telephone conference in this case, held on November 10, 2005, the parties stated that although they agreed upon the need for a confidentiality/ protective order in this case, they disagreed upon some of the terms. I allowed the parties to submit memoranda of law, together with their proposed versions of the confidentiality order, indicating upon which terms the disagreement arises. The parties have now filed their memoranda, together with the proposed orders. (Dkt. Nos. 15, 16, & 19). I have reviewed the issues presented and make the following rulings.

## BACKGROUND

The complaint in this action alleges that defendant Hasbro, Inc., by licensing the use of the trademark "Candy Land" to defendant Toys R Us (TRU) for use in connection with edible products has infringed upon plaintiff's trademark Candyland, that plaintiff has been using in connection with his business of manufacturing and selling various types of candy. Plaintiff alleges that he owns all rights and interest in the registered trademark "CANDYLAND" in connection with "candy" goods.

Plaintiff has alleged violations of federal trademark law as well as state law violations.

### 1. One or Two-Tiered Order

The first dispute involves whether the confidentiality order will contain different levels of confidentiality. Plaintiff proposes that the order contain two tiers, one for simply "CONFIDENTIAL" materials, defined as "sensitive information, generally unknown, and unavailable to the public. This material would be disclosed to all counsel as well as "one[1] internal, non-lawyer representative for each party." The second tier is "OUTSIDE COUNSEL ONLY". This designation would pertain to "any trade secret information." This information would not be shown to in-house counsel or any parties.

Defendants propose one level of confidentiality that will be shown to both in-house and outside counsel, but to no non-lawyer representatives of either party. Defendants argue that attorneys should not be treated differently based upon whether they are in-house or outside counsel. Defendants further argue that to deny in-house counsel the ability, subject to the confidentiality order to view the information would be to restrict defendants ability to defend in this action.

One of the leading case on protective orders that distinguish between in-house and outside counsel is *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1991). The court in *U.S. Steel* held that artificial distinctions should not generally be made between in-house and outside counsel based solely upon the type of counsel

---

[1] Plaintiff, however, states that in his case, the "one" non-lawyer representative would include plaintiff *and his wife*.

2

employed. *Id.* at 1468. Rather, to evaluate the risk of inadvertent disclosure of trade secrets, the court should examine the factual circumstances of any counsel's relationship to the party demanding access to the information. *Id.* These circumstances include the individual counsel's activities, association, and relationship with a party. *Id.*

The court in *U.S. Steel* stated that "competitive decisionmaking" was a substantial factor in determining whether counsel should be given access to the confidential documents. *Id.* The question would be whether counsel was involved in any or all of the client's decisions made in light of "similar or corresponding information about a competitor." *Id.* at 1468 n.3.

In *Norbrook Laboratories, Limited v. G.C. Hanford Manufacturing Co.*, 03-CV-165, 2003 U.S. Dist. LEXIS 6851, *14-16 (N.D.N.Y. April 24, 2003), Senior Judge Munson analyzed these factors and found that the attorney in question was also a corporate secretary of the company, presenting an unacceptable opportunity for the inadvertent disclosure of confidential information. *Id.* at *16. Similarly, in *Sullivan Marketing, Inc. v. Valassis Communications, Inc.*, 93 Civ. 6350, 1994 U.S. Dist. LEXIS 5824, *5-7 (S.D.N.Y. May 5, 1994), the court held that the decision turned upon the role of in-house counsel within the business and whether counsel had "a part in the decision-making that would involve the potential use of the confidential information." *Id.* at *6.

The court in *Sullivan* also denied access to the in-house counsel because the court found that counsel was "involved in Valassis' competitive decision-making to

such a degree that he should be denied access to competitively sensitive data. *Id.* at *8. The attorney in question took an active role in management of the company and had specific involvement in competitive decisions. *Id.*

In this case, a review of the facts presented, particularly in view of the basis for plaintiff's action shows that there is a remote chance that in-house counsel for Hasbro, Inc. takes any role in decision-making in matters that would involve competition with plaintiff. Hasbro, Inc. makes toys. According to defendants, Hasbro, Inc. does **not** sell candy or even engage in retail sales of its toys. The question in this case is whether the licensing of the "CANDY LAND" trademark to TRU for use in conjunction with sales of candy at TRU's Times Square store infringes on plaintiff's registered trademark, "CANDYLAND".

Hasbro, Inc. simply does not "compete" with plaintiff in any obvious way. There is no question of manufacturing or processing secrets as in many patent and trademark cases. There is no issue of pricing or distribution of a particular product. Courts often afford fuller protection to "technical, proprietary" information than to confidential, yet ordinary business information. *See Uniroyal Chemical Co., Inc. v. Syngenta Crop Protection*, 224 F.R.D. 53, 57 (D. Conn. 2004). There is no such technical information in this case.

Plaintiff in this case, has not shown, based on the relevant factors, that in-house counsel *in this action* should be treated differently with respect to confidential materials. This court finds in favor of the defendants' proposed "one-tiered" confidentiality order. Additionally, the disclosure to counsel, alone, whether in-house

or outside counsel will prevent dissemination of confidential information. The court rejects *plaintiff's proposal* that merely "confidential" information may be disclosed to counsel and one (or two in plaintiff's case) non-attorney representative.

2. **Designation of Confidential Information During or After Depositions**

Plaintiff proposes that confidentiality designations be made on the record *during* a deposition, while defendants propose a scheme whereby the entire deposition would be taken, and the parties would have the right to make confidentiality designations within twenty days after receiving the deposition transcript. Defendants' proposed language also includes a section, providing that if the confidentiality designations are not made within the appropriate time, the entire transcript will be deemed not to contain any confidential information. The entire deposition would be considered confidential until the expiration of the twenty day period.

This court finds plaintiff's proposal more reasonable. The court is concerned that the chance of inadvertent disclosure of confidential materials is greater if the parties wait until after the deposition transcript is completed and rely upon the timeliness of a subsequent review of the transcript. As plaintiff states, there should not be too much dispute over what information is going to be deemed confidential in this case, thus, requiring a designation during the deposition should *not* cause delay. If the parties find that this requirement becomes burdensome, they should be able to agree on a procedure that is less cumbersome.

3. **Disclosure of Non-Testifying Experts/Consultants**

Defendants propose that prior to either party utilizing an independent expert or

consultant, that individual must sign an undertaking and must comply with the terms of the protective order. Plaintiff proposes that prior to either party utilizing an independent expert or consultant, the party must reveal the identity of the individual by producing the individual's identifying information, and must afford the opposing party time to object to the use of that individual.

Plaintiff claims that this procedure will prevent the disclosure of confidential information to an independent expert or consultant who is an employee of or a consultant to a party. Plaintiff also argues that Magistrate Judge Peebles has already decided this issue in favor of the plaintiff's proposal. In *Sears Petroleum & Transport Corp. v. Archer Daniels Midland Co.*, 03-CV-1120 (N.D.N.Y. June 28, 2005), Magistrate Judge Peebles recognized that the federal rules generally protect the identity of non-testifying experts. He then stated, however, that the protection was "trumped in [that] case by the competing consideration of protecting against misappropriation or misuse of confidential information by outside experts" who might have "direct or potential" conflicts... ." *Id.* at 4 (citing *Bank of New York v. Meridien Biao Bank Tanzania, Limited*, 171 F.R.D. 135, 145 (S.D.N.Y. 1997)).

Judge Peebles stated that "'advance notice is warranted where there is reason to believe that the potential witnesses [or experts] may have a vested interest in appropriating or misusing the information.'" *Id.* (quoting *Madanes v. Madanes*, 186 F.R.D. 279, 288 (S.D.N.Y. 1999)). In *Bank of New York*, the court held that non-testifying experts may be disclosed "in exceptional circumstances." 171 F.R.D. at 144-45.

Plaintiff has not shown that there are exceptional circumstances *in this action* to warrant changing the general rule that non-testifying experts need not be disclosed. Thus, the defendants' version of the protective order shall control regarding this issue. The defendants' proposal provides that the independent experts not be employees of or consultants to *competitors* of the parties. Plaintiff argues that this formulation would allow the employee of a party to be an "independent expert."

Defendants have responded in a supplemental brief that they agree that independent experts should not include parties or their employees. (Dkt. No. 19). The plain meaning of "independent expert" would clearly prevent such a result. The employee of or consultant to a *party* is not "independent". Defendants propose that the paragraph defining "Independent Expert" be modified accordingly.

Defendants' proposed definition would read that the independent expert may not be "a Party, an employee of a Party, a competitor of a Party, or an employee of a competitor of a Party, and has not been a consultant within the last year for a competitor of any Party." (Dkt. No. 19 at 2). The court would also add that the independent expert should not be the *consultant of a Party* in addition to an individual who has not been a consultant "within the last year" for a competitor of any Party.

### 4. Sanctions for Improper Designations

Plaintiff's proposal states that if the party designating confidential information does not answer a challenge to the designation within ten days, the party opposing the designation shall have twenty days to file a motion seeking re-designation. Ex. A

7

¶ 17(a)-(c). Plaintiff's proposal further states that in the event the court finds that the designation was not in good faith, "the Court shall impose sanctions on the designating party." *Id.* ¶ 17(e). Sanctions are also mentioned in ¶ 4.

The court would first point out that it does not allow discovery motions to be filed prior to a telephone conference with the court, thus any invitation for parties to file such motions is inconsistent with this court's procedure and will not be allowed. The court also notes that the parties cannot "agree" on whether there should be a provision requiring the court to impose sanctions for a confidentiality designation that is not made in good faith.

The court has authority under the Federal Rules to impose a variety of sanctions for improper conduct with respect to discovery or any improper conduct before the court. *See e.g.* FED. R. CIV. P. 37(a)(4)(discussing sanctions if a party engages in conduct necessitating a discovery motion). Even in the absence of a court order, the court has the authority under its inherent power to manage its own affairs, to impose sanctions on a party engaging in misconduct during discovery. *Residential Funding Corp. v. DeGeorge Finance Corp.*, 306 F.3d 99, 106-107 (2d Cir. 2002). It is unnecessary to place a paragraph in the protective order stating what the court "shall" do in any given situation.

4. **<u>Retention of Confidential Files after Conclusion of the Case</u>**

Plaintiff requests that the confidentiality order contain a provision whereby in-house counsel would be required to purge their electronic files of any confidential materials, while outside counsel will be able to retain any electronic files that have

been designated as confidential. Defendants papers do not address this issue. However, the court finds that plaintiff's proposal is not unreasonable. As defendants themselves claim, Hasbro, Inc. does not "compete" in any way with plaintiff, and "put frankly, [plaintiff's] information is of absolutely no business value to Hasbro". Thus, there is no reason for in-house counsel for defendants to retain confidential electronic files pertaining to this action after the conclusion of the case. The confidentiality order would prohibit the files' disclosure in any event, and thus, there would be no reason to retain the files. Therefore, plaintiff's proposal may be included in the order.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the disputes over the confidentiality order be resolved as stated herein, and the parties shall promptly sign a revised agreement that is consistent with the rulings made by this court.

Dated: December 5, 2005

_G/ D Bianco_
Hon. Gustave J. DiBianco
U.S. Magistrate Judge