**EXHIBIT A**

**TO MARCH 27, 2006 LETTER TO**

**MAGISTRATE JUDGE DIBIANCO**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SPERO HARITATOS,

      Plaintiff,      05 Civ. 930 (DNH/GJD)

   - against -

HASBRO, INC.
and TOYS "R" US-NY LLC,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT HASBRO, INC.'S
## RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

   Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Hasbro,

Inc. ("Hasbro"), by its attorneys of record, Patterson Belknap Webb & Tyler LLP, hereby

responds to Plaintiff's First Set of Interrogatories To Defendants:

### GENERAL OBJECTIONS

   1  Hasbro objects to Plaintiff's Interrogatories to the extent they seek to

impose obligations in addition to or different from those embodied in the Federal Rules of Civil

Procedure and the Northern District of New York Local Rules.

2       Hasbro objects to Plaintiff's interrogatories on the grounds that they exceed twenty-five in number including their discrete subparts in violation of Fed. R. Civ. P. 33. Based on Plaintiff's definition of "state the basis," Interrogatory No. 8 constitutes no less than sixteen interrogatories including the subparts.

3       Hasbro objects to each interrogatory to the extent it seeks information protected from discovery by the attorney-client, work product, or other applicable privileges. The provision of any response herein is not and cannot be deemed a waiver of such or any other privilege.  Hasbro will produce a privilege log for each responsive document that is withheld on the grounds of the aforementioned privileges.  Hasbro will not place on the privilege log any communications between Hasbro and Hasbro's principal outside counsel because disclosing the subject matter of such communications would inherently invade the attorney-client and work-product privileges.

4       Hasbro objects to each interrogatory that purports to ask it to answer on behalf of defendant TOYS "R" US-NY LLC and will not answer any interrogatory seeking information about that defendant.

5       Hasbro objects to each interrogatory to the extent it seeks confidential or proprietary business or financial information or trade secrets of any kind without a suitable protective order agreed to by the parties or ordered by the court.

6       An agreement to produce documents in response to any interrogatory should not be construed as a representation that such documents exist, only that a good faith search for responsive documents will be undertaken.

7       The fact that Hasbro is willing to respond to any particular Interrogatory does not constitute an admission or acknowledgement that the Interrogatory is proper, that the

information sought is relevant and/or admissible, that the Interrogatory is within the proper

bounds of discovery, or that other Interrogatories will be treated in a similar fashion.  For any

and all responses made to each Interrogatory, Hasbro reserves all objections or other questions

regarding the competency, relevance, materiality, privilege or admissibility of such information

as evidence in this suit or any other proceeding, action, or trial.

8      The responses herein are based on Hasbro's current knowledge and belief,

and Hasbro reserves the right to supplement, amend, modify or correct these responses should

additional information become available.

9      Hasbro objects to the definitions to the extent that they purport to require

Hasbro to answer on behalf of its predecessors.  Hasbro can only answer as to the knowledge of

its employees.

All responses herein are made on an express reservation of the General Objections

set forth above and any specific objections set forth below.

## RESPONSES TO SPECIFIC INTERROGATORIES

**Interrogatory No. 1:**

Describe the circumstances regarding how and when each of the Defendants first
became aware of the Haritatos CANDYLAND Mark, and describe in detail any actions planned
or taken with respect to Defendants' use, or intended use, of the term "CANDY LAND" or any
other similar term, in connection with Defendants' products, advertising, or marketing as a result
thereof.

**Objections and Response:**

Hasbro objects to this interrogatory as overbroad, unduly burdensome, and as

seeking information that is irrelevant and not reasonably calculated to lead to the discovery of

admissible evidence.  Hasbro further objects to this interrogatory as seeking information

protected by the attorney-client privilege, work product privilege or other applicable privilege.

Subject to the foregoing and the General Objections, Hasbro states that it has been aware of

Plaintiff's CANDYLAND registration since about 1995.

**Interrogatory No. 2:**

Identify every person having knowledge of each formal or informal investigation, study, survey, and/or search, if any conducted by or on behalf of any of the Defendants respecting the term "CANDY LAND" or other similar term, and describe in detail the nature and substance of each such person's knowledge, including the results of such investigation, study, and/or search.

**Objections and Response:**

Hasbro objects to this interrogatory as overbroad, vague and ambiguous, and as

seeking information that is irrelevant and not reasonably calculated to lead to the discovery of

admissible evidence. Hasbro further objects as unduly burdensome the identification of "every"

person with knowledge of each formal or informal investigation of the CANDY LAND mark, a

mark that was first used more than 50 years ago and has been used on numerous and varied

products since then. Hasbro further objects to this interrogatory as seeking information protected

by the attorney-client privilege, work product privilege or other applicable privilege.

Subject to and without waiving the foregoing and the General Objections, Hasbro

identifies the following employees as having the most knowledge of investigations conducted by

Hasbro regarding the term CANDY LAND:

Tim Eio, Manager, Marketing, Hasbro Games (2002-2004). Mr. Eio was

responsible for and is knowledgeable concerning the day-to-day management of the CANDY

LAND brand. This includes the creation of advertising and promotional materials. Since

November 2004, Shauna Collins has assumed these responsibilities.

Mark Stark, Vice President, Marketing, Hasbro Games (1999-present). Mr. Stark

is responsible for and knowledgeable concerning the marketing of the Milton Bradley brand

portfolio, which includes preschool games, children's games and puzzles. As such, he oversees

the CANDY LAND brand, which is part of the preschool games category, including any

marketing, advertising, promotion and packaging activities, as well as the strategy and direction

of any new product development within the CANDY LAND brand.  Mr. Stark has had

responsibilities for CANDY LAND as an employee of Hasbro since 1994.

Paul Vanasse, Director, Intellectual Properties, Office of the General Counsel

(1985 to present).  Mr. Vanasse works under the direct supervision of the lawyers in Hasbro's

Legal Department and has day-to-day responsibility for maintaining Hasbro's intellectual

properties, including the CANDY LAND trademark, and enforcing those rights.

**Interrogatory No. 3:**

Identify by product code, package code, or other specific indicia, each product
and/or service that any of the Defendants have manufactured, advertised, marketed, offered for
sale, licensed, distributed, or otherwise caused to be provided in the United States, or intend to
manufacture, advertise, offer for sale, license, distribute, or otherwise cause to be provided in the
United States, in connection with the term "CANDY LAND" or any other similar term.

**Objections and Response:**

Hasbro objects to this interrogatory as unduly burdensome, overbroad, vague and

ambiguous.  Hasbro further objects to this interrogatory as seeking confidential or proprietary

information without entry of a suitable protective order.

Subject to and without waiving the foregoing and the General Objections, and

subject to a suitable protective order, Hasbro will respond pursuant to Fed. R. Civ. P. 33(d) by

producing documents from which the burden of deriving or ascertaining the answer will be

substantially the same for Plaintiff as it would be for Hasbro.

**Interrogatory No. 4:**

For each different product and/or service that any of the Defendants has
manufactured, advertised, marketed, offered for sale, licensed, distributed, or otherwise caused to
be provided in the United States, in connection with the term "CANDY LAND" or any other
similar term, state the volume of sales in the United States, in dollars and in individual units, for
each year to the present.

5

**Objections and Response:**

Hasbro objects to this interrogatory as unduly burdensome, overbroad, vague and ambiguous. Hasbro further objects to this interrogatory as seeking confidential or proprietary information without entry of a suitable protective order.

Subject to and without waiving the foregoing and General Objections, and subject to a suitable protective order, Hasbro will respond pursuant to Fed. R. Civ. P. 33(d) by producing documents from which the burden of deriving or ascertaining the answer will be substantially the same for Plaintiff as it would be for Hasbro.

**Interrogatory No. 5:**

Identify every person on a supervisory, managerial, or professional level knowledgeable about any of the Defendants' intended or actual use, advertising, licensing, or promotion of products and/or services in connection with the term "CANDY LAND" or any other similar term since 1995, and describe in detail the nature and substance of each such person's knowledge.

**Objections and Response:**

Hasbro objects to this interrogatory as overbroad. Hasbro further objects as unduly burdensome the identification of "every" person with knowledge of the facts relating to Hasbro's use in the United States of the term CANDY LAND, a mark that has been used on numerous and varied products. Subject to and without waiving the foregoing and the General Objections, Hasbro identifies the following employees as having the most knowledge of Hasbro's use, advertising, licensing, or promotion of CANDY LAND products:

Mark Blecher, Senior Vice President, Hasbro Games Group (2004-present). Mr. Blecher is responsible for and knowledgeable concerning all aspects of marketing of Hasbro games, including the CANDY LAND brand products.

Bryony Bouyer, Senior Vice President, Hasbro Properties Group (2004-present). Ms. Bouyer is responsible for and knowledgeable concerning all aspects of the licensing of

6

Hasbro properties, including the CANDY LAND brand products. Ms. Bouyer has been an employee of Hasbro since 2000.

Tom Klusaritz, Vice President, Hasbro Properties Group (1999-present). Mr. Klusaritz is responsible for and knowledgeable concerning all aspects of licensing of Hasbro properties, including the CANDY LAND brand products. Mr. Klusaritz reports to Ms. Bouyer.

Lee McLaughlin, former Director, Licensing, Hasbro Properties Group. Mr. McLaughlin was responsible for and knowledgeable concerning licensing of Hasbro properties, including the CANDY LAND brand products. Mr. McLaughlin was an employee of Hasbro between 1996 and 2005.

Mark Morris, Director, Public Relations, Hasbro Games (1998-2005). Mr. Morris was responsible for coordinating and knowledgeable concerning all public relations activities related to Hasbro's games, including the CANDY LAND game. His duties included coordinating press releases, responding to media inquiries, and interacting with consumers with respect to any questions or concerns they may have about any of Hasbro's games. In addition, Mr. Morris was responsible for special events designed to attract publicity for CANDY LAND, such as the recent 55th anniversary of the game. Mr. Morris had responsibilities for the CANDY LAND game as an employee of Hasbro since 1986.

Jane Ritson-Parsons, President, Hasbro Properties Group (2001-present). Ms. Ritson-Parsons is responsible for and knowledgeable concerning all aspects of marketing and licensing worldwide of the Hasbro properties, including the CANDY LAND brand products. Ms. Ritson-Parsons has been an employee of Hasbro since 1992.

Pat Schmidt, Vice President, Consumer Products, North America, Hasbro Properties Group (1989-2004). Ms. Schmidt was responsible for and is knowledgeable

concerning the domestic licensing of all Hasbro properties (except for publishing), including the

CANDY LAND mark.  Since 2004, Tom Klusaritz, has assumed some of these responsibilities.

Mark Stark, Vice President, Marketing, Hasbro Games (1999-present).  Mr. Stark

is responsible for and knowledgeable concerning the marketing of the Milton Bradley brand

portfolio, which includes preschool games, children's games and puzzles.  As such, he oversees

the CANDY LAND brand, which is part of the preschool games category, including any

marketing, advertising, promotion and packaging activities, as well as the strategy and direction

of any new product development within the CANDY LAND brand.  Mr. Stark has had

responsibilities for CANDY LAND as an employee of Hasbro since 1993.

Mark Sullivan, Senior Vice President, Sales & Administration, Hasbro Games

Group.  Mr. Sullivan is responsible for and knowledgeable concerning all aspects of sales related

to the Hasbro game products, including the CANDY LAND game.  Mr. Sullivan is also

responsible for and knowledgeable concerning Hasbro's key sales accounts, including Toys "R"

Us.

Helen Van Tassel, Marketing/Public Relations Specialist, Hasbro Games (1998-

present).  Ms Van Tassel was the assistant to the Director of Public Relations.  Ms. Van Tassel's

duties include coordinating press releases, responding to media inquiries, and interacting with

consumers with respect to any questions or concerns they may have about any of Hasbro's

games.

**Interrogatory No. 6:**

Identify every person having knowledge of any of the Defendants' contention, if
any, that Haritatos does not have rights in the Haritatos CANDYLAND Mark to assert against
any of the Defendants or otherwise lacks standing to bring or maintain this lawsuit, and describe
in detail the nature and substance of each such person's knowledge.

8

**Objections and Response:**

Hasbro objects to this Request as inherently invasive of the attorney-client privilege, attorney work product, or other privilege. Hasbro further objects to the Request because it seeks the identity of persons with knowledge of legal conclusions and is not a proper subject for inquiry. The persons with knowledge of Hasbro's legal conclusions are Hasbro's outside counsel and the members of the Hasbro Legal Department.

**Interrogatory No. 7:**

Identify every person having knowledge of any of the Defendant's contentions, if any, that there is no substantial likelihood of confusion between Haritatos' CANDYLAND Mark and any Defendants' use of the term CANDY LAND in connection with edible products, and describe in detail the nature and substance of each such person's knowledge.

**Objections and Response:**

Hasbro objects to this interrogatory as seeking information protected by the attorney-client privilege, work product privilege or other applicable privilege. Moreover, virtually everyone with any knowledge of plaintiff and Hasbro would know that there is no likelihood of confusion.

Subject to and without waiving the foregoing and General Objections, Hasbro refers Plaintiff to the persons identified in response to Interrogatory No. 5 as having the most knowledge of Hasbro's CANDY LAND products, the fame of Hasbro's CANDY LAND mark, and the unlikelihood of any confusion between Haritatos' CANDYLAND Mark and Defendants' use of the term CANDY LAND in connection with edible products, if any.

**Interrogatory No. 8:**

State the Basis for any of the Defendants' contention, if any, that (a) any Defendants' use of the term "CANDY LAND" is not likely to confuse, cause mistake, or deceive, purchasers or consumers of Defendants' Edible CANDY LAND Products into believing that any of the Defendants are affiliated, connected, or associated, with Haritatos, (b) Haritatos's use of the term "CANDYLAND" is not likely to confuse, cause mistake, or deceive purchasers or consumers of Defendants' Edible CANDY LAND Products into believing that Haritatos is affiliated, connected, or associated with any of the Defendants, (c) any of Defendants' Edible

CANDY LAND Products originate with, are sponsored by, or are approved by, Haritatos, or (d) any of Haritatos CANDYLAND Products originate with, are sponsored by, or approved by any of the Defendants.

**Objections and Response:**

Subject to and without waiving the General Objections, Hasbro directs Plaintiff to its Answer and Counterclaims, which contain a statement of Hasbro's defenses to Plaintiff's Complaint. Hasbro further responds that virtually no one associates the name CANDYLAND with Haritatos, and he has no trademark rights in that name.

**Interrogatory No. 9:**

Identify all persons, employed, hired, retained, or to be offered, or expected to be employed, hired, retained, or offered by any of the Defendants as expert consultants or witnesses in connection with this lawsuit, the subjects about which each such expert has been retained or is intended to be retained, and the substance of any testimony or evidence any of the Defendants intend to offer through each such expert in any motion or brief submitted by any of the Defendants, or at any trial or hearing in this matter.

**Objections and Response:**

Hasbro objects to this interrogatory as seeking information protected by the attorney-client privilege, work product privilege or other applicable privileges. At this point in the case, Hasbro has not identified any expert consultants or witnesses. The parties have agreed on a later time for disclosing testifying experts, and Hasbro does not waive its right to name expert consultant(s) or witness(es) and reserves the right to supplement or amend its response to this interrogatory request as discovery continues.

**Interrogatory No. 10:**

Identify every person having knowledge about any instances of possible confusion respecting the term "CANDY LAND" or respecting any of the Defendants' products, or respecting Haritatos's products (such as an inquiry whether any of the Defendants' businesses were sponsored, affiliated, associated or endorsed by or connected with Haritatos, or any of the Defendants' receipt of any misdirected mail, telephone calls, orders or complaints intended for Haritatos), and for each such person, describe in detail such person's knowledge.

**Objections and Response:**

Hasbro objects to this interrogatory as vague and ambiguous.  To the extent this interrogatory is asking Hasbro to identify persons with knowledge of confusion as to whether Hasbro's products were sponsored, affiliated, associated or endorsed by or connected with Haritatos, Hasbro states that there is no such confusion and therefore no person to identify.

**Interrogatory No. 11:**

Identify every person having knowledge of any objections (a) by either Haritatos or others to any of the Defendants' use of the term "CANDY LAND" or any other similar term, or (b) by any of the Defendants to a third party's use of the term "CANDY LAND" or any similar term, and for each such person, describe in detail such person's knowledge.

**Objections and Response:**

Hasbro objects to this interrogatory as overbroad, vague and ambiguous, and as seeking information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Hasbro further objects as unduly burdensome the identification of "every" person with knowledge of any objections by Hasbro to a third party's use of the term "CANDY LAND", a mark that was first used by Hasbro more than 50 years ago and that numerous parties, including Plaintiff, have sought to exploit for their own advantage.  Hasbro further objects to this interrogatory as seeking information protected by the attorney-client privilege, work product privilege or other applicable privilege.

Subject to and without waiving the foregoing and General Objections, Hasbro identifies the following employee as most knowledgeable:

Paul Vanasse, Director, Intellectual Properties, Office of the General Counsel (1985 to present).  Mr. Vanasse works under the direct supervision of the lawyers in Hasbro's Legal Department and has day-to-day responsibility for maintaining Hasbro's intellectual properties, including the CANDY LAND trademark, and enforcing those rights.

11

**Interrogatory No. 12:**

For each of the Defendants' defenses and/or counterclaims in this lawsuit, describe in detail in at least 100 words the factual basis and nature of such defense.

**Objections and Response:**

Hasbro objects to this interrogatory as seeking information protected by the attorney work product privilege. Subject to and without waiving the foregoing and General Objections, Hasbro states as follows:

Hasbro owns the federal trademark Registration No. 544,328 for the mark CANDY LAND for, *inter alia*, goods and services in International Class 28, namely board games played with moveable pieces. Registration No. 544,328 was registered on June 26, 1951 and is now incontestable. Hasbro has continuously used this CANDY LAND mark in commerce since 1949, and Hasbro's use of the CANDY LAND mark has become famous worldwide. Hasbro's use of the CANDY LAND mark predates Haritatos's use of his Candyland mark, if any. Plaintiff did not even begin to call his business CANDYLAND, let alone use the name of the business as a trademark, until at least the 1980s.

The CANDY LAND trademark has become a valuable corporate asset of Hasbro and Hasbro uses the CANDY LAND mark for a variety of products geared toward children that are a natural extension of the board game. Hasbro has also licensed the CANDY LAND mark for a variety of products geared toward children that are a natural extension of the board game. Plaintiff's alleged uses of his CANDYLAND mark is on goods that are a natural extension of Hasbro's famous CANDY LAND goods. Moreover, Plaintiff's CANDYLAND mark has no source identifying capacity when used in connection with a candy store.

There is no likelihood that consumers will confused by the use of Hasbro's famous CANDY LAND mark in connection with candy or other edible products, which is a

12

natural extension of the use of the CANDY LAND mark in connection with a game that is all

about candy. But if Plaintiff is correct (and Hasbro contends that he is not) that there is likely to

be confusion between the licensed use of elements of Hasbro's famous CANDY LAND brand in

connection with a section of a retail store in New York, New York, and plaintiff's use of his

alleged CANDYLAND mark in connection with the sale of candy, then it is Plaintiff who has

infringed Hasbro's trademarks in the CANDY LAND game and associated products because

Hasbro has had priority of use of the CANDY LAND mark since long before Plaintiff began to

use his CANDYLAND mark, if at all, and the use of the CANDYLAND mark in connection

with the sale of candy is a natural extension of Hasbro's prior use in connection with a children's

board game with a candy theme.

In addition, Hasbro will respond pursuant to Fed. R. Civ. P. 33(d) by producing

documents from which the burden of deriving or ascertaining the answer will be substantially the

same for Plaintiff as it would be for Hasbro.

**Interrogatory No. 13:**

Identify every person having knowledge of any facts forming the basis of each of the Defendants' defenses and/or counterclaims in this lawsuit, and for each such person, describe in detail such person's knowledge.

**Objections and Response:**

Hasbro objects to this interrogatory as seeking information protected by the

attorney work product privilege. Subject to and without waiving the foregoing and the General

Objections, Hasbro identifies the following employees as having the most knowledge of the

factual basis of Hasbro's defenses and counterclaims in this litigation:

Mark Blecher, Senior Vice President, Hasbro Games Group (2004-present). Mr.

Blecher is responsible for and knowledgeable concerning all aspects of marketing of Hasbro

games, including the CANDY LAND brand products.

13

Bryony Bouyer, Senior Vice President, Hasbro Properties Group (2004-present). Ms. Bouyer is responsible for and knowledgeable concerning all aspects of the licensing of Hasbro properties, including the CANDY LAND brand products. Ms. Bouyer has been an employee of Hasbro since 2000.

Tom Klusaritz, Vice President, Hasbro Properties Group (1999-present). Mr. Klusaritz is responsible for and knowledgeable concerning all aspects of licensing of Hasbro properties, including the CANDY LAND brand products. Mr. Klusaritz reports to Ms. Bouyer.

Lee McLaughlin, former Director, Licensing, Hasbro Properties Group. Mr. McLaughlin was responsible for and knowledgeable concerning licensing of Hasbro properties, including the CANDY LAND brand products. Mr. McLaughlin was an employee of Hasbro between 1996 and 2005.

Mark Morris, Director, Public Relations, Hasbro Games (1998-2005). Mr. Morris was responsible for coordinating and knowledgeable concerning all public relations activities related to Hasbro's games, including the CANDY LAND game. His duties included coordinating press releases, responding to media inquiries, and interacting with consumers with respect to any questions or concerns they may have about any of Hasbro's games. In addition, Mr. Morris was responsible for special events designed to attract publicity for CANDY LAND, such as the recent 55th anniversary of the game. Mr. Morris had responsibilities for the CANDY LAND game as an employee of Hasbro since 1986.

Jane Ritson-Parsons, President, Hasbro Properties Group (2001-present). Ms. Ritson-Parsons is responsible for and knowledgeable concerning all aspects of marketing and licensing worldwide of the Hasbro properties, including the CANDY LAND brand products. Ms. Ritson-Parsons has been an employee of Hasbro since 1992.

14

Mark Stark, Vice President, Marketing, Hasbro Games (1999-present).  Mr. Stark is responsible for and knowledgeable concerning the marketing of the Milton Bradley brand portfolio, which includes preschool games, children's games and puzzles.  As such, he oversees the CANDY LAND brand, which is part of the preschool games category, including any marketing, advertising, promotion and packaging activities, as well as the strategy and direction of any new product development within the CANDY LAND brand.  Mr. Stark has had responsibilities for CANDY LAND as an employee of Hasbro since 1994.

Mark Sullivan, Senior Vice President, Sales & Administration, Hasbro Games Group.  Mr. Sullivan is responsible for and knowledgeable concerning all aspects of sales related to the Hasbro game products, including the CANDY LAND game.  Mr. Sullivan is also responsible for and knowledgeable concerning Hasbro's key sales accounts, including Toys "R" Us.

Helen Van Tassel, Marketing/Public Relations Specialist, Hasbro Games (1998-present).  Ms Van Tassel was the assistant to the Director of Public Relations.  Ms. Van Tassel's duties include coordinating press releases, responding to media inquiries, and interacting with consumers with respect to any questions or concerns they may have about any of Hasbro's games.

Paul Vanasse, Director, Intellectual Properties, Office of the General Counsel (1985 to present).  Mr. Vanasse works under the direct supervision of the lawyers in Hasbro's Legal Department and has day-to-day responsibility for maintaining Hasbro's intellectual properties, including the CANDY LAND trademark, and enforcing those rights.

## Interrogatory No. 14:

For each of Defendants' counterclaims, describe in detail in at least 100 words the nature of the damages or other monetary relief sought, and present a detailed calculation of the amount of such damages or other monetary relief.

**Objections and Response:**

Hasbro objects to this interrogatory as seeking information protected by the attorney work product privilege.  Subject to and without waiving the foregoing and the General Objections, Hasbro states as follows:

Hasbro seeks a judgment dismissing Plaintiff's Complaint with prejudice; awarding Hasbro its costs of defending this action, including reasonable attorneys' fees, costs and disbursements.  In the unlikely event that the Court were to find that there is likely to be confusion between the licensed use of Hasbro's famous mark in connection with a section of a retail store in New York, New York, and plaintiff's use of a similar mark in connection with the sale of candy, then Hasbro seeks permanent injunctive relief enjoining Plaintiff from advertising, promoting, or selling any goods or services using his alleged CANDYLAND mark or any other mark that is confusingly similar to Hasbro's CANDY LAND mark; awarding Hasbro permanent injunctive relief directing Plaintiff to destroy all packages, wrappers, bottles, containers, catalogues, advertisements and other promotional materials which bear the CANDYLAND name; awarding Hasbro its damages in an amount to be determined by the trier of fact; and granting such other, further, and different relief as this Court may deem just and necessary.

Hasbro cannot calculate the amount of the damages or other monetary relief that it seeks until it has reviewed the evidence of confusion, if any, and the profits that Plaintiff has derived from this confusion, neither of which have been produced in this litigation at this time.

**Interrogatory No. 15:**

Identify every person having knowledge of the nature or calculation of any of the Defendants' damages or other monetary relief sought, and for each such person, describe in detail such person's knowledge.

**Objections and Response:**

Hasbro objects to this interrogatory as seeking information protected by the attorney work-product privilege. Subject to and without waiving the foregoing and the General Objections, Hasbro identifies the following employees as having the most knowledge of Hasbro's costs in defending this action and, if Plaintiff produces evidence of consumer confusion and his profits derived from said confusion, will likely have the most knowledge regarding the damages and other monetary relief sought from Plaintiff:

Mark Blecher, Senior Vice President, Hasbro Games Group (2004-present). Mr. Blecher is responsible for and knowledgeable concerning all aspects of marketing of Hasbro games, including the CANDY LAND brand product.

Bryony Bouyer, Senior Vice President, Hasbro Properties Group (2004-present). Ms. Bouyer is responsible for and knowledgeable concerning all aspects of the licensing of Hasbro properties, including the CANDY LAND brand products. Ms. Bouyer has been an employee of Hasbro since 2000.

Tom Klusaritz, Vice President, Hasbro Properties Group (1999-present). Mr. Klusaritz is responsible for and knowledgeable concerning all aspects of licensing of Hasbro properties, including the CANDY LAND brand products. Mr. Klusaritz reports to Ms. Bouyer.

Jane Ritson-Parsons, President, Hasbro Properties Group (2001-present). Ms. Ritson-Parsons is responsible for and knowledgeable concerning all aspects of marketing and licensing worldwide of the Hasbro properties, including the CANDY LAND brand products. Ms. Ritson-Parsons has been an employee of Hasbro since 1992.

Mark Stark, Vice President, Marketing, Hasbro Games (1999-present). Mr. Stark is responsible for and knowledgeable concerning the marketing of the Milton Bradley brand portfolio, which includes preschool games, children's games and puzzles. As such, he oversees

17

the CANDY LAND brand, which is part of the preschool games category, including any marketing, advertising, promotion and packaging activities, as well as the strategy and direction of any new product development within the CANDY LAND brand. Mr. Stark has had responsibilities for CANDY LAND as an employee of Hasbro since 1994.

Paul Vanasse, Director, Intellectual Properties, Office of the General Counsel (1985 to present). Mr. Vanasse works under the direct supervision of the lawyers in Hasbro's Legal Department and has day-to-day responsibility for maintaining Hasbro's intellectual properties, including the CANDY LAND trademark, and enforcing those rights.

### Interrogatory No. 16:

Identify every person having knowledge of any charge of infringement or unfair competition involving the term "CANDY LAND" or any other similar term, and for each such person, describe in detail such person's knowledge.

### Objections and Response:

Hasbro objects to this interrogatory as overbroad and as seeking information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Hasbro further objects as unduly burdensome the identification of "every" person with knowledge of any charge of infringement or unfair competition involving the term "CANDY LAND", a mark that was first used by Hasbro more than 50 years ago and that numerous parties, including Plaintiff, have sought to exploit for their own advantage.

Subject to and without waiving the foregoing and General Objections, Hasbro identifies the following employee as most knowledgeable:

Paul Vanasse, Director, Intellectual Properties, Office of the General Counsel (1985 to present). Mr. Vanasse works under the direct supervision of the lawyers in Hasbro's Legal Department and has day-to-day responsibility for maintaining Hasbro's intellectual properties, including the CANDY LAND trademark, and enforcing those rights.

18

Sean Wiggins, Intellectual Property Paralegal, Office of the General Counsel (2002 to present).  Mr. Wiggins works under the direct supervision of Paul Vanasse and the lawyers in Hasbro's Legal Department and has day-to-day responsibilities for maintaining Hasbro's intellectual properties, including the CANDY LAND trademark, and enforcing those rights.

Dated:  New York, New York
November 22, 2005

PATTERSON BELKNAP WEBB & TYLER LLP

Kim J. Landsman
(Bar Roll No. 513,364)
Michael D. Sant'Ambrogio
(Bar Roll No. 513,363)
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone:  212-336-2980
Facsimile:  212-336-2985

*Attorneys for Defendant Hasbro, Inc.*

## VERIFICATION

I, Paul N. Vanasse, declare and state under penalty of perjury as follows:

1.      I am Director of Intellectual Properties for Opposer Hasbro, Inc.

2.      I have read the foregoing Hasbro's Response To Plaintiff's First Set of Interrogatories.

3.      The answers therein are true and correct to the best of my knowledge and information, based, in part, on documents kept in the ordinary course of business and on information obtained from other employees of Hasbro, Inc.

Executed in Pawtucket, Rhode Island on November 18, 2005.

_____
PAUL N. VANASSE

Sworn to before me this
_13ᵗʰ_ day of _November_, 2005

_____
Notary Public

My Commission Expires on
January 14, 2007

Vanasse VERIFICATION for
Interrogatory Responses.DOC

1233475v1

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing **HASBRO'S**

**RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** to be served by Fax

and First Class Mail this 22nd day of November, 2005 on:

Robert E. Purcell, Esq.
Attorney for Plaintiff Spero Haritatos
Wall Marjama & Bilinski LLP
101 South Salina Street, Suite 400
Syracuse, New York  13202
(315) 425-9000

and

John G. McGowan Esq.
Attorney for Defendant Toys "R" Us
One Lincoln Center
Syracuse, New York  13202-1355
(315) 218-8121

Michael D. Sant'Ambrogio

20