UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------x
SPERO HARITATOS,

                              Plaintiff,

vs.                            2005-CV-930

HASBRO, INC.,  TOYS "R" US-NY, LLC,


                              Defendant.

---------------------------------------------x

        Transcript of a Telephone Conference held on

March 28, 2006, at the James Hanley Federal Building,

100 South Clinton Street, Syracuse, New York, the

HONORABLE GUSTAVE J. DiBIANCO, United States

Magistrate Judge, Presiding.



                    A P P E A R A N C E S

For Plaintiff:        WALL, MARJAMA LAW FIRM
(Via telephone)       Attorneys at Law
                      101 South Salina Street
                      Suite 400
                      Syracuse, New York  13202
                        BY:  ROBERT E. PURCELL, ESQ.


For Defendant:        PATTERSON, BELKNAP LAW FIRM
(Hasbro)              Attorneys at Law
(Via telephone)       1133 Avenue of the Americas
                      New York, New York  10036-6710
                        BY:  KIM J. LANDSMAN, ESQ.
                             MICHAEL D. SANT'AMBROGIO, ESQ.


For Defendant:        BOND, SCHOENECK & KING, PLLC
(Toys "R" Us)         Attorneys at Law
(Via telephone)       One Lincoln Center
                      Syracuse, New York  13202-1355
                        BY:  JOHN G. McGOWAN, ESQ.

```
 1                    (3:48 p.m.)

 2                    THE COURT:  Yes, okay, this is Magistrate

 3    Judge DiBianco, I'm here in Syracuse and I have a -- one of

 4    the official court stenographers who's going to take this

 5    conference down so we have to be careful to identify

 6    ourselves when we start talking.

 7                    Who do we have for the plaintiff, please?

 8                    MR. PURCELL:  This is Bob Purcell for the

 9    plaintiff, Haritatos.

10                    THE COURT:  And for Toys "R" Us?

11                    MR. McGOWAN:  Your Honor, John McGowan.

12                    THE COURT:  And for Hasbro?

13                    MR. LANDSMAN:  Your Honor, Kim Landsman and

14    Michael Sant'Ambrogio.

15                    THE COURT:  Okay.  I have your letter,

16    Mr. Purcell, this is a letter of March 20th, and you raise at

17    least four or five items in that letter.  One is this issue

18    of initial disclosures by Toys "R" Us and I think somewhere

19    in that letter you say that those have been provided on

20    November 28th.  The second item is a motion, you want me to

21    compel the clerk to enter default judgment, a default rather

22    against TRU, Toys "R" Us.  The third is the issue of the

23    motion to amend and some accompanying sanctions.  The fourth

24    item I saw was a -- some reference to a protective order that

25    apparently has not yet been entered and then you have some
```

 1    issue over Hasbro's initial disclosures.

 2              Let me take what perhaps are some of the

 3    easier items first.  Why is the protective order still not

 4    signed?  I did a decision on that, Judge Hurd upheld that

 5    decision, is it just simply the fact that the protective

 6    order has not been sent to me?

 7              MR. LANDSMAN:  Your Honor, this is Kim

 8    Landsman speaking.  We, soon after Judge Hurd affirmed your

 9    Honor's decision, we sent to Mr. Purcell a new draft that

10    embodied the rulings and asking him to agree to it as to form

11    so it could be submitted that way.  A month later he said

12    that he couldn't quite do that because he -- I mean he can

13    explain why he couldn't quite do that, but then we sent it

14    directly to your Honor to request that it be so ordered and

15    my understanding is that Mr. Purcell does not have any belief

16    that it does not correctly embody the parties' agreements and

17    the Court's decision.

18              THE COURT:  When did you send that to me?

19              MR. LANDSMAN:  March 17th.

20              THE COURT:  So was that sent by ordinary mail

21    or was that electronically filed?

22              MR. LANDSMAN:  Electronically, your Honor.

23              THE COURT:  Send another copy to me and

24    I'll --

25              MR. LANDSMAN:  Send it electronically or

1   normally, your Honor?

2              THE COURT:  Send it normally.

3              MR. LANDSMAN:  We'll Fed Ex it to your Honor

4   then.

5              THE COURT:  Okay.  And make sure that it

6   follows Judge Hurd's decision and my decision obviously.

7              MR. LANDSMAN:  Your Honor, my understanding is

8   that Mr. Purcell has no objection to it on that basis, he can

9   confirm it or deny that.

10             THE COURT:  Then that's easy, just send it to

11  me and that will be taken care of.

12             MR. LANDSMAN:  Thank you.

13             THE COURT:  Second item I want to address is

14  Hasbro's initial disclosures and I'll ask you to elaborate on

15  that, Mr. Purcell, if you want to.  You're essentially

16  complaining about the fact that there's no business address

17  and telephone number with respect to each person listed, is

18  that right?

19             MR. PURCELL:  And in addition, your Honor,

20  that the rule requires that the initial disclosures identify

21  the subjects of the information that each individual has that

22  are likely to be discoverable and the disclosing party may

23  use to support its claims or defenses, so there are two flaws

24  in Hasbro's initial disclosures.  One, that with respect to

25  each of these individuals, they have not attempted to provide

```
 1    residence, business address or telephone number, and two,

 2    they have utterly failed to provide any information

 3    identifying the subjects of the information that these

 4    persons have that might be discoverable.

 5              THE COURT:  Okay.  Mr. Landsman, what about

 6    this issue of the subject matter of the person's knowledge?

 7              MR. LANDSMAN:  Your Honor, this, I'm not sure

 8    whether you know but certainly Mr. Purcell does, we have been

 9    litigating in the trademark office long before this action

10    was brought and the trademark office, Mr. Purcell had served

11    interrogatories and in response to those interrogatories, we

12    had identified people with knowledge and we had identified

13    the type of knowledge that they had, for example, and we

14    enclosed that in our letter to your Honor of March 27th,

15    where we identify people like Mark Blecher, senior vice

16    president, who was responsible for knowledge concerning all

17    marketing of Hasbro games including Candy Land brand products

18    and we went on to identify, gosh, I don't know, 15 to 20

19    people in various areas.

20              So Mr. Purcell's argument here is just so

21    utterly disingenuous.  He has the information he needs, the

22    initial disclosures are just ways to get things going.  We

23    are ready to get going here, he knows who the Hasbro

24    witnesses are, he knows what their areas of responsibility

25    are, we gave their titles in the initial disclosures, we've
```

1    previously disclosed interrogatories which Mr. Purcell has,

2    what type of information that they have.

3              THE COURT:  Okay.  Why don't we just do this

4    then.

5              MR. LANDSMAN:  This is just litigating over

6    the shape of the table rather than getting things moving.

7              THE COURT:  Okay, but nevertheless, the

8    proceedings in the trademark office are not the proceedings

9    before this court, so why don't you amend your initial

10   disclosures and certainly put in the subject matter.

11             With respect to the address, put the business

12   address of those individuals --

13             MR. LANDSMAN:  Your Honor, our point there was

14   that these are employees of the client, he cannot contact

15   them directly anyway, he needs to contact them through us, he

16   knows what Hasbro's business address is, everybody knows

17   that, it's public information.

18             THE COURT:  Well, just put it in there, just

19   put it in there and you don't have to keep repeating it for

20   every witness, just put it in there once.  Okay.  So that,

21   anything further on that, on that issue, these initial

22   disclosures?

23             MR. PURCELL:  Yes, your Honor, I'm seeking an

24   order also compelling them to provide at least some

25   meaningful description of the subject matter of the

1    information held by each of those persons, that's also

2    required by Rule 26.

3                    THE COURT:  Well, as long as they identify the

4    subject matter, they don't need to give recitation of what

5    that witness -- everything that witness knows, that's for

6    deposition, so Mr. Landsman, identify the subject matter of

7    whatever the witness knows.  All right.  So those are my

8    rulings.

9                    MR. LANDSMAN:  Mr. Sant'Ambrogio pointing out

10   to me we've also served responses to interrogatories in this

11   action, which identifies the nature of the information that

12   each of these witnesses knows.  So it's not just in the TTAB,

13   I'm sorry, I had gotten that confused.

14                   THE COURT:  Is it --

15                   MR. LANDSMAN:  If -- if it will move things

16   along for us to cut and paste and serve a new initial

17   disclosure that proves that information in the initial

18   disclosures, we can do that, it just seems like another

19   sterile exercise.

20                   THE COURT:  It does.  It does, but I'm not

21   sure whether we -- it would be better if the document were

22   complete, so do a revision to the initial disclosures and

23   that will be it.  Okay?

24                   MR. LANDSMAN:  Okay, your Honor.

25                   THE COURT:  So we have left then the motion to

1    amend and a motion to compel the clerk to enter default.

2    Let's take this motion to compel the clerk to enter default.

3    Why don't you go ahead, Mr. Purcell.

4              MR. PURCELL:   Thank you very much, your Honor.

5    We are basically seeking an entry default against defendant

6    Toys "R" Us because of repeated grossly prolonged and delayed

7    service of initial disclosures which weren't complete and

8    still aren't complete today as we speak.  And after begging

9    and begging and promises and promises, I finally got last

10   night at 5:00 some things purporting to be responses to

11   interrogatories and document requests from defendant Toys "R"

12   Us.  But this doesn't cure the problem.

13             Defendant Toys "R" Us basically has tagged

14   along in the litigation not really participating, adopting

15   Hasbro's position, and there's absolutely no excuse for not

16   having provided timely initial disclosures after I granted

17   the adversary a extension of time which was willing to alert

18   him they were due and I haven't gotten them, and even after I

19   wrote a letter to your Honor, I think it was like

20   December 1st asking we have a conference about the situation,

21   he still didn't provide them.  And it wasn't until sometime

22   in mid-December we got some initial disclosures and those

23   were the rest of the required information.  He hasn't amended

24   those to date.  And the interrogatories were served back in I

25   think October, I granted an extension of time to December 1st

1    to respond, he didn't do that.  And I got promises from

2    Mr. McGowan, I think repeatedly through February and early

3    March, and finally, yesterday evening I got them.

4               THE COURT:  Okay.

5               MR. PURCELL:  This is not something that I

6    think can be remedied by an order requiring him to do what

7    he's supposed to do.  It evidences such gross litigation

8    misconduct or failure to defend an action that we believe it

9    warrants an entry of default.

10              Now we are confronted with a local court rule

11   which makes no sense.  The local court rule says that a

12   District Court judge cannot entertain a motion for default

13   judgment until the court -- until the clerk enters default.

14   Now I cited to this court and the court's clerk a number of

15   Second Circuit decisions in which the entry of default was

16   entered without the clerk getting involved and under

17   circumstances where the defendant had answered the complaint

18   and participated in litigation.  Yet when I went to the clerk

19   and asked for entry of default the clerk says, we can't enter

20   default because they've answered the complaint, apparently

21   under the misguided depreciation that Second Circuit law can

22   only allow the clerk to grant entry of default where the

23   defendant hasn't answered.

24              So, we're now before you, your Honor, saying,

25   hey, the local court rule specifies the only way to get

```
 1    default judgment is through the court clerk, if that's so,
 2    then the court clerk implicitly has the power to enter
 3    default in circumstances other than where the defendant
 4    hasn't answered the complaint.  We believe entry of default
 5    should have been entered in this case, that the only remedy
 6    for compelling the clerk to enter default is through an order
 7    by your Honor and we're requesting that you order the clerk
 8    to enter default.
 9              Now beyond that, it's up to the District Court
10    judge I suppose if he wants to enter default judgment based
11    on that entry of default, so all we're doing is getting sort
12    of keys to the door to get into a District Court judge and a
13    District Court judge can entertain a motion to have default
14    judgment against defendant Toys "R" Us.
15              THE COURT:  Okay.  Mr. McGowan.
16              MR. McGOWAN:  Your Honor, I apologize to the
17    Court with respect to where we are, I had spoken to
18    Mr. Purcell and what he didn't mention was his refusal to
19    discuss the matter with me after I called him four weeks ago,
20    five weeks ago, I cannot recall, tell you the truth.
21              The initial disclosure -- well, first of all,
22    I'm hearing Mr. Purcell say two distinctly different things.
23    One, that we are I guess tagging along is the term with
24    respect to Hasbro.  We are -- we answered this complaint,
25    your Honor, we have asserted our defenses with respect to
```

1  this complaint.  It is true that we are a licensee from

2  Hasbro.

3            It is also true that the nature of what Toys

4  "R" Us involvement was in this case is so minimal that what

5  we have is very, very little that responds at all.  Let me

6  elaborate if I may.  The discussion, anything that is in the

7  way of mandatory discussion, disclosure, excuse me, is in the

8  nature of correspondence, sharing of drafts if you will, with

9  respect to the licensing agreement from Toys "R" Us.  That

10  has been provided, it was provided by me as part of the

11  initial disclosure.  No, you know, I don't have to provide

12  that, but I gave it to him, it's more than the rule requires

13  of me.  He has, he Mr. Purcell, has what are essentially all

14  of the antecedents to the licensing agreement by which we use

15  the term Candy Land.  There is no default here.

16            I did get behind because of a trial that I was

17  involved in and that's the way it was and I apologize if that

18  happened.  I have given, and expected to be criticized for

19  it, responses to the interrogatories and the notice to

20  produce and I believe that we have produced everything we

21  have with the exception -- to produce with the exception of

22  the financial information that has been requested, we're

23  waiting for the protective order to give that.  And then

24  Mr. Purcell has asked for a summary of that and the summary

25  is prepared, it can go literally on a moment's notice once we

1   have our protective order.  We are preparing a privilege log

2   but basically what we have held back are documents that are

3   e-mails as between counsel and client, and one document that

4   I'm prepared to present to your Honor for your review and

5   decision that falls under the self-analysis privilege.

6           Beyond that, we don't have anything else, and

7   the reason that we don't have anything else, your Honor, is

8   because our involvement really was as much as using the term

9   Candy Land in a candy department 250 miles away from the

10  plaintiff's store in Rome, New York.

11          I repeat, based on that, there has been no

12  default.  Nor has there been any intent to ignore the

13  plaintiff as Mr. Purcell himself attests to with respect to

14  the repeated telephone calls that I have made to him.  He has

15  what is in effect our disclosure, and he can criticize it all

16  he wants for its minimal nature, that's the nature of what we

17  had, and I cannot create stuff for him.

18          In addition to that, I have identified the two

19  individuals for him who would be most knowledgeable with

20  respect to that, one is the Toys "R" Us Candy Land department

21  manager who was there and continues to be there throughout

22  the course of this, and I've identified the person most

23  knowledgeable with respect to discussions and/or negotiations

24  if you will with respect to Hasbro for the licensing of the

25  mark.

1          Your Honor, I don't know how the plaintiff can

2     claim any prejudice on this since he himself has held up the

3     matter with respect to this protective order, which the one

4     thing that he truly needs from us, I suppose, is our

5     financial data which he can't get without the protective

6     order.

7          So with respect to the Court, I apologize for

8     where I am on this, because I don't own a bully pulpit, I

9     recognize that, but by the same token, there certainly has

10    not been a default here.

11          THE COURT:  Okay.  Anything further on that

12    issue?  Very briefly, Mr. Purcell.

13          MR. PURCELL:  Yes, very briefly.  For example,

14    your Honor, the mandatory disclosure served December 18th

15    have not been revised and even though Mr. McGowan promised in

16    an e-mail to me on February 8th that he would look at them

17    again, if they appeared inadequate, he would supplement.

18    Well, if you look at the mandatory disclosures which are on

19    record with the Court in my affidavit sent to the clerk, he

20    simply lists names of people who are likely to have

21    information.  Again, he doesn't even attempt to give any

22    address at all for these people or phone numbers and it's

23    just totally devoid of what these people supposedly know.

24    And I haven't had a chance to look thoroughly through the

25    interrogatory responses that were provided to me at 5:00 last

14

1   night, but in one response he says the person most

2   knowledgeable to all this use of Candy Land and so forth is

3   so-and-so.  So-and-so is not even identified in his initial

4   disclosures.

5                He says that, oh, it's just a little amount of

6   stuff there, well, why has it taken six months for gosh sakes

7   to get all this stuff around to me?  He still hasn't provided

8   initial disclosures that are sufficient, they're patently

9   insufficient, and we're not talking about the story of a

10  month or two here, Judge, we're talking about interrogatory

11  requests and document requests that were served last October,

12  okay.  And I believe this is such an egregious situation that

13  entry of default is warranted.  Let the District Court judge

14  decide whether default judgment should be entered.

15               THE COURT:  It's not egregious, I can tell you

16  that right away.  So okay, the next issue then, and I'll rule

17  on that at the end of the conference, this motion to compel

18  the clerk to enter default against Toys "R" Us.  The last one

19  I have I think is this motion to amend, and I do have this

20  response from you, Mr. Landsman.  It was I think filed today

21  or yesterday.

22               MR. LANDSMAN:  It would have been yesterday,

23  your Honor.

24               THE COURT:  And that's going to involve some

25  research, but let me hear your position briefly, Mr. Purcell,

1    and your response, Mr. Landsman, or opposition, rather.  This

2    is the motion to further amend the complaint.

3                MR. PURCELL:  All right.  Your Honor, there

4    are two pending requests to the complaint.  One has been a

5    formal motion filed a couple of months ago in which I sought

6    specifically to add a request for injunctive relief directed

7    to Hasbro's attempts to do certain things in the United

8    States Patent and Trademark Office, I cited a case directly

9    on point supporting that position, a Fifth Circuit case and

10   my adversary opposed the motion.  And in my reply, I raised

11   the Fifth Circuit case.  My adversary doesn't provide any

12   supporting case law for opposing that motion, tries to

13   criticize the Fifth Circuit case in my opinion without

14   validity or import.  And I question why in the opposition

15   brief the Patterson, Belknap firm did not bring the Fifth

16   Circuit case to this court's attention.  Did they just simply

17   overlook it?  I mean, their main case they cite is

18   Noerr-Pennington for God's sakes, not even a trademark case,

19   might have --

20                THE COURT:  It's a Supreme Court case, isn't

21   it?

22                MR. PURCELL:  Yeah, Noerr-Pennington has

23   nothing to do with trademarks.  And the Fifth Circuit case

24   specifically found that the requested type of relief was

25   warranted in that case, and it was never brought to this

1    court's attention.  It was brought to the Court's attention

2    in my reply brief, and I fail to see how Patterson, Belknap

3    could have overlooked that case.  Either their research was

4    faulty or they intentionally withheld it from the Court

5    hoping the Court would not be aware of it.

6              Now they cite the Fifth Circuit case in this

7    sort of surreply paper they filed I think yesterday or the

8    day before, but they provide absolutely no other case law

9    which contradicts that Fifth Circuit case.  We believe the

10   amendment's imminently warranted in the first request to the

11   complaint.

12             The second request in the complaint involves a

13   request that hasn't even been filed with the Court at this

14   time.  We requested for the amended complaint to ask for

15   damages specifically in the nature of my client's attorneys'

16   fees in opposing Hasbro's application in the trademark

17   office.  I cited to my adversary a recent Fifth Circuit --

18   I'm sorry, recent First Circuit decision issued a couple days

19   before the deadline of January 31st, 2006 for bringing

20   motions to the complaint, I was not aware of that case until

21   reading some advance sheets I think in early March at which

22   point I promptly contacted opposing counsel to see if they

23   would object to my amending the complaint, specifically where

24   I recite a request for such damages.  They opposed it, they

25   have basically stated that certain distinctions in that case

1   from the instant case, but they provided absolutely no case

2   law in support which contradicts that specific type of relief

3   in a trademark infringement action.

4              THE COURT:  All right.  Mr. Landsman.

5              MR. LANDSMAN:  First of all, your Honor, I

6   think we need to focus on what this case is about, the

7   allegation of the complaint, and I do that because what

8   Mr. Purcell is focusing on are remedies, not the nature of

9   the case.  He's not trying to change the nature of the case,

10  he's just trying to expand remedies from this case to try to

11  get remedies that he may or may not be ever able to get in

12  the trademark trial and appeal board office itself.

13             This case is about whether there's likelihood

14  of confusion between a candy store called Candy Land in Rome,

15  New York, and a candy display in a Toys "R" Us store in Times

16  Square.  It's not about whether Hasbro can or cannot register

17  its famous Candy Land board game mark for beverages and it's

18  not about the issues that were going on in the TTAB

19  proceeding.  So that's one -- that's the principal reason why

20  the amendments would be futile because they're trying to get

21  remedies for what we have done in the TTAB that have got

22  nothing to do with the issues in this case.

23             But Mr. Purcell's argument shows, and it goes

24  to what he was saying about the initial disclosures as well,

25  is that he's trying to litigate everything other than the

1    merits here.  He's trying to litigate by attacking the

2    lawyers and their integrity, he's trying to litigate by

3    attacking what the TTAB specifically allowed, and he made a

4    motion for summary judgment in the TTAB and they denied it.

5    So he's trying to do everything but get to the merits of this

6    case.

7              And when he says that we did not cite the

8    Fifth Circuit case in our opposition, it's kind of ironic

9    because he didn't cite the Fifth Circuit case in his motion.

10    If he thought that this was the absolutely great knockout

11    case that he's now claiming it was, I can't understand why he

12    didn't cite it in his motion, and that may explain a lot why

13    we didn't pick it up in our opposition, but having now read

14    the Fifth Circuit case, it really has nothing to do with the

15    issues in this case.  It's about whether somebody who has

16    litigated and lost on whether his own mark has any validity

17    as a trademark and he lost because it was a descriptive mark

18    with no secondary meaning which is probably what is going to

19    be the outcome of this case about his Candy Land mark because

20    Candy Land for a candy store is about as descriptive as you

21    can get, and given that it is one store in Rome, New York

22    that has done virtually no advertising, he's not going to

23    prove any secondary meaning.  So if the situation were

24    absolutely reversed, this case would have some arguable

25    relevance, but the situation isn't reversed.

1          What we're talking about is Hasbro's attempt

2     to register its famous mark for beverages and this case is

3     about Haritatos claiming that what Toys "R" Us did in Times

4     Square infringes on whatever rights he may have acquired from

5     a store in Rome, New York.

6          This court is not the proper place to assess

7     sanctions if there were any sanctions that would be

8     permissible here for the positions we have taken in the TTAB,

9     and the TTAB has already essentially ruled that our position

10    has merit because it denied his motion for summary judgment.

11         So that is why Noerr-Pennington, although

12    granted, it's certainly not a trademark case, but

13    Noerr-Pennington was not restricted to one particular area of

14    the law.  Noerr-Pennington stands for the proposition that a

15    court should not, except in a completely objectively

16    frivolous lawsuit, situation, enjoin another party from

17    petitioning the government.  It's a very basic First

18    Amendment right, and it goes all across the board to any kind

19    of petitioning of the government, including very specifically

20    applying to register a mark with the TTAB.  So the Test

21    Masters case doesn't apply to that.

22         The other First Circuit case that he is citing

23    also doesn't involve the same kind of parallel registration

24    case.  It -- and the judges in the First Circuit were very

25    careful to say that we are not deciding possible objections

1   not presented and Noerr-Pennington was not presented there.

2              I don't know why, but you know, quite often

3   counsel do not present all the defenses that they could, they

4   don't always think of everything and they may have had their

5   own particular reasons in that case for not bringing it up,

6   but none of these cases that Mr. Purcell is citing really do

7   or can overrule a Supreme Court precedent that says that

8   you're entitled to petition the government, and applying to

9   register a mark is petitioning the government.

10              THE COURT:  Okay.

11              MR. PURCELL:  May I be heard briefly in reply.

12              THE COURT:  Very, very briefly, I don't want

13   you to repeat the arguments you've already made, because I've

14   heard them very clearly.

15              MR. PURCELL:  All right.  The Test Masters

16   Fifth Circuit case very clearly holds that it is proper for a

17   federal district court to issue an injunction against the

18   defendant from proceeding with applications in the trademark

19   office.  Rock solid law.  They've got no case law to

20   contradict that.  They don't tell your Honor when they first

21   knew about this Test Masters case and failed to bring it to

22   the Court's attention.  Secondly, the First Circuit case

23   holds that it is proper to request damages in the nature of

24   having to expend attorneys' fees fighting something, opposing

25   something in the trademark office which is exactly what we've

1    done here.

2                  Mr. Landsman started off his comments that

3    we're really talking about the remedies as to what I may or

4    may not be able to get.  That's true, I may be able to get

5    it, may not be able to get it, that's for the Court to decide

6    on the merits later on down the road, but right now they're

7    saying it's futile, I have absolutely no chance under any

8    type of circumstances to get that type of relief.  I don't

9    believe it is futile at least at this juncture, and I trust

10   at the end of trial, it will also be shown not to be futile.

11                  THE COURT:  Okay.  Is there anything further

12   then that any attorney wants to raise?  Identify yourself

13   before you start speaking.  Mr. Purcell, anything further

14   that you want to raise for this afternoon?

15                  MR. PURCELL:  Not on the amendment, your

16   Honor.

17                  THE COURT:  On anything in your letter of

18   March 20th.

19                  MR. PURCELL:  If I can, if I could read the

20   tea leaves from what I'm hearing, I think you're going to

21   deny my motion to compel the clerk to enter an entry of

22   default judgment against Toys "R" Us, but if that's so, then

23   I would request that you order Toys "R" Us to likewise

24   supplement and amend its initial disclosures which are even

25   worse than Hasbro's.

1                  THE COURT:  All right, I'll consider that.

2      Anything further?

3                  MR. PURCELL:  Nothing.

4                  THE COURT:  Mr. McGowan, anything further?

5                  MR. McGOWAN:  Your Honor, I think Mr. Purcell

6      has what he needs to prosecute his case against TRU.  I think

7      Mr. Landsman made the point that he wants to litigate

8      everything but the issues, but if there's additional

9      information that I need to provide for him, I'd be happy to

10     do it.

11                 THE COURT:  Okay.  If your initial disclosures

12     do not specify the subject matter that these two witnesses, I

13     think you said you had two witnesses, two people named?

14                 MR. McGOWAN:  I disclosed two witnesses in

15     the --

16                 THE COURT:  Department manager?

17                 MR. McGOWAN:  Yes.

18                 THE COURT:  And someone else.  Just supplement

19     that and state what subject matter they would testify about.

20                 MR. McGOWAN:  I shall do that.

21                 THE COURT:  Okay.  I will reserve decision on

22     the motion to amend.

23                 With respect to the motion to compel the clerk

24     to enter default, that's denied.  And I'll read into the

25     record some notes I have.  I think this case is off to a very

1    bad start.  I don't -- I don't see this type of litigation

2    and animosity and pettiness, I think, very frequently, and

3    it's disturbing to see it, because I don't think there's any

4    reason for it.

5                    Based on the tone of your letters,

6    Mr. Purcell, it appears to me that you do not, do not

7    understand the volume of cases assigned to each judge in this

8    district.  The Northern District is one of the busiest in the

9    United States in terms of cases per judge.  You cannot expect

10   instantaneous responses to numerous requests in a particular

11   case, and that's what it seems to me that you're asking for.

12   Regardless of the instantaneous nature of electronic filing,

13   it surely takes time for me to schedule and handle many

14   requests that are received every day in hundreds of cases.

15   The fact that I order the clerk to schedule a conference in

16   your case does not mean that there were no cases in front of

17   yours on any particular day or week.  I cannot ignore

18   pressing matters in other equally important cases.  Of

19   course, important matters will be addressed as soon as

20   possible, but there are certain limitations based upon the

21   enormous caseload in this district.

22                    With respect to discovery disputes, the judges

23   in this district, and I'm pretty sure this is totally

24   uniform, expect the attorneys to cooperate and act in good

25   faith regarding any discovery dispute and to avoid trivial

1    disputes which simply create unnecessary work since they do

2    not involve significant issues.

3              It appears to me that your pursuit,

4    Mr. Purcell, of this issue over default is a perfect example

5    of a minor distracting issue which has nothing to do with the

6    merits of this case.

7              In my view, the proper way to pursue the

8    failure of an adversary to meet discovery requests is a Rule

9    37 motion to compel.  I have never ever seen a request to

10   enter default or default judgment based upon some adversary's

11   failure to participate or engage in discovery.  Rule 37(a)(2)

12   specifically provides for situations where a party fails to

13   make a Rule 26(a) disclosure.  The rule provides for a motion

14   to compel disclosure and for appropriate sanctions, which do

15   not appear to me to include default.  The provision for a

16   judgment of default is included in Rule 37(b)(2)(C), as a

17   sanction, excuse me, for failure to comply with a court

18   order.  This sanction is also referenced in Rule 37(d) which

19   provides sanctions for failure to attend a deposition, answer

20   interrogatories, or produce documents.  None of these require

21   the entry of default as is required under Rule 55.

22             You state in your letter, Mr. Purcell, that

23   the local rules requiring a motion under Rule 55 seeking a

24   default judgment to be accompanied by a clerk's entry of

25   default is of questionable prudence, and questionable

1    legality, in quotes, in view of the current status of Second

2    Circuit law.  I don't agree that the cases you've cited for

3    that proposition stand for the proposition you say they stand

4    for.  My research shows that one specific Second Circuit

5    case, American Alliance Insurance Company, Ltd. v. Eagle

6    Insurance Company, 92 F.2d 57 at Page 59, and that's Second

7    Circuit 1996, the entry of default judgment would be

8    procedurally flawed by lack of compliance with the rule --

9    with the requirement of Rule 55(a) that the clerk enter a

10   default.  If an order to move for a default judgment under

11   Rule 55 and entry of default is required, then it is neither

12   of questionable prudence nor of questionable legality for the

13   Court to require the submission of an entry of default along

14   with a motion for a default judgment.  I note that the

15   Eastern, Southern, Western Districts of New York have the

16   identical local rule.

17             In one other case out of the Western District,

18   Tesillo v. Emergency Physician Associates, a judge in the

19   Western District specifically stated that the plaintiff's

20   motion for a default judgment was insufficient in its failure

21   to contain the clerk's certificate, noting the entry of

22   default.

23             I will not order the clerk to enter default.

24   The practice in this district is that defaults are entered by

25   the clerk only when there is a failure to answer.  Rule 55,

1   to my knowledge, has never ever been used to enforce some

2   discovery sanction or utilized as a discovery sanction.

3              I don't believe that there has been a default

4   in the sense contemplated in Rule 55.  And I think further

5   that your effort to move for a default under Rule 55 and Rule

6   26(g)(3) which does not mention default as a sanction created

7   confusion and delay, about which you're now complaining, and

8   your insistence in pursuing the matter in this way is, this

9   tremendous effort and waste of time in pursuing this Rule 55

10  is beginning to approach what I would consider vexatious

11  litigation.  So you should be guided accordingly.

12             And I think this case is off to a very bad

13  start in terms of the language used in your letters,

14  Mr. Purcell, and the accusations which have freely been made.

15  Whether Mr. Landsman purposely avoided citing that case, or

16  tactically did not want to cite that case does not compel a

17  conclusion that there was some intentional effort to misguide

18  the Court.  If there had been a history of that, that would

19  be a different matter, but there has been no history of that

20  and I think your efforts in that regard are misguided.

21             I will reserve decision on the motion to

22  amend, and I am directing that the attorneys cooperate with

23  one another, remain and act civilly to one another, and not

24  bring trivial matters to the attention of this very busy

25  court.  Thank you all for participating.

```
1                    MR. LANDSMAN:  Thank you, your Honor.

2                    MR. McGOWAN:   Thank you.

3                    (Telephone Conference Adjourned.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    C E R T I F I C A T I O N

 2

 3

 4              I, JODI L. HIBBARD, RPR, CRR, CSR, Official

 5    Court Reporter in and for the United States District Court,

 6    Northern District of New York, DO HEREBY CERTIFY that I

 7    attended the foregoing proceedings, took stenographic notes

 8    of the same, and that the foregoing is a true and correct

 9    transcript thereof.

10

11

12

13

14

15

16

17                             s/_____

18                             JODI L. HIBBARD, RPR, CRR, CSR
                               Official U.S. Court Reporter
19

20

21

22

23

24

25
```