

101 South Salina Street, Suite 400
Syracuse, New York 13202
Telephone: (315) 425-9000
Facsimile: (315) 425-9114

**Robert E. Purcell**
E-Mail: rpurcell@wallmarjama.com

June 20, 2006

**FILED ELECTRONICALLY USING CM/ECF**
Honorable Gustave J. DiBianco
United States Magistrate Judge
United States Courthouse
P.O. Box 7396
100 South Clinton Street
Syracuse, NY 13261

  Re: **Haritatos v. Hasbro**
     **Civil Action No. 05-CV-930**
     **Our File No. 115_003**

Dear Magistrate Judge DiBianco:

  Your Courtroom Deputy Clerk, Kathy Gridley, suggested to Plaintiff's undersigned counsel on June 15, 2006 that he raise with you two non-dispositive matters by filing a letter request. The first matter is Plaintiff's motion pursuant to Local Rule 83.11-3 for an order of referral to mediation, and the second is a request for a declaratory ruling that Plaintiff has not belatedly identified a potential witness so as to preclude Plaintiff from the utilizing the witness's testimony in connection with this lawsuit.

<u>Plaintiff's Motion For An Order Of Referral To Mediation</u>

  Plaintiff asks the Court to issue an order referring this lawsuit to mediation pursuant to Local Rule 83.11-3. Plaintiff further requests that the Court order that mediation be conducted as soon as practicable, in no event later than September 1, 2006. Plaintiff notes that mediation should "occur at the earliest practical time in an effort to encourage earlier, less costly resolutions of disputes." See Local Rule 83.11-4. Plaintiff believes that mediation is warranted at this juncture in the lawsuit, which is still in the discovery phase. Plaintiff relies on the Court's discretion as to whether any aspect of this case should be delayed or stayed pending mediation.

  Defendant Hasbro approached Plaintiff about acquiring Plaintiff's trademark rights that are at the heart of the instant lawsuit. Parties negotiated the terms of such acquisition in 2003, but ultimately Plaintiff rejected Defendant Hasbro's terms.

  The parties thereafter embarked on litigation in the United States Patent and Trademark Office. Plaintiff proposed some "bullet points" terms of settlement to Defendant



Hasbro over one year ago, which Defendant Hasbro summarily rejected.

The parties generally discussed the feasibility of mediation during the Rule 26 conference last autumn, and Plaintiff's counsel made a specific proposal for mediation to opposing counsel by e-mail dated April 11, 2006. Defendants' counsel offered no position regarding mediation, and Plaintiff's counsel again proposed mediation by e-mail dated June 1, 2006. The parties' counsel discussed mediation in detail by telephone on June 13 and 14, 2006. Plaintiff's proposed mediation before the International Trademark Association in New York City, with the three parties splitting the costs of mediation. Defendant Toys "R" Us suggested that James Moore, an attorney with the Harter Secrest firm in Rochester, New York might be favorably utilized, but indicated that Defendant Toys "R" Us would adhere to whatever position Defendant Hasbro took with regard to mediation.

Defendant Hasbro's counsel is taking the position that mediation would be a waste of time and money if Plaintiff "is still looking for a license with extravagant minimum royalties". Plaintiff's counsel responded that Plaintiff was not wedded to his previous demands, that he was open to other methodologies and approaches, and that the circumstances of the case suggested that alternatives might very advantageously be explored. Plaintiff's counsel further remarked that the parties had never met face-to-face and "rolled up their sleeves" in the last couple of years in an attempt to attain settlement. Plaintiff's counsel also took the position that Plaintiff would not bid against himself or "shoot into the dark" as to what settlement concept or terms might be acceptable to Defendant Hasbro. Without Plaintiff's concession to withdraw his demand for "excessive minimum guaranteed royalties", Defendant Hasbro refused to proceed with mediation. Defendant Toys "R" Us adopted the same position.

Almost by definition, the process of mediation is utilized only where the parties have been unable to resolve the dispute by themselves and cannot seem to find a path to mutually satisfactory resolution. Much time has passed since the last quick, futile settlement attempt, and the parties are embroiled in litigation that will involve very expensive mutual discovery, experts, pre-trial motions, jury instructions, trial, and possible appeal. If mediation achieves settlement, then great; if settlement is not achieved, then the parties and the court will not question why the lawsuit continues to require the expenditure of their energies and resources.

Plaintiff would be amenable to the appointment of Mr. Moore as a mediator, with each of the parties to split his mediation fees. Alternately, if the Court chooses to select a mediator from the Court's own List Of Mediators. (See Local Rule 83.11-2), then Plaintiff suggests that the Court specifically consider Robert Barrer or Peter Carmen to act as the mediator.

<u>Plaintiff Also Moves For Declaratory Ruling That Plaintiff Has Not Belatedly Identified Rocco L. Versace, An Attorney, As A Witness So As To Preclude His Future Testimony In The Lawsuit</u>



Plaintiff contends that his rights in the trade name and trademark "CANDYLAND" are derived through his immediate family members going back to about 1919. In about 1974 some of the family members transferred the "CANDYLAND" candy making equipments and operations to Plaintiff's father. Plaintiff found in his archival records two sales contracts, one dated April 30, 1974 and the other dated May 3, 1974 transferring the candy making equipment to his father. Virtually all of the parties involved with the transaction are deceased. Plaintiff's aunt is able to testify about her knowledge of the sale of the equipment and the operations to Plaintiff's father, but was not able to identify and authenticate two contracts.

Rocco L. Versace, an attorney in Rome, New York, prepared and witnessed each of the contracts.

Plaintiff provided to Defendant Hasbro copies of the contracts prior to initiating the instant lawsuit, and thus, the contracts are not a surprise to Defendant Hasbro. Copies of the contracts bear Mr. Versace's name as a witness and as a notary. Defendant Hasbro objects to Plaintiff's first identification of Mr. Versace as a witness in Plaintiff's Second Amended And Supplemental Initial Disclosures served June 1, 2006. In a letter to Plaintiff's counsel June 8, 2006, Defendant Hasbro maintains that the parties agreed that the discovery cut-off date was May 31, 2006, that the disclosure of Mr. Versace as a witness was belated, and that Defendant Hasbro will move to preclude Plaintiff's use to Mr. Versace's testimony in the lawsuit.

Plaintiff responded by e-mail dated June 11, 2006 which Plaintiff maintained that the Court's scheduling order did not adopt the parties' recommendation as to the cut-off for factual discovery, but rather, adopted a general discovery cut-off date of September 29, 2006. Plaintiff also pointed out that Defendant Hasbro served interrogatories and document requests on Plaintiff on May 31, 2006, for which responses are due well after May 31, 2006, despite the requirements of Local Rules 16.2, which prohibits the serving of discovery calling for responses after the discovery cut-off date except by order of the court for good cause shown. Plaintiff contends that Defendant Hasbro's service of such discovery implicitly contradicts its position regarding some sort of agreement regarding any (factual) discovery cut-off date. During the telephone conference on June 14, 2006, Defendant Hasbro's counsel contended that the discovery served May 31st was simply more specific discovery already requested and that such discovery was not precluded by Local Rule 16.2. Plaintiff's counsel mentioned that Plaintiff is taking the depositions of several employees of Defendant Toys "R" Us and Defendant Hasbro in July, and presumably August, without any objection from either of the Defendants, that the discovery was beyond any allegedly agreed upon (factual) discovery cut-off date, and that Mr. Versace's deposition could be taken as well during that time frame. Defendant Hasbro's counsel took the position that Plaintiff's depositions were belated, but that both of the Defendants had accommodated Plaintiff's desires for such depositions as a matter of courtesy.

Plaintiff wishes to resolve the issue as to whether Plaintiff's identification of Mr.



Versace as a witness is belated and whether Hasbro's contention that his testimony should be precluded is warranted. Simply put, Plaintiff believes that there has been no agreement by the parties that would effectively treat May 31, 2006 as the discovery cut-off date for factual discovery and that there is still plenty of time for Defendants to take Mr. Versace's deposition and to otherwise consider his potential testimony at this juncture in the lawsuit. Accordingly, Plaintiff seeks a ruling that Plaintiff will not be precluded from utilizing Mr. Versace's testimony on the basis that he was first identified as a witness on June 1, 2006 in Plaintiff's Second Amended And Supplemental Initial Disclosures.

Respectfully Submitted,
WALL MARJAMA & BILINSKI LLP

Robert E. Purcell

REP/jml
cc: Kim J. Landsman, by e-mail
John McGowan, by e-mail