# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

June 26, 2006

Kim J. Landsman
(212) 336-2980
Direct Fax (212) 336-2985
kjlandsman@pbwt.com

**Filed Electronically**

Honorable Gustave J. DiBianco
United States Magistrate Judge
United States Courthouse
PO Box 7396
100 South Clinton Street
Syracuse, New York 13261

> Re: **Haritatos v. Hasbro, Inc. and Toy 'R Us-NY LLC,
> Civil Action 05-CV-930**

Dear Judge DiBianco:

      We are counsel for defendant Hasbro, Inc. ("Hasbro") and write in response to yet another letter from Mr. Purcell to the Court. Mr. Purcell has asked the Court to order mediation and to provide in limine approval for his disclosure of a witness seven months after his initial disclosures, months after his amended disclosures, after we went to Syracuse and Utica for depositions of his witnesses, and after the parties' agreed cutoff for factual discovery.

      We also seek the Court's assistance in dealing with plaintiff's refusal to produce documents in response to several requests for production, or even to respond to document requests and interrogatories resulting from and served soon after his deposition.

## Mediation

      We do not believe it is appropriate to disclose the content of prior settlement discussions between the parties, and Mr. Purcell at least comes very close to that line (and, we believe, crosses it) at various points in his letter. Suffice it to say, therefore, that although we are amenable to settling cases and often find mediation helpful, we do not see it as a fruitful exercise here.

      This case is about a brief, royalty-free license to Toys 'R Us to use Hasbro's Candy Land® trademark and the design elements of the game for a candy section of its Times Square store. Even if plaintiff were to prevail (which we think extremely unlikely), there are no cognizable damages from that use.

      We told Mr. Purcell that we could not consider mediation until we had some idea of what Mr. Haritatos is looking for. What little information he has provided, together with the

Honorable Gustave J. DiBianco
June 26, 2006
Page 2

lessons from prior attempts at settlement, make it painfully clear that Mr. Haritatos is using this case as leverage to try to negotiate a lucrative license for rights he cannot legitimately claim for things utterly extraneous to this litigation. As long as that is his goal, and as long as the proposals are based on the premise that Mr. Haritatos or his lawyer know how to run Hasbro's business better than its own business people do, there is no hope of settlement; the gap between parties is far too wide for a mediator to bridge.

### Belated Disclosure of Mr. Versace

Plaintiff first served his initial disclosures October 27, 2005. He served amended and supplement disclosures March 15, 2006. Neither disclosure mentioned a prior lawyer of one of plaintiff's relatives named Mr. Versace. It was not until June 1, 2006 that plaintiff amended his initial disclosures to state that Mr. Versace was a witness on the subject of "Tasos Haritatos's acquisition of the CANDYLAND candy manufacturing operations and assets in about 1974."

That disclosure comes seven months after the initial disclosures and is, more importantly, also after the depositions of plaintiff's witnesses were taken in Syracuse and Utica. Had Mr. Purcell disclosed Mr. Versace before the depositions of plaintiff's other witness, we could have taken his deposition at the same time without an extra trip to Utica.

The disclosure of Mr. Versace also came after the date the parties had previously agreed would be the cut-off date for factual discovery. The Court has noted Mr. Purcell's "microscopic" approach to discovery, and we do not wish to emulate it. The Court's scheduling order does not set a cut-off date for factual discovery, but simply one for the close of all discovery. The Court noted at the time that the parties were free to make their own agreements about interim dates. We are not trying to strictly enforce the agreed May 31 cut-off for factual discovery since, as the Court knows, we are scheduling depositions for Hasbro's witnesses for subsequent dates.

The significance of the disclosure of Mr. Versace after the date agreed by the parties for the close of factual discovery is simply that it serves as an additional guide and reality check for when a disclosure is too late. Mr. Purcell has insisted on punctilious compliance with the initial disclosure requirements, and he should observe it himself.

### Plaintiff's Refusal to Respond to Document Requests and Interrogatories

Plaintiff has refused to produce documents in response to several requests contained in Hasbro's First Requests For Production of Documents and Things, which Hasbro served on October 27, 2006 (attached hereto as Exhibit 1):

(1) <u>Plaintiff's Customers</u>

Plaintiff has refused to produce documents concerning the consumers or customers for plaintiff's products bearing the "Candyland" mark, including most importantly their geographic location. *See* Requests No. 12, 13, and 14. These documents will shed light on

Honorable Gustave J. DiBianco
June 26, 2006
Page 3

the strength (or weakness) of Mr. Haritatos' alleged Candyland mark and the likelihood (or lack thereof) of consumer confusion stemming from Toys 'R Us's alleged use of Hasbro's Candy Land® mark in New York City. Defendants believe that plaintiff sells very little, if any, of his product outside the Rome-Utica area and, therefore, that his mark has no source-identifying significance beyond this region. Accordingly, consumers in New York City are not likely to identify Hasbro's famous Candy Land® mark with Mr. Haritatos' candy business.

We know from recent deposition testimony that Plaintiff maintains records that include the location of consumers who purchase his products over the telephone, via mail order, or through the www.turkeyjoints.com website. These are the only consumers who potentially purchase plaintiff's products outside the central New York region. Thus, these documents are highly relevant to Plaintiff's allegation that visitors to the Toys 'R Us Times Square Store are likely to confuse its products with Mr. Haritatos' business in Rome, New York.

(2) Mr. Haritatos' Sales And Revenues

Aside from Spero Haritatos' 2005 Schedule C (Form 1040) Profit or Loss from Business, plaintiff has not produced any documents that show his sales and revenues related to products bearing the Candyland mark. *See* Requests Nos. 15 and 38. These documents will shed light on the strength (or weakness) of Mr. Haritatos' alleged Candyland mark and the likelihood (or lack thereof) of consumer confusion stemming from Toys 'R Us's alleged use of Hasbro's famous Candy Land® mark. Mr. Haritatos surely possesses a copy of his Schedule C (Form 1040) for each year since at least 1999 and they should not be difficult to produce.

(3) Non-Party Use Of The Candyland Mark

Mr. Haritatos has not produced any documents concerning any non-party's use of a mark that incorporates the word, "Candyland", or any similar name or mark. *See* Requests Nos. 25 and 27. Yet Haritatos alleged in his recent deposition that he communicated with Coldstone Creamery and an individual in Rome, New York concerning their use of a "Candyland" mark. These documents will shed light on the extent of any efforts by plaintiff to protect his mark as well as the extent of third-party use of the "Candyland" mark in connection with edible products, which defendants contend is quite extensive. Accordingly, these documents are relevant to the strength (or weakness) of plaintiff's mark, whether Candyland is a generic name for a candy store, and whether Mr. Haritatos has abandoned any rights that he may have once had by acquiescing in third-party use of his alleged mark. Mr. Haritatos' lawyer, Mr. Purcell, presumably maintains any cease and desist letters that he has sent and they would be easy to produce.

(4) Alleged Use Of Hasbro's Candy Land® Mark By Toys 'R Us

Mr. Haritatos has refused to produce documents concerning the alleged use of Hasbro's Candy Land® mark by defendant Toys 'R Us. *See* Request No. 26. Yet Mr. Purcell stated in a May 2, 2006 letter to Mr. Sant'Ambrogio that Mr. Haritatos possessed a copy of

Honorable Gustave J. DiBianco
June 26, 2006
Page 4

selected pages of Defendant Toys 'R Us's website in which Hasbro's Candy Land® name and mark is displayed. These documents are obviously directly relevant to plaintiff's claims in this case concerning Toys 'R Us's alleged use of Hasbro's Candy Land® mark.

> (5) Nora Haritatos' Application To Register The
> "Original Thin Shell Candy Turkey Joints" Mark

Mr. Haritatos has not produced all documents concerning Nora Haritatos' application to register the "Original Thin Shell Candy Turkey Joints" mark, including but not limited to the complete application itself (Mr. Haritatos has produced a single page from the application). *See* Request No. 39. Nora Haritatos is the plaintiff's deceased mother and at one time was also the name of plaintiff's candy business. (In his recent deposition, Mr. Haritatos denied that "Nora Haritatos" was ever the name of his business, notwithstanding the fact that he applied to register two trademarks with the United States Patent and Trademark Office ("PTO") "doing business as Nora Haritatos.") In 1976, Nora Haritatos applied to register the "Original Thin Shell Candy Turkey Joints" mark with the PTO. This trademark application, including the product specimens and affidavits contained therein, will show that, contrary to Mr. Haritatos' testimony and his sworn affidavits to the PTO, his family's business was using the "Original Thin Shell Candy Turkey Joints" mark in 1976, *not* the "Candyland" mark that he alleges defendants have infringed. Accordingly, this application will provide evidence that Hasbro is the prior user of the Candy Land® mark and that Mr. Haritatos' testimony is not credible.

> (6) Mr. Haritatos Legal Expenses And Mr. Purcell's Daynotes

In his recent deposition, Mr. Haritatos alleged as damages the costs that Mr. Haritatos has incurred in prosecuting this lawsuit as well as his opposition before the Trademark Trial and Appeal Board ("TTAB"). Indeed, these were the *only* damages that Mr. Haritatos alleged he has suffered because of Toys 'R Us's alleged use of Hasbro' Candy Land® mark. Leaving aside for the moment the propriety of bringing a lawsuit to recover the costs of the lawsuit brought, defendants are entitled to all documents concerning any the damages claimed, which appear to be the legal fees and costs incurred by Mr. Haritatos in this civil action and any proceeding before the TTAB involving Hasbro, including but not limited to all of Mr. Purcell's bills and daynotes. The defendants obviously need to know both the extent of the damages alleged by Haritatos and whether Mr. Purcell's bills were reasonable or he was billing his client for vexatious and obstructionist behavior.

> Hasbro's Good Faith Efforts To Resolve The Dispute

Hasbro's counsel first raised the deficiencies in Mr. Haritatos' document production with Mr. Purcell by letter dated April 17, 2006. *See* Exhibit 2 hereto. This should have provided sufficient time to resolve the dispute before Mr. Haritatos' May 17, 2006 deposition, but Mr. Purcell did not respond to Hasbro until May 2, 2006, and then Mr. Purcell gave Hasbro the run-around, asking questions about Hasbro's requests that appeared designed to obstruct rather than facilitate discovery. *See* Exhibit 3.

On May 9, 2006, Hasbro's counsel once again wrote Mr. Purcell in another effort to resolve the dispute before Mr. Haritatos' deposition. *See* Exhibit 4. Mr. Purcell never responded to this letter. Accordingly, on May 16, 2006, Mr. Sant'Ambrogio telephoned Mr. Purcell and asked whether he was going to produce any documents in advance of (or even at) Mr. Haritatos's deposition the following day. Mr. Purcell responded that he would not, although it now appears from Mr. Haritatos' deposition testimony that Mr. Purcell had in his possession documents that he waited until after Mr. Haritatos' deposition to produce. *See* Exhibit 5 (Tr. of Haritatos Depo. 5/17/06, at 70-71; Purcell 6/1/06 letter to Sant'Ambrogio enclosing documents).

On June 8, 2006, Hasbro's counsel wrote to Mr. Purcell a third time regarding Mr. Haritatos' document production, reiterating the categories of documents that Hasbro sought, and asked to discuss these issues with him by telephone once again. Mr. Purcell did not respond. On June 14, 2006, Hasbro's counsel raised the issue with Mr. Purcell during a telephone conference. When asked whether he was going to produce any documents in response to Hasbro's requests, Mr. Purcell said that he did not know. Counsel for Hasbro pointed out that Mr. Purcell had had months to consider his response and warned him that Hasbro would move to compel if Mr. Haritatos did not produce the documents requested by the close of business Friday, June 16, 2006.

These requests were first served on Mr. Haritatos on October 27, 2005, they were reiterated in correspondence dated April 17, May 9, and June 8, 2006, and they were raised again by Hasbro's counsel in telephone conversations with Mr. Purcell on May 16 and June 14, 2006. Nevertheless, Hasbro decided to give Mr. Purcell an additional grace period before moving to compel due to an illness in Mr. Purcell's family.

Then, on June 21, 2006, Mr. Purcell took the position that because Hasbro contended that plaintiff's disclosure of Mr. Versace was too late (as discussed above), any motion to compel by Hasbro would also be too late and, therefore, Haritatos would not produce any further documents in response to Hasbro's requests. *See* Exhibit 6. In addition, Mr. Purcell contended that Hasbro's First Set of Interrogatories and Second Set of Requests for Production, which Hasbro served on May 31, 2006 to follow-up on the Haritatos depositions, were also too late and Mr. Purcell stated that Mr. Haritatos would not even respond to these. This position is utterly outrageous, inasmuch as Mr. Purcell is simultaneously insisting that depositions he wants go forward but our discovery is too late.

This obstructionist behavior should not be tolerated. Accordingly, Hasbro requests that the Court order Mr. Haritatos to produce all documents concerning:

> (1) the consumers or customers for plaintiff's products bearing the Candyland mark, including but not limited to records concerning the location of and goods purchased by his customers over the telephone, via mail order, or through the www.turkeyjoints.com website, and any other documents responsive to Requests No. 12, 13, and 14;

Honorable Gustave J. DiBianco
June 26, 2006
Page 6

(2) Spero Haritatos' Schedule C (Form 1040) Profit or Loss From Business for each year since 1999, and any other documents responsive to Requests Nos. 15 and 38;

(3) any non-party's use of a mark that incorporates the word, "Candyland", or any similar name or mark, and any other documents responsive to Requests Nos. 25 and 27;

(4) the alleged use of Hasbro's Candy Land® mark by defendant Toys 'R Us, and any other documents responsive to Request No. 26;

(5) Nora Haritatos' application to register the "Original Thin Shell Candy Turkey Joints" mark, and any other documents responsive to Request No. 39;

(6) Mr. Haritatos' claimed damages apparently consisting of legal expenses, including Mr. Purcell's bills in this civil action and any proceeding before the TTAB involving Hasbro, and any other documents responsive to Request No. 46.

In addition, Hasbro respectfully requests that the Court order Mr. Haritatos to respond to Hasbro's First Set of Interrogatories and Hasbro's Second Set of Requests For Production by a date certain.

Respectfully submitted,

Kim J. Landsman

cc: Robert E. Purcell, Esq. (e-mail)
    John G. McGowan, Esq. (e-mail)

1290113