# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

July 14, 2006

Kim J. Landsman
(212) 336-2980
Direct Fax (212) 336-2985
kjlandsman@pbwt.com

**Filed Electronically**

Honorable Gustave J. DiBianco
United States Magistrate Judge
United States Courthouse
PO Box 7396
100 South Clinton Street
Syracuse, New York 13261

> Re: **Haritatos v. Hasbro, Inc. and Toy 'R Us-NY LLC,
> Civil Action 05-CV-930**

Dear Judge DiBianco:

      We are counsel for defendant Hasbro, Inc. ("Hasbro") and write in response to another letter from Mr. Purcell to the Court. Mr. Purcell has asked the Court to extend by three months the deadline for submitting expert reports and the close of all discovery.

      In response to Mr. Purcell's request for our consent to this extension, we asked him to explain why his client was unable to name an expert and produce an expert report within the existing deadlines – that is, what type of expert he has in mind and why the opinion of such an expert would depend on Hasbro's deposition testimony. *S*ee Exhibit 1 hereto. Mr. Purcell has not, however, provided any such information either to us or to the Court.

      The only expert that we can conceive of Plaintiff retaining in the context of this trademark litigation would be a survey expert who would design a consumer survey to test whether there is any likelihood of confusion between Mr. Haritatos' store in Rome and use of Hasbro's CANDY LAND® mark and visual graphics in connection with the candy department of Toys 'R Us's Times Square store. We see no reason why such an expert needs to await the testimony of defendants' witnesses. Moreover, Mr. Haritatos himself testified that he has no reason to believe that there has been any such confusion. *See* Exhibit 2 hereto. Therefore, it seems unlikely that Mr. Purcell intends to proceed with such a survey.

Honorable Gustave J. DiBianco
July 14, 2006
Page 2

   Accordingly, we respectfully request that the Court deny Plaintiff's motion to extend the discovery deadlines.

                Respectfully submitted,

                Kim J. Landsman

cc:  Robert E. Purcell, Esq. (e-mail)
   John G. McGowan, Esq. (e-mail)

# Exhibit 1

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

June 26, 2006

**By E-Mail and Mail Confirmation**

Michael D. Sant'Ambrogio
(212) 336-2436
Direct Fax (212) 336-7948
mdsantambrogio@pbwt.com

Robert E. Purcell, Esq.
Wall Marjama & Bilinski LLP
101 South Salina Street, Suite 400
Syracuse, NY 13202

      Re:    <u>Haritatos v. Hasbro</u>

Dear Bob:

      I am writing in response to several issues raised in your June 15 and June 21, 2006 emails to Kim Landsman.

      <u>Depositions of Hasbro's Witnesses</u>

      During our telephone conversation on June 14, 2006, we asked you how much time you wanted with each witness and you stated that you intend to take five hours each with Ritson-Parsons and Klusaritz and six hours with Dubosky. We responded that that seemed excessive. After all, you originally noticed Ritson-Parsons for no more than two hours, Klusaritz for a deposition beginning at 4:00 p.m., and Dubosky for a four hour deposition. Nevertheless, we agreed to accommodate your request.

      Your more recent request for seven hours with each witness is clearly excessive and designed to harass Hasbro and its witnesses. The witnesses you have chosen to depose are all busy executives and at least one has already had to rearrange his business plans, at some inconvenience to the company, in order to accommodate your request that we produce the witnesses on the three consecutive days that you requested in August.

      We will make the witnesses available at the times and dates previously stated and for the time you requested on June 14, although we continue to believe that even that is excessive and far more time than you will be able to put to productive use.

      <u>Candyland.com</u>

      The lawsuit in Seattle concerning the "candyland.com" domain name is not relevant.

Robert E. Purcell
June 26, 2006
Page 2

### Expert Reports

To evaluate your request for any extension of time to serve expert reports we would need to know what expert you have in mind and why you do not believe you can serve their reports within the time originally allotted.

### Document Redactions

We will provide you with unredacted copies of the document bearing production numbers HG000450 through HG000461, which potentially relates to Candy Land® among eight different Hasbro properties. In addition, we will un-redact the financial information contained in HG000447, HG000448, HG000830, HG000833-HG000835, and HG001532 that relates to the Candy Land® brand.

The rest of the redacted information contained in the documents cited in your June 15, 2006, email to Kim Landsman are either not responsive to your document requests or they are protected by the attorney-client privilege. The vast majority of this material concerns Hasbro properties that are not at issue in this case (*i.e.*, not Hasbro's Candy Land® brand). In addition, HG000421, HG000424, HG000437, HG000889, HG0001341 contain material protected by the attorney-client privilege. Hasbro will include these redactions on its privilege log and suggests that the parties exchange their privilege logs by July 10, 2006.

Sincerely yours,

Michael D. Sant'Ambrogio

cc: John G. McGowan, Esq. (by e-mail)

1290137v2

# Exhibit 2

```
 1                                                              1

 2                UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF NEW YORK
 3

 4     * * * * * * * * * * * * * * * * *

 5     SPERO HARITATOS,

 6                        Plaintiff,

 7            -vs-                    Index No.:
                                      05 CIV 930 (DNH/GJD)
 8
       HASBRO, INC. and
 9     TOYS "R" US-NY LLC,

10                        Defendant.

11     * * * * * * * * * * * * * * * * *

12

13                        Examination Before Trial of

14            SPERO T. HARITATOS, Plaintiff, held at

15            the offices of BOND, SCHOENECK & KING,

16            PLLC, Syracuse, New York, on May 17,

17            2006, before MELISSA A. LANNING, Court

18            Reporter and Notary Public in and for

19            the State of New York.

20

21

22

23

24                                                   ORIGINAL

25
```



**MELISSA A. LANNING, CSR**        239 Northland Drive
                                   Central Square, New York 13036
                                            (315) 676-2584

```
 1                                                              2
 2    APPEARANCES:
 3    For the Plaintiff:
                WALL, MARJAMA & BILINSKI, LLP
 4              Attorneys at Law
                101 South Salina Street, Suite 400
 5              Syracuse, New York  13202
                BY: ROBERT E. PURCELL, ESQ.
 6
 7
      For the Defendant, Hasbro, Inc.:
 8              PATTERSON, BELKNAP, WEBB & TYLER,
                                              LLP
 9              Attorneys at Law
                1133 Avenue of the Americas
10              New York, New York  10036-6710
                BY: MICHAEL D. SANT'AMBROGIO, ESQ.
11
12
      For the Defendant, Toys "R" Us - NY, LLC:
13              BOND, SCHOENECK & KING, PLLC
                Attorneys at Law
14              One Lincoln Center
                Syracuse, New York  13202
15              BY: JOHN G. McGOWAN, ESQ.
16
17
18
19
20
21
22
23
24
25
```

```
                    SPERO T. HARITATOS                    313
```

1
2  and Hasbro?
3      A.   No.
4      Q.   Okay. And you're not aware of anybody who
5  was confused about the origins of the goods that
6  Toys "R" Us was selling in their candy department,
7  right?
8      A.   No.
9      Q.   Okay. You don't have any reason to believe
10 that anyone would have been confused by the goods that
11 are being -- strike that.
12          You have no reason to believe that anyone
13 would have been confused about the origins of the goods
14 that were being sold in the Toys "R" Us candy
15 department since 2001?
16     A.   I can't say that. I don't know.
17     Q.   What I'm asking you, sir, is do you have any
18 reason to believe that anyone was confused about the
19 origin of the goods sold in Toys "R" Us candy
20 department since 2001?
21     A.   Well, I can't say that.
22     Q.   Do you have a reason to believe that they
23 would have been confused?
24     A.   I don't.
25     Q.   It's a "yes" or "no" question.

```
 1                    SPERO T. HARITATOS                      314
 2        A.    No.
 3        Q.    No.  Do you have any reason to believe that
 4   any of the visitors to the Toys "R" Us Times Square
 5   store are aware of your business?
 6        A.    I don't know.
 7        Q.    But you have no reason to believe that they
 8   are aware of your business?
 9        A.    I don't know that.
10        Q.    Do you have any reason to believe that they
11   are aware of your business; yes or no?
12        A.    I have no reason not to.
13        Q.    Okay.  Do you advertise in New York City?
14        A.    No, I don't.
15        Q.    Okay.  So how would they know about your
16   business?
17        A.    That is if they came from Rome.
18        Q.    So if they came from Rome they might know
19   about your business?
20        A.    Yeah, Rome, Utica, Syracuse.
21        Q.    Any other reason?
22        A.    No.
23        Q.    And you testified to Mr. McGowan that you
24   have not lost any sales as a result of Toys "R" Us
25   candy department; is that correct?
```

SPERO T. HARITATOS                             315

A.   That I know of.

Q.   You're not aware of it?

A.   I'm not aware of any.

Q.   Of any sales that you've lost as a result of candy sold in the Toys "R" Us candy department?

A.   Correct.

Q.   Okay.  And do you have any reason to believe that a consumer who walked into Toys "R" Us candy department would confuse -- I'm sorry.

Actually, let me direct your attention to Exhibit 22; that's the Candyland mark.  Do you have any reason to believe that a consumer who walked into the Toys "R" Us candy department would believe that this Candyland mark, Hasbro's Candyland mark, was associated with your turkey joints in any way?

A.   Well, they could if they're from our area.  It's possible.  It's very possible.

Q.   Why?

A.   Because they know our Candyland.

Q.   But you've said there's no similarity between the marks?

A.   I've said there's no similarity.  You're asking if a customer would.  So you're asking me my opinion on it, and I'm telling you.