# EXHIBIT A

## CONCLUSION

Cyrix is entitled to judgment in its favor on its affirmative defenses of patent exhaustion and implied license based on the use or resale of its claim 1 microprocessors purchased from TI and ST.

---

**Sam's Wines & Liquors Inc. v. Wal-Mart Stores Inc.**

U.S. District Court
Northern District of Illinois

No. 92 C 5170

Decided September 26, 1994

## TRADEMARKS AND UNFAIR TRADE PRACTICES

**1. Infringement; conflicts between marks — Likelihood of confusion — Evidence of — In general (§335.0303.01)**

Trademark infringement defendant may introduce telephone listings, on issue of strength of plaintiff's mark, "Sam's Wines," and, if plaintiff is seeking to prevent defendant from using "Sam's" with regard to sales of goods and services other than beverages, may introduce evidence of third party registrations of "Sam's"; documents regarding other liquor stores' use of "Sam's" can also be introduced, as evidence of whether plaintiff has adequately policed its mark.

**2. Infringement; conflicts between marks — Likelihood of confusion — Evidence of — In general (§335.0303.01)**

Evidence showing that identification of "Sam's" with plaintiff liquor store has been narrowed with regard to relevant segment of public through third party use of "Sam's" on goods and services related to alcoholic beverage industry may be offered by defendant, although evidence of third party uses for goods and services wholly unrelated to food and beverage industry will be excluded.

**3. Infringement; conflicts between marks — Likelihood of confusion — Evidence of — In general (§335.0303.01)**

Trademark infringement plaintiff's motion in limine to exclude evidence of federal registration of defendant's marks is denied, although weight to be afforded such registrations will depend upon evidence of procedures used by Patent and Trademark Office in granting registrations, nature and depth of examination performed by PTO, and type and amount of information on which PTO's decision was based.

**4. Infringement; conflicts between marks — Likelihood of confusion — Evidence of — Survey evidence (§335.0303.06)**

Plaintiff's focus group evidence has not been shown to be so fundamentally flawed as to justify its exclusion pursuant to motion in limine; issues as to methodological flaws can be explored during cross-examination.

## JUDICIAL PROCEDURE PRACTICE AND PRACTICES

**5. Procedure — Evidence — Expert testimony (§410.3703)**

Exclusion is not warranted, in trademark infringement action, of trademark attorney's testimony regarding technical aspects of applying for and obtaining federal registration, and regarding attorney's opinion as to similarities of parties' marks, based upon her experience as practicing trademark attorney, although attorney may not testify as to her opinion on applicable legal standards, or results of her legal research applicable to ultimate issue of likelihood of confusion.

**6. Procedure — Evidence — Expert testimony (§410.3703)**

Trademark infringement plaintiff, which alleges that defendant's use of "Sam's" will infringe its "Sam's Wines," for wine and liquor, can introduce testimony, as to consuming public's perceptions of "Sam's Wines," by liquor industry expert who, through his experience in retail liquor business, has knowledge of liquor-consuming public.

Action by Sam's Wines & Liquors Inc. against Wal-Mart Stores Inc. for trademark infringement and dilution. On motions in limine filed by both parties. Motions granted in part.

Steven Ackerman and James M. Faier, of Faier & Faier, Chicago, Ill. for plaintiff. Michael W. Early, of Grippo & Elden, Chicago; William D. Coston, Robin D. Dodge, and Samuel T. Morison, of Venable, Baetjer, Howard & Civiletti, Washington, D.C. for defendant.

Defendant, Wal-Mart Stores, Inc. ("Wal-Mart"), and plaintiff, Sam's Wines & Liquors ("Sam's Wines"), have filed various motions *in limine* which the court will address in turn.

**I. Sam's Wines' Motions in Limine**

**A. To Exclude Previously Undisclosed Witnesses and Exhibits.**

Sam's Wines originally sought to exclude witnesses and exhibits which had not been produced prior to the close of discovery. Wal-Mart filed a similar motion. The parties have since agreed not to contest the introduction of these witnesses and exhibits on the grounds of timeliness. Accordingly, the motion is moot and will not be considered. The motion is DENIED as moot.

**B. To Exclude Evidence of Alleged Third-Party Usage of Marks/Names Including the Mark/Name "Sam's".**

Sam's Wines seeks to exclude as irrelevant and prejudicial documentary evidence of third-party use of the name "Sam's," including use in telephone listings (Def's Exh. 2-9), photographs of business signs (Def's Exh. 29), a memo and correspondence (Def's Exh. 15-19), a common-law trademark search (Def's Exh. 30), and searches of federally-registered marks (Def's Exh. 24, 31). Sam's Wines believes Wal-Mart may offer similar evidence from its witnesses.

[1] Courts have admitted or excluded telephone listings to establish the strength of a mark and the likelihood of confusion depending on whether the mark is a mark for goods or for services. The distinction recently was explained in *Lloyd's Food Products, Inc. v. Eli's, Inc.*, 987 F.2d 766, 768 [25 USPQ2d 2027] (Fed. Cir. 1993), where the court of appeals held that the Trademark Trial and Appeal Board had erred in ignoring search reports and telephone directories listing marks and entities containing the name "Lloyd's." As the court explained:

> The legally significant use giving rise to rights in a mark for goods is derived from the placing of the mark in some manner on the goods either directly or on their containers or packaging. A service mark, on the other hand, entails use in conjunction with the offering and providing of a service. This makes all the more important the use of the mark in "sales" or "advertising" materials of different descriptions.

*Id.* The defendant's threshold showing that the mark appeared in current listings in the yellow and white pages "carries the presumption that the service mark is being used by third-parties in connection with the offering of the advertised services. It therefore was impermissible to disregard the directory listings." *Id. See also Telemed Corp. v.*

Tel-Med, Inc., 588 F.2d 213, 218 [200 USPQ 427] (7th Cir. 1979) (court considered evidence of telephone directory listings of business names beginning with the same prefix as plaintiff's as evidence that plaintiff's service mark was merely descriptive and not entitled to protection absent proof of secondary meaning). Therefore, Wal-Mart may introduce the telephone listings as evidence of the strength of plaintiff's service marks and the likelihood of confusion.

In addition to telephone listings, Wal-Mart intends to introduce evidence of third-party registrations. It is well-settled that third-party registrations "are of little probative value in determining likelihood of confusion in the absence of evidence to establish their use in the market-place." *In re Melville Corp.*, 18 U.S.P.Q.2d 1386, 1388 (TTAB 1991). Nonetheless, courts have admitted evidence of third-party registrations as relevant to the scope of protection to be accorded plaintiff's mark. For example, in *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259 [205 USPQ 969] (5th Cir.), *cert. denied*, 449 U.S. 899 [208 USPQ 464] (1980), the court held that the district court erred in refusing to consider 72 third-party registrations and "extensive evidence" of 15 third-party uses of the disputed mark both in the plaintiff's industry and others. Based on this evidence, the court held that the mark "Domino" should be accorded only limited protection outside of plaintiff's sugars and ultimately reversed a finding of likelihood of confusion. *Id.* at 260. *See also Westward Coach Mfg. Co. v. Ford Motor Co.*, 388 F.2d 627, 634 [156 USPQ 437] (7th Cir.) (court cited evidence that "MUSTANG" had been extensively registered and used as a trademark on a variety of products" as proof that mark was weak and not entitled to protection outside of plaintiff's industry), *cert. denied*, 392 U.S. 927 [157 USPQ 720] (1968); *Miles Tire & Rubber Co.*, *The General Tire & Rubber Co.*, 221 U.S.P.Q. 217, 224 (N.D. Ill. 1983) (proof of "numerous trademark registrations involving the mark 'Essex' and similar marks covering textile goods and other products" was relevant to strength of mark); *Keebler Co. v. Associated Biscuits Ltd.*, 207 U.S.P.Q. 1034, 1039 (TTAB 1977) ("Seventy-six third-party registrations obtained by several score registrants show a commercial attractiveness and popularity possessed by 'CLUB' for foods and beverages to an extent where it is now far too late for any one party to claim a right to exclusive use extending beyond a specific mark for specific goods").

In the present case, it is not clear whether Sam's Wines is attempting to prevent Wal-

Mart from using the name "Sam's" with regard to sales of goods/services other than beverages. If it is, Wal-Mart may introduce evidence of third-party registrations as proof of the strength of Sam's Wines' marks and whether they are entitled to protection beyond the beverage industry). Otherwise, Wal-Mart may introduce this evidence only upon a showing of actual use.

Sam's Wines also seeks to exclude a certain memorandum and pieces of correspondence referencing other "Sam's" liquor businesses in Chicago. Wal-Mart in response argues that this evidence is relevant to demonstrate whether Sam's Wines has adequately policed its mark. In *American College of Oral & Maxillofacial Surgeons v. American Soc'y of Oral Surgeons*, 201 U.S.P.Q. 531, 533 (TTAB 1979), the Board recognized that "information concerning communications or controversies between a party to a proceeding before the Board and third parties based upon the party's involved mark may be relevant for such purposes as to show admissions against interest, limitations on the party's rights in such mark, a course of conduct amounting to what could be considered an abandonment of rights in the mark, that the mark has been carefully policed and protected, etc." *See also Wallpaper Mfgrs. Ltd. v. Crown Wallcovering Corp.*, 680 F.2d 755, 766 [214 USPQ 327] (C.C.P.A. 1982) ("If there are numerous products in the marketplace bearing the alleged mark, purchasers may learn to ignore the 'mark as a source identification. When that occurs, the mark, can be said to have caused police its mark. This evidence is also relevant to show the strength of the mark and the likelihood of confusion.

Finally, all of the proposed evidence of third-party uses of the name "Sam's" is relevant to the issue of dilution. In *Mile High Upholstery Fabric Co. v. The General Tire & Rubber Co.*, 221 U.S.P.Q. 217, 225-26 (N.D. Ill. 1983), the court held that because "Essex" was a widely used mark, as evidenced by trademark search reports showing numerous registrations, it could not be "diluted" by defendant. Likewise, here evidence of widespread third-party use is probative of whether Sam's Wines marks are capable of "dilution" by Wal-Mart.

Wal-Mart will be permitted to introduce evidence of third-party use of the name "Sam's" for the purposes outlined in this opinion. However, the ultimate weight the evidence will be given at trial (which can be likely to cause confusion. In affirming, the subject of an appropriate jury instruction) will depend on a showing that third-parties are, in fact, using the name "Sam's" and consequently on the strength of Sam's Wines' registration. *See Lloyd's Food Products*, 987 F.2d at 768. The motion is DENIED.

### C. To Exclude Evidence of Unrelated Third-Party Usage of Names Including "Sam's".

Sam's Wines alternatively argues that even if the court does not exclude all evidence of third-party usage, the court still should exclude evidence of third-party usage on goods and services unrelated to plaintiff's. In fact, the Trademark Trial and Appeal Board and courts have held that evidence of third-party use of a mark on unrelated goods or services bearing the disputed mark is irrelevant. *See Eclipse Associates Ltd. v. Data General Corp.*, 894 F.2d 1114, 1119 [13 USPQ2d 1885] (9th Cir. 1990); *In re Melville Corp.*, 18 U.S.P.Q.2d 1386, 1388-89 (TTAB 1991); *Helene Curtis Industries Inc. v. Suave Shoe Corp.*, 13 U.S.P.Q.2d 1618, 1622 n.27 (TTAB 1989). By the same token, there are an equal number of courts who have been willing to consider evidence of third-party use of the mark on unrelated goods and services. *See Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1108 [18 USPQ2d 1587] (6th Cir. 1991); *Sun Banks of Florida, Inc. v. Sun Federal Sav. & Loan Ass'n*, 651 F.2d 311, 316 [211 USPQ 844] (5th Cir. 1981); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259 [205 USPQ 969] (5th Cir. 1980). In these latter cases, evidence of extensive third-party use tends to weaken the mark and narrow the scope of protection.

This court believes the approach adopted by the Federal Circuit in *National Cable Television Ass'n, Inc. v. American Cinema Editors, Inc.*, 937 F.2d 1572 [19 USPQ 1424] (Fed. Cir. 1991), represents the best method of resolving this issue. In *National Cable*, the American Cinema Editors ("Editors") had succeeded in cancelling National Cable Television Association's ("Cable") registration for the mark "ACE" for the service of conducting cable television broadcasting award ceremonies. The Trademark Trial and Appeal Board had granted Editors' petition because Editors had long prior use of, and identification with, the mark in the entertainment industry, including use in connection with presentations of film and tele-

vision awards, and Cable's use of the mark was likely to cause confusion. In affirming, the court of appeals held that the Board correctly had discounted evidence of use of the mark "ACE" by unrelated companies on numerous types of goods and services and in trade names. The court discussed the underlying rationale at length:

Where a mark is commonly used on numerous types of goods and services by different companies, a term such as PREMIUM, SUN, BLUE RIBBON, NATIONAL, GIANT, or AMERICAN, it may be reasonable to infer in some situations that purchasers have been conditioned to expect different sources for specifically different goods or services even though such goods or services might be deemed sufficiently related to be attributable to a single source under an uncommonly used mark. This is not because of some kind of mechanically applied rule, but because the determination of likelihood of confusion involves, to the extent possible, an evaluation of what happens in a real world setting. The real world segment of the public is limited to the market or universe necessary to circumscribe purchasers or users of products or services like those being offered by the parties under the "common" mark. Only if other offerings under the "common" mark are also directed to that relevant public is it reasonable to infer that they may have become conditioned to draw fine lines between sources of "related" goods or services.

*Id.* at 1579. The court found that none of the third-party marks and uses of "ACE" were nearly as closely related to the activities of the parties as were to each other. Therefore, the court agreed with the Board that "nothing in the record shows a narrowing of Editors' identification with A.C.E./ACE by third party marks with respect to the relevant public, namely, the film industry or even the broader entertainment industry." *Id.* at 1580. The court thus concluded that "Cable's argument that it can use ACE because ACE is a 'weak' mark, as an abstract proposition, is not only unpersuasive but essentially meaningless." *Id.*

[2] The same reasoning applies in the present case. Wal-Mart is entitled to present evidence showing that Sam's Wines' identification with "Sam's" has been narrowed with regard to the relevant segment of the public by third-party use of the name on goods and services related to the alcoholic beverage industry, or even the broader food and beverage industry. However, given that the relevant segment of the public consists only of beverage purchasers, there is no reason to permit Wal-Mart to introduce evidence of third-party use of the name "Sam's" on goods and services wholly unrelated to the food and beverage industry.

The motion is GRANTED.

### D. To Exclude Correspondence With the News Media Regarding This Lawsuit.

Wal-Mart's Exhibits 10-14 are letters written by one of Sam's Wines' attorneys, James Faier, to local representatives of local and national news media. Wal-Mart argues that these letters constitute an admission by Mr. Faier that Sam's Wines has not acquired any secondary meaning in the name "Sam's" because in the course of the letters and where it was located, Wal-Mart's Opp. to Pl.'s Motions in Limine at 12. Sam's Wines seeks to exclude the letters on the grounds they are irrelevant and prejudicial.

The court has reviewed these exhibits and does not agree with Wal-Mart's characterization. The letters simply inform various reporters and editors of the pending litigation and attach copies of the complaint, answer and two advertisements placed by Wal-Mart. The letters point out various features of the ads which demonstrate the alleged infringement and explain the relevance of Wal-Mart locating its Sam's Club store on North Avenue in Northlake while Sam's Wines' single store "is famous for" operating on North Avenue in Chicago. Def.'s Exh. 13. There is no admission, either explicit or implicit, that Sam's Wines has not acquired any secondary meaning in the name "Sam's".

Moreover, the letters are unduly prejudicial far beyond their potential probative value to the issues to be litigated in this case. Fed. R. Evid. 403. In addition to indicating his willingness to serve as a source on any intellectual property stories, Mr. Faier enclosed a copy of his firm's resume with the letter. Mr. Faier also stated that he was contacting the media at his client's direction. A jury could conclude that Sam's Wines or their attorneys were pandering for publicity, a characterization which could color their

---

'Naturally, if plaintiff actually is attempting to prevent Wal-Mart from using the name "Sam's" on *any* good or service, the applicable segment of the public becomes the segment which purchases *any* good or service that Wal-Mart sells. In that case, Wal-Mart will be permitted to introduce evidence of third-party use of the name "Sam's" on both related and unrelated goods and services.

impression of Sam's Wines and negatively impact the outcome of the litigation for plaintiff.

The motion is GRANTED.

### D. To Exclude Evidence of Defendant's Federal Registrations.

Sam's Wines seeks to exclude as irrelevant, confusing, and prejudicial Wal-Mart's certificates of federal registration of the marks SAMS CLUBS MEMBERS ONLY and SAM'S WHOLESALE CLUB (Joint Exhibits 55 and 57) to the extent Wal-Mart intends to use them to show that the Patent and Trademark Office ("PTO") determined that no likelihood of confusion between these marks and plaintiff's marks exists. Wal-Mart contends that the registrations are probative evidence of whether the parties' marks can coexist without confusion.

[3] Although the determinations of the PTO are not conclusive on the issue of likelihood of confusion, its decisions to refuse registration are entitled to "great weight." *Murphy Door Bed Co., Inc. v. Interior Sleep Systems, Inc.*, 874 F.2d 95, 101 [10 USPQ2d 1748] (2d Cir. 1989). It is less clear what weight is accorded to the PTO's decisions to grant registration. The evidence adduced at trial of the examination personnel, and the type and amount of information on which the PTO's decision was based will determine the weight this evidence ultimately will be entitled to. Accordingly, the court will deny the motion at this time with the understanding that Sam's Wines may renew it during trial.

The motion is DENIED.

## II. Wal-Mart's Motions in Limine

### A. To Exclude Evidence of Focus Groups and Professor Jain's Testimony Relating Thereto.

Wal-Mart seeks to exclude evidence of the focus groups commissioned by Sam's Wines on the grounds they were conducted in a methodologically flawed manner. A total of nineteen people participated in the two focus groups, each of which lasted approximately one hour. The stated purpose of the focus groups was "to investigate similarities and differences between customer perceptions of Sam's Wines and Liquors and those of Sam's Club Members Only." Pl.'s Resp. to Def.'s First Mot. in Limine, Exh. B at 1. Wal-Mart cites several procedural problems with the way the focus groups were conducted. First, Wal-Mart quotes statements made by Sam's Wines' experts, Dr. Dipak Jain and Dr. Kent Grayson, to the effect that the focus group results are not projectable to the relevant consuming public. In his declaration in support of plaintiff's summary judgment motion, Dr. Jain explained that "a focus group does not require a statistically significant sample and therefore *cannot* be the basis for drawing conclusions about the population from whom the sample was drawn...." Def.'s First Mot. in Limine at 4 (citing Jain Decl. ¶ 6 at 3) (emphasis added by Wal-Mart). Dr. Jain and the moderator hired by Dr. Jain, a graduate research assistant, described his analysis as "intended to be exploratory, not comprehensive," and that "the frequency of any given response (be it low or high) does not imply that a larger population of consumers would reflect a similar frequency." *Id.* (citing Pl. Ex. 136, Focus Group Analysis at 6).

Understandably, courts have viewed survey results accompanied by disclaimers as to projectability as unreliable. For example, in *Smithkline Beckman Corp. v. Procter & Gamble Co.*, 591 F.Supp. 1229, 1240 [223 USPQ 1230] (N.D.N.Y. 1984), *aff'd*, 755 F.2d 914 (2d Cir. 1985), where the focus group leader prompted consumer responses and plaintiffs admitted that the results of the group could not be generalized to the population as a whole, the court held the evidence "only marginally probative of whether an appreciable number of ordinarily prudent purchasers are likely to be confused." Based on these and other procedural defects, the court concluded that plaintiffs had not demonstrated a likelihood of confusion. *Id.* Likewise, in *Brooks Shoe Mfg. Co., Inc. v. Suave Shoe Corp.*, 533 F.Supp. 75, 80 [215 USPQ 358] (S.D. Fla. 1981), *aff'd*, 716 F.2d 854 [221 USPQ 536] (11th Cir. 1983), the court disregarded the plaintiff's survey evidence where "Plaintiff made so many errors in conducting the survey that their own expert said the survey results were not numerically projectable." *See also Bank of Texas v. Commerce Southwest, Inc.*, 741 F.2d 785, 789 [223 USPQ 1174] (5th Cir. 1984) (survey could not be assumed to be representative of entire area, was "critical factor" leading court to affirm district court's determination that plaintiff did not meet its burden of presenting sufficient proof to support jury verdict).

Wal-Mart also complains that the focus groups suffer from a failure to "include a fair sampling of those most likely to partake of the alleged infringer's goods or services." *Amstar Corp. v. Domino's Pizza, Inc.*, 615

F.2d 252, 264 [205 USPQ 969] (5th Cir. 1980). Wal-Mart contends that the survey universe was confined exclusively to people who lived within the city limits of Chicago and Wal-Mart has no Sam's Club stores within the city limits of Chicago. The result is that the people most likely to be familiar with and purchase goods and services from Wal-Mart's Sam's Club may not have been represented adequately by the focus group.

Courts have rejected surveys whose participants are from areas where the infringer's goods or services either do not exist or are underrepresented. For example, in *Amstar*, the court rejected a consumer survey offered by plaintiff, the maker of Domino Sugar because, of the ten cities in which the survey was conducted, eight had no outlets of defendant, the owner of Domino's Pizza stores, and the remaining two had outlets which had been open for less than three months. *Id. See also Jaret Int'l, Inc. v. Promotion in Motion, Inc.*, 826 F.Supp. 69, 73 [27 USPQ2d 1943] (E.D.N.Y. 1993) (plaintiff's survey inadmissible because it was conducted in a mall where only plaintiff's products were sold "thereby minimizing the probability that a fair sampling of [defendants' products'] purchasers was included").

According to Wal-Mart, the focus group results are flawed for the additional reason that the focus group mediator, Kent Grayson, worked closely with Sam's Wines' counsel at various stages of the focus group study and, further, was aware of the desired result. Apparently, Sam's Wines' counsel and Mr. Grayson discussed the qualifications for the participants, Sam's Wines' market area and customer base, the marketing efforts of the parties, what materials should be presented to the focus groups, the conceptual framework of the focus groups, and what questions should be asked of the participants. Sam's Wines' counsel also helped prepare Dr. Jain's declaration and had a role in interpreting the focus group results.

"An important element in judging the trustworthiness of surveys is that the interview procedures were proper and unbiased." *Nestle Co. Inc. v. Chester's Market, Inc.*, 571 F.Supp. 763, 775 [219 USPQ 298] (D. Conn. 1983), *vacated on other grounds*, 609 F.Supp. 588 (D. Conn. 1985). In *Nestle*, the court held inadmissible a survey conducted by a public opinion analyst after the analyst was contacted by the lawyers in the case. According to the court, "this fact casts sufficient doubt on the essential objectivity of the survey so as to make it untrustworthy." *Id. See also Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc.*, 559 F.Supp. 1189, 1204 [217 USPQ 137] (E.D.N.Y. 1983) (relying heavily on fact that not all interviewers were unaware of fact that the survey was being conducted for plaintiff in holding survey inadmissible); *Boehringer Ingelheim G.m.b.H. v. Pharmadyne Labs.*, 532 F.Supp. 1040, 1057-58 [211 USPQ 1163] (D.N.J. 1980) (granting motion to strike survey where plaintiffs' attorneys were involved in designing the questions to be asked and surveyor knew the purpose of the survey).

Finally, Wal-Mart has pointed to several other procedural defects with the way the focus groups were conducted. Sam's Wines' marks and advertising allegedly were presented first, so that Wal-Mart's marks and advertising were viewed only in the context of Sam's Wines' marks and the sale of alcoholic beverages. The photographs shown to the participants showed only the liquor department of Wal-Mart's Sam's Club store. After showing the participants each party's marks and advertising, Dr. Grayson suggestively asked, "[w]hat relationship would you hypothesize is there between the place that we talked about earlier [Sam's Wine & Liquors] and the place we're talking about now [Sam's Club Members Only], if any?" Pl. Ex. 136, Focus Group 2 Transcript at 28). Therefore, Wal-Mart requests that the focus group evidence be excluded, as well as Dr. Jain's testimony regarding the conduct and results of the focus groups.

[4] Although these allegations strongly suggest that the probative value of the focus group studies is marginal, the research is not so fundamentally flawed to justify its exclusion on a motion *in limine*. Rather, these are precisely the types of issues which can be explored (often to great effect) during cross-examination. Wal-Mart may renew its motion during trial when the court is in a better position to evaluate whether the evidence is unduly prejudicial. It also may propose any jury instruction it deems appropriate with regard to the weight the jury should accord this evidence or any potentially misleading inferences it wishes to foreclose.

The motion is DENIED.

### B. To Exclude Testimony of Jena Noel.

Wal-Mart seeks to exclude the expert testimony of Jena Noel, a trademark lawyer, on the grounds that she will render opinions primarily on legal issues and thereby usurp the court's role in instructing the jury. To the extent she will give opinions on factual matters, Wal-Mart contends her testimony is both unnecessary and unhelpful to the jury under Federal Rule of Evidence 702.

**1912**                                    *Sam's Wines & Liquors Inc. v. Wal-Mart Stores Inc.*                          **32 USPQ2d**

In response, Sam's Wines states that Ms. Noel "will not in any way define governing law or suggest she is instructing the jury on the law." Pl.'s Resp. to Wal-Mart's Second Mot. in Limine at 6. Rather, she will confine her testimony to explaining "the procedures, the standards, customs, usage and practices in the United States Patent & Trademark Office and among in-house trademark counsel and the trademark bar, and explain how these procedures, customs, and the like bear upon resolution of the factual issues at bar." *Id.* at 1.

Federal Rule of Evidence 702 permits the admission of expert testimony based on "specialized knowledge" that "will assist the trier of fact to understand the evidence or to determine a fact in issue." In a civil case, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704.

Courts generally have admitted expert testimony from intellectual property lawyers in trademark cases. For example, in *Best Buy Warehouse v. Best Buy Co.*, 751 F.Supp. 824, 826 (W.D. Mo. 1989), *aff'd* 920 F.2d 536 [17 USPQ2d 1166] (8th Cir. 1990), *cert. denied*, 501 U.S. 1252 (1991), the defendant attached to its expert, a trademark and patent attorney, to the effect that the term "best buy" is generic and not entitled to trademark protection. In granting the motion, the court relied in part on this expert opinion and the decision of the PTO refusing to register the service mark. "While such opinions are not determinative, they do bolster defendant's contention that the general public understands 'best buy' to merely describe a general retail practice of touting particular products." *Id. See also John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 979 n.23 [219 USPQ 515] (11th Cir. 1983) (noting that defendant's expert, a trademark lawyer, testified at trial that there was no likelihood of confusion between the two products, but according to the trial court gave "little weight because lawyer admitted he had no background in the business and had not conducted any survey among consumers).

However, courts have been reluctant to allow legal expert testimony as to the ultimate issue of whether trademark infringement has occurred. In *Larsen v. Ortega*, 816 F. Supp. 97, 105 (D. Conn. 1992), *aff'd*, 990 F.2d 623 (2d Cir. 1993), the defendant offered the expert legal testimony of an attorney who had conducted an investigation of other local business names and opined that the defendant's service mark did not infringe

---

upon the plaintiff's registered service mark. The court had "no reservations" about Ms. Noel's motion, insofar as an expert with respect to his investigation: "There is little doubt that expert testimony on the strength of a plaintiff's trademark or on the degree of similarity within a discreet industry is appropriate." *Id.* at 105-06 n.11. However, the court noted that "[i]t is significantly less clear that a trademark attorney can testify as an expert witness with respect to the ultimate legal question to be determined by the court." *Id.*

Likewise, courts have rejected expert testimony by a lawyer when the testimony is only intended to instruct as to the applicable trademark law. In *Kerr's Kitchen, Inc. v. Bon Appetit*, 669 F.Supp. 786, 791 [3 USPQ2d 1382] (W.D. Ky. 1987), *rev'd on other grounds*, 850 F.2d 692 (6th Cir. 1988), plaintiffs offered the expert testimony of a local intellectual property attorney who opined that the "DERBY-PIE" mark was not generic. The court excluded the testimony "since it is only intended to instruct as to the applicable trademark law — the Court does not need Mr. Higgins's assistance in this regard." *Id. See also Morowm Productions, Inc. v. CACOMM, Inc.*, 668 F.Supp. 285, 288 [5 USPQ2d 1859] (S.D.N.Y. 1987) (rejecting affidavit of trademark lawyer stating that name "Nightlife" is "suggestive" because "the expert testimony of an attorney as to an ultimate issue of domestic law or as to the legal significance of facts is inadmissible"), *rev'd on other grounds*, 849 F.2d 781 [7 USPQ2d 1320] (2d Cir. 1988).

Although courts in this jurisdiction have not addressed this question in the context of a suit for trademark infringement, in other contexts the Seventh Circuit has held that expert legal testimony may be admissible as long as it does not rise to level of an instruction to the jury. For example, in *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 366 (7th Cir. 1990), the court noted that a lawyer experienced in indemnification matters normally would be a proper witness to opine on the probable meaning of the term "indemnity" as used in the contract.² But in *Roullo v. Russ Berrie & Co. Inc.*, 886 F.2d

---

² However, the court ultimately held the testimony inadmissible because "[b]y allowing the [lawyer] to tell the jury what the witness's legal research had turned up on the meaning of a key term in the case, the judge allowed the jury to infer that it could look to that witness for legal guidance; and by doing this the judge impermissibly tilted the balance of power between the parties toward the insurance companies." 922 F.2d at 366.

---

**32 USPQ2d**                           *Sam's Wines & Liquors Inc. v. Wal-Mart Stores Inc.*                              **1913**

931, 940 [12 USPQ2d 1423] (7th Cir. 1989), *cert. denied*, 493 U.S. 1075 (1990), where the copyright lawyer would have testified about the scope of protection to be afforded plaintiff's copyright, the court affirmed the district court's decision to exclude the testimony and instruct the jury itself without the assistance of the expert.

[5] Based on these authorities, the proper course is to deny Wal-Mart's motion. Ms. Noel may testify about the technical aspects of applying for and obtaining a federal trademark registration and may opine on the similarities of the parties' respective marks based on her experience as a practicing trademark attorney. However, she can not give her opinion on the legal standards applicable to this case or the results of her legal research as they apply to the ultimate issue of trademark infringement or likelihood of confusion.³

The motion is DENIED.

### C. To Exclude Testimony of Gerald Rosen.

Wal-Mart seeks to exclude testimony of plaintiff's expert liquor industry witness Gerald Rosen. Specifically, Wal-Mart argues that Mr. Rosen should be barred from testifying about (1) the fact that plaintiff has been damaged by Wal-Mart's pricing and marketing strategies, and (2) plaintiff's reputation.

The parties agree that Judge Andersen bifurcated this case for trial with respect to liability and damages. Thus, the entire issue of damages has been deferred. No discovery has occurred and none will occur unless and until Sam's Wines succeeds on the liability portion of the trial. Nor has Wal-Mart "opened the door" to such evidence by asserting that Sam's Wines has not been damaged. To permit testimony on the fact of damages prior to a determination of Wal-Mart's liability would be to effect an end-run around Judge Andersen's holding. Therefore, the court will exclude any testimony by Gerald Rosen or any other witness with respect to the fact or amount of damages during the liability phase of this trial.⁴

Wal-Mart also objects to testimony by Gerald Rosen relating to whether plaintiff's name has acquired secondary meaning among liquor professionals. Mr. Rosen's declaration repeatedly references plaintiff's reputation in the liquor industry. *See, e.g.*, Rosen Dec. at ¶¶ 3 ("Sam's has achieved national and international name recognition in our industry"), 4A ("Everybody in our industry knows about Sam's"), 4C ("This enhances Sam's reputation among manufacturers and distributors"), 4D ("The most important stores in the liquor industry").

Courts have held that expert testimony which merely establishes the industry's, rather than the consuming public's, perceptions is irrelevant. For example, in *Dunfey Hotels Corp. v. Meriden Hotel Invs. Group, Inc.*, 504 F.Supp. 371, 378 n.20 [209 USPQ 678] (S.D.N.Y. 1980), the court rejected the testimony of an expert in the hotel industry because "[t]he crucial issue before the Court is whether the general public will associate the word 'Parker' with plaintiff's hotel services, and not whether persons, such as Mr. Kaven, who are familiar with and participate in the hotel industry will make that connection." *See also Brown v. Quinion*, 744 F.Supp. 463, 470 [16 USPQ2d 1161] (S.D.N.Y. 1990) (denying summary judgment on secondary meaning issue because evidence of plaintiff's high recognition level was confined to individuals associated with the fashion industry, not members of the purchasing public).

However, Mr. Rosen's testimony is not limited to the industry's perceptions. As a liquor industry expert, he also proposes to testify to Sam's Wines' unique position in the retail liquor market and to the strong name recognition it enjoys among members of the consuming public. In *In re Bose Corp.*, 216 U.S.P.Q. 1001, 1004 [TTAB 1983], *aff'd*, 772 F.2d 866 [227 USPQ 1] (Fed. Cir. 1985), the Trademark Trial and Appeal Board considered twelve declarations of persons engaged in the retail sale of hi-fidelity and stereo components as "persuasive evidence" of secondary meaning among purchasers. Although declarations of this kind are not necessarily the best evidence which might be offered to show purchasers' conceptions, "the statement of a retailer that he has been in contact with many purchasers of

---

³ This is not a comprehensive list of the topics on which Ms. Noel may and may not testify. Rather, the court expects plaintiff to conduct Ms. Noel's examination in compliance with the principles set forth in this opinion.

⁴ This ruling relies in substantial part on Wal-Mart's assertion to the court that it has not "opened the door" to this evidence. If at trial Wal-Mart introduces testimony of its own on the fact of damages, or in any other way creates an issue as to damages, the court will reconsider this decision.

loudspeaker systems and that 'a substantial number of these purchasers' would recognize the depicted design as originating with Bose Corporation is certainly competent evidence of secondary meaning." *Id.* at 1005. *See also Application of G. LeBlanc Corp.,* 429 F.2d 989, 992 [166 USPQ 561] (CCPA 1970) (letters from musical instrument dealers and customers indicating that petitioner's trumpets are easily recognized are "persuasive proof" of distinctiveness).

[6] Gerald Rosen's qualifications make him an appropriate expert witness to testify about the consuming public's perceptions of Sam's Wines. He has been in the retail liquor business for forty-five years, is Chairman of the Executive Committee of the Illinois Liquor Beverage Task Force, and Chairman of Buy Low Enterprises, Inc. which franchises approximately seventy-seven independently owned liquor stores. He also owns his own company which franchises an additional forty-one Extra Value liquor stores. He gained his opinion that the name "Sam's" has tremendous goodwill and name recognition in the Greater Chicago Area with the purchasing public from "hundreds, if not thousands, of conversations with distributors, manufacturers, and the liquor consuming public." Rosen Dec. at ¶¶ 4D, 5. Any concerns Wal-Mart has as to Mr. Rosen's qualifications can be addressed with "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 113 S.Ct. 2786, 2798 [27 USPQ2d 1200] (1993).

Moreover, no hearsay objection exists. Federal Rule of Evidence 703 allows expert testimony based on facts "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject," regardless of whether the facts are admissible in evidence. Further, courts normally admit expert opinions based on industry experience even in the absence of supporting scientific data. "As a general rule, 'questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than the admissibility and should be left for the jury's consideration.'" *United States v. Heath,* 970 F.2d 1397, 1405 (5th Cir. 1992) (trial court's limitation of real estate lawyer's expert testimony as to use of non-recourse loans in real estate deals on ground that opinions based only on personal experience and impressions and not on scientific data erroneous), *cert. denied,* 113 S.Ct. 1643 (1993).

Accordingly, Gerald Rosen will be permitted to testify regarding secondary meaning in plaintiff's name among the general public. The motion is GRANTED in part.

**D. *To Exclude Consumer Confusion Evidence Not Produced to Wal-Mart Prior to the Close of Discovery*:**

Wal-Mart originally sought to exclude consumer confusion evidence not produced to Wal-Mart prior to the discovery cutoff date. Sam's Wines filed a similar motion. The parties have since agreed not to contest the introduction of these witnesses and exhibits on the grounds of timeliness. Accordingly, the motion will not be considered. The motion is DENIED as moot.

**E. *To Exclude Certain Newspaper Articles Discussing Wal-Mart Stores*.**

Wal-Mart originally sought to exclude certain newspaper articles discussing Wal-Mart Stores. During a pre-trial conference in chambers, Wal-Mart indicated that the issue is no longer in dispute. Accordingly, the motion will not be considered. The motion is DENIED as moot.

**F. *To Exclude Evidence Of Various Awards Received by Plaintiff's Owner, Fred Rosen.***

Wal-Mart seeks to exclude evidence of various awards received by the owner of Sam's Wines, Fred Rosen, because they are irrelevant to whether or not plaintiff's name has achieved secondary meaning among ordinary customers.

Plaintiff's Exhibits 30-34 are letters from other professionals in the liquor industry congratulating Mr. Rosen on receiving an industry retailing award. Plaintiff believes they reflect the writers' perceptions of Mr. Rosen as a leading liquor retailer. However, this case is concerned with gauging the consuming public's perceptions. Whether or not liquor industry tradespeople attach secondary meaning to "Fred Rosen" or "Sam's Wines" or some combination thereof is irrelevant. This is especially true because unlike Gerald Rosen whose qualifications are known, there is no evidence that the authors of these letters have any specialized knowledge regarding the consuming public.

Plaintiff's Exhibits 28-29, 36, and 38-40 are excerpts from annual liquor retailer awards issues published by the industry magazine *Market Watch* identifying Sam's Wines as one of the leading retail liquor

stores in the United States and Fred Rosen as its president. Plaintiff's Exhibit 42 is a plaque which Mr. Rosen received from *The Wine Spectator,* a leading wine trade magazine, identifying Mr. Rosen as president of Sam's Wines and a top American wine merchant and purveyor of *The Wine Spectator.* Like the letters, these exhibits simply are probative of Mr. Rosen and Sam's Wines' prominence in industry circles. Absent evidence that consumers are aware of these awards or the publications bestowing them, they are not probative of the public's perceptions of Sam's Wines.

Plaintiff's Exhibit 26 is a program from the Illinois liquor industry's 1987 award banquet honoring Mr. Rosen's work on behalf of the City of Hope Medical Center and Research Institute. It is approximately fifty pages in length and mentions Sam's Wines only once when it refers to Mr. Rosen as its president. The rest of the book is devoted to praising Mr. Rosen's individual achievements and contributions to charity. This evidence is clearly irrelevant to establishing any secondary meaning in Sam's Wines and, contrary to plaintiff's contention, is not "probative of Plaintiff's unique position as a local landmark family-run liquor store deeply involved in supporting the Chicago and Illinois community." Pl.'s Resp. to Def.'s Sixth Mot. in Limine at 2.

The motion is GRANTED.

**G. *To Exclude Misleading Photographs of the Interior of Wal-Mart's Stores*.**

Wal-Mart originally sought to exclude certain misleading photographs of the interior of Wal-Mart's Sam's Club Members Only stores. During a pre-trial conference in chambers, Wal-Mart indicated that the issue is no longer in dispute. Accordingly, the motion will not be considered.

The motion is DENIED as moot.

**H. *For an Order Authorizing a Jury Field Trip to View The Parties' Respective Places of Business*.**

Wal-Mart seeks an order authorizing a jury field trip to view the parties' respective stores. Sam's Wines objects on the grounds that no single Wal-Mart store is representative of all of its stores, it is impractical to view all Wal-Mart stores, a view will focus jurors' attentions disproportionately on appearance evidence to the detriment of other types of evidence, and photographic and videotape evidence is a satisfactory alternative means of educating the jury on the appearance of the stores.

It is within the discretion of the trial court whether to permit the jury to view the premises subject to the litigation. *American Nat'l Bank & Trust Co. v. Aetna Ins. Co.,* 447 F.2d 680, 686 (7th Cir. 1971). In the present case, a jury view would be a very time-consuming and expensive detour. Further, as plaintiff points out, it is not possible to experience a composite of Wal-Mart's stores from a visit to one store. In any event, the alleged likelihood of confusion arises from numerous factors such as advertisements, word-of-mouth and publicity, not just from the physical appearance of a view would be to demonstrate the operation and appearance of the stores under actual marketplace conditions. However, this advantage can be obtained in nearly the same measure by the use of videotapes or other demonstrative evidence.

The motion is DENIED.

The parties are ordered to advise their respective witnesses of this order prior to the time they testify at trial.

The parties also are advised that the rulings contained in this order may be modified as the court hears evidence within the context of the trial.

SO ORDERED.

---

**U.S. Court of Appeals Federal Circuit**

Burroughs Wellcome Co. v. Barr Laboratories Inc.

Nos. 93-1503, -1504, -1505

Decided November 22, 1994

**PATENTS**

1. **Patentability/Validity — Date of invention — Conception (§115.0403)**

Test for conception is whether inventor had specific, settled idea, which represents particular solution to problem at hand rather than general goal or research plan, which inventor can describe with particularity, and which is definite and permanent enough so that one skilled in art could understand invention; inventor must prove conception by corroborating evidence, preferably by showing contemporaneous disclosure, but inventor need not know that invention will work in order for conception to be complete.