# EXHIBIT B

| 1478 | Food Lion Inc. v. Capital Cities/ABC Inc. | 40 USPQ2d |

tiff, 17 USC 301 preempts plaintiff's constructive trust theory, under which plaintiff seeks declaration of copyright ownership based on state law, since Copyright Act sets out elements of copyright ownership, and declaration of ownership is therefore right exclusively provided for under federal law.

---

Action by Food Lion Inc. against Capital Cities/ABC Inc., ABC Holding Co., American Broadcasting Cos., Lynne Neufer, Richard N. Kaplan, Ira Rosen, and Susan Barnett for declaratory judgment that plaintiff owns copyrights in undercover videotapes made by two individual defendants, and for copyright infringement. On defendants' motion to dismiss for failure to state claim on which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6). Granted.

---

W. Andrew Copenhaver, Winston-Salem, N.C., for plaintiff.

H. Hugh Stevens Jr., Raleigh, N.C., for defendants.

Tilley, J.

This case is before the Court on Defendants' Motion to Dismiss. It is the second of two cases involving these parties in this district and will be referred to as "*Food Lion II*." In *Food Lion II*, Plaintiff seeks a declaration that it owns copyrights to certain undercover videotapes made by Defendants Neufer and Barnett, two television producers who secured employment with Plaintiff during an investigation for the program, Prime Time Live; Plaintiff also seeks infringement damages.[1] Defendants argue the allegations in the complaint fail to state a valid claim.

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), all well-pleaded allegations must be accepted as true and viewed in the light most favorable to the plaintiff. The case cannot be dismissed unless it appears certain that the plaintiff can prove no set of facts which would warrant the requested relief. *See Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 [28 USPQ2d 1533] (4th Cir. 1993), *cert. denied*, 114 S.Ct. 1307 (1994). This standard must be applied to determine whether Plaintiff's allegations that it owns the copyrights at

issue under either the "works made for hire" provision of the Copyright Act, 17 U.S.C. § 201(b), or the state-law doctrine of constructive trusts are colorable as a matter of law.

[1] As to the Copyright Act claim, Plaintiff contends the videotapes are works made for hire "because they were 'prepared by an employee within the scope of his or her employment' within the meaning of [17 U.S.C. § 101(1)]." Pl.'s Substituted Resp. in Opp. to Def's. Mot. to Dismiss at 8. As Plaintiff notes, "scope of employment" and other phrases used in the Copyright Act are terms of art taken from agency law. The Supreme Court has found that the Restatement (Second) of Agency provides useful guidance into the meaning of these phrases. *See Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 752 n.31 [10 USPQ2d 1985] (1989). As the Fourth Circuit has observed, Section 228 of the Restatement (Second) of Agency provides that acts which are not of the kind a person is employed to do or which are not motivated in part from a desire to serve the employer are outside the scope of employment. *See Avtec Systems, Inc. v. Peiffer*, 21 F.3d 568, 571 [30 USPQ2d 1365] (4th Cir. 1994). The videotaping done in Plaintiff's stores meets neither of these conditions, nor any other reasonable interpretation of scope of employment.[2]

Plaintiff's alternative, constructive trust theory is similarly unavailing. As Plaintiff recognizes, the Copyright Act specifically preempts rights recognized under state law that are equivalent to the exclusive rights provided for by federal copyright law. 17 U.S.C. § 301. Here, Plaintiff seeks a declaration of copyright ownership based on state law. The Copyright Act sets out the elements of copyright ownership, and thus, a declaration of ownership is a right exclusively provided for under federal law. Plaintiff's attempt to expand upon or circumvent this right by relying on state law is preempted. *See generally Del Madera Properties v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 [3 USPQ2d 1283] (9th Cir. 1987) ("To survive preemption, the state cause of action

---

[1] The first case, *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, No. 6:92CV592 (M.D.N.C.) ("*Food Lion I*") includes various tort claims related to the investigation.

[2] Plaintiff virtually concedes that videotaping formed no part of the jobs Defendants Neufer and Barnett were hired to do. *See* Pl.'s Substituted Resp. in Opp. to Def's Mot. to Dismiss at 11 n.6 ("While it is not normally within the scope of their surrounding work conditions, it is not per se *inconsistent* with their job functions." (emphasis in original)).

---

| 40 USPQ2d | Hasbro Inc. v. Internet Entertainment Group Ltd. | 1479 |

must protect rights which are qualitatively different from the copyright rights.").[3]

For these reasons, Defendants' Motion to Dismiss is GRANTED[4] and Plaintiff's Motion to Consolidate is DISMISSED as moot.

### JUDGMENT

For the reasons set forth in the contemporaneously filed Memorandum Opinion,

IT IS ORDERED that Defendants' Motion to Dismiss [Doc. #5] is GRANTED; and

IT IS FURTHER ORDERED that Plaintiff's Motion to Consolidate [Doc. #9] is DISMISSED as moot; and

IT IS FURTHER ORDERED that this case is DISMISSED.

---

### Hasbro Inc. v. Internet Entertainment Group Ltd.

U.S. District Court
Western District of Washington

Hasbro Inc. v. Internet Entertainment Group Ltd.

No. C96-130WD

Decided February 9, 1996

**TRADEMARKS AND UNFAIR TRADE PRACTICES**

**1. Infringement; conflicts between marks — Dilution (§335.05)**

### REMEDIES

**Non-monetary and injunctive — Equitable relief — Preliminary injunctions — Trademarks and unfair trade practices (§505.0707.09)**

Preliminary injunction is warranted prohibiting defendants from using domain name "candyland.com" to identify sexually explicit Internet site, since plaintiff is owner of registered trademark "Candy Land," since plaintiff has demonstrated probability of proving that defendants' use of "candyland.com" to identify Internet site and as Internet domain name has diluted value of plaintiff's mark, since plaintiff has demonstrated likelihood of success on its claims that defendants' conduct violates federal trademark anti-dilution statute, 15 USC 1125(c), and Washington's trademark anti-dilution statute, Wash. Rev. Code 19.77.160, since plaintiff has shown that defendants' use of domain name "candyland.com" is causing plaintiff irreparable injury, since probable harm to plaintiff from defendants' conduct outweighs any inconvenience defendants will experience if required to stop using "candyland.com," and since public interest favors entry of preliminary injunction.

---

Action by Hasbro Inc. against Internet Entertainment Group Ltd., Brian Cartmell, and Internet Entertainment Group Inc. for temporary restraining order prohibiting use of domain name "candyland.com" for sexually explicit Internet site. Following oral argument, court treats motion as one for preliminary injunction. Granted.

Kenneth B. Wilson and Lisa G. Meckfessel, of Wilson, Sonsini, Goodrich & Rosati, Palo Alto, Calif.; Jill Diane Bowman, of Stoel, Rives, Boley, Jones & Grey, Seattle, Wash., for plaintiff.

John D. Lowery and E. Russell Tarleton, of Graham & James/Riddell Williams, Seattle, for defendants.

Dwyer, J.

On February 5, 1996, the application of plaintiff Hasbro, Inc. ("Hasbro") for a temporary restraining order came on for hearing by the court. Plaintiff appeared through Kenneth B. Wilson and Lisa G. Meckfessel of the law firm of Wilson, Sonsini, Goodrich & Rosati, and Jill D. Bowman of the law firm of Stoel Rives LLP. Defendants Internet Entertaining Groups, Ltd., Brian Cartmell and Internet Entertainment Group, Inc. appeared through John D. Lowery and E. Russell Tarleton of the law firm of Graham & James LLP/Riddell Williams P.S. After the oral decision was announced, the parties agreed that the ruling should be entered on a preliminary injunction rather than merely as a temporary restraining order.

Having considered all papers submitted in support of said motion and in opposition

---

[3] Plaintiff's reliance upon cases in which constructive trusts have been used in relation to intellectual property rights is misplaced. In those cases, the plaintiffs were not attempting to use state law to define ownership. Further, to the extent preemption does not apply, the claim fails because Plaintiff has alleged no beneficial interest in the subject property as required under North Carolina's constructive trust doctrine. *See Leatherman v. Leatherman*, 297 N.C. 618, 256 S.E.2d 793 (1979).

[4] As Plaintiff cannot show copyright ownership, its infringement claim fails.

thereto, and having heard oral argument in open court, the court finds that:

[1] 1. Hasbro is the owner of the trademark "CANDY LAND," which has been registered on the Principal Register of the United States Patent and Trademark Office since 1951.

2. Hasbro has demonstrated a probability of proving that defendants Internet Entertainment Group, Ltd., Brian Cartmell and Internet Entertainment Group, Inc. (collectively referred to as "defendants") have been diluting the value of Hasbro's CANDYLAND mark by using the name CANDYLAND to identify a sexually explicit Internet site, and by using the name string "candyland.com" as an Internet domain name which, when typed into an Internet-connected computer, provides Internet users with access to that site.

3. Hasbro has demonstrated a likelihood of prevailing on its claims that defendants' conduct violates the federal trademark antidilution statute, 15 U.S.C. §1125(c), and the Washington State trademark anti-dilution statute, RCW 19.77.160.

4. Hasbro has shown that defendants' use of the CANDYLAND name and the domain name candyland.com in connection with their Internet site is causing irreparable injury to Hasbro.

5. The probable harm to Hasbro from defendants' conduct outweighs any inconvenience that defendants will experience if they are required to stop using the CANDYLAND name.

6. The public interest favors entry of a preliminary injunction on the facts of this case.

THEREFORE, IT IS HEREBY ORDERED that Hasbro's motion for preliminary injunction is granted. Defendants Internet Entertainment Group, Ltd., Brian Cartmell, and Internet Entertainment Group, Inc., and their officers, agents, servants, employees and attorneys, and those persons in active concert and participation with defendants who receive actual notice of this preliminary injunction, are enjoined from directly or indirectly using the name CANDYLAND or the Internet domain name "candyland.com," or any similar name which is likely to dilute the value of Hasbro's CANDYLAND mark, in connection with the advertising, operation or maintenance of any Internet site, including but not limited to any Internet site containing sexually explicit material or other pornographic content. Defendants are directed to immediately make affirmative efforts to stop, cancel or discontinue any previously purchased advertising which refers to the name CANDYLAND or the Internet domain name "candyland.com."

IT IS FURTHER ORDERED that defendants shall immediately remove all content from the "candyland.com" site. However, defendants shall be allowed to post a "referral notice" at the URL address "http://www.candyland.com" until May 5, 1996, which shall provide the new location of defendants' Internet site. The referral notice shall not contain any hyperlink to defendants' new site or sites, or to any other site. After the expiration of the 90 day referral period, defendants must remove the referral notice and thereafter discontinue any use, either direct or indirect, of the name domain name "candyland.com."

IT IS FURTHER ORDERED that Hasbro shall not be required to post a bond pursuant to Federal Rule of Civil Procedure 65(c) in connection with this preliminary injunction, as defendants expressly waived any bond requirement relating to this order at the preliminary injunction hearing.

The clerk is directed to send copies of this order to all counsel of record.

---

dence rather than evaluated for its "separate knockdown ability" against prima facie case.

PATENTS

3. Patentability/Validity — Obviousness — Commercial success (§115.0908)

Evidentiary value of objective evidence of commercial success cannot be challenged on ground that patent claims are broader than successful commercial embodiment of patented invention, since patentee need not show that all possible embodiments within claims were successfully commercialized in order to rely on success in marketplace of embodiment that was commercialized.

4. Infringement — Literal infringement (§120.05)

Patent construction — Claims — Defining terms (§125.1305)

Chemical vapor deposition reactor process that does not acquire electrostatic contamination during processing cycle does not literally infringe claim of patent directed to reduction or elimination of static charges on substrate during chemical vapor deposition process, since term "cold purge" in claim preamble is element of claim and establishes limitation that accused device must meet in order to literally infringe, since term is properly placed in context of state of art at time invention of patent was made, and since that context requires construing literal meaning of claim as limited to process wherein electrostatic contamination is formed and removed.

5. Infringement — Doctrine of equivalents — In general (§120.0701)

Chemical vapor deposition reactor process that does not acquire electrostatic contamination during processing cycle does not infringe, under doctrine of equivalents, claim of patent directed to reduction or elimination of static charges on substrate during chemical vapor deposition process, since "cold purge process" of claim, understood in light of description of invention, requires function of removing electrostatic contamination that is formed at low temperatures, since that function is not performed by process of accused reactor, which is conducted without formation of electrostatic contamination, and since difference between invention of patent and accused process is not insubstantial.

Particular patents — Chemical — Chemical vapor deposition

4,081,313, McNeilly and Benzing, process for preparing semiconductor wafers with

---

U.S. Court of Appeals
Federal Circuit

Applied Materials Inc. v. Advanced Semiconductor Materials

Nos. 94-1428, -1466

Decided October 24, 1996

PATENTS

1. Patentability/Validity — Anticipation — Double patenting (§115.0708)

Amendment of process claims following restriction requirement did not remove claims from benefit of 35 USC 121, and therefore does not require that resulting patent be either invalidated for double patenting or subjected to terminal disclaimer, since restriction requirement does not prohibit subsequent amendments to claims, since examiner's demarcation among separate inventions should be preserved, but even if such consonance is lost, double patenting does not result if requirements of Section 121 are met or if claims are in fact patentably distinct, and since process claims in present case remained in separate patents from apparatus claims even though scope of process claims was modified; whether imposition of restriction requirement might have been avoided had different claims been presented initially is not material.

2. Patentability/Validity — Obviousness — Evidence of (§115.0906)

JUDICIAL PRACTICE AND PROCEDURE

Procedure — Prior adjudication — Res judicata; collateral estoppel (§410.1503)

Decision by Court of Customs and Patent Appeals affirming examiner's rejection of claims for obviousness does not collaterally estop plaintiff from asserting nonobviousness of patent that issued from amended claims in subsequently-filed continuation application, since new and material evidence was presented in Patent and Trademark Office during continuation examination, and since CCPA decision held only that examiner had made prima facie case of obviousness on evidence then of record, not that invention was unpatentable for obviousness; federal district court is not limited to consideration of whether prima facie case of obviousness was successfully rebutted by objective evidence of nonobviousness submitted during subsequent examination, since such evidence must be considered together with all other evi-