# EXHIBIT A

## Attrezzi LLC v. Maytag Corp.

U.S. Court of Appeals
First Circuit

Nos. 05-2098, 05-2181

Decided January 27, 2006

### JUDICIAL PRACTICE AND PROCEDURE

[1] Procedure — Jury trials (§ 410.42)

Plaintiff was properly granted jury trial of its claim for trademark infringement, since plaintiff claimed and obtained damages reflecting expense of opposing defendant's application for federal registration of allegedly infringing mark, since competent counsel, fearing repercussions of defendant's registration on plaintiff's infringement claim in federal district court, could sensibly oppose defendant's application, and since nothing indicates that plaintiff's decision to oppose defendant's application was unreasonable.

### TRADEMARKS AND UNFAIR TRADE PRACTICES

[2] Types of marks — Suggestive — Particular marks (§ 327.0403)

Evidence supports jury's conclusion that "Attrezzi" trade name is suggestive of plaintiff's sales of kitchen appliances, utensils, and dinnerware, since "Attrezzi" is Italian word meaning "tools," since term can easily be viewed as suggesting similarity, rather than identity, between ordinary workman's tools and electrical appliances and utensils used by chef, and since defendant argued to U.S. Patent and Trademark Office that "Attrezzi" is suggestive of small kitchen appliances.

[3] Infringement; conflicts between marks — Likelihood of confusion — Particular marks — Confusion likely (§ 335.0304.03)

Evidence supports jury's conclusion that defendant's use of "Attrezzi" mark for small kitchen appliances is likely to cause reverse confusion with plaintiff's "Attrezzi" trade name for sales of kitchen appliances, utensils, and dinnerware, even though defendant uses mark only in conjunction with term "Jenn-Air," since, to extent "Jenn-Air" is more recognized label, such linkage could aggravate threat to plaintiff, since both parties sell small electric appliances, since both parties use Web sites and aim at high-end customers, since plaintiff has presented evidence showing instances of actual confusion, and since defendant presented evidence of large national expenditures promoting "Jenn-Air Attrezzi" mark, but relatively greater strength of junior user such as defendant, which is large manufacturer of appliances, may hurt its defense in reverse confusion case; although case is not clear-cut as to confusion issue, jury's decision was not irrational, and there is no indication that jury was strongly partisan.

### TRADEMARKS AND UNFAIR TRADE PRACTICES

[4] Unfair competition — Preemption (§ 395.02)

### REMEDIES

Monetary — Attorneys' fees; costs — Trademarks and unfair trade practices — In general (§ 510.0907.01)

Provisions of Lanham Act governing awards of attorneys' fees in actions for unfair competition do not preempt New Hampshire's statute governing attorneys' fees and enhanced damages in unfair competition cases, even though state statute creates stronger incentive for plaintiffs to bring unfair competition suits by making attorneys' fees for plaintiffs automatic on success and by enhancing damages more readily than under federal statute, since Lanham Act does not expressly state that it preempts such state rules, and it does not, in general, preclude state unfair competition statutes from operating, since New Hampshire's remedial policy pertains to its own statutory cause of action, not that provided by Lanham Act, and since fact that state substantive regimes are not ordinarily preempted by Lanham Act warrants conclusion that New Hampshire's deviation from Lanham Act's remedial components should not be preempted either.

[5] Non-monetary and injunctive — Equitable relief — In general (§ 505.0701)

Non-monetary and injunctive — Equitable relief — Permanent injunctions — Trademarks and unfair trade practices (§ 505.0709.09)

Federal district court did not abuse its discretion by allowing defendant 12-month period in which to sell off its stock of small electric kitchen appliances bearing infringing "Jenn-Air Attrezzi" mark, even though jury found that defendant's infringement of plaintiff's "Attrezzi" mark was willful, since defendant is paying stiff price in wasted advertising expenses, and there is no indication that risk of harm to plaintiff is likely to increase appreciably due to defendant's additional 12 months of competing use.

[6] Monetary — Attorneys' fees; costs — Trademarks and unfair trade practices — In general (§ 510.0907.01)

Federal district court's award of costs to prevailing plaintiff under New Hampshire's unfair competition statute, which omitted certain requested litigation expenses such as attorney travel and computer-assisted research, is affirmed, but without prejudice to plaintiff's prompt renewed request to district court for award of omitted expense items, since district court can state in first instance whether it intends to award such costs and in what amount, or whether it proposes to deny them, and since district court can obtain briefing from parties on how New Hampshire's statute may apply to such items, either as costs or as portion of attorneys' fees.

Appeal from the U.S. District Court for the District of New Hampshire, Barbadoro, J.

Action by Attrezzi LLC against Maytag Corp. for unfair competition under Lanham Act, and for trademark infringement, unfair competition, and trademark dilution under New Hampshire law. Defendant appeals from judgment for plaintiff and issuance of permanent injunction following jury trial, and plaintiff cross-appeals, challenging terms of injunction and denial of certain litigation expenses. Affirmed, but without prejudice to renewed request by plaintiff for award of litigation expenses.

Edward A. Haffer, of Sheehan Phinney Bass & Green, Manchester, N.H., for plaintiff/cross-appellant.

James G. Goggin and Peter S. Black, of Verrill Dana, Portland, Me., for defendant-appellant.

Before Boudin, chief judge, Selya, circuit judge, and Stahl, senior circuit judge.

Boudin, C.J.

Attrezzi, LLC, ("Attrezzi LLC") a New Hampshire limited liability company, operates a single retail store of the same name in Portsmouth, New Hampshire, specializing in fine kitchen products and services. The proprietor, Jennifer Slade, opened her shop's doors in June 2002, and at the same time launched a website (www.attrezzinh.com) to support an anticipated mail-order business. Slade obtained a New Hampshire trademark registration for "Attrezzi" in November 2003.

Maytag, a well-known appliance maker, selected the same word, "Attrezzi," in the spring of 2003 as the name for a new line of small electric kitchen appliances that Maytag was preparing to launch. Attrezzi LLC's line of products includes such appliances although it does not carry Maytag's products. Before launching its line, Maytag learned through the customary trademark investigation that Attrezzi LLC was using the term for its business, and Maytag's in-house trademark counsel warned that this created "a problem."

After higher management asked its in-house counsel to "take another look," counsel reversed his position, and in March 2003 Maytag filed an "intent-to-use" application with the Patent and Trademark Office ("PTO") to register Attrezzi as its trademark for small electric appliances. The next month Maytag began to promote the name as a sub-brand of "Jenn-Air," its "high-end house mark"; it announced that its "Jenn-Air Attrezzi" line would include small electric kitchen appliances and might extend to "our own coffee," "[b]ar ware, cups, glasses, [and] cutlery."

The PTO eventually approved Maytag's application (subject to opposition) and gave public notice of this action. Attrezzi LLC wrote to Maytag complaining of Maytag's use of the term Attrezzi and filed a "use" service mark application of its own, with the PTO, to register the term for retail store and online use for the sale of kitchen and dining goods. Maytag

responded to Attrezzi LLC that there was no likelihood of customers confusing the source of Jenn-Air Attrezzi branded products with the Attrezzi store.

In turn, Attrezzi LLC filed suit, in October 2003, in federal district court in New Hampshire, charging Maytag with violating the unfair competition provision of the Lanham Act, 15 U.S.C. § 1125(a) (2000),[1] and New Hampshire's trademark infringement, unfair competition, and trademark dilution statutes, N.H. Rev. Stat. Ann. §§ 350-A:11-14, 358-A:2, 350-A:12 (1995 & Supp. 2005). Attrezzi LLC requested a jury trial and sought declaratory relief, a permanent injunction against the use of the term Attrezzi, and enhanced damages, attorneys' fees and costs.

Prior to trial, the district court denied Attrezzi LLC's motion for a preliminary injunction and Maytag's motion to strike Attrezzi LLC's jury demand, reserving the question until "after the case has been completed," at which point, "[i]f [the court] determine[s] that plaintiff does not have a right to a jury trial, [it] w[ould] treat the jury's verdict as advisory pursuant to Fed. R. Civ. P. 39(c)." In the meantime, in September 2004, Attrezzi LLC filed an opposition before the PTO to Maytag's application to register Attrezzi.

After a five-day trial in February 2005, the jury found Maytag to have willfully infringed Attrezzi LLC's trademark and to have caused damages of $5,400 (the cost of Attrezzi LLC's opposition to Maytag's application before the PTO). After post-trial proceedings, the district court granted a permanent injunction against Maytag's use of the mark Attrezzi (but allowed it a 12-month period to sell off stock so marked) and awarded double damages ($10,800) and attorneys' fees.

Maytag now appeals from the judgment against it. Attrezzi LLC cross-appeals, opposing the 12-month sell-off period and the denial of certain litigation expenses. This court granted unopposed motions for a stay of the injunction pending appeal and for expedited consideration of the appeals. We begin with Maytag's claims of error—that there was no right to a jury trial; that even if there were, the evidence did not permit findings necessary to liability; and that the provision of the New Hampshire statute providing for the award of attorneys' fees and enhanced damages is preempted by the Lanham Act.

The jury trial issue deserves attention first because, in its post-trial proceedings, the district judge said that in a bench trial, he would have decided the case in Maytag's favor. His reason was that, if he were the trier of fact, he would have found the evidence insufficient to establish a likelihood of customer confusion as between Attrezzi and Jenn-Air Attrezzi. Had the jury trial been disallowed, we would be reviewing the evidence from the opposite perspective.

Maytag made a timely objection to a jury trial, which it renewed in its motions for judgment as a matter of law. Its main argument was that the injunctive action was equitable and that no evidence supported a claim for damages. An infringement claim for damages is a common-law rather than an equitable claim and such a claim would be triable to a jury even if joined, as here, with a request for equitable relief. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 508-11 (1959).

Here, Maytag's attack is solely on the sufficiency of the evidence presented at trial to show monetary damages. We are thus spared any consideration of how matters stood at the pleading and summary judgment stages. Compare Laskaris v. Thornburgh, 733 F.2d 260, 264 (3d Cir.), cert. denied, 469 U.S. 886 (1984), with Hildebrand v. Bd. of Trs. of Mich. State Univ., 607 F.2d 705, 709-10 (6th Cir. 1979).

[1] Since the jury in this case *found* damages, Maytag's attack must fail unless "reasonable persons could not have reached the conclusion that the jury embraced." *Sanchez v. P.R. Oil Co.*, 37 F.3d 712, 716 (1st Cir. 1994). As we have said elsewhere, the test "is a stringent one":

"[W]e must examine the evidence in the light most favorable to the plaintiff and determine whether there are facts and inferences reasonably drawn from those facts which lead to but one conclusion—that there is a total failure of evidence to prove plaintiff's case." *Mayo v. Schooner Capital Corp.*, 825 F.2d 566, 568 (1st Cir. 1987)

---

[1] Section 1125(a) provides a cause of action for the use in commerce of "any word, term, [or] name" which is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."

(quotation and citation omitted). In reviewing the record, we will evaluate neither the credibility of the witnesses nor the weight of the evidence. *Santiago-Negron v. Castro-Davila*, 865 F.2d 431, 445 (1st Cir. 1989).

*Vázquez-Valentín v. Santiago-Díaz*, 385 F.3d 23, 29 (1st Cir. 2004), *petition for cert. filed*, 73 U.S.L.W. 3604 (U.S. Feb. 11, 2005) (No. 04-1322).

In this instance, Maytag argues that there was never any basis for Attrezzi LLC's claim of monetary damages because Attrezzi LLC introduced no evidence of lost profits or damage to its goodwill. And, although Attrezzi LLC did claim and obtained damages reflecting the expense of opposing Maytag's PTO application. Maytag says that this expense was unrecoverable because full relief including an injunction could have been granted by the district court, making it unnecessary for Attrezzi LLC to oppose Maytag's PTO application.[2]

It is true as a general matter that a patently unnecessary expense would be avoidable damage and so not collectible. *See Restatement (Second) of Torts* § 918 (1979). Maytag argues that the opposition was unnecessary because the district court could have granted injunctive relief. However, fearing the repercussions of a PTO grant for the infringement claim in district court, a competent lawyer could sensibly oppose Maytag's PTO application. It is a matter of reasonable judgment whether the precaution was legitimate; nothing indicates that Attrezzi LLC's choice was unreasonable.

This brings us to the central issue on the appeal, namely, Maytag's claim that at trial there was insufficient evidence of a protectable mark and of likely customer confusion to permit a verdict for Attrezzi LLC. Although our review of the district court's rejection of the Rule 50(b) motions is *de novo*, the question is whether any rational jury could have found for Attrezzi LLC on the evidence presented. *Sanchez*, 37 F.3d at 716.

---

[2] Conceivably, Maytag could have argued against the PTO expenses on other grounds (*e.g.*, that if the PTO expenses were recoverable it was as equitable relief and not as "legal" damages, *cf.* 5 McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:124, at 32-206 to 32-207 & nn.5-6 (4th ed. 2005). We mention the possibility only to make clear that we are not deciding possible objections not presented.

Under governing case law, a trade name is safeguarded by the Lanham Act only if the mark is "distinctive," a term of art meaning that the mark must be arbitrary or "suggestive" or, if merely "descriptive," must have acquired "secondary meaning."[3] An arbitrary or suggestive term, being "inherently distinctive," can be appropriated by a first user, while a descriptive term is subject to such appropriation "only if it has acquired 'secondary meaning' by which consumers associate it with a particular producer or source." *Boston Beer Co. Ltd. P'ship v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 180 [28 USPQ2d 1778] (1st Cir. 1993).

The jury found specially that Attrezzi LLC's use of the name Attrezzi for its goods was a suggestive, rather than a descriptive use, and that in any event the name had acquired secondary meaning. Both findings are treated as determinations of fact, *Boston Beer*, 9 F.3d at 180, and it is enough to qualify the name for protection if either one is established. Here, a rational jury could find the Attrezzi mark, as used to identify a service selling kitchen appliances, utensils, and dinnerware, to be suggestive.

[2] Under the "doctrine of foreign equivalents," a foreign word is ordinarily translated into English to determine whether it is suggestive or descriptive. *See, e.g., Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1531-32 [224 USPQ 185] (4th Cir. 1984); *see also* 2 McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:34, at 11-66 (4th ed. 2005). The district court so charged the jury and neither side contests the instruction. Attrezzi is an Italian word meaning "tools." Maytag argues that the term is merely descriptive as it relates to Attrezzi LLC's business, which consists of selling, among other things, "chef's tools."

But Attrezzi translates as "tools," not "chef's tools"; as applied to kitchen implements and appliances, the term can easily be viewed as suggesting a similarity, not an identity, between ordinary workman's tools and electrical appliances or the like used by a chef. It does not help Maytag that the PTO had originally balked at Maytag's own application and then given way when Maytag urged the PTO that Attrezzi was suggestive rather than descriptive as applied to Maytag's kitchen appliances.

Alternatively, Maytag argues that the evidence did not permit a rational jury to find "likelihood of confusion," as required for trademark infringement and unfair competition actions. The precise showing is proof "that the allegedly infringing conduct"—here, Maytag's use of the mark Attrezzi—"carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr.*, 103 F.3d 196, 201 [41 USPQ2d 1251] (1st Cir. 1996). The question of confusion of non-customers, *Beacon Mut. Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 16 [71 USPQ2d 1641] (1st Cir. 2004), is not at issue here.

Attrezzi LLC did not advance an ordinary confusion claim, *i.e.*, one in which the claimant asserts that the infringer is diverting the claimant's customers and free-riding on the claimant's reputation and goodwill. Rather, its claim was one of "reverse" confusion, by which Attrezzi LLC might be harmed by purchasers misperceiving that Maytag—because of its use of the term Attrezzi in its own advertising—was the source or sponsor of Attrezzi LLC's goods and services. *See DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 608 [25 USPQ2d 1187] (1st Cir. 1992) (endorsing the reverse confusion concept), *cert. denied*, 509 U.S. 923 (1993).

In such a case, damage can result either because current or prospective customers of the claimant associate the claimant's product with an inferior product offered by the infringer, or because the latter's use of the mark "saturates the market and 'overwhelms' the senior user," such that "'the senior user loses the value of the trademark, its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets.'" 3 McCarthy, *supra*, § 23:10, at 23-36 (quoting *Ameritech, Inc. v. Am. Info. Techs. Corp.*, 811 F.2d 960, 964 [1 USPQ2d 1861] (6th Cir. 1987)). Attrezzi LLC in fact argued at trial that difficulties with Maytag's Attrezzi-branded products—whether the complaints were atypical goes only to degree—

were acknowledged internally within Maytag and reinforced the danger that Attrezzi LLC might be tarred with the same brush to the extent that confusion existed.

Whatever the source or extent of such damage, the requirement of likely confusion is common both to the ordinary "forward" confusion claim and the "reverse" confusion variant urged in this case. In assessing confusion, this circuit has resorted to the consultation of a series of factors rather than any mechanical formula. A representative list includes:

(1) the similarity of the marks; (2) the similarity of the goods (or, in a service mark case, the services); (3) the relationship between the parties' channels of trade; (4) the juxtaposition of their advertising; (5) the classes of prospective purchasers; (6) the evidence of actual confusion; (7) the defendant's intent in adopting its allegedly infringing mark; and (8) the strength of the plaintiff's mark.

*Winship Green*, 103 F.3d at 201; *see also Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 [212 USPQ 246] (1st Cir. 1981).

[3] Here, both sides have points in their favor. Both use the word Attrezzi and to this extent the marks are identical rather than merely similar. On the other hand, Maytag uses the word only in conjunction with the term Jenn-Air (*i.e.*, Jenn-Air Attrezzi), which could help diminish the chance of confusion. *See Pignons*, 657 F.2d at 487. Yet since the alleged harm is *reverse* confusion, to the extent Jenn-Air is itself the more recognized label the linkage could actually aggravate the threat to Attrezzi LLC. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 230 [57 USPQ2d 1097] (3d Cir. 2000).

Turning to the overlap of products, Maytag fairly points out that its Jenn-Air Attrezzi products are appliances while Attrezzi LLC uses the Attrezzi term to represent its entire retail business. But Attrezzi LLC itself sells small electric appliances alongside its gourmet foods and dinnerware. This is not a case in which two products are so dissimilar as to make confusion highly unlikely, and the more similar the marks are, the less necessary it is that the products themselves be very similar to create confusion. 3 McCarthy, *supra*, § 23:20.1, at 23-73 to 23-74 & nn.1-2 (collecting cases).

---

[3] "'A term is suggestive if it requires imagination, thought, and perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.'" *Equine Techs., Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 544 [36 USPQ2d 1659] (1st Cir. 1995) (quoting *Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1040 [10 USPQ2d 1432] (D.C. Cir. 1989)).

Case 6:05-cv-00930-DNH-GJD   Document 75-2   Filed 09/05/06   Page 5 of 6

Channels of trade, advertising modes, and prospective customers—a set of factors often considered together, see *Winship Green*, 103 F.3d at 204—also cut both ways. Maytag is a national manufacturer selling through stores and catalogues while Atrezzi LLC operates a single retail store engaged in local sales. But both use websites—Atrezzi LLC has customers in many states—and searches using the terms Atrezzi or Jenn-Air Atrezzi turn up both companies' websites. Both parties aim at basically the same high-end customers, a point in favor of Atrezzi LLC, but conceivably customer sophistication could also ameliorate confusion, *Pignons*, 657 F.2d at 489.

Atrezzi LLC's evidence of actual confusion, often deemed the best evidence of possible future confusion, *Beacon Mut.*, 376 F.3d at 18, is limited but real: eight e-mails mistakenly sent to it rather than Maytag through Atrezzi LLC's website (complaining of problems with Jenn-Air Atrezzi products); testimony that the New Hampshire store had received a dozen or so calls intended for Maytag; and written declarations from two Atrezzi LLC customers that they had been confused—for example:

I thought that Maytag operated Atrezzi as one of a chain of retail shops. Part of the reason for this belief is the distinctiveness of the Atrezzi name. I figured that because both companies were using the same name in the kitchen products market, they must be related.

The "good faith" of the alleged infringer is yet another factor. Here, although Maytag offered an innocent explanation for disregarding the initial advice of its in-house counsel, the jury seemingly concluded in its willfulness finding that Maytag was well aware of a substantial risk of confusion and nonetheless decided to gamble. On the other hand, there is some distance in a case like this one between a company's knowing decision to risk a law suit and a factual inference that customer confusion is likely.

Finally, the respective strengths of the junior and senior marks—in a nutshell, their respective renown—are regarded as relevant. Atrezzi LLC offered some evidence of regional success, showing that its retail business "has been mentioned or featured" in publications such as the *Boston Globe* and *Accent Magazine*, and that it received an award from *Business NH* magazine in 2003 for its Atrezzi branding campaign. Maytag showed large national expenditures to promote Jenn-Air Atrezzi; yet in a reverse confusion case, the relatively greater strength of a junior user like Maytag may hurt, rather than help, its defense. See *A & H Sportswear*, 237 F.3d at 230-31.

Maytag appears to argue on appeal that because the Atrezzi mark was suggestive rather than arbitrary, it was therefore inherently weak. This is not a proposition supported by any First Circuit case law and its logic is not apparent to us. The factors commonly considered as to strength—*e.g.*, wide recognition, efforts to promote, see *Beacon Mut.*, 376 F.3d at 19—are concerned with practical matters and not the legal classification of the mark.

In sum, this is not a clear-cut case as to confusion. Perhaps, like the district judge, we might as factfinders have come out the other way, but we see no way to describe the jury's liability verdict as irrational. Civil juries have their benefits and their risks. Nor is there any hint of a strongly partisan jury in this case: in the end, no vast damages were awarded; Maytag will simply have to find another word than Atrezzi to couple to its Jenn-Air brand.

Maytag's final argument—attacking the award of attorneys' fees and double damages—rests on the fact that the federal statute provides for attorneys' fees only "in exceptional cases," and permits the court in its discretion to award enhanced damages "subject to principles of equity." 15 U.S.C. § 1117(a). New Hampshire, by contrast, provides attorneys' fees as a matter of course and only to plaintiffs, and offers enhanced damages automatically upon a showing that the violation was willful or knowing. N.H. Rev. Stat. Ann. § 358-A:10.

Maytag's argument is that the federal statute ought to be treated as preempting the deviating state rule as to attorneys' fees and enhanced damages. Atrezzi LLC says that Maytag forfeited this argument by waiting until after trial to make it; but both attorneys' fees and enhancement of damages are decided by the judge rather than the jury, see *Carter v. Lachance*, 766 A.2d 717, 719 (N.H. 2001), and Maytag made the preemption-of-remedy argument at the appropriate time, namely, when the district court was asked to make the awards.

**[4]** The Lanham Act does not say expressly that it preempts state unfair competition law as to attorneys' fees or enhanced damages, but

Maytag argues that two theories of implied preemption govern in this case: preemption of the "field" and so-called "conflict" preemption.

When Congress intends federal law to "occupy the field," state law in that area is preempted.... [Preemption also occurs] where it is impossible for a private party to comply with both state and federal law, and where "under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000) (citations omitted). Our review is de novo. *Hotz v. Blue Cross & Blue Shield of Mass., Inc.*, 292 F.3d 57, 59 (1st Cir. 2002).

It is settled that the Lanham Act does not in general preclude state unfair competition statutes from operating, see *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 372 & n.3 [207 USPQ 465] (1st Cir. 1980). so "field" preemption is a dubious argument. Indeed, it is common practice for federal and state statutes to operate in the same field—antidiscrimination laws are a classic example—even though their terms may be somewhat different and state law may be more favorable to the plaintiff. See, *e.g., Dichner v. Liberty Travel*, 141 F.3d 24, 30-31 (1st Cir. 1998).

Thus, conflict preemption is the more apt rubric. Because there is no issue here of inconsistent commands to a party, the question is whether New Hampshire's laxer standard for an award of attorneys' fees or its mandatory award of enhanced damages undermines the policy of the federal statute. New Hampshire, of course, has adopted a remedial policy different from Congress' own, but it has done so with respect to its own statutory cause of action and not that provided by the Lanham Act.

The New Hampshire statute does create a stronger incentive for plaintiffs to bring unfair competition suits against trademark infringers by making attorneys' fees for the plaintiffs automatic on success and by enhancing damages more readily than under the federal statute. Congress' use of a less favorable incentive structure for federal suits was deliberate: enhanced damages were from the outset left to the judge's discretion, and when Congress amended the Lanham Act in 1975 to permit attorneys' fees, Pub. L. No. 93-600, 88 Stat. 1955 (1975), it deliberately made them discretionary and evenhandedly available to both sides.[4]

But it is accepted that Congress did not prohibit state unfair competition statutes that might have *substantive* terms somewhat more favorable to plaintiffs than the Lanham Act. See *Keebler*, 624 F.2d at 372 n.3. That is apparently not true of New Hampshire's statute in this case—at least, neither party has argued as much—but it is not unusual in other types of protective statutes. See, *e.g., Coady Corp. v. Toyota Motor Distribs., Inc.*, 361 F.3d 50 (1st Cir. 2004). In this sense, to complain in this case about the modest deviation in remedial benefits favorable to plaintiffs is to swallow the camel but strain at the gnat.

Admittedly, trademark protection has great potential to affect interstate commerce, as this case illustrates (*e.g.*, both parties' use of the internet, and Maytag's national advertising). Excessive protection—even if not biased in favor of local residents—can compromise interstate commerce just as easily as inadequate protection. The concerns here are perhaps greater than in cases where state law provides more protection than federal law against local employment discrimination or supposed abuse of local dealers by national car makers.

Nevertheless, Congress has not instituted a full-scale federal regulatory scheme, like the Clean Water Act's discharge permitting regulations in *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494-97 (1987); or created an intricate and targeted sanctions regime against a foreign government in "a deliberate effort to steer a middle path," as in *Crosby*, 530 U.S. at 377-80; or instituted "uniform national standards," as for automobile safety in *Wood v. General Motors Corp.*, 865 F.2d 395, 412 (1st Cir. 1988), *cert. denied*, 494 U.S. 1065 (1990). In all these cases, state deviations, including attempts to provide greater protection for putative plaintiffs, were deemed to upset a carefully constructed regulatory compromise.

---

[4] "Not only are Congress' fee-shifting statutes often more favorable to law suits than is section 1117(a), *compare, e.g.*, 42 U.S.C. § 1988 (2000), but there is even a trace of legislative history in the 1975 amendment explaining that the availability of the fee-shifting provision against unfounded suits brought by trademark owners for harassment and the like," S. Rep. 93-1400, 1974 U.S.C.C.A.N. 7132, 7136 (Department of Commerce statement).

By contrast, the Lanham Act primarily provides a federal forum for what is in substance a traditional common-law claim. If state substantive regimes are (ordinarily) not preempted by the Lanham Act, neither is New Hampshire's tinkering with the remedial components. The only other circuit case cited to us on this issue agrees with this view. *Tonka Corp. v. Tonka-A-Phone, Inc.*, 805 F.2d 793, 794-95 [231 USPQ 872] (8th Cir. 1986); *cf. Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 527-29 [4 USPQ2d 1497] (10th Cir. 1987) (assuming validity of separate attorneys' fee rules under state deceptive trade practices statute).

We turn now to Attrezzi LLC's cross-appeal. The company first urges that the district judge erred in allowing Maytag a 12-month sell-off period for any existing stock bearing the Jenn-Air Attrezzi mark. Review is for abuse of discretion, *Anderson ex rel. Dowd v. City of Boston*, 375 F.3d 71, 91 (1st Cir. 2004), and there is obviously a rationale for avoiding the wastefulness of renaming or junking existing stock—especially where diversion of sales from the plaintiff is unlikely.

Attrezzi LLC urges that it was unreasonable for the district judge to give any latitude to an infringer who had been found by the jury to have acted willfully, and it cites a couple of decisions that have denied sell-off periods to willful infringers. E.g., *Berkshire Fashions, Inc. v. Sara Lee Corp.*, 729 F.Supp. 21, 21-22 [14 USPQ2d 1124] (S.D.N.Y. 1990). We assume, as he did himself, that the district judge was obliged to accept the jury's finding of willfulness in deciding what equitable relief to grant.[5]

[5] The jury instructions permitted the jury to base its willfulness finding on "deliberate indifference"; so the jury finding, in light of the evidence, is certainly compatible with a decision by Maytag to take a deliberate risk in what it thought was a debatable case. Maytag is paying a stiff price in wasted advertising expenses; there is no indication that the risk of harm to Attrezzi LLC's service mark is likely

to increase appreciably because of the additional 12 months of Maytag's competing use; and we think that the district judge acted within his discretion.

Attrezzi LLC's other main claim on its cross-appeal is that the district court failed to award it the proper amount of "the costs of the suit and reasonable attorney's fees, as determined by the court" to which a prevailing party is entitled under the New Hampshire statute. N.H. Rev. Stat. Ann. § 358-A:10. In particular, Attrezzi LLC claims that it incurred litigation expenses, including for attorney travel (e.g., for depositions) and computer-assisted research, which it identified in its post-judgment submission but which were not awarded to it.

[6] Attrezzi LLC did receive an award of the full amount of its time-based attorneys' fees ($239,675.00), albeit without an upward adjustment it sought. It is unclear whether the district court intended to disallow the separate items now in issue, or overlooked them (Attrezzi LLC did not ask the court to reconsider on this ground), or thought they would be considered by the court clerk as part of an award of costs. Maytag suggests the latter, urging that an appeal on this issue is premature, but then says that these items are not recoverable costs anyway—citing federal practice.

True enough, expenses for items such as attorney travel and computer research are not deemed "costs" within the meaning of the federal statute that provides for recovery of costs by a prevailing party. 28 U.S.C. § 1920 (2000). But such items may be recovered where appropriate as part of attorneys' fees under the typical federal fee-shifting statute. *See, e.g., InvesSys, Inc. v. McGraw-Hill Cos.*, 369 F.3d 16, 22-23 [70 USPQ2d 1715] (1st Cir. 2004) (interpreting the federal Copyright Act, 17 U.S.C. § 505 (2000)); *Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir. 1983) (interpreting 42 U.S.C. § 1988 (2000)). No such federal statute applies here, but whether the New Hampshire statute covers such items, either as "costs" or as part of attorneys' fees, is a matter that neither party has troubled to brief.

We think that the cleanest way to resolve the uncertainty is to affirm the district court's judgment without prejudice to a prompt renewed request by Attrezzi LLC to the district court as to the omitted expense items. That

---

court can say in the first instance whether it intends to award such costs and in what amount or whether it proposes to deny them and if so why. In addition, it can if it chooses obtain from the parties briefing on how New Hampshire's statute may apply to such items, either as costs or as part of attorneys' fees.

In closing, Attrezzi LLC also makes two other requests. One is for a "remand to award Attrezzi the amount of profits on the infringing sales that occurred since the trial." The request, presented in a single sentence at the end of the section of its brief attacking the sell-off period and reprised in a single sentence in the "Conclusion" paragraph, is not seriously presented and we do not consider it. *Mass. Sch. of Law v. Am. Bar Ass'n*, 142 F.3d 26, 43 (1st Cir. 1998).

The other request is for "new attorneys' fees and costs incurred in prosecuting this appeal." A request for attorneys' fees in this court should be presented by separate motion to us following our decision, stating the basis for the claim, the amount sought, supporting it through conventional records, and providing the legal basis for the award—to all of which the opponent may respond. *Cf.* Fed. R. App. P. 38; 1st Cir. R. 38.

The judgment of the district court is *affirmed* but without prejudice to a prompt renewed request by Attrezzi LLC to the district court for the previously sought items of litigation expense and a new appeal by either side from that disposition if either side is dissatisfied with the resolution. We need not reserve jurisdiction; if such a new "clean-up" appeal is filed, our clerk should direct it to the present panel.

*It is so ordered.*

---

## In re Reed Elsevier Properties Inc.

U.S. Patent and Trademark Office
Trademark Trial and Appeal Board

Serial No. 75530795

Decided December 16, 2005

### TRADEMARKS AND UNFAIR TRADE PRACTICES

[1] Registration and its effects — Federal registration — Procedure, form, and content — Amendments or corrections (§ 315.0303.04)

Registration and its effects — Non-registrable subject matter — Descriptive; deceptively misdescriptive (§ 315.0407)

Types of marks — Generic — Particular marks (§ 327.0603)

Relevant genus of services for determining whether applicant's proposed "Lawyers.com" mark is generic includes provision of Web site with database of information about lawyers and from lawyers, even though applicant deleted word "lawyers" from services described in application, which were originally identified as "providing access to an online interactive database featuring information exchange in the fields of law, lawyers, legal news, and legal services," since, to extent genericness analysis focuses on description of goods or services in application, it is based on premise that description reflects actual conditions of use of mark, and since specimen Web pages submitted by applicant demonstrate that applicant's information "about the law" includes information about lawyers, and is offered for express purpose of assisting individuals in selecting lawyers, and that applicant's provision of information about "legal news" or "legal services" involves provision of information about lawyers.

[2] Registration and its effects — Non-registrable subject matter — Descriptive; deceptively misdescriptive (§ 315.0407)

Types of marks — Generic — Particular marks (§ 327.0603)

Proposed "Lawyers.com" mark is generic for applicant's services, which include provision of Web site with database of information about lawyers and from lawyers, since relevant public for services includes lawyers who may be seeking legal information or other lawyers to whom they may refer clients, as well as laypersons who may be seeking legal information, legal representation, or referrals, since relevant public, in considering "Lawyers.com" in conjunction with class of involved services, would readily understand term to identify commercial Web site that provides information about lawyers, including their specialties and contact information, or that allows visitors to actually contact law-