UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------x
:
SPERO HARITATOS,                         :
:
          Plaintiff,    :   05 Civ. 930 (DNH/GJD)
:
   - against -                         :
:
HASBRO, INC.                             :
and TOYS "R" US-NY LLC,                  :
:
          Defendants.   :
:
------------------------------x

**BRIEF IN OPPOSITION TO PLAINTIFF'S**
**OBJECTIONS TO THE AUGUST 11, 2006, ORDER**
**OF MAGISTRATE JUDGE DIBIANCO**

Kim J. Landsman (Bar Roll No. 513,364)
Michael D. Sant'Ambrogio (Bar Roll No. 513,363)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone: 212-336-2980

Attorneys for Defendant Hasbro, Inc.

Defendant Hasbro, Inc. ("Hasbro") respectfully submits this brief in opposition to Plaintiff Spero Haritatos' Objections To Magistrate Judge DiBianco's Order Entered August 11, 2006 ("Objections").[1]  Judge DiBianco's August 11, 2006 Order ("Order") is attached hereto as Exhibit A.

## PRELIMINARY STATEMENT

Plaintiff Spero Haritatos' objections to the Magistrate's Order are utterly without merit. Hasbro is seeking discovery regarding the central issues in this case, including documents concerning the strength (or weakness) of the mark that Plaintiff claims Defendants have infringed; the likelihood of consumer confusion (or lack thereof) stemming from Toys "R" Us's use of Hasbro's famous CANDY LAND® mark in New York City; and the monetary damages alleged by Plaintiff. This discovery is essential to Defendants' ability to show at trial that Plaintiff's alleged trade mark has no source identifying significance outside of his local region and is not likely to be confused with Hasbro's famous CANDY LAND® mark. In addition, the discovery related to Plaintiff's alleged damages is necessary for Defendants to know the extent of the damages sought by Plaintiff and the reasonableness (or lack thereof) of his damages claim.

## FACTUAL BACKGROUND

### Hasbro's Famous CANDY LAND Board Game

Over the past 53 years, Hasbro's CANDY LAND® trademark has become well-known to generations of children (and their parents) who have grown up playing the CANDY LAND® board game. Indeed, the CANDY LAND® board game is so well-known that the game was recently inducted into the National Toy Hall of Fame at Rochester's Strong Museum, where

---

[1] We are authorized to inform the Court that Defendant Toys "R" Us concurs with Hasbro's position and will not file a separate brief.

2

it joined the ranks of thirty-four games that have achieved "icon-status." According to the museum, CANDY LAND® is probably the first board game played by most American kids in the last half of the 20th century.

**Plaintiff's Candy Store**

Plaintiff Spero T. Haritatos operates a candy store out of his home in Rome, New York. The retail side of the candy store, which Plaintiff's parents started in the 1970s, is called Nora's Candy Shop, and it appears from discovery taken in a Trademark Office proceeding that in the 1980s Plaintiff began to call the candy-making side of the business "Candyland," after a restaurant that formerly operated under that name.

Given that Candyland is a natural, descriptive name for a candy store, it is not surprising that Mr. Haritatos is merely one of dozens who have used that name for a retail candy store. This fact can be easily verified by an Internet search for the name or by a more formal trademark search.

**Nature of the Case**

Plaintiff alleges that the use of Hasbro's famous CANDY LAND® trademark with its distinctive candy-cane design in connection with signage in the candy department of the Toys "R" Us ("TRU") Times Square, New York retail store infringes his alleged Candyland mark. Plaintiff alleges that this natural expansion of Hasbro's famous trademark will cause consumers to believe that the products sold in the candy department of a store in Times Square originate with, are associated with, or are endorsed by Haritatos' candy store in Rome.

**The Discovery Sought By Hasbro**

Hasbro seeks documents concerning: (1) the consumers or customers for Plaintiff's products bearing the "Candyland" mark, including their geographic location; (2) Plaintiff's sales and revenues related to products bearing his Candyland mark; (3) any non-party's use of a mark that incorporates the word, "Candyland", or any similar name or mark; (4) the alleged use of Hasbro's CANDY LAND® mark by defendant TRU; (5) a 1976 application by Plaintiff's mother to register a different trademark for the goods with which Plaintiff alleges he used his Candyland mark; and (6) the damages that Plaintiff seeks in this lawsuit.

**Hasbro's Good Faith Efforts to Resolve the Discovery Dispute**

On April 17, 2006, in a letter to Plaintiff's counsel, Mr. Purcell, Hasbro's counsel first raised Plaintiff's failure to produce certain categories of documents in response to Hasbro's First Set of Requests For Production, served on October 27, 2005. Hasbro's First Set of Requests For Production and Plaintiff's response thereto are attached hereto as Exhibit B. Hasbro sought to resolve the issue before Mr. Haritatos' May 17, 2006 deposition, but Mr. Purcell did not respond to Hasbro until May 2, 2006, and then Mr. Purcell gave Hasbro the run-around, asking questions about Hasbro's requests that appeared designed to obstruct rather than facilitate discovery. The parties' correspondence regarding this discovery is attached hereto as Exhibits C.1-C.5.

On May 9, 2006, Hasbro's counsel once again wrote Mr. Purcell in another effort to resolve the dispute before Mr. Haritatos' deposition. See Exhibit C.3. Mr. Purcell never responded to this letter. Accordingly, on May 16, 2006, Mr. Sant'Ambrogio telephoned Mr. Purcell and asked whether he was going to produce any documents in advance of (or even at)

4

Mr. Haritatos' deposition the following day. Mr. Purcell responded that he would not, although it now appears from Mr. Haritatos' deposition testimony that Mr. Purcell had in his possession documents that produced only after Mr. Haritatos' deposition. See Exhibits D.1 (Tr. of Haritatos Depo. 5/17/06, at 70:15-71:25) and D.2 (Purcell 6/1/06 letter to Sant'Ambrogio enclosing documents).

On June 8, 2006, Hasbro's counsel wrote to Mr. Purcell a third time regarding Mr. Haritatos' document production, reiterating the categories of documents that Hasbro sought, and asked to discuss these issues with him by telephone once again. See Exhibit C.4. Mr. Purcell did not respond. On June 14, 2006, Hasbro's counsel raised the issue with Mr. Purcell during a telephone conference. When asked whether he was going to produce any documents in response to Hasbro's requests, Mr. Purcell said that he did not know. Counsel for Hasbro pointed out that Mr. Purcell had had months to consider his response and warned him that Hasbro would move to compel if Mr. Haritatos did not produce the documents requested by the close of business Friday, June 16, 2006. Nevertheless, Hasbro decided to give Mr. Purcell an additional grace period before moving to compel due to an illness in Mr. Purcell's family.

Then, on June 21, 2006, Mr. Purcell took the position that Plaintiff would not produce any further documents in response to Hasbro's requests based on what can only be described as a bizarre contention that it was too late for Hasbro to file a motion to compel. See Exhibit C.5  In addition, Mr. Purcell contended that Hasbro's First Set of Interrogatories and Second Set of Requests for Production, which Hasbro served on May 31, 2006 to follow-up on the Haritatos depositions, were also too late and Plaintiff would not even respond to them. Id. These discovery requests are attached hereto as Exhibits E. This position was utterly outrageous,

inasmuch as Mr. Purcell was simultaneously insisting that depositions he wanted of Hasbro's witnesses go forward and subsequently moved to extend all the discovery deadlines by three months. Discovery is presently set to close on November 30, 2006.

On June 26, 2006 Hasbro moved to compel by letter to Judge DiBianco, attached hereto as Exhibit F.

## ARGUMENT

Magistrate' Judge DiBianco's August 11, 2006 Order should be affirmed because the discovery ordered by the Court is essential to Hasbro's defense in this case.

### (1) Plaintiff's Customers

Plaintiff has refused to produce documents concerning the consumers or customers for Plaintiff's products bearing the "Candyland" mark, including most importantly their geographic location. See Exhibit B, Requests No. 12, 13, and 14. These documents are relevant to the strength (or weakness) of Mr. Haritatos' alleged Candyland mark and the likelihood (or lack thereof) of consumer confusion stemming from TRU's alleged use of Hasbro's CANDY LAND® mark in New York City. See, e.g., Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d 358, 364 (2d Cir. 1959) (plaintiff with federal registration is not entitled to enjoin defendant's use of the mark in geographic area in which Plaintiff does not use the mark and is not likely to expand). Consequently, documents concerning Plaintiff's customers and their locations are absolutely essential to Defendants' ability to defend this case. Defendants must be able to show that few, if any, of Plaintiff's products are sold outside of Central New York State and, therefore, that Plaintiff's mark has no source-identifying significance beyond this region.

Plaintiff complains about the burden of producing these documents and suggests that Hasbro propose "alternative" means of obtaining this information. But he himself does not propose any and it is not Hasbro's responsibility to devise them.

In any event, it is not overly burdensome for Plaintiff to retrieve U.P.S. manifests from his warehouse. There are not that many. Hasbro does not seek credit card records and Plaintiff's concern about the identity of his customers is similarly a red herring because Plaintiff may produce the documents pursuant to the protective order entered in this case that will restrict the documents to Defendants' attorneys.[2]

In addition, Sharon Haritatos testified that Plaintiff maintains records that include the location of consumers who purchase his products over the telephone, via mail order, or through the www.turkeyjoints.com website.[3] See Exhibit G (Tr. of Sharon Haritatos Deposition, 5/18/06, at 39:6-9; 41:16-25; 43:4-14; 47:14-17; 49:23-50:4). These are the only consumers who potentially purchase Plaintiff's products outside the central New York region. Thus, these documents are highly relevant to Plaintiff's allegation that visitors to the Toys "R" Us Times Square Store are likely to confuse its products with Mr. Haritatos' business in Rome, New York.

Accordingly, Hasbro respectfully requests that the Court affirm Magistrate DiBianco's order that Plaintiff produce these and any other documents responsive to Hasbro's Requests Nos. 12, 13, and 14. Plaintiff filed this lawsuit and he cannot now complain about producing documents that so clearly rebut his claims.

---

[2] The identity of the purchases may be relevant if they are simply Mr. Haritatos' relatives.
[3] These are the documents that Plaintiff alleges Hasbro and the Court "vaguely and incorrectly identif[y] as Plaintiff's "customer lists." Plaintiff's semantic quibbling does not change the fact that Plaintiff possesses documents concerning his customers and their geographic location that are responsive to Hasbro's requests.

7

(2) **Mr. Haritatos' Sales And Revenues**

Plaintiff does not raise any objections to Magistrate DiBianco's order that Plaintiff produce all documents that show his sales and revenues related to products bearing his Candyland mark. See Exhibit B, Requests Nos. 15 and 38. These documents are relevant to the strength (or weakness) of Mr. Haritatos' alleged Candyland mark and the likelihood (or lack thereof) of consumer confusion stemming from Toys "R" Us's alleged use of Hasbro's CANDY LAND® mark in New York City. Accordingly, Hasbro respectfully requests that the Court affirm the Magistrate's Order.

(3) **Non-Party Use Of The Candyland Mark**

Plaintiff does not raise any objections to Magistrate DiBianco's order that Plaintiff produce all documents concerning any non-party's use of a mark that incorporates the word, "Candyland", or any similar name or mark. See Exhibit B, Requests Nos. 25 and 27. These documents are relevant to the strength (or weakness) of plaintiff's mark, whether Candyland is a generic name for a candy store, and whether Mr. Haritatos has abandoned any rights that he may have once had by acquiescing in third-party use of his alleged mark. Accordingly, Hasbro respectfully requests that the Court affirm the Magistrate's Order.

(4) **Alleged Use Of Hasbro's CANDY LAND® Mark By Toys "R" Us**

Plaintiff does not raise any objections to Magistrate DiBianco's order that Plaintiff produce all documents concerning the alleged use of Hasbro's CANDY LAND® mark by defendant Toys "R" Us. See Exhibit B, Request No. 26. These documents are obviously directly relevant to Plaintiff's factual allegations in this case. Accordingly, Hasbro respectfully requests that the Court affirm the Magistrate's Order.

(5) **Nora Haritatos' Application To Register The "Original Thin Shell Candy Turkey Joints" Mark**

Information regarding Nora Haritatos' 1976 application to register the "Original Thin Shell Candy Turkey Joints" mark is relevant to the instant proceeding precisely because, as Plaintiff admits, "[t]hat application was directed to a totally different trademark." Nora Haritatos is Plaintiff's deceased mother and at one time was also the name of Plaintiff's candy business. (In his recent deposition, Mr. Haritatos denied that "Nora Haritatos" was ever the name of his business, notwithstanding the fact that he applied to register two trademarks with the United States Patent and Trademark Office "doing business as Nora Haritatos.") The Nora Haritatos application with its product specimens will reveal the actual mark used by the Haritatos business in 1976 (when Plaintiff claims that the business was using the Candyland mark), establish that Hasbro is the prior user of the CANDY LAND mark, show that Plaintiff's use of his Candyland mark has been sporadic, at best, and demonstrate that Mr. Haritatos' testimony is not credible.

Accordingly, Hasbro respectfully requests that the Court affirm the Magistrate's order that Plaintiff produce all documents responsive to Hasbro's Request No. 39.

(6) **Mr. Haritatos' Legal Expenses**

In his deposition, Mr. Haritatos alleged as damages the costs that Mr. Haritatos has incurred in prosecuting this lawsuit as well as his opposition before the Trademark Trial and Appeal Board ("TTAB") to Hasbro's application to register its CANDY LAND® mark for use with beverages. See Exhibit D.1 (Tr. of Haritatos Depo. 5/17/06, at 283:19-284:12). Indeed, these were the *only* damages that Mr. Haritatos alleges he has suffered because of Toys "R" Us's alleged use of Hasbro's CANDY LAND® mark. Leaving aside the impropriety of bringing a lawsuit simply to recover the costs of the lawsuit brought (Plaintiff did not ask Defendants to

stop using Hasbro's CANDY LAND® mark before filing suit), Defendants are entitled to all documents concerning the damages Plaintiff claims, i.e., the legal fees and costs incurred by Mr. Haritatos in this civil action and any proceeding before the TTAB involving Hasbro, including but not limited to Mr. Purcell's bills and day notes.

        Plaintiff did not oppose Hasbro's request for documents related to legal expenses and day notes related to this litigation before the Magistrate; Plaintiff only objected to producing such documents related to the TTAB Opposition until the Court permitted him to amend his Complaint to add a claim for these damages. See Docket Entry 64. But the Magistrate's Order points out that the Court already ruled on Plaintiff's motion to amend his complaint and it is Plaintiff who has failed to file his amended complaint. Order at 8. Accordingly, Plaintiff has waived any objections to producing these documents.

        In any event, Mr. Haritatos has alleged these damages and Defendants obviously need to know both the extent of the damages alleged by Plaintiff and whether Mr. Purcell's bills were reasonable or he was billing his client for the vexatious and obstructionist behavior that has been so readily evident in this case. See, e.g., Exhibit H, Tr., 3/28/06, at 26:4-11 (Judge DiBianco noting that the "tremendous effort and waste of time [of Mr. Purcell's motion for sanctions] is beginning to approach ... vexatious litigation"); Order at 7 (Judge DiBianco noting that Plaintiff's refusal to respond to Hasbro's discovery requests is "unreasonable").

        Once again, Plaintiff suggests that Defendants or the Court should propose alternative means of discovery (without suggesting any himself) to ease the alleged burden of the production on Plaintiff and his counsel. But Plaintiff cannot claim that Defendants should pay his legal expenses and then obstruct Defendants' ability to test his claim. Accordingly, Hasbro

respectfully requests that the Court affirm the Magistrate's order that Plaintiff produce all documents concerning the legal fees and costs incurred by Mr. Haritatos in this civil action and any proceeding before the TTAB involving Hasbro, including but not limited to Mr. Purcell's bills and daynotes. See Exhibit B, Request No. 46; Exhibit E, Request Nos. 7-10.

### (6) Hasbro's First Set of Interrogatories and Second Set of Requests For Production

Plaintiff does not raise any objections to Magistrate Judge DiBianco's order that Plaintiff produce all documents responsive to Hasbro's Second Set of Requests For Production and answer Hasbro's First Set of Interrogatories. This discovery follows up on Mr. Haritatos' deposition testimony and is relevant to Plaintiff's claims and Hasbro's defenses in this case. Accordingly, Hasbro respectfully requests that the Court affirm the Magistrate's Order.

### CONCLUSION

For these reasons, we respectfully request that the Court affirm Magistrate Judge DiBianco's August 11, 2006 Order so that the parties can proceed with discovery.

Dated: September 11, 2006

Kim J. Landsman
(Bar Roll No. 513,364)
Michael D. Sant'Ambrogio
(Bar Roll No. 513,363)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone: 212-336-2980
Facsimile: 212-336-2985

*Attorneys for Defendant Hasbro, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing **HASBRO'S BRIEF IN OPPOSITION TO PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE DIBIANCO'S AUGUST 11, 2006 ORDER** to be filed electronically, with copies sent electronically to the counsel set forth below on September 11, 2006:

Robert E. Purcell, Esq.
Attorney for Plaintiff Spero Haritatos
Wall Marjama & Bilinski LLP
101 South Salina Street, Suite 400
Syracuse, New York  13202
(315) 425-9000

and

John G. McGowan Esq.
Attorney for Defendant Toys "R" Us
One Lincoln Center
Syracuse, New York  13202-1355
(315) 218-8121

_____
Michael D. Sant'Ambrogio