# EXHIBIT 1

# TO DECLARATION OF KIM J. LANDSMAN

UNITED STATES DISTRICT COURT                    1

NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------

SPERO HARITATOS,

        Plaintiff,

    -vs-                          05-CV-930

HASBRO, INC., and TOYS "R" US - NY LLC,

        Defendants.

------------------------------------------------------


        TELEPHONIC Conference, held at the

offices of WALL, MARJAMA & BILINSKI,

Syracuse, New York, on July 19, 2006,

before MARITA PETRERA, Registered

Professional Reporter and Notary Public

in and for the State of New York.



Dey's Centennial Plaza • 401 S. Salina St., Suite 100 • Syracuse, New York 13202
www.actionreporting.com • e-mail: actiondepo@aol.com
315-428-9311 • Fax: 428-9505 • 800-515-DEPO

APPEARANCES:                                                    2

For the Plaintiffs:

      WALL, MARJAMA & BILINSKI, LLP
      Attorneys at Law
      101 South Salina Street
      Suite 400
      Syracuse, New York 13202
      BY:  ROBERT E. PURCELL, ESQ.

For the Defendant Hasbro:

      PATTERSON, BELKNAP, WEBB & TYLER, LLP
      Attorneys at Law
      1133 Avenue of the Americas
      New York, New York 10036-6710
      BY:  KIM J. LANDSMAN, ESQ.
          MICHAEL SANT' AMBROGIO, ESQ.

For the Defendant Toys "R" Us:

      BOND, SCHOENECK & KING
      Attorneys at Law
      One Lincoln Center
      Syracuse, New York 13202
      BY:  JOHN G. MC GOWAN, ESQ.


           *         *         *

```
 1              Telephonic Conference Proceedings        3
 2                   MAGISTRATE DI BIANCO:  We have a
 3              couple of letters pending, the latest
 4              one is Mr. Purcell's letter of
 5              June 20th, but -- wait a second.  We
 6              have the latest letter is probably the
 7              July 14th letter from you, Mr. Landsman,
 8              but there's two other letters, one of
 9              June 20th, 2006, and that's
10              Mr. Purcell's, and one of June 26th, a
11              lengthy one from you, Mr. Landsman.
12              What I want to do is take them in sort
13              of reverse order but not strict reverse
14              order.
15                   First issue I want to raise or
16              cover, rather, is this mediation and
17              then the second one will be this
18              disclosure of Attorney Versace,
19              V-E-R-S-A-C-E.  That's the Americanized
20              pronunciation.  So let's talk briefly
21              about the mediation, Mr. Purcell.
22                   Your letter lays out your reasons
23              for mediation.  Is there anything, this
24              is a letter of June 20th, anything you
25              want to add to that, do that right now.
```

```
 1          Telephonic Conference Proceedings         4
 2                    MR. PURCELL:  I don't have anything
 3               further to add to that letter at this
 4               time.  Thank you.
 5                    MAGISTRATE DI BIANCO:  Mr. Landsman
 6               and Mr. McGowan, let me ask you,
 7               Mr. Landsman, in one of your letters,
 8               I'm not sure which one, you opposed the
 9               mediation.  Go through those briefly for
10               me, please.
11                    MS. LANDSMAN:  Kim Landsman.  The
12               reason for opposition to the mediation
13               is that we don't want to waste further
14               time in this case unless we have some
15               idea of or reason to believe that
16               there's going to be any success to the
17               mediation.  What we're really most
18               interested in at this point is getting
19               this case ready for summary judgment
20               motion.  What I -- the sense I get from
21               Mr. Purcell is that he has oversold his
22               client on this case and now wants some
23               neutral person to try to undersell his
24               client and it seems to me that's his
25               responsibility, not ours or a judge's or
```

1           Telephonic Conference Proceedings          5

2                      any kind of mediator's.  And he also

3                      seems to want to have a mediator try to

4                      talk Hasbro into a business deal that

5                      its business people are not interested

6                      in.  So unless we see that there's some

7                      reasonable possibility for success of

8                      the mediation, and we've asked

9                      Mr. Purcell to try to give us some idea

10                     of what his client has in mind, we just

11                     see this as another diversion and an

12                     expensive one at that.

13                         MAGISTRATE DI BIANCO:  Okay.  Let's

14                     break that down.  How do you see this as

15                     being expensive?  I want to review that

16                     first.

17                         MS. LANDSMAN:  The expense, your

18                     Honor, is that presumably this means

19                     everybody getting together for at least

20                     one day and preparing for that one day,

21                     mediation usually requires statements

22                     sent to the mediator ahead of time and

23                     that's an expense of time.  Getting

24                     everybody together in one place is an

25                     expense of time.  It would not just be

```
1              Telephonic Conference Proceedings          6

2                        me but presumably have to be a

3                        representative of Hasbro.

4                             MAGISTRATE DI BIANCO:   Okay.  But

5                        in terms of the cost of the mediation

6                        versus continued litigation, why would

7                        you think it's any more expensive than a

8                        few more steps in the litigation, or

9                        more discovery?

10                            MS. LANDSMAN:  Your Honor, I hope

11                       we haven't presented ourselves as being

12                       opposed to settlement.  We always try to

13                       settle a case.  Our opposition to this

14                       mediation is simply that from what we

15                       have seen so far and the settlement

16                       discussions we've had in the past, we

17                       just don't see this as having any

18                       likelihood of success and unless

19                       Mr. Purcell can give us some idea of

20                       where his client is, and he hasn't,

21                       there's no reason to change that view.

22                       I mean, obviously if we could settle

23                       this case on an acceptable basis that

24                       would be better than going forward with

25                       litigation, but I've just seen no reason
```

```
 1            Telephonic Conference Proceedings        7
 2                 to believe that that's possible.
 3                 MAGISTRATE DI BIANCO:  I have
 4            ambivalent feelings for you because I
 5            understand what you're saying, but it's
 6            also my position that mediation, so long
 7            as there is good faith efforts by both
 8            sides, that a mediation is helpful.  I
 9            don't know that it would need an entire
10            day and I don't know that it needs a
11            special mediator.  I think there are
12            individuals on the Northern District
13            list of approved mediators who could do
14            a credible job, but obviously if you
15            hire a private mediator that will add to
16            the expense.  Well, perhaps, perhaps
17            then that puts the ball in Mr. Purcell's
18            court and what I will direct then is
19            that without prejudice to any rights
20            that the plaintiff has, that Mr. Purcell
21            outline in some general terms what his
22            client hopes to get.  And obviously any
23            settlement negotiation or offer is
24            without prejudice to anything in the
25            litigation.
```

```
 1          Telephonic Conference Proceedings          8
 2                    So I'm going to direct that if
 3          Mr. Purcell and his client want the
 4          mediation, they should send a letter to
 5          the defendants and outline with some
 6          specificity the terms that they're
 7          looking for and if the defendants then
 8          think that there's some room to
 9          negotiate, then I'll direct that a
10          mediation occur.  I certainly am in
11          favor of mediation, but if the parties
12          are worlds apart then it doesn't make a
13          lot of sense.  And if it's unclear what
14          one side wants, especially in a case
15          like this where there may be lots of
16          different possibilities, then the
17          mediation may be wasteful.  But I am in
18          favor of mediation generally.  Anything
19          further on that subject?
20               MS. LANDSMAN:  No, your Honor.
21               MAGISTRATE DI BIANCO:  Then your
22          letter, Mr. Purcell, also talks about
23          this testimony of Mr., I don't know how
24          he pronounced it, I would pronounce it
25          Versace, but for spelling purposes, it's
```

1          Telephonic Conference Proceedings          9

2                    V-E-R-S-A-C-E, attorney Versace, in

3                    Rome.  You wanted a ruling from me that

4                    you are not precluded from utilizing

5                    him.  That's something that has to go to

6                    the trial judge.  If this case comes to

7                    trial, then the defendant can make a

8                    motion to preclude and you can oppose

9                    that.  Judge Hurd, it is Judge Hurd,

10                   isn't it?

11                        MR. MC GOWAN:  It is, your Honor.

12                        MAGISTRATE DI BIANCO:  Then Judge

13                   Hurd can rule on that.  As a matter of

14                   protocol, I don't make rulings that bind

15                   the trial judge; and even if I did make

16                   a ruling, I would make it clear that

17                   it's not binding because as things

18                   unfold in a trial, there may be reasons

19                   to allow late witnesses or not allow

20                   them.  So that's, I'm going to defer

21                   that for any trial.

22                        The other matters for the

23                   conference are in your letter,

24                   Mr. Landsman, of June 26th, 2006,

25                   six-page letter, and at the end you're

1
2    looking for some discovery.  Let me hear

3    briefly what's going on in case there

4    have been any changes since then.  That

5    letter is several weeks old.  What's the

6    status now of the discovery that you're

7    seeking?  Is it still outstanding?

8          MS. LANDSMAN:  Your Honor, again,

9    Kim Landsman.  We believe it is still

10   outstanding.  Mr. Purcell has been

11   dribbling in some documents to us over

12   the last week or so.  We got some

13   documents on July 7th and July 12th, but

14   I do not believe that they comply with

15   all of our requests and Mr. Purcell has

16   not made any representation that they

17   do.

18         MAGISTRATE DI BIANCO:  Okay,

19   Mr. Purcell, what's your response to

20   that please?

21         MR. PURCELL:  First, your Honor,

22   frankly I wasn't prepared to address

23   that letter during the telephone

24   conference today.  I inferred from your

25   order that we were only going to discuss

```
 1              Telephonic Conference Proceedings         11

 2                      the request for the extension of the

 3                      expert witness report dates and the

 4                      discovery deadline, generally.  But if

 5                      you permit me an opportunity to provide

 6                      a written response to the June 26th

 7                      letter, I think that may clarify our

 8                      position.  And then if Mr. Landsman

 9                      still believes that there's a need to

10                      have you intervene, then I guess we, you

11                      know, take it up with you at that time.

12                      I'd ask the opportunity to provide a

13                      written response to that.

14                          MAGISTRATE DI BIANCO:  And I

15                      forgot, frankly, slipped my mind, the

16                      expert report dates.  Let's talk about

17                      that and put this outstanding discovery

18                      off for a few minutes.  What about, just

19                      so many letters in this case, I'm losing

20                      track of issues.  They seem to be

21                      popping up daily.  What's this, what's

22                      the issue with the expert report date?

23                      You generally want an expansion of that

24                      time, Mr. Purcell?

25                          MR. PURCELL:  Yes.  Your Honor,
```

Telephonic Conference Proceedings                    12

1

2                this is the first request for extension

3                of time by any party, and as you can

4                well appreciate, factual discovery is

5                continuing.  We've had trouble setting

6                up depositions of the defendants'

7                witnesses.  We just took two days of

8                depositions of Toys "R" Us people last

9                week, I believe.  We are scheduled to

10               take depositions of Hasbro's people in

11               mid-August.  We continue to get

12               documents from Toys "R" Us, especially,

13               after even the July 1st date when our

14               plaintiff's expert report was due under

15               the current scheduling order, and it

16               just makes sense to have the experts

17               aware of what the facts are before

18               rendering opinions.  Otherwise we are in

19               a position where the experts are going

20               to be deposed and they're going to be

21               exposed, you weren't aware of this, you

22               weren't aware of that, there will be

23               motions to revise expert reports based

24               on newly discovered information and then

25               opposition to that and then request to

```
 1              Telephonic Conference Proceedings        13

 2                      redepose experts based upon the revised

 3                      opinion and information, so forth.   I'd

 4                      also like to emphasize, your Honor, that

 5                      when the parties initially proposed a

 6                      case management plan, the parties

 7                      proposed that there first be a factual

 8                      discovery cut-off date and then there be

 9                      a period for the submission of expert

10                      reports and expert discovery.

11                          The scheduling order issued by Your

12                      Honor did not have any sort of

13                      bifurcation of discovery, but the

14                      parties themselves had urged let's

15                      complete discovery first and then get

16                      into expert reports.

17                          It's obvious in this case that the

18                      factual discovery is far from complete

19                      and I think it would be just an

20                      expensive mess to try to prepare expert

21                      reports at this juncture.  That's why

22                      I've asked for the extension of time.  I

23                      don't think it would unduly delay

24                      things.  I am as interested in getting

25                      to trial in this as Mr. Landsman and
```

1        Telephonic Conference Proceedings        14

2                Mr. McGowan, but I think that the best

3                way to proceed would be to just have an

4                extension of time to allow us to get

5                this factual discovery relatively under

6                our belt and relatively complete before

7                getting experts involved.

8                MAGISTRATE DI BIANCO:  Let me hear

9                Mr. Landsman and Mr. McGowan's response

10               to that, please.

11               MS. LANDSMAN:  This is Kim

12               Landsman, again.  What I still haven't

13               heard from Mr. Purcell is any idea at

14               all of what this expert would be, and it

15               just seems to me like he's asking for a

16               delay for the sake of delay.  I cannot

17               imagine what Hasbro's witnesses are

18               going to say that would influence an

19               expert here because the only expert I

20               can imagine Mr. Purcell trying to use is

21               a survey expert and I haven't heard that

22               he has any concept of doing a survey.

23               There would be no reason to delay a

24               survey until factual discovery is over.

25               If there is some other expert that would

```
1                Telephonic Conference Proceedings        15

2                          depend on certain deposition testimony,

3                          I think that before Mr. Purcell asks for

4                          an extension, he should at least tell us

5                          what that is.

6                              MAGISTRATE DI BIANCO:  Okay.  Let

7                          me go back to Mr. Purcell then.  What's

8                          the nature of this expert testimony?

9                              MR. PURCELL:  Well, your Honor,

10                         first of all I take issue with, you

11                         know, the suggestion that I have to

12                         reveal the proposed testimony of my

13                         expert at this particular point in time.

14                         You may recall that in connection with a

15                         contest over the protective order, I

16                         wanted to have the undertaking signed by

17                         consulting and testifying experts

18                         revealed to the adversary before the

19                         experts could see documents.  That was

20                         resisted by my adversary so that

21                         consulting experts are still, whose

22                         identities are still kept secret.  If

23                         they have been testifying experts, of

24                         course they are revealed and undertaking

25                         is revealed and so forth.  So my
```

Telephonic Conference Proceedings                16

1
2          adversaries wanted to have the
3          consulting experts concealed and now
4          this angle, telling us all about the --
5              MAGISTRATE DI BIANCO:  No, no, the
6          question is really what type of expert
7          it is.  I'm not asking for his
8          testimony.  Is it an expert in
9          engineering, is it an expert in --
10             MR. PURCELL:  It's an expert in
11         trademark law and procedure, US
12         trademark law and procedure, and I will
13         firmly state to the court that I have
14         received an undertaking from the expert
15         and have paid retainer to the expert and
16         the expert has been provided with
17         several documents we received to date in
18         the lawsuit.  So this is not just a
19         hypothetical exercise, Your Honor.  I
20         have already undertaken those steps to
21         retain an expert who is in fact
22         retained, conflicts have been checked
23         and so forth.  So contrary to
24         Mr. Landsman's suspicion, it is again
25         not a hypothetical.

```
1              Telephonic Conference Proceedings          17
2                        MAGISTRATE DI BIANCO:  Okay.  Let
3              me go back to Mr. Landsman then.  Having
4              heard that, this expert will be in the
5              field of trademark law and procedure,
6              you folks still -- I guess I didn't ask
7              Mr. McGowan's opinion.  Let me hear from
8              Mr. McGowan.
9                        MR. MC GOWAN:  Your Honor, I really
10             don't have anything to add.  I think Kim
11             Landsman has said it well.  I understand
12             Mr. Purcell's response to this.
13                       MAGISTRATE DI BIANCO:  Okay.
14             Mr. Landsman, any further response then?
15                       MR. LANDSMAN:  Yes, Your Honor.
16             Two things.  First of all, I can't
17             imagine the court accepting an expert
18             testimony on what the law is.  That's
19             for the court to decide.  That kind of
20             testimony has been thrown out for
21             decades.  I mean it used to be in patent
22             cases that judges occasionally would do
23             that and they don't even do that in
24             patent cases anymore.  So this is not an
25             expert that the court is -- I think,
```

1
2      should take any cognizance on.  But
3      secondly, to the issue of the deadline,
4      you certainly don't need testimony from
5      Hasbro's business people or licensing
6      negotiators to have an expert testify on
7      trademark law.  There's just -- there's
8      no excuse for having this expert and
9      there's no excuse for delaying
10     disclosure of the expert if he has one.
11          MAGISTRATE DI BIANCO:  I think that
12     for the time being I'm going to defer,
13     defer that question.  I may want to look
14     at the history of this case.  I'm
15     somewhat inclined to agree with
16     defendants.  Whether the expert is
17     allowed of course is for the trial judge
18     and I shouldn't be usurping trial
19     judge's function.  But it does seem to
20     me that if it's an expert in trademark
21     procedure, that the using the testimony
22     from business people or other marketing
23     people or anybody in the company that
24     had nothing to do with the trademark
25     would be, would be irrelevant and the

```
1            Telephonic Conference Proceedings          19

2                  experts don't need that.  I can

3                  understand some reasonable extension,

4                  but I certainly would not extend it

5                  beyond the close of all discovery since

6                  discovery seems to be never ending at

7                  this point.  All right.

8                       I think that's all we'll cover.

9                  Mr. Purcell, Mr. Landsman laid out in

10                 his letter of June 26th, 2006, some very

11                 clear requests on pages 5 and 6 for

12                 discovery.  I've taken a look at

13                 Mr. Landsman's letter, it makes a lot of

14                 sense in terms of the relevance of these

15                 documents, and I'm prepared to order

16                 those, the production of those documents

17                 within weeks unless you can show to me

18                 the reasons and convince me of the

19                 reasons not to have those produced.  So

20                 I will allow you one opportunity to

21                 respond to Mr. Landsman's letter of

22                 June 26th.  How much time do you want to

23                 do that?

24                      MR. PURCELL:  I could have

25                 something by the end of this week, maybe
```

```
 1              Telephonic Conference Proceedings        20

 2                   Monday, Monday, would that be okay?

 3                        MAGISTRATE DI BIANCO:  Fine.

 4                   Today's Wednesday, is it.  Next

 5                   Wednesday is fine -- next Tuesday is

 6                   fine.  And then Mr. Landsman, if you

 7                   want a very brief reply, I'm going to

 8                   have Mr. Purcell's response of two

 9                   pages, you can have that by the

10                   following, by Friday of next week.

11                   You'll have Mr. Purcell's response by

12                   close of business Tuesday, and then I

13                   will rule on that.

14                        MS. LANDSMAN:  Thank you, your

15                   Honor.

16                        MAGISTRATE DI BIANCO:  Anything

17                   further that involves scheduling or

18                   anything like that?

19                        MR. PURCELL:  Yes, your Honor.

20                   This is Bob Purcell.  I'm asking for

21                   clarification with regard to your ruling

22                   on the request to extend the due dates

23                   for the expert witness reports.  This is

24                   a very critical matter as far as my case

25                   is concerned, and if you're denying my
```

| | |
|---|---|
| 1 | Telephonic Conference Proceedings               21 |
| 2 | motion, I'd like to know that so I can |
| 3 | at least have the opportunity to appeal |
| 4 | within 10 days to the District Court |
| 5 | judge, or at least ask, maybe put my |
| 6 | thoughts about why the expert needs |
| 7 | stuff from the business people to you |
| 8 | within a week or something like that. |
| 9 | You mentioned that you would be |
| 10 | entertaining reasonable extension |
| 11 | through the end of discovery cut-off |
| 12 | date which I think is September 29th in |
| 13 | this case, so I guess I'm a little |
| 14 | uncertain as to what your ruling was in |
| 15 | regard to my request. |
| 16 | MAGISTRATE DI BIANCO:  The ruling |
| 17 | was I'm reserving decision on that and I |
| 18 | will probably, when I issue the decision |
| 19 | on the discovery requested by |
| 20 | Mr. Landsman, include that in that |
| 21 | order. |
| 22 | MR. PURCELL:  Would you entertain |
| 23 | further argument in the form of a letter |
| 24 | to you on that point as to why I believe |
| 25 | that the trademark law and procedure |

```
 1              Telephonic Conference Proceedings          22

 2                    expert would reasonably need some of the

 3                    evidence that's been only produced

 4                    relatively recently?

 5                        MAGISTRATE DI BIANCO:  Yes.  If

 6                    it's short.  No more than three pages.

 7                    And Mr. Landsman, you can respond no

 8                    more than three pages but that has to be

 9                    done within the same time frame as the

10                    submissions on the discovery requested

11                    by Mr. Landsman.  All right, anything

12                    further?  Thank you all.

13                        MR. PURCELL:  Thank you, your

14                    Honor.

15

16             *                *                *

17

18

19

20

21

22

23

24

25
```

## REPORTER'S CERTIFICATE

I, MARITA PETRERA, Court Reporter and Notary Public, certify:

That the foregoing proceedings were taken before me at the time and place therein set forth, at which time the witness was put under oath by me;

That the testimony of the witness and all objections made at the time of the examination were recorded stenographically by me and were thereafter transcribed;

That the foregoing is a true and correct transcript of my shorthand notes so taken;

I further certify that I am not a relative or employee of any attorney or of any of the parties nor financially interested in the action.

*Marita Petrera*

MARITA PETRERA, RPR, CLR

Notary Public

# EXHIBIT 2

# TO DECLARATION OF KIM J. LANDSMAN

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

July 14, 2006

Kim J. Landsman
(212) 336-2980
Direct Fax  (212) 336-2985
kjlandsman@pbwt.com

**Filed Electronically**

Honorable Gustave J. DiBianco
United States Magistrate Judge
United States Courthouse
PO Box 7396
100 South Clinton Street
Syracuse, New York 13261

Re:    **Haritatos v. Hasbro, Inc. and Toy 'R Us-NY LLC,**
        **Civil Action 05-CV-930**

Dear Judge DiBianco:

        We are counsel for defendant Hasbro, Inc. ("Hasbro") and write in response to another letter from Mr. Purcell to the Court.  Mr. Purcell has asked the Court to extend by three months the deadline for submitting expert reports and the close of all discovery.

        In response to Mr. Purcell's request for our consent to this extension, we asked him to explain why his client was unable to name an expert and produce an expert report within the existing deadlines – that is, what type of expert he has in mind and why the opinion of such an expert would depend on Hasbro's deposition testimony.  *See* Exhibit 1 hereto.  Mr. Purcell has not, however, provided any such information either to us or to the Court.

        The only expert that we can conceive of Plaintiff retaining in the context of this trademark litigation would be a survey expert who would design a consumer survey to test whether there is any likelihood of confusion between Mr. Haritatos' store in Rome and use of Hasbro's CANDY LAND® mark and visual graphics in connection with the candy department of Toys 'R Us's Times Square store.  We see no reason why such an expert needs to await the testimony of defendants' witnesses.  Moreover, Mr. Haritatos himself testified that he has no reason to believe that there has been any such confusion.  *See* Exhibit 2 hereto.  Therefore, it seems unlikely that Mr. Purcell intends to proceed with such a survey.

Honorable Gustave J. DiBianco
July 14, 2006
Page 2

    Accordingly, we respectfully request that the Court deny Plaintiff's motion to
extend the discovery deadlines.

             Respectfully submitted,

             Kim J. Landsman

cc:  Robert E. Purcell, Esq. (e-mail)
   John G. McGowan, Esq. (e-mail)

# Exhibit 1

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

June 26, 2006

Michael D. Sant'Ambrogio
(212) 336-2436
Direct Fax (212) 336-7948
mdsantambrogio@pbwt.com

**By E-Mail and Mail Confirmation**

Robert E. Purcell, Esq.
Wall Marjama & Bilinski LLP
101 South Salina Street, Suite 400
Syracuse, NY  13202

Re:    **Haritatos v. Hasbro**

Dear Bob:

I am writing in response to several issues raised in your June 15 and June 21, 2006 emails to Kim Landsman.

Depositions of Hasbro's Witnesses

During our telephone conversation on June 14, 2006, we asked you how much time you wanted with each witness and you stated that you intend to take five hours each with Ritson-Parsons and Klusaritz and six hours with Dubosky. We responded that that seemed excessive. After all, you originally noticed Ritson-Parsons for no more than two hours, Klusaritz for a deposition beginning at 4:00 p.m., and Dubosky for a four hour deposition. Nevertheless, we agreed to accommodate your request.

Your more recent request for seven hours with each witness is clearly excessive and designed to harass Hasbro and its witnesses. The witnesses you have chosen to depose are all busy executives and at least one has already had to rearrange his business plans, at some inconvenience to the company, in order to accommodate your request that we produce the witnesses on the three consecutive days that you requested in August.

We will make the witnesses available at the times and dates previously stated and for the time you requested on June 14, although we continue to believe that even that is excessive and far more time than you will be able to put to productive use.

Candyland.com

The lawsuit in Seattle concerning the "candyland.com" domain name is not relevant.

Robert E. Purcell
June 26, 2006
Page 2

### Expert Reports

To evaluate your request for any extension of time to serve expert reports we would need to know what expert you have in mind and why you do not believe you can serve their reports within the time originally allotted.

### Document Redactions

We will provide you with unredacted copies of the document bearing production numbers HG000450 through HG000461, which potentially relates to Candy Land® among eight different Hasbro properties. In addition, we will un-redact the financial information contained in HG000447, HG000448, HG000830, HG000833-HG000835, and HG001532 that relates to the Candy Land® brand.

The rest of the redacted information contained in the documents cited in your June 15, 2006, email to Kim Landsman are either not responsive to your document requests or they are protected by the attorney-client privilege. The vast majority of this material concerns Hasbro properties that are not at issue in this case (*i.e.*, not Hasbro's Candy Land® brand). In addition, HG000421, HG000424, HG000437, HG000889, HG0001341 contain material protected by the attorney-client privilege. Hasbro will include these redactions on its privilege log and suggests that the parties exchange their privilege logs by July 10, 2006.

Sincerely yours,

Michael D. Sant'Ambrogio

cc: John G. McGowan, Esq. (by e-mail)

# Exhibit 2

1                                                          1

2                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF NEW YORK
3

4      *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

5      SPERO HARITATOS,

6                          Plaintiff,

7              -vs-                Index No.:
                                  05 CIV 930 (DNH/GJD)
8
       HASBRO, INC. and
9      TOYS "R" US-NY LLC,

10                        Defendant.

11     *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

12

13                      Examination Before Trial of

14              **SPERO T. HARITATOS**, Plaintiff, held at

15              the offices of BOND, SCHOENECK & KING,

16              PLLC, Syracuse, New York, on May 17,

17              2006, before MELISSA A. LANNING, Court

18              Reporter and Notary Public in and for

19              the State of New York.

20

21

22

23

24                                            *ORIGINAL*

25



**MELISSA A. LANNING, CSR**          239 Northland Drive
                                     Central Square, New York 13036
                                     (315) 676-2584

2

APPEARANCES:

For the Plaintiff:
                        WALL, MARJAMA & BILINSKI, LLP
                        Attorneys at Law
                        101 South Salina Street, Suite 400
                        Syracuse, New York  13202
                        BY: **ROBERT E. PURCELL, ESQ.**


For the Defendant, Hasbro, Inc.:
                        PATTERSON, BELKNAP, WEBB & TYLER,
                                                        LLP
                        Attorneys at Law
                        1133 Avenue of the Americas
                        New York, New York  10036-6710
                        BY: **MICHAEL D. SANT'AMBROGIO, ESQ.**


For the Defendant, Toys "R" Us - NY, LLC:
                        BOND, SCHOENECK & KING, PLLC
                        Attorneys at Law
                        One Lincoln Center
                        Syracuse, New York  13202
                        BY: **JOHN G. McGOWAN, ESQ.**

1
2   and Hasbro?
3       A.    No.
4       Q.    Okay.  And you're not aware of anybody who
5   was confused about the origins of the goods that
6   Toys "R" Us was selling in their candy department,
7   right?
8       A.    No.
9       Q.    Okay.  You don't have any reason to believe
10  that anyone would have been confused by the goods that
11  are being -- strike that.
12          You have no reason to believe that anyone
13  would have been confused about the origins of the goods
14  that were being sold in the Toys "R" Us candy
15  department since 2001?
16      A.    I can't say that.  I don't know.
17      Q.    What I'm asking you, sir, is do you have any
18  reason to believe that anyone was confused about the
19  origin of the goods sold in Toys "R" Us candy
20  department since 2001?
21      A.    Well, I can't say that.
22      Q.    Do you have a reason to believe that they
23  would have been confused?
24      A.    I don't.
25      Q.    It's a "yes" or "no" question.

SPERO T. HARITATOS                 314

1

2       A.    No.

3       Q.    No.  Do you have any reason to believe that

4   any of the visitors to the Toys "R" Us Times Square

5   store are aware of your business?

6       A.    I don't know.

7       Q.    But you have no reason to believe that they

8   are aware of your business?

9       A.    I don't know that.

10       Q.    Do you have any reason to believe that they

11   are aware of your business; yes or no?

12       A.    I have no reason not to.

13       Q.    Okay.  Do you advertise in New York City?

14       A.    No, I don't.

15       Q.    Okay.  So how would they know about your

16   business?

17       A.    That is if they came from Rome.

18       Q.    So if they came from Rome they might know

19   about your business?

20       A.    Yeah, Rome, Utica, Syracuse.

21       Q.    Any other reason?

22       A.    No.

23       Q.    And you testified to Mr. McGowan that you

24   have not lost any sales as a result of Toys "R" Us

25   candy department; is that correct?

SPERO T. HARITATOS                    315

1

2    A.    That I know of.

3    Q.    You're not aware of it?

4    A.    I'm not aware of any.

5    Q.    Of any sales that you've lost as a result of

6    candy sold in the Toys "R" Us candy department?

7    A.    Correct.

8    Q.    Okay.  And do you have any reason to believe

9    that a consumer who walked into Toys "R" Us candy

10   department would confuse -- I'm sorry.

11         Actually, let me direct your attention to

12   Exhibit 22; that's the Candyland mark.  Do you have any

13   reason to believe that a consumer who walked into the

14   Toys "R" Us candy department would believe that this

15   Candyland mark, Hasbro's Candyland mark, was associated

16   with your turkey joints in any way?

17   A.    Well, they could if they're from our area.

18   It's possible.  It's very possible.

19   Q.    Why?

20   A.    Because they know our Candyland.

21   Q.    But you've said there's no similarity

22   between the marks?

23   A.    I've said there's no similarity.  You're

24   asking if a customer would.  So you're asking me my

25   opinion on it, and I'm telling you.

**EXHIBIT 3**

**TO DECLARATION OF KIM J. LANDSMAN**

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

July 28, 2006

Kim J. Landsman
(212) 336-2980
Direct Fax (212) 336-2985
kjlandsman@pbwt.com

**Filed Electronically**

Honorable Gustave J. DiBianco
United States Magistrate Judge
United States Courthouse
PO Box 7396
100 South Clinton Street
Syracuse, New York 13261

> Re:    **Haritatos v. Hasbro, Inc. and Toy 'R Us-NY LLC,**
>        **Civil Action 05-CV-930**

Dear Judge DiBianco:

      We are counsel for defendant Hasbro, Inc. ("Hasbro") and write in response to
Mr. Purcell's July 26, 2006, letter to the Court requesting to extend the discovery deadlines,
including the deadline for disclosing expert witnesses.  Plaintiff seeks an extension of the
deadlines to disclose an expert on U.S. trademark law and procedure on the grounds that he
could not disclose his expert prior to the testimony of Defendants' witnesses.  But Plaintiff has
failed to explain why his expert needs the testimony of Defendants' business people to "assist the
trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.

      Plaintiff appears to believe that he can present expert testimony as to trademark
law and procedure, but the courts in this circuit have not allowed such testimony.  "[T]he expert
testimony of an attorney as to an ultimate issue of domestic law or as to the legal significance of
facts is inadmissible."  Motown Prod., Inc. v. Cacomm, Inc., 668 F. Supp. 285, 288-89 (S.D.N.Y.
1987), rev'd on other grounds, 849 F.2d 78 (2d Cir. 1988) (excluding affidavit of trademark
lawyer opining that trademark was "suggestive").  "It is not for witnesses to instruct the jury as to
applicable principles of law, but for the judge."  U.S. v. Scop, 846 F.2d 135, 140 (2d Cir. 1988)
(citing Marx & Co., Inc. v. Diners' Club Inc., 550 F.2d 505, 509-10 (2d Cir. 1977)).  "[T]he
Second Circuit applies strict standards to the admissibility of expert opinions, disagreeing with
other circuits when necessary[.]"  Kidder, Peabody & Co., Inc. v. IAG Int'l Acceptance Group,
14 F. Supp. 2d 391, 404 (S.D.N.Y. 1998).

      Plaintiff cites a single case from a district court in Illinois for the proposition that
it is "standard practice" for parties to offer expert testimony on trademark law and procedures,
but the case actually refutes his position.  In Sam's Wines & Liquors Inc. v. Wal-Mart Stores
Inc., 32 U.S.P.Q.2d 1906, 1912 (N.D. Ill. 1994), plaintiff offered an expert to testify concerning

Honorable Gustave J. DiBianco
July 28, 2006
Page 2

"the procedures, standards, customs, usage, and practices in the United States Patent &
Trademark Office ("PTO") and among in-house trademark counsel and the trademark bar."  Id.
The court allowed testimony on "the technical aspects of applying for and obtaining a federal
trademark registration" and "the similarities of the parties' respective marks" but precluded the
expert from testifying "on the legal standards applicable to this case or the results of her legal
research as they apply to the ultimate issue of trademark infringement or likelihood of
confusion."  Id. at 1913.  The procedures of the PTO are not at issue in this case and Plaintiff
admits there are no similarities between the marks at issue as the parties use them, see Exhibit 1
hereto, so the case is unhelpful to him.  Moreover, the testimony of Hasbro's business people is
irrelevant to any such opinion.

        Mr. Purcell's letter lists several proposed subjects of testimony for his expert, but
the only subjects cited in Mr. Purcell's letter that might relate in any way to Hasbro's business
people are "Hasbro's [alleged] efforts to acquire Plaintiff's rights in his registered trademark and
whether Defendant Hasbro's activities in licensing its allegedly infringing trademark to Toys 'R
Us and others were willful and in bad faith."  That states the conclusion he expects from his
expert but does not explain why his expert needs the testimony of Hasbro's business people.  In
sum, Mr. Purcell still has not explained why his client was unable to name an expert and produce
an expert report within the existing deadlines.

        Plaintiff has repeatedly delayed the progress of this case, first by obstructing the
entry of a protective order, then by waiting until late in discovery to notice the depositions of
Defendants' employees.  He should not now be allowed to further delay the case when he cannot
articulate a proper subject for his proposed expert's testimony or why his expert needs the
testimony of Hasbro's business people to offer an expert opinion.  Merely stating that his
"expert's testimony will be intertwined with the unique facts of this case" is simply conclusory
and unhelpful.

        Accordingly, we respectfully request that the Court deny Plaintiff's motion to
extend the discovery deadlines.

                                        Respectfully submitted,

                                        Kim J. Landsman

cc:     Robert E. Purcell, Esq. (e-mail)
        John G. McGowan, Esq. (e-mail)

1297704v2

# Exhibit 1

1

2                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF NEW YORK

3

4     *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

5    SPERO HARITATOS,

6                            Plaintiff,

7           -vs-                    Index No.:

                                  05 CIV 930 (DNH/GJD)

8

     HASBRO, INC. and

9    TOYS "R" US-NY LLC,

10                           Defendant.

11    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

12

13                       Examination Before Trial of

14                    SPERO T. HARITATOS, Plaintiff, held at

15                    the offices of BOND, SCHOENECK & KING,

16                    PLLC, Syracuse, New York, on May 17,

17                    2006, before MELISSA A. LANNING, Court

18                    Reporter and Notary Public in and for

19                    the State of New York.

20

21

22

23

24

25

SPERO T. HARITATOS                310

1  happens to every witness, and it happens to a lot of
2  lawyers, too.
3       All right.  Let's take a look at the jar for
4  your turkey joints.
5       A.   All right.
6       Q.   Are there any similarities between the
7  turkey joints mark and Hasbro's Candyland mark?
8       A.   No, I don't believe so.
9       Q.   Okay.  They're not the same color, correct?
10      A.   Correct.
11      Q.   In fact, they're written in different
12  scripts, correct?
13      A.   I guess so.
14      Q.   And Hasbro uses two words in it's Candyland
15  name and you use one word in your Candyland name in
16  your turkey joints mark, correct?
17      A.   Correct.
18      Q.   So there's a different number of words
19  between the two marks?
20      A.   Yes.
21      Q.   Okay.  The overall design of the two marks
22  is different, correct?
23      A.   Correct.
24      Q.   And the overall impression created by the

SPERO T. HARITATOS                311

1  two marks is different, correct?
2       A.   Correct.
3       Q.   Okay.  Has anyone ever told you that
4  Hasbro's Candyland mark is similar in the way it looks
5  to your turkey joints mark?
6       A.   I remember a long time ago someone mentioned
7  it years ago.
8       Q.   They mentioned what?
9       A.   That it's very -- it's similar to ours.
10      Q.   When did this happen?
11      A.   Oh, a long time ago.
12      Q.   Ten years ago?
13      A.   Yeah.  I don't know.  I don't remember.
14      Q.   More than ten years, or less than ten
15  years?
16      A.   It could have been more than ten years.
17      Q.   And who was this person?
18      A.   I don't know.  Just a customer brought it
19  up.
20      Q.   Somebody who had walked into your store?
21      A.   Yeah, I believe so.
22      Q.   And what did they say?
23      A.   Nothing.  That it looked very similar to
24  ours.

SPERO T. HARITATOS                312

1       Q.   They said that Hasbro's Candyland board game
2  mark looked similar to your turkey joints mark?
3       A.   The Candyland mark, the original Candyland.
4  It still looked like Candyland.
5       Q.   Do you think that there's any similarity?
6  You just testified that there is no similarity between
7  the two marks, correct?
8       A.   Yes.  I don't see it.
9       Q.   Okay.  And has anyone ever inquired about a
10  relationship between your business and Toys "R" Us?
11      A.   A relationship?
12      Q.   (Nodding.)
13      A.   I don't believe so.
14      Q.   Has anyone ever inquired about any
15  association between you and Toys "R" Us?
16      A.   I don't believe so.
17      Q.   Okay.  And has anyone ever inquired about a
18  relationship between you and Hasbro?
19      A.   Except for -- no.  Except for McLaughlin at
20  the time.
21      Q.   Hasbro's --
22      A.   Hasbro's McLaughlin.
23      Q.   Aside from some person from Hasbro, has
24  anyone ever inquired about a relationship between you

SPERO T. HARITATOS                313

1  and Hasbro?
2       A.   No.
3       Q.   Okay.  And you're not aware of anybody who
4  was confused about the origins of the goods that
5  Toys "R" Us was selling in their candy department,
6  right?
7       A.   No.
8       Q.   Okay.  You don't have any reason to believe
9  that anyone would have been confused by the goods that
10  are being -- strike that.
11      You have no reason to believe that anyone
12  would have been confused about the origins of the goods
13  that were being sold in the Toys "R" Us candy
14  department since 2001?
15      A.   I can't say that.  I don't know.
16      Q.   What I'm asking you, sir, is do you have any
17  reason to believe that anyone was confused about the
18  origin of the goods sold in Toys "R" Us candy
19  department since 2001?
20      A.   Well, I can't say that.
21      Q.   Do you have a reason to believe that they
22  would have been confused?
23      A.   I don't.
24      Q.   It's a "yes" or "no" question.