# EXHIBIT A

Case 6:05-cv-00930-DNH-GJD   Document 85-2   Filed 09/26/06   Page 2 of 7

# INTELLECTUAL PROPERTY COUNSELING AND LITIGATION

## VOLUME 5

**GENERAL EDITORS**

Lester Horwitz
Ethan Horwitz



LexisNexis™
Matthew Bender®

## § 83.03  Care and Handling of Experts

> Trial counsel can not, and probably should not, march alone into battle. If counsel is to employ a trademark expert, counsel might as well seek that expert's help in preparation for trial. Almost without doubt, counsel will call a survey expert to the stand. Maybe two.

Trademark trial counsel is the vanguard of the client's courtroom war machine, but he or she is not an army of one. Trial counsel often has on hand for support and added perspective at least two distinct experts: the trademark expert and the survey expert, though the latter is more common still than the former. The work of the survey expert, whether done specifically in anticipation of litigation or as an earlier marketing effort, informs necessary testimony and evidence in most trademark cases. The trademark expert's contribution, however, is growing lately in value.

### [1]—Your Trademark Expert

Back in the day, the so-called "trademark expert" was seldom one of the *dramatis personae* of the trademark trial. Then, trademark trials were almost always bench trials, and the judge was not usually inclined to listen to a lawyer testify as an expert in trademark law. The law was rather something for counsel to brief and argue. Now, though, with more and more cases coming before juries, the trademark expert has become a fixture of trademark trials.

**[a]—Who Should Be Your Trademark Expert.** By definition, your trademark expert must be one who is "expert" in trademark law or procedures (or at least that much at issue in the case). And he or she should be one whose credentials "sell" him or her as an expert to the judge or jury. These are distinctly different criteria; one does not always come with the other. For example, an expert might know everything there is to know, but if the jurors are not impressed with that person's credentials, they may accord his or her testimony no weight. On the other hand, a pedigree never helped anyone on cross-examination.

Some who might be considered as trademark experts are: former Commissioners, former officials in the Trademark Examining Division of the Patent and Trademark Office, professors of law who teach trademark courses, authors of treatises or articles on trademark law, retired corporate trademark counsel, and trademark law practitioners.

**[b]—Your Trademark Expert Can Help Counsel and Case.**

*[i]—Trial Preparation.* A trademark expert can help first with the pretrial preparation of your case. Unlike the busy partner unable to give sufficient attention to the case to be particularly helpful, the expert will be available to offer another, often invaluable perspective of the strategies counsel is considering.

§ 83.03[2]                    TRIAL TECHNIQUES                         83–14

   *[ii]—Expert Testimony.* There are several aspects of your case about which your trademark expert might offer testimony at trial:

   - Searching procedures: How easy is it to do a search? How costly? How does one search? What databases? What would a search reveal?
   - Procedures in the Patent and Trademark Office: What are the requirements of an application? the examination process? oppositions and cancellations?
   - Third party uses and registrations.
   - Categorization of marks, and to explain (desirably with examples) the spectrum of distinctiveness: In the opinion of this expert, where on the spectrum of distinctiveness does this mark fall?

   In short, counsel might use a trademark expert for almost any facet of a trademark trial. As with other experts, though, attorneys often overreach with trademark experts. Counsel should take care, therefore, not to elicit from the trademark expert conclusions outside that expert's bailiwick or unsupported by the facts of the case.

### [2]—Your Survey Expert

   The rare trademark case will contain no issue on which the results of a survey would bear. For example, if the sole issue of a case were priority of use between two claimants to a mark, a survey would shed no light. In other cases, a survey is unnecessary because sufficient other evidence exists—for example, in the likelihood of confusion case when there are many actual confusion witnesses and good evidence of the defendant's wrongful intent in adopting and using the mark of the plaintiff.

   But in fact in almost every trademark case a survey is of use. In a significant number, it is necessary. The lawyer for the trademark owner seeking to show likelihood of confusion is rolling the proverbial dice without a survey if the quantity and quality of the other evidence is anything less than outstanding. The lawyer seeking to show secondary meaning will find a survey the surest and safest way of establishing that key element. The lawyer seeking to show that a mark is generic, or not generic, can best show that by survey. Surveys are useful regarding other issues as well in trademark cases, and they are hugely important to the trial of these cases.

   The decision whether a survey is to be taken in any case will have been made long before trial, and the results disclosed to the other party. By trial time, the survey expert will likely have been deposed, and will have been prepared for those sessions. However, counsel must allocate sufficient time at the trial or just before it once again to carefully prepare the survey expert—the case might just be riding on the persuasiveness of the survey expert's testimony to the judge or jury.

**[a]—Direct Examination of Your Survey Expert.** On the stand, the expert should testify that appropriate methodology was followed in conducting the survey. Specifically, the expert might testify on direct examination that:

- the proper universe was examined;
- a representative sample was drawn from that universe;
- the mode of questioning the interviewees was correct;
- the persons conducting the survey were recognized experts;
- the data gathered was accurately reported;
- the sample design, the questionnaire, and the interviewing were in accordance with generally accepted standards of objective procedures and statistics in the field of such surveys;
- the sample design and the interviews were conducted independently of the attorneys; and
- the interviewers, trained in the field, had no knowledge of the litigation or the purpose for which the survey was to be used.

Again, counsel must take pains not to elicit or allow conclusions from the expert not supported by the survey results. Such overreaching often leaves the survey expert vulnerable on cross-examination to impeachment that destroys or severely diminishes the credibility of all of that expert's testimony.

**[b]—Use of a Second Independent Survey Expert.** If the budget for the case will allow, it is desirable often to employ a second independent survey expert. In that instance, your expert who conducted the survey can testify concerning the methodology points mentioned above without drawing a conclusion from the survey. The second expert can then draw a conclusion from the survey; in addition, this second expert can, if necessary, bolster the trustworthiness of the survey and, if appropriate, critique the survey taken by your adversary.

**[c]—Degree of Care in Conducting the Survey.** Surveys taken in anticipation of or in preparation for litigation are typically more rigorous than surveys taken for other uses. For example, little or no verification of results might follow surveys taken for simple market research, rather than for litigation.[1] In surveys used for litigation, verification is important, though the extent of verification will vary depending on the particular situation. The more rigorous standards applicable to the survey of a particular case should be carefully explained to the trier of fact. That will add to the confidence the judge or jury has in the survey.

---

[1] Verification is the procedure whereby interviews are monitored in progress, or where the interviewees are called later to confirm that they in fact participated in the survey.

§ 83.03[2][d]           TRIAL TECHNIQUES                    83–16

Specifically, the survey expert should testify on direct examination concerning the degree of care exercised in conducting the survey. The expert should also testify as to the projectability of the results and the expert's confidence in the results. Alternatively, and always where the expert lacks the expertise to do so, projectability and confidence might be elicited from a statistician. But most survey experts have sufficient training in statistics to testify as to projectability and confidence.

**[d]—Exhibits to Be Used With Your Survey Expert.** Counsel should give special consideration to exhibits to be used with the survey expert. The questionnaire and the tabulated results will of course be used, but counsel should not count on their being a great deal of help to the jury (or maybe even the judge). After spending thousands of the client's dollars on the survey itself, and additional thousands on the lawyers' time, counsel simply must not throw that investment out by failing to communicate to the trier of fact the meaning of the survey data counsel wishes to convey.

Testimony of the expert witness is certainly important, but seeing it may be even more important to the trier of fact. The longer the trial, the more witnesses there are, the more complex the issues, the more important actually seeing things becomes. And the jurors should see something they can readily understand. For example, an enlarged chart showing the results in big numbers, or color-coded bar graphs (especially if subsets were used in the survey), to the operative question in the survey. Several such charts and graphs might be useful; but computer printouts, standing alone, usually just won't get the job done because pages of numbers are difficult for the ordinary person to follow and comprehend. The computer printouts, however, should generally be introduced and used as back-up and support for the other charts and graphs.

### [3]—Before Your Experts Take the Stand

Here we consider how you should prepare your experts generally to testify— but briefly; rather than repeat what has been written elsewhere about the preparation of experts, we should address the particular concerns of counsel calling experts in a trademark case:

**[a]—Prepare Your Experts to Speak to the Jury.** Lawyers tend to speak in legalese, which many jurors can not understand. Without adequate foundation, we can not expect the ladies and gentlemen of the jury to understand what "secondary meaning" is. Nor will the jury appreciate the crucial distinction between "generic" and "merely descriptive," or survey terms such as "universe" and "projectability." As a result, you must prepare your experts to speak clearly and simply to the jurors, to eliminate or at least minimize the legalese, to use ordinary words and short sentences. Remember, though: while you want your

experts to talk to the jury, you do not want your experts to talk *down* to the jury.

**[b]—Prepare Your Experts Not to Appear Arrogant.** Some experts tend to come across as arrogant. Your preparation must encourage and emphasize humility. To err is human; to admit error negates arrogance. Likewise, to admit uncertainty, when the expert is truly uncertain. Be sure as counsel to identify and deal with areas of uncertainty before your expert takes the stand, though.

The experts who can do these things without invading the province of the jury will be especially effective. Your experts should put the proverbial pieces together for the trier of fact without announcing the solution to the puzzle.