# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
SPERO HARITATOS,                                     :
:
Plaintiff,                          :          05 Civ. 930 (DNH/GJD)
:
- against -                                :
:
HASBRO, INC.                                         :
and TOYS "R" US-NY LLC,                               :
:
Defendants.               :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**DEFENDANT HASBRO, INC.'S REPLY BRIEF IN SUPPORT OF
DEFENDANT'S MOTION TO PRECLUDE
<u>THE EXPERT TESTIMONY OF SEIGRUN D. KANE</u>**



Kim J. Landsman (Bar Roll No. 513,364)
Michael D. Sant'Ambrogio (Bar Roll No. 513,363)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone:  212-336-2980

*Attorneys for Defendant Hasbro, Inc.*

Defendant Hasbro, Inc. ("Hasbro") respectfully requests the Court's permission to submit this reply memorandum of law in support of its motion to preclude the so-called expert testimony of Siegrun D. Kane ("Ms. Kane").

## **ARGUMENT**

Plaintiff's summary, at page 8 of his brief, of Ms. Kane's expert report only serves to confirm that Ms. Kane's "report" is just an argumentative brief that Plaintiff has tried to disguise as an expert opinion.  Ms. Kane's testimony must therefore be excluded.  The law is clear – and plaintiff cannot and does not seriously challenge it – that expert testimony must avoid usurping the role of the trial judge in instructing the jury as to the law and the role of the jury in applying that law to the facts presented.  United States v. Bilzerian, 926 F. 2d 1285, 1294 (2d Cir. 1991).

Equally clear is that Ms. Kane's expert report does not purport to do what the Federal Rules permit an expert to do – to use "scientific, technical, or other specialized knowledge" to "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  Ms. Kane simply adopts Haritatos' view of the facts and, assuming that view to be true, tells the jury what it should conclude.[1]  No specialized knowledge is required to understand the plaintiff's view of the facts because they are not complex.  She need not and does not make any attempt to explain or interpret them.

The issue of reverse confusion, which appears to be the theory plaintiff has adopted, will not be a difficult one for a local jury to decide.  The two most important ultimate

---

[1]        She assumes, for example, that there has been continuity of use by an ongoing business and that Spiro Haritatos can re-claim rights dating back to original uses by relatives of his.

questions will be:  (1) are people who visit Haritatos' store in Rome, New York, likely to believe that Hasbro is the source or origin of the goods in Haritatos' local store and, even in the highly unlikely event that the answer is yes, (2) is such confusion caused by what Toys "R" Us has done in its store in the middle of Manhattan, or is such confusion caused by the great fame of Hasbro's CANDY LAND® board game.  Ms Kane has no expertise on those factual issues, claims none, and offers no opinion on them.

None of the cases Haritatos cites as purported authority in his brief (at pages 11-12 and note 3) support the admissibility of Ms. Kane's opinions.

She is not a survey expert offered to admit a survey of the relevant public, as in Pilot Corp. of America v. Fisher-Price, Inc., 344 F. Supp. 2d 349 (D. Conn. 2004); and McGraw-Hill, Inc. v. Comstock Partners, Inc., 743 F. Supp. 1029 (S.D.N.Y. 1990)  Nor is she, as in Oxford Indus., Inc. v. JBJ Fabrics, Inc., No. 84 Civ. 2505, 1988 WL 9959 (S.D.N.Y. Feb. 2, 1988), a non-lawyer executive with nearly 40 years of relevant industry experience, opining on the fame of a trademark not among the general public, but in the relatively esoteric industry of textiles and apparel.

She does not attempt to explain professional standards of care by reference to the routine that a professional would adopt, as was true of the expert in Waco Int'l, Inc. v. KHK Scaffolding Houston Inc., 278 F.3d 523, 527 (5th Cir. 2002).[2]  Nor is her opinion being offered

---

[2]      In Waco Int'l, the plaintiff sued the defendant for trademark infringement and simultaneously sought and obtained an ex parte seizure order under 15 U.S.C. § 1116(d)(1)(A) of the allegedly infringing goods.  The defendant counterclaimed for wrongful seizure under 15 U.S.C. § 1116(d)(11), which required it to show the plaintiff's bad faith in seeking the seizure order.  Id.  The district court permitted an attorney to testify concerning the issues an attorney typically investigates in determining whether to pursue an ex parte seizure order.  Id. at 533.  The court considered that a factual issue unfamiliar to a

relatively innocuously to a judge in a preliminary injunction motion, as in <u>Toy Mfrs. of America, Inc. v. Helmsley-Spear, Inc.</u>, 960 F.Supp. 673, 682 (S.D.N.Y. 1997).

The last case cited by Haritatos, <u>C.P. Interests, Inc. v. California Pools Inc.</u>, 238 F.3d 690 (5th Cir. 2001), is at best ambiguous as to the proper scope of expert testimony, because the Fifth Circuit held that the defendant had not properly preserved for appeal its objection to expert testimony in the form of legal conclusions.  Defendant waived the issue by failing to make contemporaneous objections to the disputed testimony.  <u>Id.</u> at 696-97.

The Fifth Circuit reviewed admission of the expert's testimony "for plain error," <u>id.</u> at 697, and concluded it was not plain error because the legal conclusions had "overwhelming factual support in the record."  <u>Id.</u> at 698.  Accordingly, "there was not a significant risk that the expert's testimony supplant[ed the] jury's independent exercise of common sense."  <u>Id.</u> (citations and internal quotations omitted) (brackets in original).  The Fifth Circuit did not hold that it was appropriate for an expert to testify on issues of law.  In fact, it recognized the "risk" of such testimony supplanting the jury's judgment.  <u>Id.</u>  <u>See also id.</u> at 697 ("Neither rule [Fed. R. Evid. 702 & 704], however, permits expert witnesses to offer conclusions of law.").

Plaintiff's counsel may put his name on Ms. Kane's "Report" and file it as a brief with the Court if he so desires and if there is an appropriate use for it, but he cannot put Ms. Kane on the stand as a so-called "expert" to compete with the Court's own instructions to the jury

---

typical juror.  Accordingly, the expert's specialized knowledge was useful to the finder of fact in determining whether the plaintiff acted in bad faith.

The expert did not, however, testify that, "under the law, failure to meet any of these requirements meant that the seizure was wrongful, or necessarily constituted bad faith."  <u>Id.</u>  Thus, the expert in <u>Waco</u>, unlike Ms. Kane, did not apply his interpretation of the law to the facts of the case fed to him by his client's attorney.  He merely assisted the jury to understand a factual issue with his specialized knowledge.

on the applicable law and to tell the jury how to apply the law to the facts of the case.  It is well-established that "[e]xpert witnesses cannot testify as to issues of law."  Marriott v. County of Montgomery, 426 F. Supp. 2d 1, 10 n.12 (N.D.N.Y. 2006).

       Finally, the "major treatise" cited by Plaintiff is unhelpful to him for two reasons. First, while the treatise suggests that a trademark attorney may testify regarding procedural matters (e.g., trademark searching procedures, procedures in the Patent and Trademark Office, third party registrations), there is no support in the treatise for Plaintiff's radical proposal that a trademark attorney, in the guise of an objective "expert," may usurp the Judge's role by providing testimony that consists of conclusions of law and instructions about the application of law to the facts of the case.  Second, to the extent that Plaintiff's "treatise" suggests that experts may testify concerning the categorization of marks (i.e., where on the spectrum of distinctiveness a mark falls), the treatise is simply wrong.  See Motown Prod., Inc. v. Cacomm, Inc., 668 F. Supp. 285, 288-89 (S.D.N.Y. 1987), rev'd on other grounds, 849 F.2d 781 (2d Cir. 1988) (excluding affidavit of trademark lawyer opining that trademark was "suggestive").

       Plaintiff has not explained why the jury would need the testimony of Ms. Kane to properly understand any of the relatively simple factual issues that are at the core of this case.  In the unlikely event that Plaintiff's case survives summary judgment, the Court will instruct the jury on the factors to consider in determining likelihood of confusion (or reverse confusion) and the jury will apply those factors to the facts of this case.

       It will not be difficult for a jury to decide the issues because, among other things, Haritatos has no evidence that any consumer has been confused by Toys "R" Us's use of Hasbro's famous CANDY LAND® mark and it is inconceivable that anyone would be.  Millions

of consumers across the nation associate Hasbro's famous CANDY LAND® mark in its

distinctive candy cane script with the first board game that they played as children.  It is absurd

to contend that consumers would ever confuse the source of products bearing Hasbro's

distinctive and famous mark with the source of Plaintiff's Turkey Joints.  And if any consumer

thought that the candy business Plaintiff runs out of his home in Rome, New York, is affiliated in

any away with the famous board game sold in mass merchandise stores around the nation, that

would be because of the fame of Hasbro's mark in board games, which use predates any that

Haritatos can legitimately claim for candy.

      Plaintiff admits that he has not lost any sales because of Toys "R" Us's use of

Hasbro's  CANDY LAND® mark (see Tr. Spero Haritatos Deposition, 5/17/06, at 283:19-

284:12, attached hereto as Exh. 1) and it is clear from the Haritatos' conduct of the action that it

was brought merely to extract a monetary settlement from Defendants.  Ms. Kane may assist

Plaintiff's counsel in writing Plaintiff's briefs, but she may not instruct the jury on how to apply

her erroneous version of the law to Plaintiff's erroneous view of the facts.

## CONCLUSION

      For the reasons state above, Hasbro respectfully request that the Court enter an

order precluding the expert testimony at trial of Siegrun D. Kane.

Dated:          October 5, 2006

Kim J. Landsman
(Bar Roll No. 513,364)
Michael D. Sant'Ambrogio
(Bar Roll No. 513,363)

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone: 212-336-2980
Facsimile: 212-336-2985

Attorneys for Defendant Hasbro, Inc.

6

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have caused a copy of the foregoing **DEFENDANT**

**HASBRO, INC.'S REPY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO**

**PRECLUDE THE EXPERT TESTIMONY OF SEIGRUN D. KANE** to be filed

electronically, with copies sent electronically to the counsel set forth below on October 4, 2006:

Robert E. Purcell, Esq.
Wall Marjama & Bilinski LLP
101 South Salina Street, Suite 400
Syracuse, New York  13202
(315) 425-9000

Attorneys for Plaintiff Spero Haritatos

and

John G. McGowan, Esq.
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, New York  13202-1355
(315) 218-8121

Attorneys for Defendant Toys "R" Us

_____
Adam J. Pessin

7

**EXHIBIT 1**

1

2                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF NEW YORK

3

4    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

5    SPERO HARITATOS,

6                              Plaintiff,

7           -vs-                    Index No.:

                                    05 CIV 930 (DNH/GJD)

8

     HASBRO, INC. and

9    TOYS "R" US-NY LLC,

10                             Defendant.

11   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

12

13                    Examination Before Trial of

14               SPERO T. HARITATOS, Plaintiff, held at

15               the offices of BOND, SCHOENECK & KING,

16               PLLC, Syracuse, New York, on May 17,

17               2006, before MELISSA A. LANNING, Court

18               Reporter and Notary Public in and for

19               the State of New York.

20

21

22

23

24

25

```
 1
 2    APPEARANCES:
 3    For the Plaintiff:
                         WALL, MARJAMA & BILINSKI, LLP
 4                       Attorneys at Law
                         101 South Salina Street, Suite 400
 5                       Syracuse, New York  13202
                         BY: ROBERT E. PURCELL, ESQ.
 6
 7
      For the Defendant, Hasbro, Inc.:
 8                       PATTERSON, BELKNAP, WEBB & TYLER,
                                                        LLP
 9                       Attorneys at Law
                         1133 Avenue of the Americas
10                       New York, New York  10036-6710
                           BY: MICHAEL D. SANT'AMBROGIO, ESQ.
11
12
      For the Defendant, Toys "R" Us - NY, LLC:
13                       BOND, SCHOENECK & KING, PLLC
                         Attorneys at Law
14                       One Lincoln Center
                         Syracuse, New York  13202
15                       BY: JOHN G. McGOWAN, ESQ.
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2                        EXAMINATIONS
 3   Witness:                            Page
 4   SPERO T. HARITATOS
 5   EXAMINATION BY MR. SANT'AMBROGIO . . . . 8, 305
 6   EXAMINATION BY MR. McGOWAN . . . . . . 208, 321
 7
 8
 9                    *            *            *
10
11
12                         EXHIBITS
13   Number      Description                  Page
14   1           First Set of Requests to
                 Plaintiffs                   58
15
     2           TTAB Deposition Transcript
16                of Spero T. Haritatos       305
17   4           1982 Trademark Application   22
18   5           Specimen from 1982
                 Application for Trademark    41
19
     6           1990 Certificate of
20                Registration               29
21   7           Compilation of Declarations  34
22   8           Certificate of Authority     48
23
24                  (CONT'D ON NEXT PAGE)
25
```

1
2
3                          EXHIBITS
4    Number      Description                    Page
5    10          4/30/74 Contract               58
6    11          5/3/74 Contract                58
7    12          1976 Trademark Registration    72
8    13          Photocopy of Original Turkey
                 Joint Label                    72
9
     14          Interrogatory Responses        92
10
     16          Wholesale Receipt from Nora's
11               Candy Shop                     104
12   17          Photocopy of Photograph        170
13   18          Compilation of Photographs of
                 Candyland Candy Turkey Joints
14               jars, boxed candies, etc.      143
15   19          Compilation of Newspaper
                 Articles                       173
16
     20          Compilation of Letters, re:
17               Orders of Turkey Joints        175
18   21          Photocopy of Hasbro's Candyland
                 mark                           308
19
     22          Photocopy of Hasbro's Candyland
20               mark                           308
21   30          1992 Application to Register
                 Candyland                      162
22
     33          2005 1040 with Attached
23               Schedules, 11 pgs.             164
24                        *          *            *
25

Page 283

1                   SPERO T. HARITATOS                283

2        A.    The Keeler Show.

3        Q.    All right.  Now, Mr. Haritatos, --

4   Mr. Haritatos, did you keep any record -- any written

5   record of reports from anyone that they were confused

6   as to the source of any candy products sold at Toys "R"

7   Us Times Square store?

8        A.    No.

9        Q.    Did anybody ever come into your store and

10  say words, in substance, gee, are you doing business in

11  Times Square?

12       A.    No.

13       Q.    Or we saw a Candyland in Times Square; is

14  that yours?

15       A.    No.

16       Q.    Or did you know somebody's got a Candyland

17  down there in a store in Times Square?

18       A.    No.

19       Q.    Mr. Haritatos, do you claim that you've lost

20  any sales of candy products by virtue of the fact that

21  Times Square -- that the Toys "R" Us store in

22  Times Square is alleged to have use the term Candyland?

23       A.    I can't say that I have evidence of losing

24  sales because of it.  However, they're using my name,

25  and I registered it; and I'm out of -- and I'm trying

1              SPERO T. HARITATOS            284

2    to stop them from using it, and I'm out of attorney

3    fees and costs associated with it, but I can't say that

4    they've -- that we've actually lost sales from that.

5         Q.    Okay.  Okay.  And I understand what you're

6    saying.  I'm not trying to get away from it; you've

7    said what you've said.  But you don't say there's any

8    products that you could have sold but didn't because

9    Toys "R" Us is down there in New York City and was

10   using that term that you claim you have the right to

11   control?

12        A.    Right, I can't say that.

13        Q.    All right.

14        A.    But it's like if -- how about if I use

15   Candies "R" Us?  I mean, would Toys "R" Us have a

16   problem with it?  I think they would.  Or make a board

17   game out of chocolate and use Candyland with it.  You

18   people would have an issue with that also.

19                         MR. McGOWAN:  Move to strike the

20                    portion as nonresponsive.

21        Q.    You had indicated earlier this morning in

22   questioning that you were into your sports as a high

23   schooler, true?

24        A.    Correct.

25        Q.    You played some sport or sports on the