# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas   New York, NY 10036-6710   212.336.2000   fax 212.336.2222   www.pbwt.com

March 27, 2006

Kim J. Landsman
(212) 336-2980
Direct Fax (212) 336-2985
kjlandsman@pbwt.com

**By ECF and Mail Confirmation**

Honorable Gustave J. DiBianco
United States Magistrate Judge
United States Courthouse
PO Box 7396
100 South Clinton Street
Syracuse, New York 13261

Re:   Haritatos v. Hasbro (05-CV-930)

Dear Judge DiBianco:

We represent Defendant Hasbro, Inc. in the above referenced case. We write to respond to the letter brief submitted by Plaintiff Haritatos on March 20, 2006, asking, *inter alia*, that Plaintiff's motion for leave to file a first amended complaint should be granted, that plaintiff should be permitted to amend his complaint a second time, and that Hasbro's initial disclosures are inadequate. We address Plaintiff's contentions *seriatim* in order to provide Your Honor with Hasbro's position in advance of our teleconference scheduled for 3 p.m. on March 28, 2006.

### Plaintiff's Proposed Amendments to the Complaint

As set forth in Hasbro's Memorandum in Opposition to Plaintiff's Motion For Leave To File First Amended Complaint (Docket No. 31), Plaintiff's request to amend his complaint is futile because (1) enjoining Hasbro's ability to argue its rights before the Trademark Trial and Appeal Board ("TTAB") would violate the Noerr-Pennington doctrine and Hasbro's First Amendment right to petition the government; (2) the issue before the TTAB is separate from that to be decided in this court and is within that agency's expertise and jurisdiction; and (3) the additional requested relief is premised on a nonexistent and unpled claim.

The "Fifth Circuit case" that Haritatos cites on page two of his letter brief does not "directly contradict" Hasbro's position. In fact, Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559 (5th Cir. 2005), is relevant to only one of Hasbro's three arguments opposing Plaintiff's proposed amendment, and is unhelpful to Plaintiff at that.

The parties in Test Masters were direct competitors in the test preparation business operating under the names "Testmasters" and "Test Masters." Id. at 565-66. Singh sued Test Masters on the grounds that it infringed his federally registered "Testmasters"

Honorable Gustave J. DiBianco
March 27, 2006
Page 2

trademark. The Fifth Circuit held that Singh's "Testmasters" trademark was merely descriptive as used in connection with test preparation services and, furthermore, that the mark had not acquired secondary meaning. Id. at 567-68. (Similarly, in the present matter, Hasbro will show that Haritatos's "Candyland" mark is merely descriptive of his candy store and has not acquired any secondary meaning.) Accordingly, the district court on remand ordered the Patent and Trademark Office ("PTO") to cancel Singh's trademark registration, which, contrary to the Fifth Circuit's holding, would have been *prima facie* evidence that Singh's mark was distinctive, and also enjoined Singh from filing another application for the mark.

Singh later attempted to re-litigate the matter on the grounds that his mark had acquired secondary meaning since the prior litigation, but both the district court and the Fifth Circuit disagreed. Id. at 569-70. Furthermore, the Fifth Circuit affirmed the injunction of Singh's applications before the PTO as "a means to enforce [the courts'] prior judgments" that Singh's mark was invalid. Id. at 577-78. The Fifth Circuit clarified that Singh was not "enjoined from *ever* registering his "Testmasters" mark again," only "from re-filing his current application," which involved the very same mark and services at issue in the litigation. Id. at 578 n.10 (emphasis in original). The Fifth Circuit did not address Noerr-Pennington, but rejected a different First Amendment-based concern in footnote. Id. at 582 n. 9 (prohibition against registering a trademark does not violate first amendment rights because it does not affect his right to use the mark; therefore no conduct or tangible form of expression is suppressed).

Here, Haritatos has sued based on his federally registered trademark for *candy*, yet is trying to bootstrap his lawsuit to enjoin proceedings before the TTAB involving Hasbro's application to register its famous CANDY LAND trademark for *beverages*. Test Masters provides authority for the Court to cancel Haritatos's trademark registration for candy and enjoin him from seeking an additional registration for candy based on a finding that his mark (the basis of his law suit) is merely descriptive as applied to candy and has not acquired secondary meaning. But Test Masters does not provide authority for Haritatos to add a request for an injunction to enjoin Hasbro from pursuing registrations for marks in different categories of goods or services -- in this case beverages. To the extent that Haritatos seeks to bootstrap a dispute over candy into an injunction concerning beverages or other goods, the principles of Noerr-Pennington barring the Court from enjoining a party from petitioning the government apply.

Moreover, in the present matter there is no allegation, and Haritatos cannot seriously contend, that Hasbro's CANDY LAND mark has not obtained secondary meaning. Indeed, it is one of the most famous marks in the country. Thus, this Court cannot enjoin Hasbro from protecting its rights in the CANDY LAND mark on the grounds that the mark has not obtained secondary meaning. Given that Hasbro's mark has acquired secondary meaning, the Court should not preempt the TTAB's determination whether it may be registered for goods that are not at issue in this suit.

Plaintiff contends that there is no difference between beverages and candy, but the PTO obviously disagreed with Haritatos in the first instance because it allowed Hasbro's

Honorable Gustave J. DiBianco
March 27, 2006
Page 3

application for beverages to proceed to publication notwithstanding Plaintiff's 1996 registration for candy.

Finally, Plaintiff's request for sanctions in the way of attorney's fees for Hasbro's opposition to his amendment is frivolous and he has not seriously argued it. Despite two briefs on the issue, he does not cite a single case or rule that would provide the basis for such a sanction. Accordingly, it should also be denied.

### Plaintiff's Untimely Request To Amend the Complaint Again

As shown above, Haritatos is essentially trying to make Hasbro subsidize Plaintiff's opposition in the TTAB involving goods not at issue in this law suit as an utterly inappropriate "sanction" against Hasbro for protecting its rights in the TTAB. Indeed, such relief is even more inappropriate than merely enjoining Hasbro from protecting its rights.

The First Circuit case that Plaintiff's counsel cited to Hasbro and then to this Court, Attrezzi, LLC v. Maytag Corp., 436 F.3d 32 (1st Cir. 2006), is unavailing. Like Test Masters, Attrezzi involved a registration for the same goods that were at issue in the litigation. It is therefore inapposite to the present matter. Moreover, the First Circuit expressly disclaimed any blanket ruling on the ultimate appropriateness of the relief sought: "Conceivably, [defendant] could have argued against the PTO expenses on other grounds .... We mention the possibility only to make clear that *we are not deciding possible objections not presented.*" Id. at 37 n.2 (emphasis added). There is no indication that the defendant raised a Noerr-Pennington or First Amendment objection, nor that the First Circuit would have precluded one. Indeed, as Hasbro explained in its brief (Docket No. 31), Noerr-Pennington is a Supreme Court doctrine and may not be disregarded as easily as Plaintiff would have the Court believe.

Finally, Plaintiff's new proposal to amend the complaint is untimely. Plaintiff contends that defendants are not prejudiced because TRU has not responded to his discovery requests. But this is not true. TRU has already produced documents in this case. See Letter of John McGowan to Judge DiBianco, March 21, 2006 (Docket No. 43), at 1. Moreover, Plaintiff is himself the source of the delay in document production. First, he appealed Your Honor's December 5, 2005 Order regarding the parties' proposed confidentiality order. Then, after his appeal failed, he refused to cooperate, or even to respond in the first instance, to defendants' efforts to have the order entered by the Court. As defendants explained in their letter of March 17, 2006, it took counsel for Haritatos more than a month to respond to defendants' request.

The delay in entering the confidentiality order caused by Haritatos has impeded Hasbro's document production. Haritatos himself has informed Hasbro that he will not be producing any documents. (Hasbro will pursue this matter with the Court at the appropriate time if Haritatos persists in this course of conduct after the protective order is entered.) Rather, Haritatos is manufacturing petty disputes with Hasbro. Haritatos should not be rewarded for his obstruction of discovery by permitting him to amend the Complaint at this late date.

Honorable Gustave J. DiBianco
March 27, 2006
Page 4

### Hasbro's Initial Disclosures

Hasbro's Initial Disclosures more than satisfy the Federal Rules. Haritatos complains that Hasbro has not sufficiently identified the subject matter of each person who is likely to have discoverable information. First, Hasbro provided the job responsibilities of each employee, which indicates the knowledge that these persons are likely to possess. Second, as Hasbro explained to Plaintiff, Hasbro identified persons with knowledge of this matter and described in detail the nature and substance of their knowledge in its Response to Plaintiff's First Set of Interrogatories. *See* Response Nos. 2, 5, 11, 13, 15 and 16, attached as Exhibit A.

Merely by way of example, Response No. 5 lists ten present or former employees of Hasbro. It indicates that Mark Blecher, who is listed in Hasbro's initial disclosures, is "responsible for and knowledgeable concerning all aspects of marketing of Hasbro games, including the CANDY LAND brand product." The response provides similar information (more in some cases) about the other persons identified. It is unduly burdensome for Hasbro to do so again and Plaintiff's demand that we engage in futile exercises is not an efficient way to move this case along.

Finally, Haritatos complains that Hasbro's Initial Disclosures do not include the business address of Hasbro's employees. This is another silly attempt to create a distraction. Haritatos knows Hasbro's business address, which is included in its Answer. The rules of professional ethics forbid Haritatos' counsel from contacting Hasbro's employees directly, and we provided Haritatos with Patterson Belknap's contact information to spare counsel for Haritatos from inadvertently committing an ethical violation.

It is past time for Haritatos to cease his petty quibbles over initial disclosures and move on to full discovery to bring this matter to a resolution. Plaintiff's counsel knows Hasbro's positions, knows who the most knowledgeable Hasbro witnesses are, and would have Hasbro's documents in discovery already if he had not deliberately stalled entry of the confidentiality order after this Court adjudicated his objections to Hasbro's proposal Accordingly, we respectfully request that the Court deny Haritatos's motions and enter the protective order in this case so that the parties may proceed with discovery.

Respectfully submitted,

Kim J. Landsman

Enclosure

cc:   Robert E. Purcell, Esq. (by email)
      John G. McGowan, Esq. (by email)