U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

OCT 10 2006

LAWRENCE K. BAERMAN, Clerk
UTICA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SPERO HARITATOS,

Plaintiff,

- against -

HASBRO, INC.
and TOYS "R" US-NY LLC,

Defendants.

05 Civ. 930 (DNH/GJD)

**DEFENDANT HASBRO, INC.'S REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO PRECLUDE THE EXPERT TESTIMONY OF SEIGRUN D. KANE**

Kim J. Landsman (Bar Roll No. 513,364)
Michael D. Sant'Ambrogio (Bar Roll No. 513,363)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone: 212-336-2980

*Attorneys for Defendant Hasbro, Inc.*

Defendant Hasbro, Inc. ("Hasbro") respectfully requests the Court's permission to submit this reply memorandum of law in support of its motion to preclude the so-called expert testimony of Siegrun D. Kane ("Ms. Kane").

## ARGUMENT

Plaintiff's summary, at page 8 of his brief, of Ms. Kane's expert report only serves to confirm that Ms. Kane's "report" is just an argumentative brief that Plaintiff has tried to disguise as an expert opinion. Ms. Kane's testimony must therefore be excluded. The law is clear – and plaintiff cannot and does not seriously challenge it – that expert testimony must avoid usurping the role of the trial judge in instructing the jury as to the law and the role of the jury in applying that law to the facts presented. United States v. Bilzerian, 926 F. 2d 1285, 1294 (2d Cir. 1991).

Equally clear is that Ms. Kane's expert report does not purport to do what the Federal Rules permit an expert to do – to use "scientific, technical, or other specialized knowledge" to "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Ms. Kane simply adopts Haritatos' view of the facts and, assuming that view to be true, tells the jury what it should conclude.[1] No specialized knowledge is required to understand the plaintiff's view of the facts because they are not complex. She need not and does not make any attempt to explain or interpret them.

The issue of reverse confusion, which appears to be the theory plaintiff has adopted, will not be a difficult one for a local jury to decide. The two most important ultimate

1 She assumes, for example, that there has been continuity of use by an ongoing business and that Spiro Haritatos can re-claim rights dating back to original uses by relatives of his.

questions will be: (1) are people who visit Haritatos' store in Rome, New York, likely to believe that Hasbro is the source or origin of the goods in Haritatos' local store and, even in the highly unlikely event that the answer is yes, (2) is such confusion caused by what Toys "R" Us has done in its store in the middle of Manhattan, or is such confusion caused by the great fame of Hasbro's CANDY LAND® board game. Ms Kane has no expertise on those factual issues, claims none, and offers no opinion on them.

None of the cases Haritatos cites as purported authority in his brief (at pages 11-12 and note 3) support the admissibility of Ms. Kane's opinions.

She is not a survey expert offered to admit a survey of the relevant public, as in Pilot Corp. of America v. Fisher-Price, Inc., 344 F. Supp. 2d 349 (D. Conn. 2004); and McGraw-Hill, Inc. v. Comstock Partners, Inc., 743 F. Supp. 1029 (S.D.N.Y. 1990) Nor is she, as in Oxford Indus., Inc. v. JBJ Fabrics, Inc., No. 84 Civ. 2505, 1988 WL 9959 (S.D.N.Y. Feb. 2, 1988), a non-lawyer executive with nearly 40 years of relevant industry experience, opining on the fame of a trademark not among the general public, but in the relatively esoteric industry of textiles and apparel.

She does not attempt to explain professional standards of care by reference to the routine that a professional would adopt, as was true of the expert in Waco Int'l, Inc. v. KHK Scaffolding Houston Inc., 278 F.3d 523, 527 (5th Cir. 2002).[2] Nor is her opinion being offered

---

[2] In Waco Int'l, the plaintiff sued the defendant for trademark infringement and simultaneously sought and obtained an ex parte seizure order under 15 U.S.C. § 1116(d)(1)(A) of the allegedly infringing goods. The defendant counterclaimed for wrongful seizure under 15 U.S.C. § 1116(d)(11), which required it to show the plaintiff's bad faith in seeking the seizure order. Id. The district court permitted an attorney to testify concerning the issues an attorney typically investigates in determining whether to pursue an ex parte seizure order. Id. at 533. The court considered that a factual issue unfamiliar to a

relatively innocuously to a judge in a preliminary injunction motion, as in Toy Mfrs. of America, Inc. v. Helmsley-Spear, Inc., 960 F.Supp. 673, 682 (S.D.N.Y. 1997).

The last case cited by Haritatos, C.P. Interests, Inc. v. California Pools Inc., 238 F.3d 690 (5th Cir. 2001), is at best ambiguous as to the proper scope of expert testimony, because the Fifth Circuit held that the defendant had not properly preserved for appeal its objection to expert testimony in the form of legal conclusions. Defendant waived the issue by failing to make contemporaneous objections to the disputed testimony. Id. at 696-97.

The Fifth Circuit reviewed admission of the expert's testimony "for plain error," id. at 697, and concluded it was not plain error because the legal conclusions had "overwhelming factual support in the record." Id. at 698. Accordingly, "there was not a significant risk that the expert's testimony supplant[ed the] jury's independent exercise of common sense." Id. (citations and internal quotations omitted) (brackets in original). The Fifth Circuit did not hold that it was appropriate for an expert to testify on issues of law. In fact, it recognized the "risk" of such testimony supplanting the jury's judgment. Id. See also id. at 697 ("Neither rule [Fed. R. Evid. 702 & 704], however, permits expert witnesses to offer conclusions of law.").

Plaintiff's counsel may put his name on Ms. Kane's "Report" and file it as a brief with the Court if he so desires and if there is an appropriate use for it, but he cannot put Ms. Kane on the stand as a so-called "expert" to compete with the Court's own instructions to the jury

---

typical juror. Accordingly, the expert's specialized knowledge was useful to the finder of fact in determining whether the plaintiff acted in bad faith.

The expert did not, however, testify that, "under the law, failure to meet any of these requirements meant that the seizure was wrongful, or necessarily constituted bad faith." Id. Thus, the expert in Waco, unlike Ms. Kane, did not apply his interpretation of the law to the facts of the case fed to him by his client's attorney. He merely assisted the jury to understand a factual issue with his specialized knowledge.

on the applicable law and to tell the jury how to apply the law to the facts of the case. It is well-established that "[e]xpert witnesses cannot testify as to issues of law." Marriott v. County of Montgomery, 426 F. Supp. 2d 1, 10 n.12 (N.D.N.Y. 2006).

Finally, the "major treatise" cited by Plaintiff is unhelpful to him for two reasons. First, while the treatise suggests that a trademark attorney may testify regarding procedural matters (e.g., trademark searching procedures, procedures in the Patent and Trademark Office, third party registrations), there is no support in the treatise for Plaintiff's radical proposal that a trademark attorney, in the guise of an objective "expert," may usurp the Judge's role by providing testimony that consists of conclusions of law and instructions about the application of law to the facts of the case. Second, to the extent that Plaintiff's "treatise" suggests that experts may testify concerning the categorization of marks (i.e., where on the spectrum of distinctiveness a mark falls), the treatise is simply wrong. See Motown Prod., Inc. v. Cacomm, Inc., 668 F. Supp. 285, 288-89 (S.D.N.Y. 1987), rev'd on other grounds, 849 F.2d 781 (2d Cir. 1988) (excluding affidavit of trademark lawyer opining that trademark was "suggestive").

Plaintiff has not explained why the jury would need the testimony of Ms. Kane to properly understand any of the relatively simple factual issues that are at the core of this case. In the unlikely event that Plaintiff's case survives summary judgment, the Court will instruct the jury on the factors to consider in determining likelihood of confusion (or reverse confusion) and the jury will apply those factors to the facts of this case.

It will not be difficult for a jury to decide the issues because, among other things, Haritatos has no evidence that any consumer has been confused by Toys "R" Us's use of Hasbro's famous CANDY LAND® mark and it is inconceivable that anyone would be. Millions

of consumers across the nation associate Hasbro's famous CANDY LAND® mark in its distinctive candy cane script with the first board game that they played as children. It is absurd to contend that consumers would ever confuse the source of products bearing Hasbro's distinctive and famous mark with the source of Plaintiff's Turkey Joints. And if any consumer thought that the candy business Plaintiff runs out of his home in Rome, New York, is affiliated in any away with the famous board game sold in mass merchandise stores around the nation, that would be because of the fame of Hasbro's mark in board games, which use predates any that Haritatos can legitimately claim for candy.

Plaintiff admits that he has not lost any sales because of Toys "R" Us's use of Hasbro's CANDY LAND® mark (see Tr. Spero Haritatos Deposition, 5/17/06, at 283:19-284:12, attached hereto as Exh. 1) and it is clear from the Haritatos' conduct of the action that it was brought merely to extract a monetary settlement from Defendants. Ms. Kane may assist Plaintiff's counsel in writing Plaintiff's briefs, but she may not instruct the jury on how to apply her erroneous version of the law to Plaintiff's erroneous view of the facts.

## CONCLUSION

For the reasons state above, Hasbro respectfully request that the Court enter an order precluding the expert testimony at trial of Siegrun D. Kane.

Dated: October 5, 2006

Kim J. Landsman
(Bar Roll No. 513,364)
Michael D. Sant'Ambrogio
(Bar Roll No. 513,363)

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone: 212-336-2980
Facsimile: 212-336-2985

Attorneys for Defendant Hasbro, Inc.

CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing **DEFENDANT HASBRO, INC.'S REPY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO PRECLUDE THE EXPERT TESTIMONY OF SEIGRUN D. KANE** to be filed electronically, with copies sent electronically to the counsel set forth below on October 4, 2006:

Robert E. Purcell, Esq.
Wall Marjama & Bilinski LLP
101 South Salina Street, Suite 400
Syracuse, New York 13202
(315) 425-9000

Attorneys for Plaintiff Spero Haritatos

and

John G. McGowan, Esq.
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, New York 13202-1355
(315) 218-8121

Attorneys for Defendant Toys "R" Us

Adam J. Pessin

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

* * * * * * * * * * * * * * * * *

SPERO HARITATOS,

Plaintiff,

-vs-

Index No.: 05 CIV 930 (DNH/GJD)

HASBRO, INC. and TOYS "R" US-NY LLC,

Defendant.

* * * * * * * * * * * * * * * * *

Examination Before Trial of SPERO T. HARITATOS, Plaintiff, held at the offices of BOND, SCHOENECK & KING, PLLC, Syracuse, New York, on May 17, 2006, before MELISSA A. LANNING, Court Reporter and Notary Public in and for the State of New York.

APPEARANCES:

For the Plaintiff:

WALL, MARJAMA & BILINSKI, LLP
Attorneys at Law
101 South Salina Street, Suite 400
Syracuse, New York 13202
BY: ROBERT E. PURCELL, ESQ.

For the Defendant, Hasbro, Inc.:

PATTERSON, BELKNAP, WEBB & TYLER, LLP
Attorneys at Law
1133 Avenue of the Americas
New York, New York 10036-6710
BY: MICHAEL D. SANT'AMBROGIO, ESQ.

For the Defendant, Toys "R" Us - NY, LLC:

BOND, SCHOENECK & KING, PLLC
Attorneys at Law
One Lincoln Center
Syracuse, New York 13202
BY: JOHN G. McGOWAN, ESQ.

EXAMINATIONS


| Witness: | Page |
|---|---|
| SPERO T. HARITATOS | |
| EXAMINATION BY MR. SANT'AMBROGIO . . . . | 8, 305 |
| EXAMINATION BY MR. McGOWAN . . . . . . . . | 208, 321 |


* * *

EXHIBITS


| Number | Description | Page |
|---|---|---|
| 1 | First Set of Requests to Plaintiffs | 58 |
| 2 | TTAB Deposition Transcript of Spero T. Haritatos | 305 |
| 4 | 1982 Trademark Application | 22 |
| 5 | Specimen from 1982 Application for Trademark | 41 |
| 6 | 1990 Certificate of Registration | 29 |
| 7 | Compilation of Declarations | 34 |
| 8 | Certificate of Authority | 48 |


(CONT'D ON NEXT PAGE)

EXHIBITS

| Number | Description | Page |
|---|---|---|
| 10 | 4/30/74 Contract | 58 |
| 11 | 5/3/74 Contract | 58 |
| 12 | 1976 Trademark Registration | 72 |
| 13 | Photocopy of Original Turkey Joint Label | 72 |
| 14 | Interrogatory Responses | 92 |
| 16 | Wholesale Receipt from Nora's Candy Shop | 104 |
| 17 | Photocopy of Photograph | 170 |
| 18 | Compilation of Photographs of Candyland Candy Turkey Joints jars, boxed candies, etc. | 143 |
| 19 | Compilation of Newspaper Articles | 173 |
| 20 | Compilation of Letters, re: Orders of Turkey Joints | 175 |
| 21 | Photocopy of Hasbro's Candyland mark | 308 |
| 22 | Photocopy of Hasbro's Candyland mark | 308 |
| 30 | 1992 Application to Register Candyland | 162 |
| 33 | 2005 1040 with Attached Schedules, 11 pgs. | 164 |

* * *

A. The Keeler Show.

Q. All right. Now, Mr. Haritatos, -- Mr. Haritatos, did you keep any record -- any written record of reports from anyone that they were confused as to the source of any candy products sold at Toys "R" Us Times Square store?

A. No.

Q. Did anybody ever come into your store and say words, in substance, gee, are you doing business in Times Square?

A. No.

Q. Or we saw a Candyland in Times Square; is that yours?

A. No.

Q. Or did you know somebody's got a Candyland down there in a store in Times Square?

A. No.

Q. Mr. Haritatos, do you claim that you've lost any sales of candy products by virtue of the fact that Times Square -- that the Toys "R" Us store in Times Square is alleged to have use the term Candyland?

A. I can't say that I have evidence of losing sales because of it. However, they're using my name, and I registered it; and I'm out of -- and I'm trying

to stop them from using it, and I'm out of attorney fees and costs associated with it, but I can't say that they've -- that we've actually lost sales from that.

Q. Okay. Okay. And I understand what you're saying. I'm not trying to get away from it; you've said what you've said. But you don't say there's any products that you could have sold but didn't because Toys "R" Us is down there in New York City and was using that term that you claim you have the right to control?

A. Right, I can't say that.

Q. All right.

A. But it's like if -- how about if I use Candies "R" Us? I mean, would Toys "R" Us have a problem with it? I think they would. Or make a board game out of chocolate and use Candyland with it. You people would have an issue with that also.

MR. McGOWAN: Move to strike the portion as nonresponsive.

Q. You had indicated earlier this morning in questioning that you were into your sports as a high schooler, true?

A. Correct.

Q. You played some sport or sports on the