UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

SPERO HARITATOS v. HASBRO, INC., et al.         6:05-CV-930 (DNH/GJD)

_____

# ORDER

There are currently three discovery "motions" still pending before me in this case. (Dkt. Nos. 67, 88, 92). Although these are the only documents listed as motions, there are other related documents on the docket. Some background is required for clarity since it is sometimes difficult to determine precisely what the parties are filing. Documents have been filed as "briefs" when they are really "motions," and some have been filed as "motions" when they are responses to motions or "briefs."

Docket No. 67 is a motion, consisting of plaintiff's request for the production of documents relating to a lawsuit brought by defendant Hasbro in the state of Washington. On October 25, 2006, I issued an order requiring a response to this motion. (Dkt. No. 97). On November 2, 2006, defendant Hasbro filed a response to Dkt. No. 67. (Dkt. No. 102). On September 29, 2006 plaintiff filed two documents, discussing discovery issues. (Dkt. Nos. 87, 88). Docket No. 87 was a sealed document and was not filed as a motion, although it did request action by the court against Hasbro. Defendant Hasbro filed a sealed response to Docket No. 87. (Dkt. No. 90).

However, on September 29, 2006, plaintiff also filed Docket No. 88, which discussed the last of three disputed discovery issues and was directed at defendant Toys-R-Us (TRU). Docket No. 88 was filed as a motion. My October 25, 2006 order also required a response from TRU to Docket No. 88. (Dkt. No. 97). On November 7,

2006, defendant TRU filed its response to Dkt. No. 88. (Dkt. No. 103). I now have before me sufficient information to rule on the remaining discovery disputes.

## DISCUSSION

**1.    August 8, 2006 Motion (Dkt. No. 67)**

In this motion, plaintiff demands production of documents relating to a lawsuit that Hasbro brought against Internet Entertainment Group (IEG), LTD, alleging a violation of the anti-dilution statute, 15 U.S.C. § 1125(c). *Hasbro, Inc. v. Internet Entertainment Group, LTD*, No. C96-130WD, 1996 U.S. Dist. LEXIS 11626, 40 U.S.P.Q.2d 1479 (W.D. Wash. Feb. 9, 1996)(Dwyer, J.). Plaintiff requested that defendant Hasbro produce pleadings, all discovery requests and responses, settlement agreements, and all documents filed by the parties or by the court. (Dkt. No. 67). Plaintiff argued that if Hasbro could obtain documentary proof of plaintiff's attempt to protect its mark, then the defendant should have to do the same. Plaintiff also argued that the pleadings and other materials associated with that lawsuit are relevant because they will reveal Hasbro's allegedly inconsistent position. Plaintiff argues that Hasbro's position is inconsistent because in the IEG case, Hasbro argued that there was a likelihood of confusion between Hasbro's mark and IEG's use of the mark for a sexually explicit website, while arguing in this case that there is no likelihood of confusion between Hasbro's use of the mark for candy and edible products and plaintiff's use of the mark for its product.

Plaintiff is *incorrect* in this assertion, and this court finds that the documents in the IEG case are irrelevant to this action. As Hasbro points out, the IEG case was

2

brought pursuant to a 1996 amendment to the Lanham Act, referred to as the Anti-Dilution Statute, 15 U.S.C. § 1125(c). This section entitles the owner of a trademark to injunctive relief if the mark is "famous," and use by another party of that mark "in commerce" causes dilution of the distinctive quality of that mark. *See Jews for Jesus v. Brodsky*, 993 F. Supp. 282, 305 (D.N.J. 1998). It is clear that under the anti-dilution provision, the plaintiff need ***not demonstrate a likelihood of confusion***. *Id.* (citing *Genovese Drug Stores v. TGC Stores*, 939 F. Supp. 340, 349 (D.N.J. 1996)). Plaintiff need only prove that its mark (whether federally registered or common law) is ***famous***, and that the use of the mark by the offending party is "in commerce." *Id.* (citation omitted).

Thus, the issue in the IEG case is different from the issue involved in this action. There was no issue of likelihood of confusion, and thus, the documents in IEG will not show an "inconsistent" position taken by Hasbro regarding likelihood of confusion. The important question in the IEG case was whether Hasbro's mark was famous and whether the company owning the sexually explicit website was using that mark "in commerce."[1] Thus, the documents relating to the IEG case are irrelevant to this action, and the court will ***deny*** plaintiff's motion to compel their production by Hasbro.

**2.     September 29, 2006 Motion to Compel as to Hasbro (Dkt. No. 87, 92)**

---

[1] The court notes that the written decision, granting Hasbro an injunction in *Hasbro, Inc. v. IEG, supra*, does not state the court's analysis regarding the issues involved in a dilution action. The court merely stated its ultimate findings and granted the injunction.

As stated above, Docket No. 87 was not filed as a motion, but outlines a discovery issue relating to defendant Hasbro. In the sealed[2] document, plaintiff seeks to compel the depositions of five more individuals, two current Hasbro employees and three former employees. After considering the arguments of both plaintiff and Hasbro, I will deny plaintiff's motion.

Without stating too many specific facts about the individuals or the testimony,[3] this court finds that plaintiff was well aware of the names of these individuals and apparently was aware of their involvement in issues relevant to this case. Two of the individuals who plaintiff now wishes to depose are still employees of Hasbro. Three of the newly named individuals are no longer employees of Hasbro. I did tell plaintiff to depose current employees prior to asking to depose former employees, thus, plaintiff could have noticed the current employees before. I also stated that after the depositions, the parties should confer regarding the necessity for further depositions. I did not intend to imply that this would guarantee additional depositions, only that additional depositions could be discussed.

Plaintiff's concern is apparently that the individuals who were deposed did not recognize or write certain e-mails or were not the individual who obtained certain trademark searches. As stated in Hasbro's papers, plaintiff obtained the information

---

[2] The document is sealed because it refers to testimony during a deposition that is covered by the protective order signed by the parties in this case.

[3] As stated in footnote 2 above, the arguments on this issue were filed under seal due to the confidentiality of some of the facts discussed during the depositions that were taken of Hasbro employees. Thus, this court will not discuss the facts too specifically. The specific facts are not necessary to this court's decision.

4

regarding the substance of the e-mails, regardless of whether the individual actually wrote the message or whether he or she recognized the document.[4]  Plaintiff has already deposed the decision-makers regarding the licensing of the trademark.  The fact that there were other members of a licensing "team" who wrote and received e-mails does not indicate that plaintiff is entitled to depose everyone on the team, simply because some of them no longer work for Hasbro, and in plaintiff's *speculation*, may be more "candid."

One of the newly named individuals, (a current employee), received some trademark search documents.  Defendant argues that if plaintiff wishes to show that Hasbro was aware of plaintiff's federally registered trademark, Hasbro has already formally admitted that the search revealing plaintiff's trademark was ordered and reviewed in 1995.  The only thing that has not been established is when someone at Hasbro first reviewed the report.  In an answer to plaintiff's request for admissions, Hasbro stated that the individual who ordered and received the search, (the same individual who plaintiff now wishes to depose), ***does not remember*** when he reviewed it.  There is no need to depose this individual in order to obtain the same answer.  In any event, plaintiff was aware of this individual since the answer to the request for admissions clearly stated the individual's name.  This individual's name, title, and job function were also stated in a discovery response in November of ***2005***.

With respect to the former employees, plaintiff's argument that these

---

[4] Defendants have included a portion of one of the deposition transcripts in which the subject matter of a particular correspondence was extensively discussed, although the individual involved in the correspondence, (who plaintiff now wishes to depose), was not deposed.  Defendant's Ex. B.

5

individuals would be more likely to give testimony favorable to plaintiff is, first, speculation by plaintiff's counsel and second, not a reason to allow depositions regarding information that plaintiff has already obtained from the depositions that have already been taken. The fact that plaintiff's counsel advances an argument based on speculation is troublesome. Thus, based on the arguments provided, I will deny the plaintiff's motion to take the five additional depositions.

**3.    September 29, 2006 Motion to Compel as to TRU (Dkt. No. 88)**

On September 29, 2006, plaintiff also filed a motion to compel directed at TRU, complaining, first that TRU had failed to produce discovery that it had promised to plaintiff and that this court had ordered on August 11, 2006. Second, plaintiff's counsel argued TRU had failed to produce certain documents that had been identified, and subsequently requested, at the depositions of Kathleen Symanski, Vice President and General Manager of TRU's Times Square store and of Michael Tabakin, TRU's Director of Licensing. (Dkt. No. 88). Attached as Exhibit C to plaintiff's motion was a letter to TRU counsel, dated September 1, 2006, outlining the documents that plaintiff was requesting as a result of the two depositions. (Dkt. No. 88, Ex. C).

Defendant TRU has now responded to plaintiff's motion. (Dkt. No. 103). In that response, TRU has a numerical list of each request over which plaintiff has an issue with TRU's response, and TRU has indicated whether that request has been answered or the document has been produced. This list includes the eleven categories of documents outlined in Exhibit C to plaintiff's motion to compel.

It appears from TRU's response that all but two items that plaintiff requested

have either been produced or have been requested from TRU for production to plaintiff, including the documents identified at the Symanski and Tabakin depositions. (Dkt. No. 103).  The two items to which TRU objects are a request for "all transactions for the candy department" of the TRU Times Square store and a request for all credit card purchases for the same time period.

TRU states that it has provided data indicating that the total sales are $ 1.8 million dollars, and that given the relatively small dollar amount of each candy sale, production of this information might total approximately 90,000 transactions.  The same would be true for credit card sales.  This court agrees.  Plaintiff has the total amount of the sales, it would be excessively burdensome and possibly irrelevant to break down the information into individual candy sales and then break that down into sales involving credit card purchases.  Plaintiff has shown absolutely no relevance to this particular information.  Thus, plaintiff's motion to compel as against TRU is denied as moot with respect to production of discovery pursuant to this court's prior order, and denied outright with respect to the two categories of information that TRU has not produced and to which it objects.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motions to compel (Dkt. Nos. 67, 88, 92) are **DENIED**.

Dated: December 6, 2006

Hon. Gustave J. DiBianco
U.S. Magistrate Judge