UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SPERO HARITATOS,

                                 Plaintiff,

                   v.                                                      6:05-CV-930

HASBRO, INC. and TOYS "R" US–NY LLC,

                                 Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                     OF COUNSEL:

HISCOCK & BARCLAY, L.L.P.              ROBERT E. PURCELL, ESQ.
Attorneys for Plaintiff
One Park Place
300 South State Street
Syracuse, New York 13202-2078

PATTERSON BELKNAP WEBB & TYLER, L.L.P.    KIM J. LANDSMAN, ESQ.
Attorneys for Defendant Hasbro, Inc.
1133 Avenue of the Americas
New York, New York 10036-6710

BOND, SCHOENECK & KING, P.L.L.C.       JOHN G. McGOWAN, ESQ.
Attorneys for Defendant Toys "R" Us–NY LLC
One Lincoln Center
Syracuse, New York 13202-1355

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

      Plaintiff Spero Haritatos ("plaintiff") brings this action against Hasbro, Inc. ("Hasbro") and Toys "R" Us–NY LLC ("TRU") (collectively "defendants") for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114(1) & 1125(a), deceptive business acts and false

advertising under New York General Business Law ("NYGBL") §§ 349 & 350, respectively, and unfair competition under New York common law.

Hasbro brings counterclaims, asserting the same five causes of action against plaintiff.

There are three motions pending.

First, defendants move to preclude the testimony of plaintiff's expert witness, Seigrun D. Kane, Esq., under Federal Rule of Evidence 702. Plaintiff opposes.

Second, defendants move for summary judgment under Federal Rule of Civil Procedure 56. Plaintiff opposes.

Third, plaintiff moves to strike the declarations of Jill Hambley and Sean Wiggins filed in support of defendants' summary judgment motion under Federal Rules of Civil Procedure 26 and 56. Defendants oppose.

Oral argument was heard on August 10, 2007, in Utica, New York. Decision was reserved.

## II. FACTS

Plaintiff is in the business of making and selling candy out of his home in Rome, New York. The origins of his candy business go back to 1919 when three men, including Jimmy Kekis ("Kekis"), developed a candy known as "Turkey Bones" and sold it through their confectionary business in Syracuse, New York. In 1921, Kekis and Spero Haritatos, plaintiff's uncle and namesake, opened a restaurant in Rome, New York, and named it "Candyland." The two men made and sold Turkey Bones – which, sometime during the 1920s, became known as "Turkey Joints" – through the Candyland restaurant.

In 1972, the Candyland establishment closed.  Shortly thereafter, Tasos Haritatos, plaintiff's father, acquired the Turkey Joints recipe and purchased the equipment used to make the candy.  He then set up a candy-making operation in his home and continued to sell Turkey Joints under the Candyland name.

In 1983, plaintiff acquired his father's candy business.  Plaintiff continued to make and sell Turkey Joints and other candy labeled with the "Candyland" mark.  Shortly before acquiring the business, plaintiff filed an application with the United States Patents and Trademark Office ("USPTO") to register the mark "Original Candyland Candy Turkey Joints."  The application was granted and that mark was registered.

In 1992, plaintiff filed an application with the USPTO to obtain a trademark registration for the term "CANDYLAND" for the candy goods.  The application was granted and that mark was registered in 1996.  Plaintiff has used that mark in connection with his candy goods continuously since that time.

Hasbro is a toy and game company and owner of the rights to the well-known "Candy Land" board game.  Hasbro owns a trademark registration for the mark "Candy Land" in connection with its board game.

In 2001, Hasbro licensed the use of its "Candy Land" mark to defendant TRU in connection with TRU's plans to open candy goods sections in its toy stores.  In November 2001, TRU opened a "Candy Land" candy section in its Times Square store in New York City.

In 2002, Hasbro contacted plaintiff and expressed interest in acquiring rights to plaintiff's "CANDYLAND" mark in connection with candy goods.  After some negotiation, plaintiff ultimately denied Hasbro any rights to the mark.  However, Hasbro continued to

license to TRU the use of its "Candy Land" mark in connection with candy goods. The "Candy Land" candy section in TRU's Times Square store remained open until October 2005.

Plaintiff filed this action on July 25, 2005.

## III. DISCUSSION

As mentioned above, there are three motions pending. For obvious reasons the two evidentiary motions will be addressed before the summary judgment motion.

### A. Defendants' Motion to Preclude Expert Testimony

Defendants move to preclude the testimony of plaintiff's expert witness, Seigrun D. Kane, Esq. ("Kane"), under Federal Rule of Evidence 702. Rule 702, which governs the testimony of experts, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

As a general rule, expert testimony on issues of law is inadmissible. United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991). This is because "[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." Marx & Co., Inc. v. The Diners' Club, Inc., 550 F.2d 505, 509-10 (2d Cir. 1977).

However, Rule 704(a) specifically allows "testimony in the form of an opinion or inference otherwise admissible . . . [that] embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). Under that rule, "an expert may opine on an issue of fact within the jury's province, [however] he may not give testimony stating ultimate legal

conclusions based on those facts." Bilzerian, 926 F.2d at 1294.  Put another way, a distinction is drawn between "ultimate factual conclusions that are dispositive of particular issues if believed," United States v. Scop, 846 F.2d 135, 142 (2d Cir. 1988), and "opinions phrased in terms of inadequately explored legal criteria" that would "merely tell the jury what result to reach," id. at 140 (internal quotation marks omitted); the former is admissible, the latter is not.

In this case, Kane's proposed testimony consists mostly of recitations of the law which, to be sure, is inadmissible testimony because it impinges on the province of the court in instructing the jury on the applicable legal standards.  The rest of Kane's proposed testimony consists of recitations of plaintiff's version of the facts, conclusions based on her application of plaintiff's version of the facts to her version of the law, and various unsupported legal conclusions.  This testimony is also inadmissible.

Therefore, defendants' motion to preclude Kane's expert testimony will be granted.

### B. Plaintiff's Motion to Strike

Plaintiff moves to strike the declarations of Jill Hambley ("Hambley") and Sean Wiggins ("Wiggins") filed by defendants in support of their motion for summary judgment. Plaintiff argues that Hasbro failed to identify Hambley and Wiggins in its Rule 26(a)(1)(A) disclosures and responses to interrogatories; and the declarations lack foundation showing that Hambley and Wiggins are competent to testify to relevant matters under Rule 56(e).

Under the Federal Rule of Civil Procedure 26, "a party must, without awaiting discovery request, provide to other parties . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A).

Also, under Federal Rule of Civil Procedure 33, a party must answer fully, in writing, and under oath, or properly object to each written interrogatory served upon it by another party. Fed. R. Civ. P. 33(b)(1).  Generally, parties are under a duty to supplement or amend such disclosures and interrogatory responses to include material information acquired at a later date.

In this case, Hasbro identified Wiggins as a "person having knowledge of any charge of infringement or unfair competition involving the term 'CANDY LAND' or any other similar term" in its response to plaintiff's first set of interrogatories dated November 22, 2005. (Habro's Resp. to Pl.'s First Set of Interrogs. 18-19.)  Hasbro also identified then-Vice President of Marketing Mark Stark, Hambley's predecessor, in its Rule 26(a)(1) disclosures (Hasbro's Initial Disclosures 3), and responses to plaintiff's interrogatories (Habro's Resp. to Pl.'s First Set of Interrogs. 4-5, 8, 15, 17-18).  That Hasbro did not supplement or amend its disclosures and responses to reflect Hambley's substitution of Stark as Vice President of Marketing is of no moment.  Both Stark and Hambley derived their knowledge and involvement in this matter from their status as Vice President of Marketing.  Therefore, Hasbro's failure to supplement or amend its disclosures and responses did not prejudice plaintiff.

As to plaintiff's second position – that the declarations lack foundation showing competency – both declarations were submitted "based on personal knowledge and on documents kept in the ordinary course of business," (Hambley Decl. 1; Wiggins Decl. 1), both of which are proper bases for testimony.  Thus, the declarations do not lack foundation showing competency.

Therefore, plaintiff's motion to strike the Hambley and Wiggins declarations will be denied.

**C.  Defendants' Motion for Summary Judgment**

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986); Silver v. City Univ. of New York, 947 F.2d 1021, 1022 (2d Cir. 1991).  The court will not try issues of fact on a motion for summary judgment, rather it will determine "whether the evidence presents a sufficient disagreement to require submission to a [fact-finder] or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law."  Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).  A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997).  In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002).

**1. Trademark Infringement Claims**

Defendants move for summary judgment on plaintiff's trademark infringement claims

on the grounds that (a) plaintiff's mark "CANDYLAND" is not entitled to protection, (b) defendants' use of plaintiff's mark is not likely to cause confusion among consumers, and (c) plaintiff's claim for monetary damages is barred by the absence of actual confusion.

Plaintiff asserts separate claims for trademark infringement under 15 U.S.C. §§ 1114(1) & 1125(a), respectively; however, "[a] claim of trademark infringement, whether brought under 15 U.S.C. § 1114(1) (for infringement of a registered mark) or 15 U.S.C. § 1125(a) (for infringement of rights in a mark acquired by use), is analyzed under the familiar two-prong test described in Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072 (2d Cir.1993)." Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003) (citation omitted). The Gruner court, after whittling away all of the "assembled verbiage" contained in the trademark statute, devised a two-prong test for assessing trademark infringement claims: first, it must be determined whether the plaintiff's mark is entitled to protection; and second, it must be determined whether the defendant's use of its own mark is likely to cause confusion with the plaintiff's mark among consumers. Gruner, 991 F.2d at 1074, 1075.

### a. Protectability of Mark

Whether a mark is entitled to protection depends on where it falls within the following five classes of marks: generic, descriptive, suggestive, arbitrary, and fanciful. Id.; Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976). A mark is generic, and never entitled to protection, if it is a common name that describes a type of product; a mark that refers to "the genus of which the particular product is a species." Abercrombie & Fitch Co., 537 F.2d at 9. A mark is descriptive, and entitled to protection

upon proof that it has acquired a secondary meaning,[1] if it describes something about the product, its features, qualities, ingredients, or intended purpose or use. Gruner, 991 F.2d at 1076. A mark is suggestive, and entitled to protection, if it "merely suggests the features of the product, requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods." Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 344 (2d Cir. 1999). A mark is arbitrary, and entitled to protection, if it is a common term but not connected in any way to the product. See id. Finally, a mark is fanciful, and entitled to protection, if it is "not a real word at all, but invented for its use as a mark." Id.

Because the classification of a mark depends on how it is viewed by the purchasing public, it is generally a factual question. Id.; Bristol-Myers Squibb Co. v. McNeill-P.P.C., Inc., 973 F.2d 1033, 1039-40 (2d Cir. 1992). However, if there is but one reasonable conclusion based on the undisputed evidence, the classification question is properly answered on summary judgment.

It is undisputed that plaintiff's mark "CANDYLAND," to the extent that it is used in connection with candy goods, has achieved incontestable status under 15 U.S.C. § 1065. Therefore, if plaintiff's mark is classed as anything other than generic, it is entitled to at least some level of protection. See Gruner, 991 F.2d at 1077.

Not surprisingly then, defendants argue that plaintiff's mark is generic. As movants, defendants have the burden of proving that based on the undisputed evidence this is the only

---

[1] A party can show that a mark has attained a secondary meaning in one of two ways: he can show that the mark has attained "an identity that consumers associate with a single source, even though the source itself may be unknown"; or he can show that the mark was registered with the USPTO and has attained incontestable status under 15 U.S.C. § 1065. Gruner, 991 F.2d at 1076.

reasonable conclusion a jury could reach.  In support of their argument, defendants cite to Abercrombie & Fitch Co. for the proposition that plaintiff's mark is generic as a matter of law because he simply appended the suffix "land" to a generic term for a type of goods (in this case, "candy") and used the combined term as a name for a store that sells that type of goods.  See Abercrombie & Fitch Co., 537 F.2d at 12.  There are two problems with defendants' reliance on Abercrombie & Fitch Co.  First, that case does not explicitly hold that as a matter of law such terms are always generic.  Second, plaintiff seeks redress for infringement of his mark in connection with candy goods, not candy retail services.  (See First Am. Compl. ¶¶ 6, 12.)  Indeed, plaintiff's mark is registered with the USPTO in connection with candy goods only, not candy retail services.  (See Purcell Aff. Ex. A, Trademark Research Report dated July 21, 1997.)  So even if plaintiff's mark is generic in connection with candy retail services, it is not necessarily generic in connection with candy goods.  Thus, Abercrombie & Fitch Co. does not support defendants' position that the only reasonable conclusion is that plaintiff's mark is generic.

  Defendants also argue that plaintiff's mark is generic because it has been used extensively by third parties.  In support of this argument, defendants point to the declaration of Sean Wiggins, a paralegal in Hasbro's general counsel's office.  Wiggins attests to the fact that he has come across more than forty candy businesses that use "candyland" or a similar name.  While extensive third-party use detracts from the distinctiveness or strength of a mark, it does not necessarily mean that the purchasing public perceives it as generic.  Defendants have not produced any consumer surveys or other such evidence showing that the purchasing public perceives the term "candyland" as a generic term for candy goods.

Therefore, defendants have not met their burden of proving that, based on the undisputed evidence, the only reasonable conclusion is that the purchasing public perceives plaintiff's mark as generic.

### b. Likelihood of Confusion

Turning to whether defendants' use of its own mark is likely to cause confusion among consumers, there are two types of confusion, both actionable: ordinary confusion and reverse confusion.  Ordinary confusion occurs when consumers mistakenly believe that the senior user (typically the larger, more powerful company) is the source of the junior user's goods.  Reverse confusion occurs when consumers mistakenly believe that the junior user (typically the larger, more powerful company) is the source of the senior user's goods.

In cases of ordinary confusion, courts usually consider a number of factors set forth in <u>Polaroid Corp. v. Polarad Elecs. Corp.</u>, 287 F.2d 492 (2d Cir. 1961): (1) the strength of plaintiff's mark, (2) the degree of similarity between the two marks, (3) the proximity of the products, (4) the likelihood that plaintiff will "bridge the gap" and enter defendants' markets, (5) whether there is actual confusion between the products, (6) whether defendants acted in good faith in adopting their own mark, (7) the quality of defendants' product, and (8) the sophistication of buyers.  <u>Polaroid Corp.</u>, 287 F.2d at 495.  Many of the <u>Polaroid</u> factors, or slightly modified versions thereof, are also helpful in determining the likelihood of reverse confusion.  See <u>A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.</u>  237 F.3d 198, 234 (3d Cir. 2000) (setting forth a number of reverse confusion factors similar to the <u>Polaroid</u> factors).

The balancing of these factors is a matter of law properly conducted by courts; however, each factor poses questions of fact which, if disputed, are not properly answered

on summary judgment. See Star Indus., Inc. v. Bacardi & Co., Ltd., 412 F.3d 373, 384 (2d Cir. 2005).

With the exception of the actual confusion factor – plaintiff admits that he cannot prove actual confusion – there are questions of fact with regard to most of the Polaroid factors. For example, the conceptual and commercial strength of plaintiff's mark depends on how it is viewed by the purchasing public and, as discussed above, defendants have not produced evidence indicating what consumers believe one way or the other. (Interestingly, defendants argue that their mark is commercially strong due to its connection to Hasbro's famous board game; however, this indicates a likelihood of reverse confusion.) Moreover, while defendants have shown there to be some stylistic differences in the parties' marks, they have not shown that consumers are unlikely to confuse the two marks. Also, plaintiff has raised questions of fact with respect to whether defendants acted in bad faith. Plaintiff has produced evidence that Hasbro initiated negotiations with him in an attempt to secure rights to the "CANDYLAND" mark in connection with candy goods and, after negotiations failed, continued to license the mark to TRU. Thus, he has raised factual questions related to that Polaroid factor.

Since plaintiff has raised questions of fact with respect to many of the Polaroid factors, a reasonable jury could find that there is a likelihood of confusion.

### c. Damages

Defendants argue that plaintiff is not entitled to monetary damages absent a showing of actual confusion. In an action for trademark infringement under the Lanham Act, a plaintiff may recover any damages he sustains as a result of the infringement, the defendant's profits derived from the infringement, and costs of the action, including attorney's

fees. 15 U.S.C. § 1117(a); see George Basch Co., Inc. v. Blue Coral, Inc., 968 F.2d 1532, 1537 (2d Cir. 1992). Thus, a distinction is made between the plaintiff's damages and the defendant's profits. In order to recover damages, "the plaintiff must prove either actual consumer confusion or deception resulting from the violation . . . or that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion." George Basch Co., 968 F.2d at 1537 (internal quotation marks and citations omitted). In order to recover an accounting of profits, the plaintiff must show that the defendant engaged in willful deceptiveness. Id. at 1537, 1540. Thus, a showing of willful deceptiveness is a prerequisite to recovery of damages and/or profits in a trademark infringement action.

In this case, plaintiff admits that he has no evidence of actual consumer confusion or deception. As discussed above, he has raised questions of fact with respect to whether defendants willfully infringed on his trademark rights; however, that is not enough. To show willful deception, a plaintiff must show that the defendant intended to confuse or deceive consumers into believing that the plaintiff was the source of the defendant's goods; or, in cases of reverse confusion (such as this one), that the defendant is the source of the plaintiff's goods. Plaintiff has not produced any evidence that defendants willfully sought to convince consumers that they were the source of plaintiff's candy goods. Therefore, even though plaintiff has raised questions of fact as to whether defendants willfully infringed on his trademark rights, he has not raised such questions as to whether defendants' actions were willfully deceptive.[2]

---

[2] It should be noted that the fact that plaintiff produced no evidence of willful deception does not dispositively affect the likelihood-of-confusion analysis under Polaroid.

However, in light of the fact that plaintiff has raised questions of fact with respect to whether defendants willfully infringed on his trademark, and the broad discretion given to district judges in awarding reasonable costs and attorney's fees under 15 U.S.C. § 1117, see Quaker State Oil Refining Corp. v. Kooltone, Inc., 649 F.2d 94, 95 (2d Cir. 1981), plaintiff is not barred from recovering costs and attorney's fees.

Therefore, plaintiff is not entitled to recover any monetary damages or an accounting of defendants' profits. Plaintiff may be entitled, however, to the requested injunctive relief as well as costs and attorney's fees.

### d. Conclusion

Therefore, defendants' motion for summary judgment on plaintiff's trademark infringement claims under 15 U.S.C. §§ 1114(1) & 1125(a) will be denied, except that plaintiff is not entitled to recover monetary damages or an accounting of defendants' profits.

### 2. State Law Claims

Defendants also move for summary judgment on plaintiff's state law claims for deceptive business acts and false advertising under NYGBL §§ 349 & 350, respectively, and unfair competition under the common law.

Plaintiff's unfair competition claim shares many common elements with his trademark infringement claims under the Lanham Act, including the need for proof of actual confusion to recover damages. W.W.W. Pharmaceutical Co., Inc. v. Gillette Co., 984 F.2d 567, 576 (2d Cir. 1993). Thus, the same questions of fact that militate against granting summary judgment on plaintiff's trademark infringement claims, militate against granting summary judgment on his unfair competition claim. However, plaintiff's inability to show actual confusion or willful deception also prevents him from recovering monetary damages or

an accounting of defendants' profits under that claim. Therefore, defendants' motion for summary judgment on plaintiff's unfair competition claim will be denied, except that plaintiff is not entitled to recover monetary damages or an accounting of defendants' profits with respect to that claim.

Defendants' motion for summary judgment on plaintiff's NYGBL claims, however, will be granted because plaintiff has failed to respond in opposition to that portion of defendants' motion. Moreover, those statutes were designed to protect consumers at large and require a showing of direct harm to consumers more than the consumer confusion found in trademark infringement actions. See Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995); SMJ Group, Inc. v. 417 Lafayette Restaurant LLC, 2006 WL 2516519, *4 (S.D.N.Y. Aug. 30, 2006). Plaintiff has not shown such harm.

## IV. CONCLUSION

Accordingly, it is

ORDERED that:

1. Defendants' motion to preclude the expert testimony of Seigrun D. Kane, Esq., is GRANTED;

2. Plaintiff's motion to strike the declarations of Jill Hambley and Sean Wiggins is DENIED;

3. Defendants' motion for summary judgment is GRANTED in part and DENIED in part;

4. Defendants' motion for summary judgment on plaintiff's claims under New York General Business Law §§ 349 & 350 (Counts Three and Four) is GRANTED and those claims are DISMISSED; and

5. Defendants' motion for summary judgment on plaintiff's trademark infringement and unfair competition claims (Counts One, Two, and Five) is DENIED, except that plaintiff is not entitled to recover monetary damages or an accounting of defendants' profits.

IT IS SO ORDERED.

_____
United States District Judge

Dated: October 23, 2007
       Utica, New York.