UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

**SPERO HARITATOS**,

           *Plaintiff*,

-vs-

**HASBRO, INC. and
TOYS "R" US LLC,**

           *Defendants*.

Civil Action No.
05-CV-930 (DNH/GJD)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION
FOR RECONSIDERATION OF THE PORTION OF THE COURT'S ORDER
DATED OCTOBER 23, 2007, HOLDING THAT PLAINTIFF IS NOT ENTITLED TO
RECOVER MONETARY DAMAGES OR AN ACCOUNTING OF DEFENDANTS'
PROFITS, OR IN THE ALTERNATIVE, FOR CERTIFICATION
OF THE QUESTION FOR INTERLOCUTORY APPEAL**

Robert E. Purcell
*of Counsel*

**HISCOCK & BARCLAY, LLP**
Office and Post Office Address
One Park Place
300 South State Street
Syracuse, New York 13202-2078
Telephone: (315) 425-2724
Facsimile: (315) 425-8551
E-Mail: rpurcell@hiscockbarclay.com

*Attorneys for Plaintiff*
Spero Haritatos

## TABLE OF CONTENTS

                                                               **Page**

TABLE OF AUTHORITIES .................................................................................................. ii

SUMMARY OF ARGUMENT ................................................................................................ 1

THE HISTORY OF SECOND CIRCUIT LAW SUGGESTS THAT THE
CURRENT STANDARD FOR DETERMINING A TRADEMARK
OWNER'S RIGHT TO RECOVER MONETARY DAMAGES AND
PROFITS IN A TRADEMARK INFRINGEMENT CASE UNDER THE
LANHAM ACT IS "BAD FAITH" ......................................................................................... 3

IF THE COURT CHOOSES NOT TO RECONSIDER ITS ORDER AND
TO PERMIT PLAINTIFF TO SEEK MONETARY RELIEF, THEN THIS
COURT SHOULD CERTIFY THE ISSUE FOR INTERLOCUTORY APPEAL
PURSUANT TO 28 U.S.C. § 1292(b) ..................................................................................... 7

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                               **Page**

*APCC Servs., Inc. v. AT&T Corp.*, 297 F. Supp. 2d 101 (D.D.C. 2003) ...... 9

*Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365 (10th Cir. 1977), *cert. dismissed*, 434 U.S. 1052 (1978) ...... 7

*George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532 (2d Cir. 1992) ...... 2, 5

*Hadjipateras v. Pacifica*, 290 F.2d 697 (5th Cir. 1961) ...... 8

*In re Cement Antitrust Litigation*, 673 F.2d 1020 (9th Cir. 1981) ...... 8

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749 (2d Cir. 1996) ...... 6

*Karaha Bodas Co., LLC v. Perusahan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.2d 70 (2d Cir. 2002), *cert. denied*, 539 U.S. 904 (2003) ...... 8

*Madison Shipping Corp. v. Nat'l Maritime Union*, 282 F.2d 377 (3d Cir. 1960) ...... 8-9

*Monsanto Chem. Co. v. Perfect Fit Prods Mfg. Co.*, 349 F.2d 389 (2d Cir. 1965), *cert. denied*, 383 U.S. 942 (1966) ...... 4

*Salim Oleochemicals, Inc. v. M/V Shropshire*, 177 F. Supp. 2d 159 (S.D.N.Y. 2001) ...... 9

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947 (7th Cir. 1992) ...... 7

*W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 565 (2d Cir. 1970) ...... 4-5, 5

*United States v. Woodbury*, 263 F.2d 784 (9th Cir. 1959) ...... 8

*U.S. Rubber Co. v. Wright*, 359 F.2d 784 (9th Cir. 1966) ...... 9

**Statutes**

15 U.S.C. § 1117 (2000) ...... 3, 4

15 U.S.C. § 1125 (2000) ...... 3, 4

28 U.S.C. § 1292(b) (2000) ...... 3, 8

Plaintiff, by and through his undersigned attorneys, hereby moves for reconsideration of the portion of the Court's Order dated October 23, 2007 holding that Plaintiff is not entitled to recover monetary damages or an accounting of Defendants' profits, or in the alternative, for certification of the question for interlocutory appeal.

1. **SUMMARY OF ARGUMENT**

This Court's Order dated October 23, 2007 disposed of the Defendants' motion for summary judgment on the basis that (a) the Plaintiff's mark was allegedly generic and therefore not protectable; (b) that there is no likelihood of confusion between the Plaintiff's trademark and the Defendants' trademark; and (c) for partial summary judgment, that Plaintiff is not entitled to any monetary relief in the form of damages or an accounting of Defendants' profits. The Order denied the motion, except that the Court granted the motion for partial summary judgment, holding that "plaintiff is not entitled to recover monetary damages or an accounting of defendants' profits." (*See*, p. 16 of the Order). The Court specifically and expressly found that Plaintiff presented sufficient evidence regarding "whether defendants acted in bad faith" and "whether defendants willfully infringed on [plaintiff's] trademark rights" (*See*, pps. 12-13 of the Order). Nevertheless, the Court recited a standard that Plaintiff must show "willful deceptiveness" in order to obtain any monetary relief, in denying such relief. The Court relied solely on the Second Circuit decision of *George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532 (2d Cir. 1992).

Reconsideration is requested because the monetary relief issue was not adequately briefed or argued at a hearing on the motion for summary judgment, and the Court relied solely upon a case that none of the parties cited in their briefs. Although Defendants' Memorandum in support of their summary judgment motion consisted of 25 pages, the Memorandum contained only a single, three-sentence paragraph addressing their motion for partial summary judgment regarding the monetary

- 2 -

relief. (*See*, p. 23 of the Memorandum). Defendants' Reply Memorandum consists of ten pages, however the Reply Memorandum contains only three paragraphs addressing the monetary relief issue. Very importantly, the Reply Memorandum only, and repeatedly, references "bad faith" as the standard that should be applied by this Court in addressing the monetary relief issue. Not only did none of the parties address the *George Basch* decision, none of the parties discussed or advocated a "willful deceptiveness" standard.

As explained in more detail below, Plaintiff believes that later Second Circuit decisions abandoned any "willful deceptiveness" standard, and have applied a "bad faith" or "willful infringement" standard in determining the availability of monetary relief -- exactly the standards that the Court expressly found that Plaintiff had satisfied for purposes of the summary judgment motion, and exactly the standard that Defendants advocated in their Reply Memorandum.

In particular, Plaintiff will present three separate, distinct arguments. First, that the evidence presented by Plaintiff does indeed show "willful deceptiveness" as that term was interpreted by the *George Basch* decision; second, that the Second Circuit abandoned the "willful deceptiveness" standard in favor of other, more lenient standards; and third, that any standards heretofore considered by the Second Circuit apply to the classic forward likelihood of confusion situation, and where, as here, the trademark owner relies principally upon a reverse likelihood of confusion situation, the Second Circuit should and would apply a different standard such as "bad faith" or "willful infringement".

In the event that this Court chooses not to reconsider its Order and to permit Plaintiff to seek monetary relief, Plaintiff further asks this Court to certify the question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

2. **THE HISTORY OF SECOND CIRCUIT LAW SUGGESTS THAT THE CURRENT STANDARD FOR DETERMINING A TRADEMARK OWNER'S RIGHT TO RECOVER MONETARY DAMAGES AND PROFITS IN A TRADEMARK INFRINGEMENT CASE UNDER THE LANHAM ACT IS "BAD FAITH."**

Plaintiff has presented two separate causes of action under the Lanham Act, one for infringement of a federally registered trademark under Section 32 of the Act, and the other for false designation of origin under § 43(a) of the Act. Section 35(a) of the Lanham Act provides that for a violation of either section of the Lanham Act relied upon by Plaintiff, when a violation has been established, "the plaintiff *shall be entitled* ..., and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and...The Court *shall assess* such profits and damages...." (*emphasis added*).

> (a) When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 43(a) or (d) [1125(a) or (d) of this title], or a willful violation under section 43(c) [1125(c) of this title], shall have been established in any civil action arising under this chapter, the plaintiff ***shall be entitled***, subject to the provisions of sections 29 and 32 [1111 and 1114 of this title], and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court ***shall assess*** such profits and damages or cause the same to be assessed under its direction.

It is interesting to note that § 35(a) states that a plaintiff is entitled to such a monetary recovery under a different section of the Lanham Act, § 43(c), only for a *willful* violation of that section. Consequently, according to conventional statutory interpretation, the absence of the qualifying word "willful" in connection with infringement of a federally registered mark or violations of § 43(a), implicitly means that a plaintiff is entitled to such monetary relief even when there is no "willful" violation, subject to the principles of equity. Indeed, early Second Circuit law noted that "an accounting should be awarded automatically in most cases."[1]

---

[1] *Monsanto Chem. Co. v. Perfect Fit Prods. Mfg. Co.*, 349 F.2d 389 (2d Cir. 1965) *cert. denied*, 383 U.S. 942 (1966).

Despite the necessary statutory interpretation that a trademark owner *shall* be entitled to monetary relief for infringement of a federally registered mark or for violation of § 43(a), even for non-willful infringements and violations, courts have generally interpreted the qualifying language "subject to the principles of equity" contained in § 35(a) as generally requiring some sort of egregious conduct by the infringer or violator before monetary relief will be awarded.

Many Second Circuit decisions require the plaintiff to show either actual customer confusion or deception or egregious conduct by the defendant. Plaintiff admittedly has not presented evidence of actual customer confusion or deception.[2]

Plaintiff's Memorandum in opposition to Defendants' motion for summary judgment relied substantially upon the Second Circuit decision in *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 565 (2d Cir. 1970). That case involved facts very similar to material facts in the instant case. In *Bassett*, Revlon tried to acquire Bassett's business, including its trademarks, which included the trademark "TRIM". When the negotiations proved unsuccessful, Revlon marketed a non-competitive, related product under the trademark "CUTI-TRIM", but always with the well-known trademark "REVLON". The Second Circuit found that Revlon had "intentionally and fraudulently infringed Bassett's mark." *Id.* at 662. The Second Circuit also agreed with the lower court's findings that "Revlon was found to have deliberately and fraudulently infringed Bassett's mark" and noted in approving the monetary award against Revlon that it is "essential to deter companies from willfully infringing" and that "a company found guilty of willful infringement shall lose *all* its profits from its use of the infringing mark." *Id.* at 664.

---

[2] That the Second Circuit has repeatedly held that evidence of even a single instance of "actual customer confusion or deception" can trigger the right to monetary relief is silly and unfortunate. As an example highlighting the absurdity of such a triggering event: if an infringer has acted in good faith and has sold millions of products to millions of consumers, then even a single instance of actual confusion by a consumer may trigger the right to monetary relief, whereas an infringer engaging in a smaller scale infringement in reckless disregard of a trademark owner's rights might escape any monetary award in the absence of evidence of actual customer confusion.

The later *George Basch* decision, solely relied upon by this Court, extensively analyzed prior Second Circuit law and the different rationales under which monetary relief had been awarded in trademark infringement cases and seemed to conclude that a showing of "willful deception" was required in order to obtain monetary relief (where there is no evidence of actual confusion). The *George Basch* decision recognized that the *Bassett* decision did not expressly find "willful deceptiveness", but essentially determined that the *Bassett* court's decision finding that Revlon had "deliberately and fraudulently infringed Bassett's mark" was sufficient to satisfy the "willful deceptiveness" standard. 968 F.2d., at 1539.

In the instant lawsuit, Defendants had for a long time been aware of Plaintiff's federally registered trademark "CANDYLAND" for "candy" and never contested Plaintiff's trademark rights or trademark registration. Nonetheless, Defendant Hasbro, Inc. (hereafter "Defendant Hasbro") licensed Defendant Toys "R" US-NY, LLC (hereinafter "Defendant TRU") to use the mark "CANDY LAND" in connection with a variety of candy products in Defendant TRU's international flagship store in New York City. Thereafter, Defendant Hasbro tried to acquire Plaintiff's registered trademark rights, never suggesting that Plaintiff's trademark rights were impaired or invalid and never revealing its license agreement with Defendant TRU. Despite the failed negotiations, and despite Plaintiff's later initiating an opposition proceeding in the United States Patent and Trademark Office against Defendant Hasbro's pending application to register "CANDY LAND" in connection with a variety of beverages, Defendants continued their infringement. Not until the instant lawsuit was filed did the infringement abate.

If the *George Basch* decision implicitly found that the facts of the *Bassett* case must have supported a finding of "willful deceptiveness" in order to reverse the district court's denial of

monetary relief, then there is even a more potent argument that the same *George Basch* court would deem Defendants' actions here to constitute "willful deceptiveness".

Three years after the *George Basch* decision, the Second Circuit abandoned the *George Basch* "willful deceptiveness" standard, and repeatedly used the standard of "bad faith" in the decision *International Star Class Yacht Racing Association v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749 (2d Cir. 1996). It is extremely noteworthy that the *George Basch* decision was a 2-to-1 decision, in which the dissenting judge would have upheld the monetary award. One of the two judges in the majority was Chief Judge Oakes, who <u>authored</u> the later *Tommy Hilfiger* decision. A copy of the *Tommy Hilfiger* decision is attached to the concurrently filed Declaration of Robert E. Purcell in support of the instant Motion, for the Court's convenient reference. Thus, the *current* standard in the Second Circuit is that of "bad faith" - - exactly the standard, the sole standard, advocated by Defendants in their summary judgment papers here. Moreover, as previously mentioned, this Court in its Order expressly found that Plaintiff had presented evidence of Defendants' bad faith and of willful infringement, and thus, this Court inherently found that if a "bad faith" standard is applied, Defendants' motion for partial summary judgment on this issue should be denied.

Plaintiff also believes that the relevant Second Circuit decisions involve only situations of classic so-called "forward" likelihood of confusion, rather than so-called "reverse" likelihood of confusion, upon which Plaintiff principally relies here. Plaintiff believes that if the Second Circuit were to address the proper standard in the context of a reverse likelihood of confusion situation, then the Second Circuit would apply a standard different from "willful deceptiveness". Indeed, in a seminal reverse likelihood of confusion case, the Seventh Circuit expressly observed that there could not possibly be any true "willful deceptiveness" in a reverse likelihood of confusion case:

> Quaker argues that an award of its profits was inappropriate here because there was no evidence that Quaker intended to trade on STW's good will or reputation; *indeed, such an intent is necessarily absent in a reverse confusion case.*

*Sands, Taylor & Wood Co. v. The Quaker Oats Co.*, 978 F.2d 947 (7th Cir. 1992) (*emphasis added*). Likewise, in one of the path-breaking decisions involving reverse likelihood of confusion, the Tenth Circuit granted monetary relief where no reasonable interpretation of the facts could conclude that the defendant had engaged in "willful deceptiveness".[3] Consequently, Plaintiff believes that if the Second Circuit were presented with a reverse likelihood of confusion case in which the trademark owner had established either "bad faith" or "willful infringement", the Second Circuit would permit a monetary award under § 35(a) of the Lanham Act.

Reconsideration is earnestly solicited, and Plaintiff requests that this Court modify its Order dated October 23, 2007 and deny Defendants' motion for partial summary judgment on the issue of monetary relief.

3. **IF THE COURT CHOOSES NOT TO RECONSIDER ITS ORDER AND TO PERMIT PLAINTIFF TO SEEK MONETARY RELIEF, THEN THIS COURT SHOULD CERTIFY THE ISSUE FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b).**

28 U.S.C. § 1292(b) provides in pertinent part:

> (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the

---

[3] *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365 (10th Cir. 1977), *cert. dismissed*, 434 U.S. 1052 (1978).

>district court unless the district judge or the Court of Appeals or a
>judge thereof shall so order.

The issue of Plaintiff's entitlement to an award of monetary damages or the Defendants' profits is a very important, controlling question of law in this case.[4] Given the inconsistency with which the Second Circuit has set the standard in connection with forward likelihood of confusion cases, the lack of Second Circuit precedent in connection with reverse likelihood of confusion cases, and the authority in other circuits that monetary relief can be awarded in reverse likelihood of confusion cases without any showing of "willful deceptiveness", which has been noted as being necessarily absent in a reverse likelihood of confusion situation, Plaintiff believes that it is likely that the Second Circuit would establish a more lenient standard than the "willful deceptiveness" standard adopted by this Court.[5] Moreover, an immediate interlocutory appeal of the Order may materially advance the ultimate termination of this litigation because an unmodified Order substantially diminishes any chance for settlement of this lawsuit and provides an incentive for the parties to proceed through trial and appeal, and possible remand after appeal.[6] Further, the issue is extremely narrow and very simple to understand. Also, an application for appeal of such a controlling question of law "shall not stay proceedings in the district court" unless otherwise ordered, so that there will not necessarily be any delay in this lawsuit because of such a procedure.

Plaintiff proposes the following as the "controlling question of law":

---

[4] A controlling question of law is one that could materially affect the outcome of the district court litigation, *see, e.g., Karaha Bodas Co., LLC v. Perusahan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.2d 70 (2d Cir.), *cert. denied*, 539 U.S. 904 (200); *In re Cement Antitrust Litigation*, 673 F.2d 1020 (9th Cir. 1981), and the question need not be dispositive of the lawsuit. *See, e.g., Hadjipateras v. Pacifica*, 290 F.2d 697 (5th Cir. 1961); *U.S. v. Woodbury*, 263 F.2d 784 (9th Cir. 1959).

[5] A substantial ground for difference of opinion is demonstrated by adducing conflicting and contradictory opinions of courts which have ruled upon the issue, *see, e.g., Madison Shipping Corp. v. National Maritime Union*, 282 F.2d 377 (3d Cir. 1960); *APCC Services, Inc. v. AT&T Corp.*, 297 F. Supp. 2d 101 (D.D.C. 2003); *Salim Oleochemicals, Inc. v. M/V Shropshire*, 177 F. Supp. 2d 159 (S.D.N.Y. 2001).

[6] An appellate decision may materially advance the ultimate determination of the litigation if it might avoid protracted and expensive litigation. *See, e.g., U.S. Rubber Co. v. Wright*, 359 F.2d 784 (9th Cir. 1966).

- 9 -

> In a trademark infringement lawsuit where monetary relief is governed by § 35(a) of the Lanham Act, and where there is no evidence of actual confusion, but there is evidence of both bad faith and willful infringement, must the trademark owner additionally prove that the infringement was committed with "willful deceptiveness" in order to obtain any monetary relief in the form of both damages and profits, especially where the trademark owner is relying primarily upon a theory of reverse likelihood of confusion, rather than the classic theory of forward likelihood of confusion?

In the event this Court chooses not to modify its Order as requested by Plaintiff, Plaintiff further moves that this Court certify the issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

4. **CONCLUSION**

Wherefore, Plaintiff prays that this Court's Order dated October 23, 2007 be modified to deny Defendants' motion for partial summary judgment regarding the issue of monetary relief, or in the alternative, that this Court certify the issue for resolution by interlocutory appeal.

                                              Respectfully submitted,

                                              HISCOCK & BARCLAY, LLP

Dated: November 5, 2007        By: _____
      Syracuse, New York                Robert E. Purcell
                                              Bar Roll No. 510595
                                              *Attorneys for Plaintiff*
                                              *Spero Haritatos*
                                              One Park Place
                                              300 South State Street
                                              Syracuse, New York  13202-2078
                                              Telephone: (315) 425-2802
                                              Facsimile:  (315) 703-8594
                                              E-Mail: rpurcell@hiscockbarclay.com