UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SPERO HARITATOS,

                      Plaintiff,

         -vs-

HASBRO, INC. and TOYS "R" US LLC,

                      Defendants.

Civil Action No.
6:05-cv-930 (DNH/GJB)

---

**PLAINTIFF'S RESPONSE TO THE MARCH 19, 2008
SUBMISSION OF HASBRO, INC.**

Plaintiff, Spero Haritatos, hereby responds to the March 19, 2008 submission of Hasbro, Inc. (hereinafter "Hasbro"), as directed by this Court's Order entered March 21, 2008.

As an initial matter, Plaintiff continues to object to the timeliness of this submission of evidence concerning the nature of attorneys' fees being sought, since the matter was set for evidentiary hearing on March 4, 2008, and by Order dated January 31, 2008, the parties were directed to provide both an exhibit list and a witness list ("specifying very briefly the testimony of any witness, and the nature of any exhibit") by February 26, 2008 - - before the hearing on March 4, 2008. Although Hasbro's long-pending motion to compel discovery or for sanctions expressly sought the possible award of attorneys' fees, the materials submitted by Hasbro on March 19, 2008 were not previously revealed in Hasbro's witness list and exhibit list and should be stricken. Moreover, Plaintiff was denied the right to examine both Mr. Landsman and Mr. Vanasse, who never appeared at the hearing on March 4, 2008, in connection with testimony

proffered in their declarations submitted on March 19, 2008. Plaintiff raised this objection at the March 4, 2008 hearing, and maintains, and does not waive, that objection.[1]

The Declaration of Kim J. Landsman in Hasbro's March 19, 2008 submission relies upon several invoices of his law firm to Hasbro in connection with the lawsuit, however, wholesale portions of those invoices admittedly have been masked. Plaintiff moves to strike all of those invoices as being incomplete documents. Hasbro did not obtain prior consent of the Court to mask the documents, nor did it obtain consent from opposing counsel to do so. More importantly, Hasbro has contended as part of these proceedings that Plaintiff was in violation of the Court Order dated August 11, 2006 directing that invoices from Plaintiff's law firm to Plaintiff in connection with a prior, related Trademark Office proceeding should be produced to Hasbro pursuant to a discovery request, despite Plaintiff's objections that some portions of the invoices contained attorney-client work product information and should be masked. Hasbro has been contending before this Court that Plaintiff has been in violation of the Court's Order directing Plaintiff to produce (complete) copies of those invoices. Now, Hasbro, unilaterally, without prior approval of the Court and without Plaintiff's consent, seeks to mask wholesale

---

[1] When the objection was raised at the hearing, Hasbro's counsel mentioned something about not having had time to gather all of the documents relating to the attorneys' fees and then said that he thought the court should first address the issue of whether sanctions in the nature of attorneys' fees were appropriate, and if so, then permit Hasbro to submit evidence concerning the requested attorneys' fees. However, by this Court's Order dated March 17, 2008 directing Hasbro to submit "its documents regarding attorneys' fees" by March 21, 2008, this Court implicitly recognizes that these materials should have been presented in Hasbro's witness list and exhibit list *prior to* any determination about the appropriateness of sanctions in the nature of attorneys' fees. Hasbro has not offered any excuse as to why its witness list and exhibit list were defective in this regard, and Hasbro can show no good cause as to why this Court should relieve it from compliance with the Court's January 31, 2008 Order.

portions of its invoices from scrutiny.[2] The masked, admittedly incomplete invoices should be stricken.

Plaintiff further requests that the March 19, 2008 submission be stricken in its entirety due to the letter brief presenting legal analysis and argument. As set forth in the attached Declaration of Robert E. Purcell, this Court told Plaintiff's counsel that no briefs should be submitted in connection with motions to be considered at the March 4th hearing, and Plaintiff has abided by those instructions. The Court's Order dated March 17, 2008 simply instructed Hasbro to "submit its documents regarding attorneys fees" by March 21, 2008 thus, Hasbro has unilaterally disregarded this Court's determination that no briefs should be filed in connection with the motions to be heard on March 4, 2008.

The reasonable rate used to determine the amount of attorneys' fees to award is calculated according to the prevailing rates in the district in which the court sits. In a recent decision (February 4, 2008), Judge Scullin of this Court determined in the copyright infringement action of *Paramount Pictures Corp. v. Wayne Hopkins*, Civil Action No. 5:07-cv-00593-FJS-GJD, Document No. 17, what hourly rates should be applied in awarding attorneys' fees:

> Recently, this Court determined, based upon these factors, that the reasonable hourly rates in this District, i.e., what a reasonable, paying client would be willing to pay, were $210 per hour for an experienced attorney, $150 per hour for an attorney with four or more years experience, $120 per hour for an attorney with less than four years

---

[2] Mr. Landsman admits that the redacted invoices "filtered out any time where [he] thought there might be a dispute over whether it came within those limitations [(relevant to the instant motion)]." (*See*, paragraph 3B of his Declaration), and that he redacted time charges relating to other tasks in the case that *he* deemed not directly related to the motion to compel discovery and for sanctions. (*See*, paragraph 6). The missing time entries might be germane to impeaching other relevant testimony, such as the testimony of Attorney Kramer as to why Hasbro belatedly served discovery for which responses were due after the discovery cut-off date, when, for example, the complete time entries might well reveal that the drafting of those discovery requests occurred at a time that would have permitted timely service.

experience, and $80 per hour for paralegals. *See New Paltz Cent. Sch. Dist. v. St. Pierre*, No. 1:02-CV-981, 2007 WL 655603, *2 (N.D.N.Y. Feb. 26, 2007).

Interestingly, Judge Scullin determined that an attorneys' fee claim made by individuals associated with Loeb & Loeb, LLP, who in that lawsuit were based in New York City and Los Angeles, should be resolved by applying the reasonable hourly rates in this District for their work.

Plaintiff has submitted a request for attorneys' fees calculated at the rates that it charged Hasbro ($593.75 - $665.00 for Mr. Landsman, $427.50 - $479.75 for Mr. Sant'Ambrogio, an associate who is 5-6 years out of law school, $432.25 - $489.25 for Ms. Kramer, an associate who is 4-5 years out of law school, plus what appears to be effectively about $160.00 per hour for legal assistants). Most astonishingly is the fact that Hasbro contends that these rates are "significantly below those of other major New York City law firms" (*See*, paragraph 9 of the Landsman Declaration) when the courts have recently, consistently held that awards of attorneys' fees in the Southern District of New York (where Hasbro's counsel are located) use "awarded rates range from $200.00 per hour for associates to over $400.00 per hour for senior partners." *See, e.g., Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co., Inc.*, 200 U.S. Dist. LEXIS 14714 (E.D.N.Y. 2008). A copy of this decision is attached per Local Rule 7.1(a)1.

Hasbro has argued that because its law firm represented it in connection with the prior, related Trademark Office opposition proceedings, and because of its prior, good relationship

with Mr. Landsman[3], this Court should disregard the presumption that a reasonable, paying client would in most cases hire counsel from within the litigation venue. Hasbro's March 18, 2008 submission cleverly avoids submitting a complete showing of time entries (including any time entries or disbursement entries pertaining to the travel fees and travel costs associated with its attorneys' appearances in this Court). In addition to the hourly rates that are astonishingly large for the legal community in the Syracuse, New York vicinity, one can surmise, based upon just the improperly redacted invoices submitted with Mr. Landsman's Declaration, that the overall invoices to Hasbro in connection with this lawsuit could clearly demonstrate that Hasbro's law firm is "over lawyering" this case. The knowledge gained by Hasbro in connection with the prior, related Trademark Office proceeding as well as any existing advantage of Hasbro's relationship with Mr. Landsman, would be far offset by a huge savings in attorneys' fees by hiring local counsel. It should also be appreciated that the instant dispute for which attorneys' fees are being sought is the "garden variety" discovery dispute having no need for any prior

---

[3]The Declaration of Mr. Vanesse fails to reveal that Hasbro has often hired counsel other than Mr. Landsman in connection with recently filed intellectual property litigation, sometimes hiring counsel of record located only in the venue where the lawsuit is pending. In the following relatively recent copyright and trademark federal court cases Hasbro was represented by counsel of record other than Kim Landsman and his law firm, Patterson, Belknap, Webb & Tyler LLP:

*In re Gunther S. Elkan v. Hasbro, Inc.*
  D. Oregon, 3:04-cv-01344-KI

*Stouffer v. Scholastic, Inc.*
  E.D. Pa., 2:00-cv-01201-HH
  (represented by counsel of record in Philadelphia, Pennsylvania)

*Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*
  S.D. Ill., 3:07-cv-00230-WDS-CJP

*Hasbro, Inc. v. Doe*
  N.D. Cal., 5:05-mc-80284-JF

*Gary Friedrich Enterprises, LLC v. Maruel Enterprises, Inc.*
  S.D.N.Y., 1:08-cv-01533-BSJ

*Hasbro, Inc. v. Pugh*
  W.D. Tex., 5:98-cv-00673-OLG
  (represented by counsel of record in San Antonio, Texas)

client relationship. Moreover, Hasbro has not submitted any evidence to the effect that it even tried to find legal counsel in the Syracuse, New York vicinity to represent it in connection with this lawsuit. Indeed, the other Co-Defendant, another huge corporate entity, Toys 'R Us, selected counsel located in Syracuse, New York as its lead counsel. Hasbro has not demonstrated that hourly rates different from those deemed reasonable for this District should be applied.

The various time entries are insufficient in many respects. For example, many entries are for activities that are not any "extra" imposition because of Plaintiff's alleged improper discovery conduct or are so vague that one cannot conclude by preponderance of the evidence that the activity related to any "extra" imposition because of sanctionable conduct by Plaintiff. The work was often block billed or co-mingled, so that again, Hasbro has not carried its burden and responsibility to clearly demonstrate what legal work and how much time was spent in connection with such "extra" activities that are also to be sanctioned with an award of attorneys' fees.[4] Hasbro's unmasked time entries will be addressed seriatum.

> The entry on 9/8/06 involves drafting requests for admissions, however there can be absolutely no basis for contending that Hasbro's own activities in drafting discovery pertains to Plaintiff's allegedly objectionable conduct. The entry also relates to drafting a brief in opposition to Plaintiff's objections to the Magistrate's August 11, 2006 Order. Such objections are permitted as of right under Rule 72, and therefore, Hasbro's activities in opposing those objections cannot possibly be

---

[4] Co-mingling tasks within one time entry may impede the Court's efforts to evaluate the reasonableness of any of the listed activities. *Soler v. G&U Inc.*, 801 F.Supp. 1956, 1061 (S.D.N.Y. 1992). And where the court cannot determine the reasonableness of the number of hours expended because of such co-mingling or block billing, the court will exclude those billings from the award calculation. *Teamsters Local 814, supra*. New York State courts are in accord. The Second Department in *Seth Rubenstein, P.C. v. Ganea*, 41 A.D.3d 54, 833 N.Y.S.2d 566 (2d Dep't 2007) ruled:
> [P]laintiff's billing entries are too imprecise to deduce the reasonable amount of attorney's fees. It is plaintiff's burden and responsibility to clearly, and in detail, present the hourly rate for legal services performed by various counsel, the specific services rendered, and the time spent in performing these services, to avoid the Court having to speculate or surmise this information.

*Accord, Barry Mallin & Associates P.C. v. Nash Metalware Co.*, 849 N.Y.S.2d 752 (Civil Ct. City of N.Y. 2008).

attributed to any allegedly objectionable conduct by Plaintiff. The entry for discussing some sort of "database issues" with some legal assistants is so vague and general that it cannot possibly be said to be related to any allegedly objectionable conduct.

The entry on 9/10/06 involves reviewing some sort of unidentified correspondence. One cannot conclude by preponderance of the evidence that this correspondence has any bearing on any allegedly objectionable conduct by Plaintiff. Again, the entry also relates to research and revisions of a brief in connection with opposition to the permitted objections under Rule 72 as to the Magistrate's August 11, 2006 Order. Such activities cannot possibly relate to any allegedly objectionable conduct.

The entry for 11/3/06 also relates only vaguely to "discovery responses", and Hasbro has not demonstrated how those activities were "extra" or how they relate to Plaintiff's allegedly objectionable conduct.

The entry for 12/6/06 relates to a review of one of the Magistrate's many decisions (which one is unknown) and discussing with some unidentified person some future tasks and strategies of some sort and nature. Again, such a vague entry cannot be said to be related to or caused by any allegedly objectionable conduct by Plaintiff. The next activity relates to reviewing potential experts, which again, apparently has absolutely no bearing on Plaintiff's allegedly objectionable conduct. The next activity is simply "Letter to Muldoon". However, it is not known what letter that relates to, whether it is simply reviewing a letter, etc., and again, cannot be said to relate to any "extra" activity caused by Plaintiff's allegedly objectionable conduct.

With regard to the time entry for 12/14/06, this entry had something to do with a voicemail from Plaintiff's counsel, Mr. Purcell, and some sort of talking with the Co-Defendant's counsel, Mr. McGowan. The time entry is vague, for example, was it just simply listening to a voicemail message from Mr. Purcell. Also, Mr. McGowan has absolutely nothing to do with the instant motion, and a talk with him could not possibly be germane to Plaintiff's allegedly objectionable conduct. The next activity is "gather correspondence", however, there is no indication of what correspondence is being gathered or for what purpose, and the vagueness of the entry prevents it from being viewed as relating to Plaintiff's allegedly objectionable conduct. The last activity is another talk with Mr. McGowan and with the Magistrate's deputy clerk for some inexplicable reason plus drafting some sort of letter to this Court. Again, there is no basis for believing that any talk with Mr. McGowan had anything to do with Plaintiff's allegedly objectionable conduct.

The entry for 1/8/07 involves a conference with Mr. Landsman and some unknown, unidentified person regarding presumably the instant motion and also to some sort of response regarding some sort of request for admissions, which

have an unknown relevance to the instant motions. The last activities relate to the logistics of obtaining production of documents from Mr. Haritatos, however, these activities would have been incurred regardless of when such production was made, and therefore, cannot legitimately be said to be any "extra" activity caused by Plaintiff's allegedly objectionable conduct.

The second time entry for 1/8/07 under KJL is totally vague and cannot be said to relate to Plaintiff's allegedly objectionable conduct or to any "extra" activities caused by Plaintiff's allegedly objectionable conduct.

The time entry for 1/16/07 again is vague, and cannot be said to relate to either the instant motions or to any "extra" activities caused by Plaintiff's allegedly objectionable conduct. Plaintiff also believes that about January 16, 2007, there was a telephone conference with the Magistrate pertaining to the Toys 'R Us motion to disqualify Plaintiff's law firm, and it is possible that this time entry relates to that unrelated matter.

The time entries for 1/29/07 and 1/31/07 all relate to Hasbro's drafting of and service of new discovery upon Plaintiff, which service was belated because the date for responding for discovery was after the discovery cut-off date of February 28, 2007.[5] There is no way that Plaintiff could possibly be held accountable for Hasbro's attorneys' fees spent in connection with its initiation of such discovery.

The time entries for 3/21/07, 3/22/07, 3/23/07, 3/25/07, 3/26/07, 3/29/07, 3/30/07 and 5/17/07 seem generally to relate to a motion to compel or for sanctions that was eventually filed on May 17, 2007. However, the "motion" comprises a two and one-third page letter addressed to the Magistrate, whereas there were about ***44 hours billed by three different attorneys involved with composing the two and one-third page letter***. In addition, some of the time entries cannot be said to relate to any of Plaintiff's allegedly objectionable conduct. For example, in the time entry for 3/21/07 under MDS, a review of third-party Candyland products and drafting correspondence regarding the same seems to have no relation to Plaintiff's allegedly objectionable conduct. Similarly, the time entries on 3/22/07 under KJL and 3/22/07 under MDS intermixes discovery and summary judgment motions, and work in connection with the summary judgment motions is not germane to the instant matter. The entry for 3/26/07 under MDS does not identify the correspondence reviewed or handled. Moreover, the activity of analyzing the

---

[5]These time entries show that the belated service of Hasbro's discovery in late January 2007 was not due to the timing of Plaintiff's production of its shipping invoices, but rather, was due to delays in having a senior attorney review the discovery already drafted by "junior" attorney. (They were served by mail on January 31, 2007, and responses were therefore due a few days after the discovery cut-off date of February 28, 2007.) There is a time entry dated 1/29/07 under KJL for "Review new requests for admission", but no earlier entries in January pertaining to drafting the requests for admission. This information, if it had been provided as an exhibit prior to the hearing on March 4, 2008 - - as was required by the Court's Order dated July 31, 2008 - - could have been used to impeach Ms. Kramer's testimony that the belatedness of service was due to the timing of the production. Hasbro's unilateral, unauthorized submission of selectively redacted time entries hides information that is potentially damaging and damning to Hasbro's contentions made to this Court.

Haritatos document production concerning shipments is not an "extra" activity that relates to Plaintiff's allegedly objectionable conduct. Also, the entry for strategizing and the motion for summary judgment is irrelevant to the instant matter. The entry under 3/29/07 under AKK does not indicate whether the revisions are to a brief for summary judgment or in connection with the instant motion, and therefore cannot be said to relate to Plaintiff's allegedly objectionable conduct. Again, the entry for 3/29/07 under MDS is vague as to what correspondence is being handled and reviewed. The entry for 3/30/07 under RPL for seven hours seems to relate to some sort of internal processing or cataloging of the many thousands of shipping invoices that Haritatos produced. Such activity, conducted at Hasbro's attorney's discretion, was inherent as part of the processing of the production of documents regardless of when the production occurred, and cannot be viewed as some sort of "extra" activity caused by Plaintiff's allegedly objectionable conduct.

The time entries of 6/1/07 through 6/7/07 appear to relate to the instant motion. Similarly, the time entries for 1/30/08 and 1/31/08 appear to relate to the instant motion. However, given Hasbro's "scattershot" accusations of different types of Plaintiff's allegedly objectionable conduct, and the existing exposure of the baselessness of some of those accusations, let alone any final determination of sanctionable conduct, Hasbro has not, and cannot, carry its burden of showing what portion of these activities should comprise any attorneys' fees award. Plaintiff has already demonstrated that a significant amount of irrelevant work went into Hasbro's motion to compel or for sanctions. For example, Hasbro contended that Plaintiff had completely failed to comply with this Court's Order of August 11, 2006 because the Order granted all of the relief requested in Hasbro's letter brief, citing to the end of the Order. However, at the hearing, Hasbro was corrected by Plaintiff's noting that the docket entry being relied upon by Hasbro was actually the Court's granting of the relief requested in a separate, different letter submitted by *Plaintiff*. As another example, Hasbro also persisted in telling the Court that Plaintiff had produced no documents in response to the Order in an allegedly timely manner, including those documents pertaining to an old federal trademark registration. Again, Hasbro was corrected by Plaintiff's submission of and testimony concerning an exhibit comprising Plaintiff's letter to Hasbro dated in June, 2006 that provided all of the requested documents in Plaintiff's possession, custody, or control relating to that registration - - production that occurred two months *before* the Court's Order dated August 11, 2006. Hasbro has not carried its burden of showing what work was associated with any particular sanctionable conduct (or conduct that might be sanctioned).[6]

Hasbro has engaged in a "scattershot" approach to its motion to compel discovery or for sanctions, which does not clearly delineate what precisely Hasbro is seeking to compel, as

---

[6] These litigation activities, and others, by Hasbro might provide ample foundation for Plaintiff's own motion for sanctions against Hasbro and its counsel.

distinguished from seeking sanctions only, and as distinguished from seeking sanctions specifically in the nature of an award of attorneys' fees. Accordingly, even as to the entries that relate to the motion to compel/sanctions, Hasbro has not carried its burden of delineating what billed activities relate to which aspects of its scatter shot motion to compel or for sanctions, let alone those as to which the Magistrate might rule warrant sanctions in the nature of attorneys' fees. Consequently, even the time entries that seem to relate to the instant motion are vague and co-mingled, since they relate to a scatter shot assortment of Plaintiff's allegedly objectionable conduct other than those as to which the Magistrate might issue sanctions in the nature of attorneys' fees.

All the foregoing is simply responsive to Hasbro's March 18, 2008 submission regarding the nature and amount of its attorneys' fees that Hasbro is seeking as sanctions for Plaintiff's allegedly objectionable conduct. Plaintiff maintains that such sanctions are unwarranted for at least the reasons expressed during the hearing on March 4, 2008, which are not waived. Plaintiff further maintains that, even if such sanctions were warranted, Hasbro's March 19, 2008 submission fails to satisfy Hasbro's burden of establishing the amount of attorneys' fees that it otherwise might be awarded.

Respectfully submitted,

Dated: March 26, 2008

By: /s/ Robert E. Purcell
Robert E. Purcell
Federal Bar Roll No. 510595
*Attorneys for Plaintiff*
Hiscock & Barclay, LLP
One Park Place
300 South State Street
Syracuse, New York  13202
Tel:  (315) 425-2802
Fax:  (315) 425-8594

4 of 12 DOCUMENTS

**Teamsters Local 814 Welfare Fund, Teamsters Local 814 Pension Fund, Teamsters Local 814 Annuity Fund, and Dennis Farrell, Stephen McInerney, George Daniello and James O'Mara, as Trustees, Petitioners, - against - Dahill Moving & Storage Co., Inc., Respondent.**

CV-07-2005 (CPS)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

2008 U.S. Dist. LEXIS 14717

February 27, 2008, Decided
February 27, 2008, Filed

**COUNSEL:** [*1] For Teamsters Local 814 Welfare Fund, Plaintiff: Joseph F Farelli, Michael J. D'Angelo, LEAD ATTORNEYS, Pitta & Dreier LLP, New York, NY.

For Teamsters Local 814 Pension Fund, Teamsters Local 814 Annuity Fund, Dennis Farrell, Stephen McInerney, George Daniello, James O'Mara, as Trustees, Plaintiffs: Joseph F Farelli, LEAD ATTORNEY, Michael J. D'Angelo, Pitta & Dreier LLP, New York, NY.

**JUDGES:** Charles P. Sifton, United States District Judge.

**OPINION BY:** Charles P. Sifton

**OPINION**

MEMORANDUM OPINION AND ORDER

SIFTON, Senior Judge.

Petitioners Teamsters Local 814. Welfare Fund, Teamsters Local 814 Pension Fund, Teamsters Local 814 Annuity Fund (the "Funds"), [1] and Dennis Farrell, Stephen McInerney, George Daniello and James O'Mara as Trustees ("Trustees"), initiated this action against respondent Dahill Moving and Storage Company, Inc. ("Dahill"). On May 16, 2007, petitioners filed a petition to confirm an arbitration award in the amount of $ 242,947.76, plus interest and damages, and reasonable attorneys' fees and audit fees, pursuant to *Section 301* of the Labor Management Relations Act, *29 U.S.C. § 185* ("LMRA"), [2] and the Federal Arbitration Act, *9 U.S.C. § 1 et. seq.* ("FAA"). [3] On May 30, 2007, the petition to confirm [*2] the arbitration award was granted. Presently before the Court is petitioners' motion for attorneys' fees, costs, and audit fees, as well as their motion to direct judgment in their favor in the amount of $ 242,947.76, plus $ 17,064.85 in liquidated damages, and $ 15,864.14 in interest, as well as $ 22,130.00 in attorneys' fees, $ 529.20 in costs, and $ 19,515.00 in audit fees, for a total payment of $ 318,050.96. For the reasons stated below, petitioners are awarded $ 18,864.50 in attorneys' fees, but the request for audit fees and costs is denied.

1   These Funds are employee benefit plans and provide fringe benefits to eligible employees. *See 29 U.S.C. § 1002*. Petitioners currently have pending before this Court a separate action against Dahill to recover unpaid contributions to the Funds (the "Contribution Action"). A preliminary injunction was issued in that action on May 30, 2007, ordering John DiBaptista and Michael DiBaptista, principal officers of Dahill, to place their respective shares of the proceeds from the anticipated sale of Dahill's warehouse in escrow pending the outcome of that litigation.
2   In relevant part, the statute reads:

> Suits for violation of contracts between an [*3] employer and a labor organization representing

Case 6:05-cv-00930-DNH-GJD   Document 180   Filed 03/26/08   Page 12 of 19

Page 2
2008 U.S. Dist. LEXIS 14717, *3

employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

*29 U.S.C. § 185(a).*
3   Under the FAA, parties to an arbitration agreement may make an application to a federal district court for an order confirming an arbitration award. *See 9 U.S.C. § 9.* In the present case, the FAA is not applicable since in cases brought pursuant to Section 301 of the LMRA, the FAA does not apply. *See Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink and Brewery Workers Union Local 812 Intern. Broth. of Teamsters, 242 F.3d 52 (2d Cir. 2001).* However, "federal courts have often looked to the Act for guidance in labor arbitration cases." *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 41 n.9, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987).*

**BACKGROUND**

The following facts are taken from the submissions of the parties in connection with this motion and the record of the prior proceedings before the undersigned.

The Funds are established and [*4] maintained by Local 814, International Brotherhood of Teamsters (the "Union") and various employers pursuant to the terms of successive collective bargaining agreements (CBAs) and declarations of trust, the most recent of which is the Restated Agreement and Declaration of Trust of the Teamsters Local 814 Pension Fund, Teamsters Local 814 Welfare Fund and Teamsters Local 814 Annuity Fund, effective August 25, 2004 (the "Trust Agreement"). The Funds, provide fringe benefits to eligible employees on whose behalf employers contribute pursuant to the CBAs.

Respondent Dahill, a moving and storage company, is a party to the CBA and a Memorandum of Agreement (the "MOA") extending, with modifications, the CBA for the period from May 1, 2005 through April 30, 2010. Under both the CBA and MOA, Dahill is bound to the terms and conditions of the Trust Agreement and is obligated to make contributions to the Funds on behalf of certain of its employees. Under a clause in the CBA referred to as the "50/50 Rule," Dahill is permitted to employ a number of "Casual Employees" equal to (but not greater than) the number of "Industry Employees" employed on a given work day. [4] Casual Employees are paid a lower [*5] hourly rate than Industry Employees and Dahill is required to make fewer benefit contributions to the Funds for Casual Employees.

   4   Casual Employees are those workers who have been paid for less than 800 hours work in a calender year, while Industry Employees are those workers have been paid for 800 or more hours.

In September 2004, the Funds informed Dahill that they would be performing an audit to ensure that Dahill was complying with the 50/50 Rule and that it was not employing more Casual Employees than Industry Employees. The Funds further informed Dahill that, if Dahill had violated the 50/50 Rule, Dahill would be liable for any benefit contributions it should have made for Industry Employees, plus an amount equal to the difference in hourly wages between Casual Employees and Industry Employees for the number of Industry Employees Dahill should have employed. The Funds conducted an initial audit, which was followed by a revised audit of respondent's books and records. The revised audit revealed that Dahill had in fact violated the 50/50 Rule during the period of December 20, 2002 to March 28, 2004, by hiring 1,033 more Casual Employees than contractually permitted and that Dahill [*6] owed the Funds $ 242,947.76 as a result. Of that amount, $ 85,324.24 was for unpaid benefits contributions and the remaining $ 157,623.52 was for the difference in wages (the "wage assessment").

The Funds demanded the amount due and when Dahill failed to make payment, the Funds sought arbitration for the amount due, plus any other monies (such as liquidated damages, interest, and attorneys' fees) they were entitled to be paid under the CBA. [5]

   5   The CBA provides that "any and all complaints, disputes, or grievances of any kind whatsoever arising between the Union and the Employer" shall be resolved through binding arbitration.

Arbitration hearings were held on November 13,

2006 and March 6, 2007 before a mutually agreed upon arbitrator. On May 9, 2007, the arbitrator found that Dahill had violated the 50/50 Rule, that the amount due had been computed correctly, that the Funds were entitled to collect the entire amount of $ 242,947.76 as damages, and that Dahill was not entitled to any offset of that amount. Accordingly, the arbitrator awarded the Funds $ 242,947.76 plus interest and liquidated damages, as well as "reasonable attorneys' fees and costs, including the cost of the audit." [6] [*7] At the time of the filing of the petition to confirm the award, Dahill had not paid any portion of the award which petitioners sought to enforce.

> 6   Interest and liquidated damages were awarded only on the unpaid contributions, not on the wage assessment. The CBA provides that the Funds be paid (1)interest on unpaid contributions at the rate of 18% per year and (2)liquidated damages equal to 20% of unpaid contributions.

On May 16, 2007, petitioners filed a petition to confirm the award with the Court as well as motions for a temporary restraining order and preliminary injunction requiring respondent post a bond to secure the arbitration award or to escrow a sufficient amount of the proceeds of a pending sale of its warehouse to secure award. On May 30, 2007, this Court denied petitioners' motion for a preliminary injunction and granted petitioners' motion to confirm the arbitration award. Petitioners were directed to settle judgment on notice reflecting both the arbitration award and any application for attorneys' fees and audit fees. *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 2007 U.S. Dist. LEXIS 39116, 2007 WL 1580085 (E.D.N.Y. May 30, 2007).

## DISCUSSION

*Attorneys' Fees*

Petitioners seek $ 22,130 [*8] in fees, which includes both the arbitration proceedings and the petition for confirmation of the award. [7] The award confirmed by the Court included attorneys' fees for the arbitration proceedings and, pursuant to the Trust Agreement, petitioners are entitled to attorneys' fees for the petition for confirmation. [8]

> 7   The fee amount sought by petitioners' counsel does not include the time spent in preparation for this motion. Farelli Decl. P 28.
>
> 8   Article VII, Section 4(d) of the Trust Agreement states in relevant part:
>
>> If the arbitrator determines that a Contribution delinquency or any other payment delinquency exists, the arbitration award shall provide for the assessment against the Employer, in addition to the amount of said delinquency or deficiency, of interest on the contributions owed at the rate of 18% per annum, attorneys fees and costs, liquidated damages of the greater of the interest owed or twenty (20%) percent of the contributions determined to be due, the cost of the audit and further, for assessment of all subsequent costs and attorneys' fees should the Trustees seek to have the award confirmed by the court.
>
> Trust Agreement, Petitioners' Exhibit (Pet. Exh.) A, attached to [*9] Farelli Declaration ("Farelli Decl.").

The award confirmed by the Court provides for "reasonable attorneys' fees and costs, including the cost of the audit." Arbitration Award at 24, Pet. Exh. B. The award does not itself determine the amount of costs and attorneys fees. The parties have submitted the determination of these amounts to the undersigned.

The Second Circuit uses the "presumptively reasonable fee," known as the "lodestar figure" (or "lodestar") in other circuits, to determine reasonable attorneys' fees for federal claims. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110 (2d Cir. 2007); *Cruz v. Local Union No. 3 of the International Brotherhood of Electrical Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994); *Heng Chan v. Sung Yue Tung Corp.*, No. 03-CV-6048, 2007 U.S. Dist. LEXIS 33883, 2007 WL 1373118 (S.D.N.Y. 2007). The presumptively reasonable fee "is arrived at by 'multiplying the number of hours reasonably expended on the litigations . . . by an hourly rate.'" *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998)(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40(1983)).

Case 6:05-cv-00930-DNH-GJD   Document 180   Filed 03/26/08   Page 14 of 19

Page 4
2008 U.S. Dist. LEXIS 14717, *9

*Hourly Rates*

Petitioners seeks attorneys' fees at the hourly rates of attorneys practicing in [*10] the Southern District of New York ("Southern District"), which are higher than the hourly rates charged in the Eastern District. Respondent opposes the application of Southern District hourly rates to this action.

The reasonable rate used to determine the amount of attorneys' fees to award is calculated according to the prevailing rates in the district in which the court sits. *Polk v. N.Y. State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983)*. However, "the district court may adjust th[e] base hourly rate to account for a plaintiff's reasonable decision to retain out-of-district counsel." *Arbor Hill, 493 F.3d at 111-112*. When "deciding whether to use an out-of-district hourly rate in its fee calculation" the district court should look at, "what a reasonable, paying client would be willing to pay," to have the case litigated efficiently. *Id at 112*.

A reasonable, paying client would presumptively hire a firm located near the courthouse in which the litigation is to take place and one which has a high rate of success with similar cases. Hiring an attorney located near the courthouse in which the litigation is to take place minimizes expenses incurred as a result of an attorney's travel [*11] time.

Here, petitioners hired the law firm of Pitta & Dreier LLP, which maintains offices in the Southern District. Pitta & Dreier LLP's labor practice, "is concentrated in client representation in traditional labor and management relations matters, including but not limited to grievance arbitration and mediation services and related court and administrative agency litigation." Pitta & Dreier website, http://www.pittadreier.com (last visited on February 15, 2008). Pitta & Dreier has represented petitioners in prior actions, including the arbitration proceedings underlying the instant petition.

The courthouses for the Southern and Eastern Districts of New York are minutes away from each other, on either side of the East River. Travel time between the Southern and Eastern Districts is minimal. Although there may be other firms specializing in labor law in the Eastern District, a reasonable paying client would, like petitioners, hire Pitta & Dreier LLP even though its office is located in the Southern District, based on the firm's experience, success rate, prior representation of petitioners, and proximity to the courthouse in which the litigation would take place. [9] In addition, the arbitration [*12] proceedings, which are included in petitioners' application for attorneys' fees, were held in the Southern District. Accordingly, I will apply the billing rates of attorneys located in the Southern District.

> 9    I note that respondent, presumably a reasonable paying client, also chose to hire counsel practicing in the Southern District.

In order to set the hourly rates, courts compare the attorneys' usual billing rates with the prevailing market rates in the applicable district. *Miele v. New York State Teamsters Conference Pensions & Retirement Fund, 831 F.2d 407 (2d Cir. 1987)*. The prevailing market rate is determined by "rely[ing] on [the court's] own knowledge of comparable rates charged by lawyers in the district," *Morris v. Eversley, 343 F.Supp.2d 234, 245 (S.D.N.Y. 2004)*(citing *Ramirez v. New York City Off-Track Betting Corp., No. 93-CV-0682, 1997 U.S. Dist. LEXIS 4185, 1997 WL 160369, at *2 (S.D.N.Y. 1997))* "as well as on evidence submitted by the parties." *Stirrat v. Ace Audio/Visual, Inc., No. CV-02-2842, 2007 U.S. Dist. LEXIS 55527, 2007 WL 2229993, at *2 (E.D.N.Y. 2007)*(citing *Farbotko v. Clinton County of New York, 433 F.3d 204, 209 (2d Cir. 2005))*.

In the Southern District, awarded rates range from $ 200 per hour for associates to [*13] over $ 400 per hour for senior partners. *See e.g., Trustees of the Eastern States Health and Welfare Fund v. Crystal Art Corp., No. 00-CV-0887, 2004 U.S. Dist. LEXIS 8932, 2004 WL 1118245, at *6 (S.D.N.Y. 2004)* (approving $ 200 per hour for associates with from four to ten years of experience); *Mingoia v. Crescent Wall Systems, No. 03-CV-7143, 2004 U.S. Dist. LEXIS 16761, 2004 WL 1885952, at *5 (S.D.N.Y. 2004)* (awarding attorney's fees at the rate of $ 325 per hour for an attorney in a small to medium-sized firm with over ten years of ERISA litigation experience); *Sheehan v. Metropolitan Life Ins. Co., 450 F.Supp.2d 321 (S.D.N.Y. 2006)* (awarding $ 425 hourly rate to senior partner and $ 300 hour to associates in an ERISA action).

Petitioners' lead attorney, Joseph Farelli ("Farelli"), of the law firm Pitta & Dreier LLP, has submitted a declaration in support of the application for attorneys' fees. Farelli Decl. Petitioners seek fees for three attorneys who worked on this action: Farelli, Vincent Pitta ("Pitta"), and Michael D'Angelo ("D'Angelo"). The

hourly rate charged by Pitta is $ 400, the hourly rate charged by Farelli is $ 250 for the work he performed as a senior associate and $ 325 for the work performed once he became a partner in [*14] January 2007, and the hourly rate charged by D'Angelo is $ 250.

Farelli briefly describes his qualifications as an attorney with 13 years experience in arbitration and litigation against employers for purposes of collecting unpaid benefit contributions. Farelli Decl. P 24, n. 1. Petitioners fail to provide a description of the qualifications of Pitta or D'Angelo. Under these circumstances, the Court may deny fees for Pitta and D'Angelo. *See Disney Enters., Inc. v. Merchant, No. 05-CV-1489, 2007 U.S. Dist. LEXIS 10365, 2007 WL 1101110, at *8 (N.D.N.Y. 2007)* (collecting cases). However, the Court retains discretion to consider the fee application if the missing information can be obtained from other sources. *See id.* Here, the Pitta & Dreier LLP website states that Pitta is the managing and founding partner of the firm with more than twenty-five years of experience in labor law. D'Angelo is listed as an associate at the firm, but the website does not state his level of experience. *See* Pitta & Dreier website, (last visited February 15, 2008). Although D'Angelo's experience is not described, Farelli's declaration states that senior associates and partners worked on this action, *see* Farelli Decl. P 24, justifying an [*15] inference, not refuted by respondent, that D'Angelo is a senior associate.

The rates charged by petitioners' counsel comport with the rates generally charged in the Southern District, by lawyers with comparable experience. Since the billing rates are in line with prevailing market rates, fees will be awarded at the following hourly rates: $ 400 per hour for Pitta; $ 250 per hour for D'Angelo; $ 250 for Farelli for work performed while a senior associate and $ 325 for work performed once he was appointed partner. [10]

> 10  Respondent's only objection to petitioners' application for attorneys' fees is that Farelli should not be permitted to bill his time at the rate of a partner since he was a senior associate when he began work on this case. Given that the time records submitted by Farelli accurately reflect the change in his rate and considering that he spent the majority of time on this case after he became partner, I see no reason to use the senior associate rate for the work performed after he became partner.

*Hours Expended*

"[A]ny attorney . . . who applies for court-ordered compensation . . . must document the application with contemporaneous time records." *New York State Ass'n for Retarded Children, Inc., v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).* [*16] These records should specify, for each attorney, the date, the hours expended and the nature of the work. *Id.* However, "[i]t is not required that counsel describe in great detail how billable time was spent; it is sufficient to identify the general subject matter of time expenditures." *Aiello v. Town of Brookhaven, No. 94-CV-2622, 2005 U.S. Dist. LEXIS 11462, 2005 WL 1397202, at *2 (E.D.N.Y. 2005)(citing Perdue v. City Univ. of New York, 13 F.Supp.2d 326, 345 (E.D.N.Y. 1998)).*

Petitioners' counsel has submitted contemporaneous time records in support of this fee motion. These time records are from counsel's computerized time and billing system and include the date on which services were performed, the identity of the attorney performing the described services, and the rates charged by each attorney. Farelli Decl. P 25; Pet. Exh. F, attached to Farelli Decl. [11]

> 11  The time records include asterisks next to specific entries. It appears that these marked entries represent the hours of work for which fees are being sought. Based on the review of these records, it appears that counsel failed to include one hour of time billed at $ 250 from the application for fees. This Court will rely on the total amount of fees requested [*17] and not consider this additional $ 250 entry.

Having reviewed the time records, I find that the entries for D'Angelo and Farelli are deficient for a number of reasons. As an initial matter, the majority of time entries for Farelli and D'Angelo list multiple tasks performed during large blocks of time, without specifying the amount of time spent on each individual task. [12]

> 12  Of Farelli's 18 time entries, only 3 entries correspond to individual tasks. Of D'Angelo's 7 entries, only 1 entry corresponds to an individual task. An example of the block entries includes Farelli's March 6, 2007 time entry for 5.8 hours: "Review hearing notes and hearing exhibits; Review copies of trust agreements; Conference with Jane Lauer Barker regarding Employer's sale

Case 6:05-cv-00930-DNH-GJD   Document 180   Filed 03/26/08   Page 16 of 19

Page 6
2008 U.S. Dist. LEXIS 14717, *17

of assets; Prepare for arbitration; Represent client in arbitration." Pet. Exh. F.

The "commingling of activities within one time entry impedes the court's efforts to evaluate the reasonableness of any of the listed activities." *Soler v. G & U Inc., 801 F.Supp. 1056, 1061 (S.D.N.Y. 1992)*. The remedy for such vague entries is to apply percentage cuts in the attorneys fees. *See Aiello, 2005 U.S. Dist. LEXIS 11462, 2005 WL 1397202, at *3* (collecting cases). By failing to account [*18] for the time associated with each individual task performed, the Court cannot determine the reasonableness of the number of hours expended by Farelli and D'Angelo.

Even with an impeded ability to determine the reasonableness of the tasks performed, it is clear that certain blocks of time charged by Farelli and D'Angelo are excessive. [13] In such a situation, the Court may exclude these hours from the calculation of fees, *Perez v. Jasper Trading, Inc., No. 05-CV-1725, 2007 U.S. Dist. LEXIS 92375, 2007 WL 4441062, at *10 (E.D.N.Y. 2007)*, or impose an across the board percentage cut. *In re "Agent Orange" Products Liab. Litig., 818 F.2d 226, 237-238 (2d Cir. 1987)*.

> 13   For example, on May 18, 2007, D'Angelo charged 2.50 hours for the following: "Review and analyze executed order to show cause. Coordinate service of same. Draft letter to Dahill's attorney re: same. Telephone conference with Dahill attorney re: adjourning return date. Review and analyze letter to court. Deview [sic] court order re: scheduling of return date. Advise trustees of executed order to show cause." None of the listed activities, as described, should have required more than ten minutes of D'Angelo's time.

Given these deficiencies in Farelli and D'Angelo's [*19] time entries, I apply an across the board reduction of fifteen percent to the fees sought for the time expended by Farelli and D'Angelo. However, I find that the time charged by Pitta is reasonable and award $ 360 in fees for his services. [14] Accordingly, I award $ 360 for Pitta's services, $ 14,743.25 for Farelli's services, and $ 3,761.25 for D'Angelo's services for a total attorneys' fees award of $ 18,864.50. [15]

> 14   Pitta submitted three time entries. Each entry represented a discrete task for which he billed a reasonable period of time.
>
> 15   This award takes into consideration the issue of proportionality. Given that petitioners have been awarded $ 242,947.76 in damages, an award of $ 18,864.50 in attorneys' fees is not out of proportion to the damages received.

*Costs*

Petitioners seek costs in the amount of $ 529.20. Costs are ordinarily recoverable if they are "incidental and necessary to the litigation." *Tips Exports, Inc., v. Music Mahal, Inc., No. 01-CV-5412, 2007 U.S. Dist. LEXIS 84399, 2007 WL 952036, at * 11 (E.D.N.Y. 2007)*. Costs relating to filing fees, process servers, postage, and photocopying are ordinarily recoverable. *See id.* "It is also reasonable that counsel be reimbursed for mileage and parking [*20] costs" as well as gas. *Rand-Whitney Containerboard v. Town of Montville, No. 96-CV-413, 2006 U.S. Dist. LEXIS 75870, 2006 WL 2839236, at *27 (D.Conn. 2006)*.

Petitioners do not provide an itemized list of the costs that they are seeking. The time records submitted in support of the application include a category called 'disbursements.' The following disbursements are denoted by hand-written asterisks: $ 37.50 in [unspecified] administrative fees, 11/30/06; $ 6.50 in [unspecified] administrative fees, 12/31/06; and $ 136.30 in [unspecified] administrative fees, 4/30/07. Pet. Exh. F. The total of these administrative fees equals $ 180.30, which is $ 348.90 less than the amount requested. In any event, the 'administrative fees' description does not adequately explain the nature of the costs incurred. Accordingly, petitioners' request for costs is denied. *See Kingvision Pay-Per-View, Ltd. v. Castillo Restaurant Corp., No. 06-CV-617, 2007 U.S. Dist. LEXIS 23223, 2007 WL 841804, at *7 (E.D.N.Y.2007)* (denying request for costs where "plaintiff has submitted no documentary evidence in support of its request . . .").

*Audit Fees*

Petitioners seek $ 19,515.00 in audit fees. Requests for audit fees are "generally determined by utilizing the same standards [*21] the court applies in awarding attorneys' fees." *King v. Unique Rigging Corp., No. 01-CV-3797, 2006 U.S. Dist. LEXIS 78439, 2006 WL 3335011, at *5 (E.D.N.Y. 2006)* (magistrate judge declined to recommend award of audit costs in an ERISA action where the record was "devoid of any records or

time sheets to substantiate the [audit] fees request"); *see also King v. JCS Enters., 325 F.Supp.2d 162, 173 (E.D.N.Y. 2004)*(denying request to recover audit fees in an ERISA action "because the [auditor's] invoices [did] not adequately specify what work was performed"); *Trustees of Four Joint Boards Health and Welfare and Pension Funds v. Penn Plastics, Inc., 864 F.Supp. 342, 350-351 (S.D.N.Y. 1994)*("find[ing] that the auditors' billing reports submitted in support of the Trustees' motion provide an inadequate basis upon which to award the auditors' fees . . . claimed").

Respondent challenges the requested amount in audit fees arguing that it should not be liable for the fees associated with the revised audit, since the revised audit led petitioners to reduce the amount sought by $ 58,000. However, pursuant to Article VII, Section 5(j) of the Trust Agreement, respondent is liable for the costs of the revised audit, since the results [*22] of the revised audit also showed an underpayment of contributions. [16]

> 16   Article VII, Section 5(j) of the Trust Agreement states:
>
>> In the event that an Employer disputes the result of an audit and the Trust thereby incurs additional auditing fees and costs, the Employer shall be liable to the Trust for such additional fees and costs in the event that the subsequent audit(s) continues to reflect an underpayment of contributions.
>
> Trust Agreement, Pet. Exh. A.

Petitioners submit invoices from the accounting firm Buchbinder Tunick & Company in support of their request. Pet. Exh. E. The invoices state the total number of hours spent on the audits as well as the total amount charged, but do not specify the activities performed. Because petitioners have failed to provide any evidence that $ 19,515.00 is a reasonable fee, petitioners' request for audit fees is denied.

## CONCLUSION

For the foregoing reasons, petitioners are awarded $ 18,864.50 in attorneys' fees. The Clerk is directed to enter judgment in favor of petitioners and against respondent in the amount of $ 242,947.76, plus $ 17,064.85 in liquidated damages, and $ 15,864.14 in interest, as well as $ 18,864.50 in attorneys' fees, for a total [*23] amount of $ 294,741.25. The Clerk is also directed to transmit a copy of the within to all parties and the assigned Magistrate Judge.

SO ORDERED.

Dated: Brooklyn, New York

February 27, 2008

By: /s/ Charles P. Sifton (electronically signed)

United States District Judge

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SPERO HARITATOS,

                Plaintiff,

-vs-

HASBRO, INC. and TOYS "R" US LLC,

                Defendants.

Civil Action No.
6:05-cv-930 (DNH/GJB)

---

### DECLARATION OF ROBERT E. PURCELL

I, Robert E. Purcell, hereby state, declare, attest, and affirm as follows:

1. I am an attorney representing Plaintiff in connection with the instant lawsuit and am a member of the bar of this Court.

2. On the morning of Wednesday, February 26, 2008, I placed a telephone call to Judge DiBianco's courtroom deputy clerk to ask if Judge DiBianco wanted the parties to submit any briefs in connection with the motions that were scheduled to be heard on March 4, 2008. Ms. Gridley responded that she did not know, but would inquire and call me back. Later that day, Ms. Gridley called me to state that she had inquired about my request concerning the submission of briefs in connection with the motions and had determined that "no briefs were needed". I then asked Ms. Gridley whether that meant that the submission of briefs was not permitted, and Ms. Gridley responded that "no briefs should be submitted".

I declare under penalty of perjury that the foregoing it true and correct.

Date: 3/25/08

_____
Robert E. Purcell

SYLIB01\615700\1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------x
SPERO HARITATOS,                 :
                                 :
            Plaintiff,           :           **CERTIFICATE OF SERVICE**
                                 :
      -vs-                       :           Civil Action No.
                                 :           6:05-CV-930 (DNH/GJD)
HASBRO, INC. and TOYS "R" US-NY LLC, :
                                 :
            Defendants.          :
---------------------------------x

I certify that on March 26, 2008, I filed a copy of Plaintiff's Response To The March 19, 2008 Submission Of Hasbro, Inc. with the Clerk of the Court via the CM/ECF system, which gave notice to the following attorneys:

Kim J. Landsman, Esq.
Patterson Belknap Webb & Tyler, LLP
1133 Avenue of the Americas
New York, New York 10036-6710
kjlandsman@pbwt.com

John G. McGowan, Esq.
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, New York 13202
jmcgowan@bsk.com

_____
     *s/ Robert E. Purcell*
       Robert E. Purcell