UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

SPERO HARITATOS,

                         Plaintiff

        v.                                6:05-CV-930

HASBRO, INC. & TOY'S "R" US-           (DNH/GJD)
NY LLC,

                      Defendants.

_____

ROBERT E. PURCELL, ESQ. for Plaintiff
KIM J. LANDSMAN, ESQ., for Defendant Hasbro
JOHN G. MCGOWAN, for Defendant Toys "R" Us

## MEMORANDUM DECISION AND ORDER

     Presently before the court is Hasbro's motion for sanctions against plaintiff

and his counsel Robert Purcell.  This request began with a May 17, 2007 letter-

motion from defense counsel, Mr. Landsman. (Dkt. No. 130).  Mr. Landsman later

filed a clarification of that motion on June 7, 2007. (Dkt. No. 144).  In those letters,

Mr. Landsman complained that plaintiff's counsel had failed to provide all the

discovery called for in Hasbro's requests dated October 27, 2005 (documents); May

31, 2006 (documents); September 15, 2006 (admissions); and January 31, 2007.

(Dkt. No. 144).

     Mr. Landsman has also complained that in failing to produce this discovery,

Mr. Purcell has also failed to comply with my August 11, 2006 order and Judge

Hurd's affirmance of that order, dated October 19, 2006.  Mr. Landsman argued that

although plaintiff finally produced some discovery, it was late and incomplete.

Finally, Mr. Landsman argued that although Mr. Purcell appealed my August 11,

2006 order to Judge Hurd, Mr. Purcell never asked for a stay of my order, and thus, should have produced the appropriate discovery within thirty days.

On December 15, 2006, Mr. Landsman was still complaining that Mr. Purcell had failed to comply with my order, even after Judge Hurd affirmed my order on October 19, 2006. (Dkt. No. 113). In the meantime, a motion for summary judgment was filed and decided by Judge Hurd on October 23, 2007. (Dkt. No. 162). As a result of Judge Hurd's order, a subsequent motion for reconsideration by plaintiff, and the certification of an interlocutory appeal by Judge Hurd, this case has been stayed until the Second Circuit rules on the interlocutory appeal. (Dkt. No. 168).

On January 30, 2008, I held a telephone conference regarding Mr. Landsman's motion for sanctions, and on January 31, 2008, I scheduled an in-person hearing in order to resolve this motion. (Dkt. No. 169). The hearing was held on March 4, 2008, at which time, the court heard witness testimony and argument from ***both sides*** on this issue. Mr. Purcell had a full and fair opportunity to set forth his position on the matter. At the end of the March 4, 2008 hearing, I reserved decision and ordered the parties to return on March 25, 2008, but later cancelled the March 25, 2008 appearance.

## DISCUSSION

Defendant Hasbro cites various bases for the court's authority to impose sanctions and assess attorneys fees. The court has the power under Rule 37 of the

Federal Rules of Civil Procedure to sanction for misconduct during the discovery process and for failure to obey an order to provide discovery.  The court also has the power under 28 U.S.C. § 1927 to sanction counsel who "so multiplies the proceedings in any case unreasonably and vexatiously."  Finally, the court has "inherent power" to sanction improper and bad faith conduct of both parties and attorneys, apart from any of the statutory or federal rule provisions.

The court will briefly discuss the standard for awarding sanctions, including attorneys fees under each basis, and then it will apply those standards to the factual findings in this case.

1.    **Rule 37**

Rule 37(a)(1) provides that if a party does not provide discovery or provides incomplete or evasive answers to interrogatories, the opposing party must first attempt to resolve the dispute and then may apply to the court for a motion to compel. FED. R. CIV. P. 37(a)(1).  If the moving party succeeds on the motion, and the court issues an order compelling discovery, the court ***must*** in the appropriate circumstances, assess the reasonable expenses incurred in making the motion as a sanction under FED. R. CIV. P. 37(a)(5)(A).

Rule 37 of the Federal Rules of Civil Procedure also provides that if a party fails to obey "an ***order to provide or permit discovery,***" including orders under Rule 37(a)(after a motion to compel), Rule 35 (mental and physical examinations) and

3

Rule 26(f)(providing for special discovery orders as the result of the Rule 16 meeting), the court may then make any orders regarding the failure to abide by the discovery order. FED. R. CIV. P. 37(b)(2)(A).[1]  These sanctions range from an order directing that matters be taken as established for purposes of the action, to dismissal and/or contempt. *Id.* 37(b)(2)(A)(i)-(A)(vii).  In lieu of, or in addition to the above orders, the court ***must*** assess attorneys fees and reasonable expenses unless the court finds that the failure to obey the order was substantially justified or other circumstances make the award of expenses unjust. *Id.* 37(b)(2)(C).

An "order" for purposes of Rule 37(b)(2) may be an order after a motion to compel under Rule 37(a), but this is only ***one*** of the possibilities. *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991).  The court in *Daval* held that a Rule 37(a) order is only one of the orders that can trigger sanctions under Rule 37(b)(2). *Id.*  The court stated that a court may impose sanctions, provided there is any clearly articulated order requiring specified discovery. *Id.*  An ***oral order is sufficient***. *Id.*

Expenses and fees under Rule 37(a)(5)(A) and (b)(2)(C) may be assessed against the party failing to obey the order, the attorney advising that party, or both. The expenses and fees must be those either incurred in making the motion to compel

---

[1] Amendments to the rule governing discovery sanctions took effect on December 1, 2007.  The amendments added subsections within the rule and changed some of the language for clarity. *See* Advisory Committee Notes for Rule 37 (2007 Amendment).

(Rule 37(a)(5)(A)) or those caused by the failure to comply with the discovery order (Rule 37(b)(2)(C). *Id.*

**2.    28 U.S.C. § 1927**

Sanctions are also available against counsel who "so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. §1927.  The attorney may be required by the court to satisfy ***personally*** the excess costs, expenses, and attorneys fees that are incurred "***because of such conduct***." *Id.*  The purpose of section 1927 is to deter unnecessary delays in litigation. *United States v. Int'l Board of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991).  Section 1927 is particularly concerned with limiting the abuse of the pretrial discovery process. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 & 757 n.4 (1980).

An award under section 1927 is appropriate when "an attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Id.*  The court must determine whether the attorney's actions were taken in bad faith. *Id.*  Examples of bad faith conduct are pursuing frivolous contentions, making frivolous motions, or intentionally dilatory conduct. *Leiching v. Consolidated Rail Corp.*, No. 92-CV-1170, 1997 WL 135930 at *2 (N.D.N.Y. March 24, 1997).  The court in *Leiching* stated that the Second Circuit requires that there be ***"clear evidence"*** that the

individual's actions were taken to harass, delay, or for "other inappropriate reasons." *Id.* (citing *Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 878 F. Supp. 626, 628 (S.D.N.Y. 1995)).

**3.    Inherent Power**

The court has inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Revson v. Cinque & Cinque*, 221 F.3d 71, 78 (2d Cir. 2000)(quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)(internal quotation marks omitted)). This power may likewise be exercised where the party or the attorney has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975)(internal quotation marks omitted)).

An award of sanctions under the court's inherent power requires both "clear evidence that the challenged actions are ***entirely without color***, and [are taken] for reasons of harassment or delay or for other improper purposes[,] and a high degree of specificity in the factual findings of [the] lower courts." *Id.* (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986)(internal quotation marks omitted), *cert. denied*, 480 U.S. 918 (1987))(emphasis in original). A claim is colorable "when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Id.* at 78-79 (quoting *Nemeroff v. Abelson*, 620

F.2d 339, 348 (2d Cir. 1980)(per curiam)).

## 4.    **Application to this Case**

Unfortunately, the problems in this case have been of long-standing, and the court has been involved in discovery problems too many times.  Each time that I have been involved in the parties' disputes, I have attempted to resolve the issues to minimize future problems.  This approach clearly did not work in this case.  In order to apply the above standards, which basically require that the court find improper purpose or bad faith, the court must look at the totality of the circumstances leading to this point.

By way of background, perhaps a good starting point for the court's discussion of Hasbro's motion for sanctions and fees is the telephone conference that the court held on March 28, 2006, a transcript of which has been filed as Docket Number 52 (T)(27 pages).  This telephone conference addressed four or five items raised by Mr. Purcell on behalf of plaintiff, although not all of them had to do with defendant Hasbro.  The issues were (1) Initial disclosures by Toys-R-Us; (2) Plaintiff's request to compel the Clerk to enter default against Toys-R-Us; (3) Plaintiff's motion to amend complaint; and finally, (4)  Hasbro's initial disclosures - no business address or telephone number.

I ruled that Hasbro should supplement its initial disclosures, despite the fact that Hasbro argued that they had given the same information in answers to

interrogatories in the "trademark office". (T. at 7).  I also stated that the proceedings in the Trademark Office "are not the proceedings before this court," and I also required Hasbro to amend its initial disclosures to include the subject matter of a witness's testimony. *Id.*  This should have put Mr. Purcell on notice that discovery in this case was ***not*** necessarily related to discovery in the Trademark proceedings.  Mr. Purcell's subsequent statement that he did not produce certain discovery because it had already been produced in the TTAB is, thus, inconsistent since Mr. Purcell complained when Hasbro claimed that it had produced information in the TTAB, and this court agreed and required Hasbro to supplement its answers in this case.

We then turned to Mr. Purcell's complaints about the initial disclosures from Toys-R-Us.  Mr. Purcell stated that the failure to make timely initial disclosures evidenced "***gross litigation misconduct*** or failure to defend an action" so as to "warrant an entry of default." (T. at 9).  Based on the allegations against Toys-R-Us and their limited role in this litigation, Mr. Purcell's characterization was way out of proportion to the claimed conduct.

Mr. Purcell then complained that the Local Rule of the Northern District regarding entries of default "makes no sense." (T. at 9).  Mr. Purcell argued that the Clerk had taken incorrect and "misguided" actions based upon a misreading of Second Circuit law, when it was actually Mr. Purcell's misunderstanding of the law that was the problem. (T. at 9).  This is, perhaps, the first clear example of Mr.

Purcell's pursuit of remedies that were not only legally unsupportable, but resulted in a complete waste of time for this court as well as all the attorneys involved in this case.  I note that Judge Hurd had rejected Mr. Purcell's request to enter a default ***judgment*** against Toys-R-Us since Toys-R-Us had answered the complaint, and the first step of the two-step process under Rule 55 had not occurred.  *See* Dkt. No. 30. Mr. Purcell continued to vociferously complain about the delays by Toys-R-Us and claimed that delays in answering interrogatory requests were so "egregious" that entry of default was warranted.  (T. at 13-14).

The next item covered during the telephone conference was a request to amend the complaint, and Mr. Purcell argued that Attorney Landsman did not make reference to a certain case in his opposition papers.  (T. at 15).  Mr. Purcell quickly concluded that the law firm of Patterson, Bellknap conducted faulty legal research or "intentionally withheld" a case from the court.  This court finds that Mr. Purcell's position regarding this issue is ***without merit and legally unsupportable***.  Mr. Purcell continued to argue his position.  (T. at 20, 21).

Based upon the tenor of the arguments I heard, and the way they were being pursued by Mr. Purcell, I concluded that

> I think this case is off to a very bad start.  I don't–I don't see this type of litigation and animosity and pettiness . . . very frequently and it's disturbing to see it, because I don't think there's any reason for it.

 (T. at 22-23).  I lectured Mr. Purcell about the volume of cases in the Northern

9

District, and about the requirements and expectations regarding discovery disputes. (T. at 23-24). I specifically told Mr. Purcell that his pursuit of the default judgment issue is "a perfect example of a minor distracting issue which has nothing to do with the merits of this case." (T. at 24). I found that based on this court's research, Mr. Purcell was **mistaken** about the usage of an entry of default or default judgment against a failure to respond to discovery. (T. at 24-26). I specifically told Mr. Purcell that his efforts were a waste of time, and that they were misguided. (T. at 26).

The court notes that Mr. Purcell was confusing the "entry of default" which is a ministerial act by the Clerk, and can **only** be performed if, in fact, there is no answer, with a dismissal for failure to provide initial disclosures, which is governed by Rules 26 and 37 of the Federal Rules. A motion for the sanction of dismissal under Rule 37 for failure to provide initial disclosures would have to be made. Mr. Purcell was using the incorrect terminology, and Judge Hurd rejected Mr. Purcell's motion for "default judgment." (Dkt. No. 30).

This court agrees with the observations of Attorney Landsman on page seventeen and eighteen of the March 28, 2006 transcript, where Mr. Landsman argued that Mr. Purcell was "trying to litigate everything other than the merits here. He's trying to litigate by attacking the lawyers and their integrity . . . and avoiding the merits of this case." (T. 17-18).

10

### A.  This Court's August 11, 2006 Order

The discovery issues as well as other pretrial disagreements did not end, and by August 8, 2006, there were four more letter-motions pending before me. (Dkt. Nos. 53, 58, 59, 67).  These motions resulted in my August 11, 2006 order, which is one of the subjects of Hasbro's motion for sanctions.  In Hasbro's response to one of plaintiff's letter-motions, Hasbro raised the issue of plaintiff's failure to respond to various sets of discovery requests. (Dkt. No. 60).  My August 11, 2006 order contained a section entitled "Hasbro's Requests." (Dkt. No. 68 at 7-9).

Mr. Purcell argued that since the **_parties_** had agreed to cut off factual discovery on May 31, 2006, no motion to compel would be timely after that date, and no discovery requests served after that date need be answered without a court order. Thus, Mr. Purcell refused to respond to the **_older_** or the **_newer_** discovery.  It is clear from this court's language that plaintiff's position regarding discovery and Mr. Purcell's refusal to respond to earlier outstanding discovery and later outstanding discovery was **_unreasonable_**, but I believed that I could solve the problem by extending the discovery deadlines, something that Mr. Purcell had specifically requested. _Id._ at 7.  In fact, in my August 11, 2006 order, I granted Mr. Purcell's request for extensions of the deadlines with some modifications. (Dkt. No. 68 at 9)(granting with modifications Dkt. No. 59).  I also found that information regarding customer lists, the application for "Turkey Joints" registration, and information

11

regarding damages was "***relevant and discoverable***."  (Dkt. No. 68 at 8).  Thus, I also specifically ordered the production of these documents.

I again warned all the attorneys in this case, which included Mr. Purcell, that the attorneys were ordered to use good faith in attempting to resolve their differences, and that I would ***not hesitate to sanction parties*** that were found to be abusing the discovery process. (Dkt. No. 68 at 8-9).  On page four of August 11, 2006 order, in discussing some problems that Mr. Purcell had with Toys-R-Us, I stated that

> it is not this court's function to intervene every time that counsel have a minor problem such as the fact that a photograph that was provided by one side was "too dark" or that one document references other documents that may have been produced.  These problems are errors that ***can and must*** be corrected ***without court intervention***.

(Dkt. No. 68 at 4). Once again, Mr. Purcell was ***clearly warned that abusing the discovery process would result in sanctions***.  It is very clear from my language that I ordered the outstanding discovery to be produced immediately, and then I modified that by allowing all parties to produce the outstanding discovery within thirty (30) days of the date of the order.

I specifically stated that all discovery regarding to customer lists, "Turkey Joint" registration, and damage information should be produced, and with respect to any other requests, "[t]o the extent that plaintiff's objection to production of this information is that it has been requested too late, then plaintiff should produce the

request information *immediately* since the deadlines will now be extended." (Dkt.

No. 68 at 7).  I also stated in Footnote 3 on page 8 of my order that Mr. Purcell was

mistaken when he claimed that the court had not decided plaintiff's motion to amend.

The court did *grant* plaintiff's motion to amend, and ordered plaintiff to file and

serve the amended complaint *which plaintiff had failed to do*. (Dkt. No. 68 at 8 n.3).

Judge Hurd affirmed my order on October 19, 2006, and ordered that "*[a]ll*

*outstanding discovery must be produced by November 30, 2006.*" (Dkt. No. 95).

Judge Hurd did not put any limitation on the discovery that was to be produced.

In its motion for sanctions, Hasbro argues that Mr. Purcell has refused to

produce patently relevant discovery, requested on October 27, 2005, May 31, 2006,

September 15, 2006, and January 31, 2007.  Hasbro does concede that plaintiff made

one production on January 11, 2007, but argues that it was incomplete.  I will now

turn to some of the specific issues in Hasbro's motion before the court, namely

1.  "boilerplate objections,"

2.  obstructionist discovery,

3.  failure to abide by my order and that of Judge Hurd, and

4.  failure to supply specific discovery including customer information

**B.  Boilerplate Objections**

I have reviewed plaintiff's responses to Hasbro's request for documents

(Hasbro's Exhibit 4 - 121905 - 41 pages).  After one and one half pages of general

13

objections, Mr. Purcell inserts pages and pages of specific objections in response to Hasbro's specific requests.  The court has reviewed all of the requests in Hasbro's Exhibit 4, and finds that except for a few rare instances (*See e.g.* Response to #15 and #23), the specific objections are a ***waste of time***, ***not appropriate for the request***, and result in an enormously wasteful amount of unnecessary reading.  This, of course, results in unnecessary expense to Hasbro.  This court concludes, therefore, that the assertion of multiple boilerplate objections raised by Mr. Purcell were not made in good faith.

In many of the specific objections, there are almost one hundred fifty words, and the actual answer to the request is one or two sentences of perhaps twenty words per sentence.  The net result of all these misguided responses was that plaintiff produced essentially nothing in response to Hasbro's requests for documents, and spent more than forty pages in "not" responding.  Plaintiff's responses to Hasbro's requests were dated December 9, 2005, approximately four months ***prior*** to the March 28, 2006 telephone discovery conference.

The court has examined plaintiff's "First Amended and Supplemental Response" to Hasbro's request for documents dated September 18, 2006, approximately six months ***after*** the March 28, 2006 discovery conference.  (Hasbro's Ex. 5).  Once again, the ***Amended Response*** contained many general and specific objections that were improperly asserted.  For example, plaintiff responded to

14

Request #1 which asked for "two samples of any actual or intended products and services by plaintiff in the United States that bear plaintiff's CANDYLAND mark." Mr. Purcell asserted a number of meritless objections (overbroad, oppressive, unduly burdensome) and then stated that plaintiff was objecting to providing samples of actual products because many of the products "are apt to melt." (Amended Response at 5).

A review of plaintiff's Amended Response also shows that Mr. Purcell continued to assert that plaintiff was not producing the documents because they had already been produced to Hasbro in connection with the Trademark proceeding. This court ruled during the March 28, 2006 telephone discovery conference that such an objection was problematic since the Trademark proceeding was ***not*** before this court. This court finds, therefore, that these objections are unfounded and finds that plaintiff did ***not*** properly respond to Hasbro's requests. *See* Responses to Requests numbered 5, 6, 8, 9, 10, 11, 12, 13, 15, 17, 18, 19, 21, 22, 24, 25, 26, 27, 30, 31, 32, 33, 34, 42, 43, 44, 45, 46, 47.

## C. Obstructionist Discovery

This court finds based upon a review of Mr. Purcell's responses to discovery that Mr. Purcell has engaged in "obstructionist" discovery by making unsupported objections, irrelevant objections, duplicative objections, and by making arguments about discovery that were not supported by existing federal law.

### D.  Failure to Abide by Court Orders

Hasbro argues that Mr. Purcell did not comply with this court's order issued on August 11, 2006 to respond within thirty days to "all outstanding discovery." Hasbro further argues that Mr. Purcell did not comply with District Judge Hurd's order after District Judge Hurd affirmed my rulings on appeal.

This court has reviewed its order of August 11, 2006, and it is crystal clear that I ordered discovery to be produced "immediately." (Dkt. No. 68 at 7).  If my order was not clear enough, Judge Hurd's order was particularly clear that "***all outstanding discovery***" was to be produced by November 30, 2006. (Dkt. No. 95).  Mr. Purcell's failure to do so is in direct contravention of both my order and Judge Hurd's order.

Based upon the proof at the hearing, including testimony and all of the documents submitted to this court, this court finds that Mr. Purcell did ***not***, in fact, comply with this court's order or the order of District Judge Hurd in supplying discovery within thirty days of this court's order, namely, Mr. Purcell failed to supply discovery by September 11, 2006.  This court further finds that after Judge Hurd ruled on October 19, 2006 that all outstanding discovery was to be produced by November 30, 2006, that Mr. Purcell did not comply with District Judge Hurd's order.  (*See* Plaintiff's Exhibit 2).

This court, therefore, finds that Mr. Purcell is subject to sanctions under Rule 37(b)(2) because Mr. Purcell did ***not*** follow court orders regarding discovery.  Mr.

Purcell argues that although he did not seek a stay of my order, a stay would have been automatic because of his appeal to District Judge Hurd.  Without supplying any legal support for his contention, Mr. Purcell argues that being required to ask for a stay of the requirements that he comply with a Magistrate Judge's discovery order would "eviscerate the appeal process."

There is clear legal authority in this Circuit holding that if no stay is **obtained**, the appeal of a discovery order will not relieve a party of its obligation to comply with that order. *American Rock Salt Co. v. Norfolk Southern Corp.,* 371 F. Supp. 2d 358, 360-61 (W.D.N.Y. 2005).  In fact, the court in *American Rock Salt* stated that even filing a motion for a stay does not excuse the party from its responsibility to produce the discovery. *Id.* at 360 (citing *Maness v. Meyers*, 419 U.S. 449, 458 (1975)).  While Mr. Purcell argues that this policy would "eviscerate" the appeal process, the court in *Litton Industries v. Lehman Bros. Kuhn Loeb, Inc.*, 124 F.R.D. 75, 79 (S.D.N.Y. 1989) specifically found that allowing the automatic stay of a magistrate's orders would "not only encourage the filing of frivolous appeals, but, would grind the magistrate system to a halt."  The court also found that the contrary position "contradicts judicial authority in the Second Circuit and has no basis in the Magistrate's Act, the Federal Rules of Civil Procedure or the Local Rules of the Southern District." *Id.*

It is clear from the case law that Mr. Purcell's position was completely

unsupported.  He does not cite any case law to the contrary.  Even giving Mr. Purcell the benefit of the doubt that he was under the ***erroneous*** impression that an appeal would have stayed a Magistrate Judge's discovery order, Mr. Purcell's position before this court is disingenuous, and this court does not find a good faith basis to support Mr. Purcell's position since Mr. Purcell ***also failed to comply with Judge Hurd's order*** to produce all outstanding discovery by November 30, 2006.

Mr. Purcell argues that he was not "warned" by Mr. Landsman that he was at risk of violating my order requiring discovery when he pursued an appeal before District Judge Hurd.  Mr. Purcell's argument is ***incorrect*** since the letters exchanged between Attorneys Landsman and Purcell specifically mention the issue of violating the Magistrate's order regarding discovery.  *See* Exhibit 27, 2; Exhibit 29, 1.  Again, Mr. Purcell's argument is not supported by the facts in this case.

### E.  Customer Lists

Hasbro argues that Mr. Purcell violated my order regarding the direction to supply customer lists and other discovery.  At the March 4, 2008 hearing, Mr. Purcell presented testimony that there was an absence of bad faith in his failure to respond to Hasbro's discovery requests regarding customer lists, since he did not physically receive the customer information from his prior law firm until early December 2006. Mr. Purcell stated that although he received the customer information from Mr. and Mrs. Haritatos during late September or early October, "November and December

were very busy months," and when he left the Wall, Marjama law firm on October 16, 2006,[2] the boxes of information were left at the law firm and he was denied access to that information between October 16 and December 6, 2006.  Mr. Purcell further argues that there was an absence of bad faith since he was engaged in responding to continuing requests by Hasbro, and points to plaintiff's exhibits 25, 26, and 27 which were letters to Hasbro.

This court concludes that because of the change in law firms, and the confusion over access to these documents, that it is not totally clear whether there was bad faith on Mr. Purcell's part failing to supply the customer information prior to mid- or late December 2006.  This court does find, however, that Mr. Purcell violated this court's order by ***not*** producing the documents prior to October 16, 2006 since Mr. Purcell had those documents in his possession according to ***his*** testimony, by late September or early October.

## F.  Requests for Admissions

Hasbro contends that plaintiff's answers to their first set of requests for admissions (Exhibits 13 and 14) were improper since plaintiff did not make reasonable inquiry about the information in the requests to admit.  Hasbro asked requests to admit about more than twenty (20) companies in the United States, and

---

[2] Mr. Purcell left the Wall, Marjama Law Firm to join Hiscock & Barclay.  Nothing in this opinion should be interpreted as any reflection on the attorneys at the Hiscock & Barclay Firm.  Mr. Purcell's conduct in this case began long before he joined Hiscock & Barclay.

generally asked whether plaintiff had notified these businesses that were using the word "Candyland" in their trade name that they were infringing on plaintiff's rights in his Candyland mark.  See, for example, Requests 44-74.  For each company, Hasbro asked first whether plaintiff had failed to notify the particular business that they were infringing on plaintiff's mark.  These were generally admitted.

For these same companies, the second request asked by Hasbro was whether plaintiff had reason to believe that the particular company used the term "Candyland" with the sale of candy, and those requests were denied.  Hasbro complains that plaintiff could have easily utilized the internet, entered the name of the company or the website identification, and would have quickly learned that these companies were doing business using the word "Candyland" in their name, and that they were offering candy for sale.

When questioned at the March 4, 2008 hearing, Mr. Purcell denied the ability to utilize the internet in this fashion.  When questioned about whether the web sites shown on the computer screens in the courtroom by Attorney Kramer were using the term "Candyland," Mr. Purcell gave answers that resulted in a contortion of logic and common sense.  His answers denying that simply visiting a website address which was stated in the request for admission would have given plaintiff more information is not supported by the evidence, and is not credible.

Nevertheless, plaintiff, through Attorney Purcell, did admit many of the

requests for admission.  The harm here is that Hasbro may have to produce the same

proof at trial, causing more expense in terms of time and proof.  Rule 36 provides

that upon finding that an answer does not comply with the rules, the court may order

the matter admitted or that an amended answer be served. FED. R. CIV. P. 36(a)(6).

The court may also defer a final decision until a pretrial conference.  Because this

action has been stayed, the court will defer to Judge Hurd for a final decision on

whether to deem the matters admitted.  The court will also point out that under Rule

37(c)(2), if the requesting party later proves the matter to be true, the party may move

that the party who failed to admit pay the reasonable expenses and attorneys fees

incurred in making that proof.[3]

## G.  Attorney Fee Information

Mr. Purcell states that he could not supply information about attorneys' fees

since supplying that information or those documents would reveal attorney/client

communications.  This court finds that this position is unsupportable and meritless.

Mr. Purcell could easily have redacted copies of his billings to Mr. and Mrs.

Haritatos in a good faith effort to respond to the demand.  Mr. Purcell's testimony

shows that he clearly knew he had the option of supplying "masked" copies of bills.

## H.  Discovery Requests Too Late Under Pretrial Order

Mr. Purcell argues that his failure to respond to discovery requests is justified

---

[3] The court must order the expenses unless one of the exceptions listed in Rule 36(c)(2) (A)-(D) apply. FED. R. CIV. P. 36(c)(2).

21

since plaintiff's discovery requests were too late under the terms of an agreement reached between counsel about a deadline for the close of "fact discovery." This was a *clear* example of the gamesmanship that makes this court conclude that there have been discovery abuses by Mr. Purcell. This court finds that Mr. Purcell's position in this regard is unsupported and meritless. Mr. Purcell delayed in producing any responses to Hasbro's discovery, and then attempted to boot-strap that position by saying that Hasbro's requests were too late since they would have required discovery responses by plaintiff after the expiration of the "fact" discovery deadline set by counsel.

## I. Testimony by Robert Purcell

This court has reviewed Mr. Purcell's testimony at the March 4 hearing and finds that his testimony supports the court's finding that he did not exercise good faith during the discovery process. Mr. Purcell's testimony about the August 11 Order was unclear and defies logic. Transcript of March 4, 2008 Sanctions Hearing (SH) at 81-85. This court has already concluded that my August 11, 2006 Order was crystal clear and required all parties to produce discovery in thirty (30) days. District Judge Hurd's Order was also clear that all discovery be produced by November 30, 2006. *See* (SH at 82, 83, and 84).

During the March 4, 2008 hearing, there was substantial testimony about proceedings in the Trademark Office, and whether a protective order (Exhibit 35 ??)

prohibited use by Hasbro of discovery that was exchanged in the Trademark Appeals.  While there was eventually an agreement between Attorney Purcell and Attorney Landsman to utilize the discovery documents from the trademark proceeding in this case, Attorney Purcell contended that there was never any prohibition against utilizing discovery from the trademark proceeding.

Attorney Landsman contended that a paragraph in the protective order prohibited use of documents from the trademark proceeding in other litigation. Plaintiff's Ex. 35, ¶ 11. This court has reviewed the protective order and agrees with Mr. Landsman's interpretation that absent agreement of the parties, documents from the trademark proceeding could not be utilized or disclosed in other forums.  This is especially true since Toys-R-Us is a party in the Northern District case, but was not a party in the trademark proceedings.  Because Toys-R-Us was entitled to be served with all the discovery and the responses, disclosure of documents to Toys-R-Us would have been a violation of the protective order in the trademark proceeding.

As early as April 17, 2006, an attorney from Patterson, Bellknap wrote to Mr. Purcell stating that the protective order in the TTAB proceedings "limits the use of confidential material to the TTAB proceeding. Defendant's Exhibit 22 - Letter of April 17, 2006.  The letter further requested that Mr. Purcell produce the responsive documents from the TTAB proceedings, or provide permission for Hasbro to use them and provide copies to co-defendant Toys-R-Us.  The letter further stated that

Mr. Purcell refused to produce certain documents in the TTAB proceeding, and that Hasbro brought a motion to compel in that proceeding before the matter was suspended.  The letter gives specific references to items not produced in the trademark proceedings even though they were promised.

Prior to his testimony, Mr. Purcell complained that Hasbro did not include page references to the excerpts of depositions included within their exhibits used at the hearing.  He argued that he was not given enough specificity to allow him to prepare for the hearing.  A review of the discovery requests shows that Mr. Purcell engaged in the same conduct about which he now complains.  Although he answered many requests for production by generally referencing proceedings in the TTAB, ***he never gave any document identification or page references***.  With respect to the boilerplate introduction to every response, Mr. Purcell admits that the initial responses (Ex. 3) and the amended responses (Ex.  ) all contained a massive amount of boilerplate. (SH at 67-69).  Mr. Purcell admits that he refused to withdraw the boilerplate objections. (SH at 71).  When asked whether he checked to determine if the documents that he did not produce in this litigation were actually produced in the TTAB, Mr. Purcell first said he did not recall, and then conceded that he did not check. (SH at 74).  His testimony about the TTAB documents was confusing, at best and was somewhat evasive.  This court finds that Mr. Purcell did not exercise good faith in responding to the discovery, and Mr. Purcell's testimony confirms that

finding.

There was considerable testimony about this court's August 11, 2006 order

and what Mr. Purcell's understanding was of that order. Mr Purcell's answers with

respect to questions about Hasbro's motion to compel were unclear, and he clearly

admitted that he *never asked this court* to clarify the August 11, 2006 order. With

respect to Mr. Purcell's testimony about producing additional documents, this court

finds his answers inconsistent (SH at 88).

Mr. Purcell concedes that he did not comply with Rule 33 of the Federal Rules

by failing to reference pages of interrogatories and then proceeds to assert a legally

unsupportable argument about who has the burden to examine deposition testimony

when attempting to use that as a response to interrogatories (SH at 99-100).

Although Mr. Purcell asserts that Hasbro did not warn him on September 11, 2006

about his failure to follow my August 11, 2006 order, he was warned *twice* in

Hasbro's letter of October 6, 2006. Mr. Purcell then states that even though he was

cautioned about his failure to follow the August 11, 2006 order, he "did not consider

it to be an obligation." (SH at 102). In essence, Mr. Purcell asserts that he was not

obligated to heed Hasbro's advice since they could be wrong so he chose to ignore

the advice. This court finds that explanation to be typical of the stubborn positions

asserted by Mr. Purcell, and this court finds this disingenuous and not credible.

Another area that clearly illustrates Mr. Purcell's hair-splitting style is his

testimony about the word "concerning". (SH at 108).  Mr. Purcell objected to

producing documents "concerning" legal fees or costs paid by his client in

connection with this civil action. Defendant's Ex. 8 (May 31, 2006 requests).  At the

hearing Mr. Landsman attempted to point out that the Southern and Eastern District

use the word "concerning" and have a definition of the word in their rules. (SH at

105-109).

Whether Mr. Purcell was familiar with the Southern and Eastern District

definition of "concerning" is not as important as whether he made a good faith

attempt to respond to the document request.  Mr. Purcell testified that he was so

confused over the scope of the word concerning that he was paralyzed and was

unable to make any response to the request for attorney fee documents or

information. (SH at 125-26). This is yet another example of bad faith since good

faith would have resulted in some attempt to respond to the request without throwing

up semantic and questionable legal hurdles.

Another area where the court questions Mr. Purcell's credibility is his

testimony about whether anyone checked websites for the twenty companies referred

to in Hasbro's request for admissions.  The shear number of companies makes it

extremely unlikely that Mr. Purcell would not recall if he or someone else made that

inquiry.  His testimony about being puzzled over whether the websites shown in

Hasbro's exhibits were offering candy for sale defies common sense. (T. 111-17).

Another troubling area is Mr. Purcell's testimony about the use of documents from the TTAB proceeding.  This court finds that the language of the protective order in the TTAB would certainly cause some hesitation about using the documents from the TTAB proceeding in this litigation.  Equally problematic is the fact that Toys-R-Us would clearly have been entitled to get copies of the discovery, and giving TRU copies would be giving copies to a ***non-party*** in the TTAB proceeding. Mr. Purcell's testified that he was implicitly stating to Hasbro that they could use the TTAB documents. (SH at 131). While, in the ordinary case, that may be a justified position, Mr. Purcell's hyper-technical views about words, court orders, and local rules flies squarely in the face of this type of reasoning, and the court does not find good faith with respect to that response.  As this court has noted, Mr. Purcell never cited to specific discovery in the TTAB by document name or page.

This court must conclude by stating that at the hearing, in an amazing display of verbal gymnastics and semantic gamesmanship, Mr. Purcell claims that he does not understand phrases like "produce what you have" (SH at 70) or words like "concerning" (SH at 108).  Mr. Purcell testified in essence that his disagreement with the imprecision of these terms allows him to ignore requests that contain these phrases.  This position clearly shows a lack of good faith in responding to Hasbro's discovery, and has caused an enormous waste of time for defendant and for the court.

Even a cursory reading of Mr. Purcell's testimony shows that he admitted not

following Rule 33 of the Federal Rules of Civil Procedure (SH at 99); admitted that

he never withdrew the redundant and meritless boilerplate objections (SH at 71);

admitted not producing documents (SH at 75); admitted never asking for clarification

of my August 11, 2006 order which he claims was not specific enough (SH at 82);

admitted he did not turn over legal invoices (SH at 35); and admitted he did not

check whether the documents he refused to produce in this litigation were actually

produced in the TTAB before telling defendant to find the information somewhere

within those documents (SH at 74). These admissions, plus Mr. Purcell's failure to

check the law governing Rules 33, 36, appeals from Magistrate Judges' orders, and

his own obligations all clearly show his lack of good faith. In addition to violating

two court orders, Mr. Purcell's conduct has unnecessarily multiplied proceedings in

this case. This court finds, therefore, that Mr. Purcell is subject to sanctions in the

form of attorneys fees and costs resulting from his conduct under both Rule 37 and

28 U.S.C. § 1927. The court will now turn to an assessment of the relevant fees and

costs.

## 5.  **Attorneys Fees**

When assessing fees under the discovery rules, courts have looked to the

"lodestar" method of determining attorneys fees. *Louis Vuitton Malletier v. Dooney*

*& Bourke, Inc.*, 04 Civ. 5316, 2007 U.S. Dist. LEXIS 31632, *3-4 (S.D.N.Y. April

24, 2007)(citations omitted). The fee analysis involves determining the reasonable

hourly rate for each attorney and the reasonable number of hours expended, then multiplying the two to obtain the "presumptively reasonable fee award." *Porzig v. Dresdner, Kleinwort, Benson, N. Am., LLC*, 497 F.3d 133, 141 (2d Cir. 2007).

Recently, the Second Circuit has considered the method by which a court is to determine attorneys fees. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110 (2d Cir. 2007). The court in *Arbor Hill* undertook an analysis of two methods of determining attorneys fees and abandoned the use of the term "lodestar." *Id.* at 117-18. Instead, the court stated that the district court should exercise its discretion and bear in mind all of the "case-specific" variables that the Second Circuit and "other courts" have identified as relevant to the reasonableness of attorneys fees in setting a "reasonable hourly rate." *Id.*

The court then stated that a "reasonable hourly rate" is the rate that a "paying client would be willing to pay." *Id.* In making this determination, the district court should consider, "among others," the factors cited in *Johnson v. Ga. Highway Express Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93, 96 (1989). *Arbor Hill*, 493 F.3d at 118. The Second Circuit also stated that the district court should bear in mind that the "reasonable paying client" would wish to spend the minimum necessary, or that the client might be able to negotiate with the attorneys "using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Id.* The

district court should then use that reasonable hourly rate to calculate the

"presumptively reasonable fee." *Id.*

> There are twelve factors stated by the Fifth Circuit in *Johnson*:
>
> (1) the time and labor required; (2) the novelty and difficulty of the questions; the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19, *quoted in Arbor Hill*, 493 F.3d at 114.  Some of these

factors, such as the "results obtained" or "fee awards in similar cases" would not be

relevant in a discovery sanction case because the case has not been resolved.

Under the "lodestar method," the appropriate hourly rate was that "prevailing

in the community for similar services by lawyers of reasonably comparable skill,

experience, and reputation." *Louis Vuitton Malletier*, 2007 U.S. Dist. LEXIS 31632

at *4.  The court in *Arbor Hill* held that the district court could use an "out-of-

district" hourly rate or some rate in between the out-of-district rate and that charged

by local attorneys if it is "clear that a reasonable paying client would have paid those

higher rates." 493 F.3d at 119.  This determination should be made in considering the

reasonable hourly rate, rather than in making a later adjustment of the presumptively

reasonable fee. *Id.*

In this case, Mr. Landsman has submitted his request for fees.  In those documents, he requests a total of $ 39,126.70.  Pursuant to this court's order of March 21, 2008, Attorney Purcell submitted plaintiff's response to Hasbro's attorney fee request on March 26, 2008.  (Dkt. No. 180).

Attorney Purcell raises a number of objections to Hasbro's request for fees including the timeliness of Hasbro's submission (p. 1); the incompleteness of Hasbro's witness and exhibit list for the March 4th hearing (p. 1); the fact that the invoices have been "masked" and are therefore incomplete (p. 2); the fact that Hasbro did not obtain "prior consent" to mask the invoices (p. 2); Hasbro's submission of a letter brief contrary to the court's direction prior to the March 4th hearing (p. 3); that Hasbro's hourly rates are not below other New York City law firms (p. 4); that Hasbro's request omits travel fees and travel costs (p. 5); that Hasbro's lawyers are "over lawyering" this case (p. 5); that Hasbro's bills have co-mingled legal work performed (p. 6); and that plaintiff should not be accountable for fees not directly associated with the motion for sanctions (pp. 6-9).

This court does not find these objections to have merit.  Plaintiff's objection to timeliness is misplaced since this court specifically requested Hasbro's submission in a March 17, 2008 Order *after the March 4th hearing*.  This court did not restrict the submission by Hasbro, and the short "letter brief" (one page plus three lines), did not

contravene any order or direction of this court.  Mr. Purcell was given the

opportunity to respond, and he responded with legal argument in a ten page

document, containing more than three pages of **single-spaced** text.  The objections to

the masked invoices are meritless, as are the objections that Hasbro disregarded some

direction that briefs should not be filed prior to the March 4, 2008 hearing.  With

respect to Mr. Purcell's objections that some of the legal work was not precisely

associated with the sanctions, this court finds otherwise as detailed below.

Although Mr. Purcell argues that some of the entries are "vague" and cannot

be related to his "allegedly objectionable conduct" (p. 7), this court generally does

not agree.  As this court has clearly found, Mr. Purcell's actions have multiplied the

proceedings in this case, and the time spent on the motion for sanctions is only **one**

**part of the excessive time spent by Hasbro in this case**, which includes multiple

telephone conferences and multiple responses by Hasbro to Mr. Purcell's numerous

applications to this court.

The court will rule on Attorney Purcell's objections as follows.

Entry of 9/8/06    MDS   - The court reduces this entry by one half - 2.35 hours
Entry of 9/10/06 MDS   - This work concerns discovery problems and is allowed
Entry of 11/3/06 MDS   - The court reduces this entry by one half - .35 hours
Entry of 12/6/06 KJL    - The court reduces this entry by one half - .65 hours
Entry of 12/14/06 KJL   - The court reduces this entry by one half - .95 hours

Entry of 1/8/07 AKK    - This work concerns discovery problems and is allowed
Entry of 1/8/07 KJL     - This work concerns discovery problems and is allowed
Entry of 1/16/07 KJL    - This work concerns discovery problems and is allowed
Entry of 1/29/07 KJL    - Although this concerns "new requests for admission," this

|                          | court will allow this since the old requests were not answered properly |
|--------------------------|-------------------------------------------------------------------------|
| Entry of 1/31/07 AKK     | - This work concerns discovery problems and is allowed                  |
| Entry of 1/31/07 KJL     | - This work concerns discovery problems and is allowed                  |
| Entry of 3/21/07 AKK     | -    no objection to relevance of the work performed, however, Mr. Purcell disputes the amount of time, and the fact that some entries concern multiple tasks |
| Entry of 3/21/07 MDS     | - This work concerns discovery problems and is allowed                  |
| Entry of 3/22/07 AKK     | - This work concerns discovery problems and is allowed                  |
| Entry of 3/22/07 KJL     | - This work concerns discovery problems and is allowed                  |
| Entry of 3/22/07 MDS     | - This work concerns discovery problems and is allowed                  |
| Entry of 3/23/07 AKK     | - This work concerns discovery problems and is allowed                  |
| Entry of 3/25/07 KJL     | - This work concerns discovery problems and is allowed                  |
| Entry of 3/26/07 MDS     | - This work concerns discovery problems and is allowed                  |
| Entry of 3/29/07 AKK     | - This work concerns discovery problems and is allowed                  |
| Entry of 3/29/07 KJL     | - This work concerns discovery problems and is allowed                  |
| Entry of 3/29/07 MDS     | - This work concerns discovery problems and is allowed                  |
| Entry of 3/30/07 KJL     | - This work concerns discovery problems and is allowed                  |
| Entry of 3/30/07 RP      | - objection by Mr. Purcell and disallowed                               |
| Entry of 5/13/07 KJL     | - This work concerns discovery problems and is allowed                  |
| Entry of 5/17/07 KJL     | - This work concerns discovery problems and is allowed                  |

Other than the minor reductions as set forth above, the court finds that all of the

entries above concern work directly related to discovery problems and the motion for

sanctions.

| Entry of 6/1/07 KJL      | - This work concerns discovery problems and is allowed                  |
| Entry of 6/2/07 KJL      | - This work concerns discovery problems and is allowed                  |
| Entry of 6/3/07 KJL      | - This work concerns discovery problems and is allowed                  |
| Entry of 6/5/07 MDS      | - This work concerns discovery problems and is allowed                  |
| Entry of 6/6/07 AKK      | - This work concerns discovery problems and is allowed                  |
| Entry of 6/6/07 MDS      | - This work concerns discovery problems and is allowed                  |
| Entry of 6/7/07 KJL      | - This work concerns discovery problems and is allowed                  |

 The court finds that all of the entries between 6/1/07 and 6/7/07 are directly related

to the issue of sanctions and are allowed.

Entry of 1/30/08 KJL      - This work concerns discovery problems and is allowed
Entry of 1/31/08 AKK     - This work concerns discovery problems and is allowed
Entry of 1/31/08 FA       - This work concerns discovery problems and is allowed
Entry of 1/31/08 KJL      - This work concerns discovery problems and is allowed

The court finds that this work in 2008 is directly related to discovery issues, and the hearing on Hasbro's motion.

The court will allow attorneys' fees to Hasbro's attorneys in accordance with the rules stated by the Second Circuit in *Arbor Hill v. County of Albany*. The court must first note that the hourly rates for the attorneys representing defendant are substantially higher than those charged by local attorneys in the Northern District of New York. These fees are those charged by large law firms in the Southern District of New York. The court must also keep in mind, however, that the subject matter of this case is complex, and there are not a great many attorneys who practice this type of law in the Syracuse and Utica areas.[4]  With the above standards in mind, this court will now determine the amount of fees due as a sanction for the discovery abuses in this case.

**A. Hourly Rates**

This court will modify the hourly rates for Attorney Landsman to allow a rate

---

[4] While not completely relevant to this court's decision, the court would point out that Mr. Purcell, himself, stated that there were a very small number of attorneys in this area that could handle plaintiff's case due to the nature and complexity of the law. Mr. Landsman points this out as a reason for Hasbro's need for out-of-district counsel. The court does not totally agree with Mr. Purcell's statement that he is one of the only people in Syracuse that can properly handle a trademark action. The court agrees with Mr. Landsman that Hasbro is entitled to competent counsel even if that requires counsel outside of the Northern District of New York.

slightly higher than the Northern District but substantially ***below*** the usual rates in the Southern District of New York. Mr. Landsman has a vast amount of experience in this specialty area of law; has requested a very reasonable number of hours; has extensive expertise; and is clearly the attorney chosen by a willing client. The court notes that Mr. Landsman knows the ***entire*** background of related proceedings before the Trademark Office, is completely familiar with Hasbro's business, and has clearly shown his expertise about Hasbro in this case. While Hasbro might have hired an attorney in the Northern District for this litigation, they are entitled to hire an attorney familiar to them who has done extensive work for them on these types of cases.

As shown below, this court finds that the reasonable hourly rates for Mr. Landsman for 2006 through 2008 are $310.00, $330.00, and $350.00.

| LANDSMAN | Total Time | Hourly Rate | Total Amount |
|----------|-----------|-------------|-------------|
| 2006 | 1.95 | $310.00 | $604.50 |
| 2007 | 17.2 | $330.00 | $5,676.00 |
| 2008 | 3.1 | $350.00 | $1,085.00 |
| Subtotal | | | $7,365.50 |

<u>Attorney Kramer</u>

In accordance with the required analysis in this Circuit, this court finds that Attorney Kramer's hourly rate is more than the rate charged by associate lawyers with commensurate experience in the Northern District. During 2007, Ms. Kramer

had approximately four years of legal experience, although her year clerkship with District Judge Preska probably resulted in more varied experience than one year of practice.  The court will use hourly rates of $150.00 for 2007, and $165.00 for the year 2008 for Attorney Kramer.

In addition, the court will reduce the total number of hours spent by Ms. Kramer on the "motion for sanctions" since some of that time included conferences with Attorney Sant'Ambrogio, another associate in Mr. Landsman's firm.  Although based on the history of the multiplicity of proceedings caused by Mr. Purcell, this court would be justified in allowing *all* of Ms. Kramer's hours, the court will reduce them as shown below.

Attorney Kramer's hours and fees allowed are:

| KRAMER | Total Time | Hourly Rate | |
|--------|-----------|-------------|---|
| 2007 | 21 | $150.00 | $3,150.00 |
| 2008[5] | .4 | $165.00 | $66.00 |
| Subtotal | | | $3,216.00 |

   Attorney Sant'Ambrogio

Mr. Sant'Ambrogio graduated in 2001, and during 2006 had five years of experience.  Mr. Sant'Ambrogio also had judicial clerkship experience.  The court will set an hourly rate for him at $165.00 for 2006 and $180.00 for 2007, which the

----

[5]Mr. Landsman and Ms. Kramer have not finalized their hours for the March 4th hearing. This court will grant them the time they spent in court as shown.

court believes are the approximate rates for associates with commensurate experience in this specialty in the Northern District of New York.

Mr. Sant'Ambrogio's hours and fees allowed are:

| SANT'AMBROGIO | Total Time | Hourly Rate | |
|---|---|---|---|
| 2006 | 5.05 | $165.00 | $833.25 |
| 2007 | 9.6 | $180.00 | $1,728.00 |
| Subtotal | | | $2,561.25 |

<u>Other Individuals</u>

The court will not allow the time for Mr. Ralph Penso since the time spent by Mr. Penso would have been spent whether the motion for sanctions was brought or not. It appears that Mr. Penso's billing entry for March 30, 2007 is a review of documents produced by plaintiff, and these documents would have been reviewed regardless of the sanctions issue. This court will allow the entry for Florentina Andronovici since her billing entry of January 31, 2008 is work directly related to the hearing on Hasbro's motion for sanctions.

| ANDRONOVICI | Total Time | Hourly Rate | |
|---|---|---|---|
| 2008 | 3.4 | $80.00 | $272.00 |

**B.  March 4, 2008 Hearing**

The court's records show that the hearing started at approximately 10 a.m. and lasted through 4:23 p.m. resulting in approximately five hours in-court time for Attorneys Landsman and Kramer. Mr. Landsman's hourly rate is $350.00, and the

total fee award will be (5 x $350.00) $1,750.00.  Ms. Kramer's hourly rate is

$165.00, and the total fee aware will be (5 x $165.00) $825.00.  No fee award is

made for the time for the lunch recess, which was approximately one hour and fifteen

minutes.

| MARCH 4, 2008 | Hours in Court | Rate | |
|---|---|---|---|
| Attorney Landsman | 5 | $350.00 | $1,750.00 |
| Attorney Kramer | 5 | $165.00 | $825.00 |

**_____C.  Final Summary**

Attorney Landsman

| | |
|---|---|
| 2006 | $604.50 |
| 2007 | $5,676.00 |
| 2008 | $1,085.00 |
| March 4, 2008 Hearing | $1,750.00 |
| TOTAL | $9,115.50 |

Attorney Kramer

| | |
|---|---|
| 2007 | $3,150.00 |
| 2008 | $66.00 |
| March 4, 2008 Hearing | $825.00 |
| TOTAL | $4,041.00 |

Attorney Sant'Ambrogio

| | |
|---|---|
| 2006 | $833.25 |

| 2007 | $1,728.00 |
|------|-----------|
| TOTAL | $2,561.25 |

Ms. Andronovici

| 2008 | $272.00 |
|------|---------|
| TOTAL | $272.00 |

| COMBINED TOTALS | $15,989.75 |
|-----------------|------------|

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that defendant Hasbro's motion for sanctions in the form of attorneys fees (Dkt. No. 130) is **GRANTED**, based upon FED. R. CIV. P. 37 and 28 U.S.C. 1927, and fees are assessed personally against Robert E. Purcell as noted above in the amount of $ 15,989.75  to be paid to Hasbro no later than thirty (30) days from the date of this decision, and it is further

**ORDERED**, that any decision on preclusion of evidence or admissions is deferred until the trial; and it is further

**ORDERED**, that any request for a "stay" of this order is denied by this court. A request for a stay may be made to District Judge Hurd.

Date: March 28, 2008

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge