UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SPERO HARITATOS,

*Plaintiff,*

-vs-

HASBRO, INC. and TOYS "R" US-NY LLC,

*Defendants.*

Civil Action No.
6:05-cv-930 (DNH/GJB)

---

## MEMORANDUM OF LAW IN SUPPORT OF OBJECTIONS UNDER FED. R. CIV. P. 72 TO THE MAGISTRATE JUDGE'S MEMORANDUM DECISION AND ORDER ENTERED MARCH 28, 2008

**HISCOCK & BARCLAY, LLP**
*Attorneys for Plaintiff*
Office and Post Office Address
One Park Place
300 South State Street
Syracuse, New York  13202-2078
Telephone (315) 425-2802
Facsimile (315) 425-8594
rpurcell@hiscockbarclay.com

Robert E. Purcell
*Of Counsel*

SYLIB01\618764\1

# TABLE OF CONTENTS

1. Brief Procedural History Regarding The Motion Upon Which
   The Ruling Is Based.................................................................................................2

2. A Preview Of Purcell's Sequence Of Argument And General
   Legal Analysis ........................................................................................................6

3. Plaintiff Did Not Violate The August 11, 2006 Order.................................................9

   A. The Relevant Portion Of The Order Is Fatally Ambiguous
      And No Sanctions Can Arise From Any Alleged Failure To
      Comply With That Order ...................................................................................11

      (1) The Documents Pertaining To The Application For
          "Turkey Joints" Registration Were Already Produced
          Prior To The Order......................................................................................12

      (2) Purcell Did Not Violate The Aspect Of The Order
          Requiring Plaintiff To Produce "Customer Lists" .....................................13

      (3) The Portion Of The Order Requiring Production Of
          "Information Regarding Damages" Is So Vague As To
          Be Incomprehensible, And Cannot Be Subject To
          Sanctions For Alleged Non-Compliance ....................................................19

4. The Ruling Illegitimately Criticized Purcell's Conduct In Seeking A
   Default Judgment Against Defendant Toys 'R Us .....................................................21

5. The Ruling's Portrayal Of The Relationship Between Discovery In
   The TTAB Proceeding And The Instant Lawsuit Is Flawed .......................................24

6. The Ruling's Concern About Plaintiff's Use of "Boilerplate" Objections
   Is Unfounded And Belated.......................................................................................28

7. The Ruling's Concern About Plaintiff's Interrogatory Responses
   Referring To Deposition Testimony Without Citing The
   Transcript Pages Is Unfounded ...............................................................................29

8. The Ruling Unfairly and Belatedly Criticizes Plaintiff's Response
   to Hasbro's Document Request Regarding Samples Of Product..................................30

9. The Ruling's Criticism Of Plaintiff's Responses To Certain Requests
   For Admissions Is Unfounded .................................................................................32

10. The Nature And Calculation Of The Attorneys' Fees Awarded In
     The Ruling Is Errant And Unsupported ............................................................................ 33

11. Conclusion ............................................................................................................................ 38

Robert E. Purcell hereby submits a memorandum of law in support of his objections under Fed. R. Civ. P. 72 to the Magistrate Judge's Memorandum Decision and Order entered March 28, 2008 ("the Ruling").[1] [Dkt.181]

In the Ruling, Magistrate Judge DiBianco assessed personally against Robert E. Purcell ("Purcell") sanctions in the nature of attorneys' fees "in the amount of $15,989.75 to be paid to Hasbro." The assessment of attorneys' fees was based both upon Fed. R. Civ. P. 37 and 28 U.S.C. § 1927.[2] The Ruling did not indicate which portion of the award was based upon Rule 37 as contrasted with Section 1927.

The Ruling decided in connection with Plaintiff's allegedly improper responses to certain of Hasbro's requests for admissions, "Because this action has been stayed, the court will defer to Judge Hurd for a final decision on whether to deem the matters admitted." (p. 21) The Ruling is unclear as to whether there was any finding that any responses to requests for admissions were deemed insufficient or whether the responses form any basis for the award of attorneys' fees.

The Ruling is a 39-page, harshly worded criticism of Purcell. When one calmly examines the pertinent facts, it is respectfully submitted that this Court will find that no attorneys' fees should have been awarded and that there was no sanctionable conduct. Also, as to the issue of the propriety of the responses to the requests for admissions, Purcell believes that the Court will find that the responses were adequate and proper.

---

[1] Although the Ruling seems to affect only Plaintiff's counsel of record, Mr. Purcell, to the extent that the Ruling is deemed to affect Plaintiff, he should also be deemed a party joining in Mr. Purcell's objections and in this memorandum of law.

[2] Although the Ruling discusses the inherent power of a court to award attorneys' fees as sanctions (*See* pp. 6 – 7), the Ruling specifically references only Rule 37 and Section 1927 as the basis for the award (*See* p. 39). Also, the Ruling fails to specify the subsection of Rule 37 upon which the award is based. Plaintiff believes that the Ruling most likely relies only upon Rule 37(b), which involves a failure to comply with a court discovery order, whereas, subsection (a) involves motions to compel discovery and subsection (d) involves a party's complete failure to appear to testify or serve discovery responses. There is some uncertainty about whether the Ruling relied upon subsection (c) which involves a failure to admit a request for admissions, but that subsection limits sanctions to a party, and not to an attorney.

1.     Brief Procedural History Regarding The Motion Upon Which The Ruling Is Based

As recognized in the Ruling, the motion giving rise to the Ruling "began with a May 17, 2007 letter-motion" from Defendant Hasbro, Inc. ("Hasbro"). [Dkt.130] The letter expressly sought "direction from the Court on presenting a motion for sanctions against Plaintiff and his counsel, Robert Purcell, or to compel discovery." The letter comprised two and one-third pages.

Plaintiff responded by letter-brief dated May 22, 2007 comprising four paragraphs. [Dkt.131] Of particular note is Plaintiff's objection to the Court even considering Hasbro's motion:

> Local Rules 16.2 and 7.1(d)(8) each require that motions to compel discovery shall be filed no later than ten calendar days after the discovery cut-off date, which, here, was February 28, 2007. Certainly if there were any grave concern about the alleged insufficiencies of Plaintiff's production of documents, Defendant Hasbro would have raised that concern long before now, and well before the discovery cut-off date. Plaintiff submits that the Local Rules, both in letter and spirit, preclude Defendant Hasbro from pursuing its requested relief.

The Magistrate Judge then issued an Order granting Hasbro "permission to file a 'reply' to this [131] Response in Opposition to Motion," referring to Plaintiff's May 17, 2007 letter-brief. [Dkt.133] The Order further stated that "the reply shall not exceed four pages" despite the fact that Plaintiff's May 17, 2007 letter-brief comprised four **paragraphs**. Hasbro filed the "reply" brief and attached Plaintiff's responses to Hasbro's discovery served on October 27, 2005, on May 31, 2006, on September 15, 2006, and on January 31, 2007.[3] [Dkt.144] The last category of documents is especially significant because Hasbro served by mail three different sets of discovery on January 31, 2006:  a Second Set of Requests for Admission, a Third Set of Interrogatories, and a Third Set of Requests for Production of Documents.  Plaintiff notified Hasbro on February 23, 2007 that it would not serve responses to that discovery, since the

---

[3]The Ruling does not use the term "reply", but instead calls Hasbro's submission a "clarification" of the motion in the May 17, 2007 letter.

responses would be due after the discovery cut-off date, and thus did not comply with Local Rule 16.2. Plaintiff notified the Court of his position in his letter-brief dated May 22, 2007. This was a repeat of Hasbro's belated service of discovery in connection with an earlier discovery cut-off date and as to which Plaintiff had objected on the same basis. Hasbro sought to compel Plaintiff to respond to the belatedly served discovery, despite the fact that Hasbro had never moved to extend the discovery cut-off date, and despite the fact that Hasbro's motion to compel was itself belatedly filed in violation of Local Rules 7.1(b)2 and 16.2.

The Magistrate Judge did not rule upon or conduct any further proceedings regarding this matter. By a Notice of the Clerk entered August 7, 2007, a directive was issued that motions would no longer be referred to Magistrate Judge DiBianco, but they would be handled by Judge Hurd. [Dkt. Between 158 and 159].

By the District Court Judge's Order dated December 18, 2007 ("the Stay Order"), the action was stayed until the Second Circuit either denied Plaintiff's application for interlocutory appeal or issued a decision resolving the question of law presented (the threshold requirements for seeking a recovery of damages or profits in a situation of reverse confusion involving trademarks).

On January 30, 2008, the Magistrate Judge held a telephone conference with counsel to discuss two pending motions, including Hasbro's motion contained in its letter-brief filed May 17, 2007. The Magistrate Judge explained that the court administrators who monitor the length of time it takes judges to dispose of pending matters required a report by the end of March, 2008 and that Judge Hurd and he had discussed the desirability of tending to the outstanding motions. The parties informed the Magistrate Judge of the existence of the Order issued on August 7, 2007 indicating that Judge Hurd would be handling all motions, and of Judge Hurd's Stay Order.

The Magistrate Judge said that he would discuss with Judge Hurd how to handle the situation and that he would get back in touch with counsel. By Order dated January 31, 2008 ("the Hearing Order"), the Magistrate Judge scheduled the pending motions for "oral argument and presentation of proof" on March 4, 2008. [Dkt.169] The Hearing Order further instructed "that each attorney that will be presenting proof at the hearing, **must** submit a Witness and Exhibit List specifying very briefly the testimony of any witness, and the nature of any exhibit", (emphasis added) and required that such list be filed no later than February 26, 2008.

On February 26, 2008, Purcell contacted the Magistrate Judge's Courtroom Deputy Clerk to determine whether the Magistrate Judge wanted the parties to submit any briefs in connection with the evidentiary hearing scheduled for March 4, 2008 ("Evidentiary Hearing"). The Clerk called later to state that she had inquired with the Magistrate Judge about Purcell's request concerning the submission of briefs and had been advised that "no briefs were needed." In response to Purcell's further inquiry as to whether that meant the submission of briefs was not permitted, the clerk responded that "no briefs should be submitted." (*See* Declaration of Robert E. Purcell included in Dkt. 180).

A review of the transcript of the Evidentiary Hearing reveals that the Magistrate Judge gave no notice or other indication as to what specific conduct was being considered for Hasbro's motion to compel or what conduct was being considered as possibly sanctionable, leaving it up to Purcell to make that assessment based upon Hasbro's motion and reply brief/clarification filed almost one year earlier.[4]

---

[4]Given the Magistrate Judge's apparent animosity toward Purcell that must have existed prior to the hearing, as evidenced by the Ruling and the manner in which it was issued almost immediately after the last papers were submitted, a more reasonable approach might have been for the Magistrate Judge to have recused himself and for Judge Hurd to have reassigned the matter to another Magistrate Judge.

Among Purcell's objections raised at the hearing was the fact that Hasbro had not complied with the Court's Hearing Order, because Hasbro had not identified any witnesses or exhibits directed to the nature or amount of any potential sanctions in the nature of attorneys' fees. Indeed, at the conclusion of Hasbro's opening statement, the Magistrate Judge expressly asked Hasbro's counsel, "Okay. On the issue of attorneys' fees, do you have any document that shows the amount of time and the fees?" [Tr. p. 17]. Hasbro's counsel responded that he was "in the process of preparing that, it's a fairly tedious process" and then said that he thought the Court should first address the issue of whether sanctions in the nature of attorneys' fees were appropriate, and if so, then permit Hasbro to submit evidence concerning the requested attorneys' fees. [Tr. pp. 17, pp. 55 – 56]. However, despite Hasbro's unilateral decision to bifurcate the hearing, the Magistrate Judge had never indicated that the presentation of evidence regarding the attorneys' fees requested by Hasbro could be provided at some later date after the Evidentiary Hearing and thereby deny Purcell's ability to confront and cross-examine Hasbro's witnesses about the specific nature of the legal work and the reasonableness of the specific legal fees for which payment was sought.

After the Evidentiary Hearing, by Order dated March 17, 2008, the Magistrate Judge directed Hasbro to submit "its documents regarding attorneys' fees" by March 21, 2008. It is respectfully submitted that such Order implicitly recognizes that these materials should have been presented in Hasbro's witness and exhibit list **prior to** any determination about the appropriateness of sanctions in the nature of attorneys' fees. Hasbro has not offered, nor can it offer, any satisfactory excuse as to why its witness and exhibit lists were incomplete in this regard. Hasbro's late submission, regarding the nature and amount of attorneys' fees, included two declarations of witnesses not identified in Hasbro's witness list and several pages of

Hasbro's law firm's invoices (documents not identified in Hasbro's exhibit list), albeit with major portions masked or redacted. This redaction occurred despite the fact that Hasbro had received neither the permission of the Court nor the consent of opposing counsel to redact those documents.

The Ruling does not compel Plaintiff to provide any discovery or to supplement its discovery responses in any way. Nor does the Ruling compel Plaintiff to respond to the three sets of discovery belatedly served by Hasbro on January 31, 2007, despite Hasbro's belated efforts to compel responses and further argument that Plaintiff's failure to provide those responses was part of Purcell's offensive, sanctionable conduct.[5]

## 2.   A Preview Of Purcell's Sequence Of Argument And General Legal Analysis

Purcell will initially address its compliance with the Magistrate Judge's August 11, 2006 Order ("the Discovery Order"), [Dkt.68] since that seems to Purcell to be the central issue. Second, Purcell will address various other conduct set forth in the Ruling. Finally, Purcell will address the portion of the Ruling dealing with the attorneys' fees.

The Ruling notes the distinction between the standards for issuing sanctions under Rule 37 and the standard for issuing sanctions under Section 1927.[6] Hasbro's motion presented a long list of allegedly sanctionable conduct, and the Ruling criticizes several instances of Purcell's conduct. The Ruling contains only a general finding in regard to what conduct was found to violate Rule 37 and to warrant sanctions in the nature of an award of attorneys' fees, and what

---

[5] The Ruling does not address (1) the propriety of Hasbro's belatedly serving discovery for which responses were due after the discovery cut-off date, or (2) for belatedly moving this Court to compel responses in violation of Local Rules 7.1(b)2 and 16.2.

[6] The Second Circuit has repeatedly held that in a situation where "sanctions are imposed under multiple provisions, 'separate consideration of the available sanctions machinery is not only warranted, but necessary for meaningful review'". *See, e.g., Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 97 (2d Cir. 1997).

conduct was found to violate Section 1927 and to warrant sanctions in the nature of attorneys' fees under that statute (p. 28):

> In addition to violating two court orders, Mr. Purcell's conduct has unnecessarily multiplied proceedings in this case. This court finds, therefore, that Mr. Purcell is subject to sanctions in the form of attorneys fees and costs resulting from his conduct under both Rule 37 and 28 U.S.C. § 1927.

This pronouncement, as well as the discussion in the Ruling respecting the standards for determining a violation under Rule 37 (pp. 3 – 5), suggests that any sanctions in the award of attorneys' fees were based upon that portion of Rule 37 governing violation of an order compelling discovery (i.e., subsection (b)). As the Ruling recognizes, Rule 37(b)(2)(C) provides that the court may order Purcell to pay the reasonable attorneys' fees caused by the failure to obey a discovery order "unless the failure was substantially justified or other circumstances make an award of expenses unjust." As the Ruling further recognized, the Court may not impose sanctions unless there is a "clearly articulated order requiring specified discovery." (p. 4). Likewise, the Ruling properly appreciated that the attorneys' fees that can be awarded are limited to those incurred in making the motion to compel which resulted in the discovery order or those caused by the failure to comply with the (clearly articulated) discovery order (pp. 4 – 5). No other attorneys' fees may properly be awarded.

Although one may readily glean from the tenor of the Ruling that the Magistrate Judge found that any alleged failure to comply with the Order at issue was not substantially justified and that there were no circumstances that would make an award of attorneys' fees unjust, the Ruling contains no specific finding on these important, critical requirements needed to support sanctions in the nature of an award of attorneys' fees under Rule 37.

In contrast to the Rule 37 standard, Section 1927 permits the court to sanction a party's attorney by awarding attorneys' fees as follows:

> Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Any sanctions must be supported by a specific finding that specific conduct multiplied proceedings **both** "unreasonably and vexatiously."[7]  It is also clear that any such sanctions are only for "excess" attorneys' fees reasonably incurred.

This Court has already been apprised that Purcell has taken Plaintiff's case on a contingency fee basis.  There is absolutely no incentive for Purcell (or his client) to unreasonably multiply these proceedings, but rather, there is strong incentive for him to avoid any such conduct and to push this case to trial.

As indicated in the Ruling, sanctions are appropriate under Section 1927 only when an attorney's actions "are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  The court must also determine whether the attorney's actions "were taken in bad faith" such as by "pursuing frivolous contentions, making frivolous motions, or intentionally dilatory conduct".  The Ruling also recognizes that the Second Circuit requires that there be **"clear evidence"** that the attorney's actions were taken to harass, delay, or for "other inappropriate reasons."

Although the Ruling sets forth the standards for exercising the court's inherent power to issue sanctions in the nature of attorneys' fees (pp. 6 – 7), the Ruling does not indicate that these sanctions were based upon the Court's inherent authority, for which there is yet a different standard.

An award of sanctions in the nature of attorneys' fees is reviewed under both an abuse of discretion standard as well as the clearly erroneous or contrary to law standard of review under

---

[7] The American Heritage Dictionary of the English Language defines "vexatious" in the context of law as being "Instituted without sufficient grounds, to serve solely as an annoyance to a defendant. Said of legal actions." Thus, the term "vexatiously" in connection with a lawsuit would require the action to serve **solely** as an annoyance.

Rule 72,[8] however, even under this deferential standard of review, a court "must be careful" to ensure that any such decision [to sanction a party or attorney] is made with restraint and discretion. *United States v. Seltzer*, 227 F.3d 36, 39 (2d Cir. 2000). Where a party's attorney is sanctioned with an award of the adverse party's attorneys' fees, "[a] court should be especially circumspect in imposing this type of sanction due to its stigmatizing effect on the censured attorneys," *Mathias v. Jacobs*, 167 F. Supp. 2d 606, 623 (S.D.N.Y. 2001), since "[a] sanctions award implicates the reputational interests of the attorney – his primary asset." *Id.* at 623 (citing *Agee v. Paramount Communications, Inc.*, 114 F.3d 395 (2d Cir. 1997)).

3.     Plaintiff Did Not Violate The August 11, 2006 Order

The Magistrate Judge's Discovery Order addressed four letter motions submitted by the various parties, only one of which is relevant to the Ruling. Hasbro had complained about Plaintiff's alleged failure to provide a host of different types of discovery. However, the total mandate in the Order concerning Hasbro's discovery motion is contained in a **single** paragraph.

> A review of the discovery requested by defendant Hasbro shows that the information that Hasbro was seeking in its discovery requests is relevant to the issues in this action, and thus, should be produced. Hasbro has requested information including **customer lists; the application for the "Turkey Joints" registration;** and **information regarding damages.** This court finds that this information is relevant and discoverable, given the protective order that has been entered in this case.

Thus, it will be appreciated that the Discovery Order required production of only three categories of documents. Plaintiff filed objections under Rule 72 to this part of the Order, and the District Judge overruled the objections in a four sentence Order dated October 19, 2006.[9]

---

[8] A leading treatise notes that, since a Magistrate Judge and a District Judge are always permitted to reconsider their own prior rulings in any case, there is no reason for the District Judge to give deference to a Magistrate Judge's ruling under a "clearly erroneous" standard, despite the wording of Rule 72. Wright & Miller, Federal Practice and Procedure § 3069 (2007). *See also Phillips v. The Raymond Corp.*, 213 F.R.D. 521 (N.D. Ill. 2003) (citing § 3069 of Wright & Miller with approval).

[9] A District Judge always retains the authority to revisit and to change the Court's prior rulings.

The above-quoted portion of the Order is based upon a letter-brief filed by Hasbro on June 26, 2006, which comprises five and one-half single-spaced pages, plus several pages of attached exhibits. [Docket Entry No. 60] The letter-brief addressed three distinct matters: a proposal regarding mediation, the supplemental disclosure of a witness, and Plaintiff's alleged refusal to respond properly to document requests and interrogatories, identifying several alleged deficiencies. The Magistrate Judge issued an Order dated July 20, 2006 ordering that "Atty. Purcell can file a **two page** response to Atty. Landman's letter of June 26 by July 26, 2006. Atty. Landsman can file a two page reply brief by July 28, 2006." [Dkt. Between 62 and 63]. Thus, Plaintiff's compliance with the Magistrate Judge's Order to limit his response to two pages unfairly restricted Plaintiff's ability to provide meaningful discussion regarding all of the matters addressed in Hasbro's June 26, 2006 letter, and in particular, the alleged discovery deficiencies. The attempt to properly resolve these disputes was further impaired because the Magistrate Judge did not conduct any hearing with regard to the matter of Plaintiff's alleged discovery deficiencies before issuing the Discovery Order.

At the Evidentiary Hearing, Hasbro's counsel argued that the entirety of its relief requested in its June 26, 2006 letter was granted by the Magistrate Judge's Discovery Order. Specifically, Hasbro's counsel relied upon the following language at the end of that Order:

> **ORDERED,** that *plaintiff's* letter-motion dated June 26, 2006 (Dkt. No. 59) is **GRANTED**, and the close of all discovery is extended to **NOVEMBER 30, 2006,** with plaintiff's expert disclosure deadline extended to **August 30, 2006,** defendants' expert disclosure deadline is extended until **September 30, 2006,** and the rebuttal expert deadline for both parties is extended until **October 30, 2006,** and it is further

(some emphasis added). Hasbro's attorney took the position that the Court's reference to "*plaintiff's* letter-motion" involved a typo, and contended that it was clear (to him) that the Discovery Order intended to refer to "*defendant's* letter-motion." (Tr. pp. 4 – 5, 80 – 87)

During the hearing on March 4, 2008, Purcell corrected Hasbro's counsel's confusion regarding the above-quoted part of the Order, since the reference to "plaintiff's letter-motion dated June 26, 2006" was to a letter-brief filed by Plaintiff concurrently on the same date as Hasbro's letter-brief, but was directed to a different issue: a request to extend the discovery deadlines. *Id.*

Hasbro's counsel was under the incorrect impression that the Discovery Order had granted the **entirety** of the relief set forth in Hasbro's letter-brief dated June 26, 2006, when in fact, the Discovery Order directed that only the three categories of documents listed above be produced. Despite Hasbro's inaccurate interpretation of the Discovery Order and Hasbro's improper motion that Purcell should be sanctioned for violating an Order that Hasbro incorrectly represented as incorporating all of the relief requested in its letter-brief, the Ruling makes no mention of Hasbro's counsel's errant actions that lead to severe confusion about which letter was being referenced in the Discovery Order.

A.   The Relevant Portion Of The Order Is Fatally Ambiguous, And No Sanctions Can Arise From Any Alleged Failure To Comply With That Order

The three categories of documents that the Discovery Order expressly required Plaintiff to produce are: "the application for the 'Turkey Joints' registration," "customer lists," and "information regarding damages." Knowing that the law requires that sanctions for violating an order only if the order is a "**clearly articulated** order requiring **specified** discovery," the Ruling states, "This court has already concluded that my August 11, 2006 Order was **crystal clear** and required all parties to produce discovery within thirty (30) days." (p. 22) As explained below, the relevant portion of the Order was not "crystal clear" and was fatally ambiguous.[10]

---

[10]"A district court may punish for disobedience of an order only if the order is clear and unambiguous." *Fonar Corp. v. Deccaid Services, Inc.*, 983 F.2d 427, 429 (2d Cir. 1993); *See also Pascale v. G.D. Searle & Co.*, 90 F.R.D. 55 (D.R.I. 1981) ("[B]ecause the magistrate's first [discovery] order is somewhat ambiguous, I cannot sustain the sanctions imposed by his second order.")

At page 25 of the Ruling, the Magistrate Judge chastises Purcell for not seeking a clarification of the Discovery Order. However, given the Magistrate Judge's continued belief that his Discovery Order was "crystal clear," such a request for clarification would have accomplished nothing other than providing one more ground for the Magistrate Judge to chastise and to levy sanctions against Purcell.

(1)    The Documents Pertaining To The Application For "Turkey Joints" Registration Were Already Produced Prior To The Order

The application for the "Turkey Joints" registration relates to a trademark that does not include the term "CANDYLAND" (which is the trademark at issue in this lawsuit). The application was filed over 30 years ago in the Trademark Office, and the registration had expired about 25 years ago.[11]

Hasbro claimed that Plaintiff had violated the Discovery Order in its letter-brief filed on May 17, 2007: "Plaintiff has utterly failed to provide all of the documents called for by these requests, including, most importantly, documents concerning Plaintiff's sales, customers, damages, **and prior trademark registration for the 'Original Thin Shelled Candy'."** (emphasis added). Hasbro continued to press ahead with sanctions for Plaintiff's alleged violation of the aspect of the Order requiring production of documents relating to that trademark application. However, as Plaintiff revealed in its exhibits listed and provided at the March 4, 2008 hearing, Plaintiff had **already** produced all of the documents pertaining to that application and registration two months **before** the August 11, 2006 date of the Order. Particularly, Plaintiff sent a letter to Hasbro's counsel dated June 1, 2006 in which Plaintiff provided all of the requested, responsive documents. (Pl. Ex. 23; *see also* Pl. Ex. 1, paragraph 3).

---

[11]Plaintiff submitted in response to the Hearing Order copies of print-outs of pages from the publicly available Trademark Office website pertaining to the application and registration (Pl. Ex. 22)

During the Evidentiary Hearing, the Magistrate Judge was made aware of Hasbro's unfounded requests for sanctions regarding Plaintiff's alleged failure to provide "the application for the 'Turkey Joints' registration" as required by the Discovery Order. Again, the Ruling is devoid of any comment regarding Hasbro's persistent, illegitimate attempt to obtain sanctions for an alleged violation of this aspect of the Discovery Order, apparently believing that Hasbro's conduct was benign.

Purcell did not violate this aspect of the Discovery Order.

(2)   Purcell Did Not Violate The Aspect Of The Order Requiring Plaintiff To Produce "Customer Lists"

Hasbro's June 26, 2006 letter complained: "Plaintiff has refused to produce documents concerning the consumers or customers for plaintiff's products bearing the 'Candyland' mark, including most importantly their geographic location . . . . We know from recent deposition testimony that plaintiff maintains records that include the location of consumers who purchase his products over the telephone, via mail order, or through the www.turkeyjoints.com website."

Plaintiff responded (within his two page limitation to address all of Hasbro's alleged discovery deficiencies and three other issues), *inter alia*, that except for purchases at Plaintiff's retail store, virtually all sales for which Plaintiff still has records are reflected in UPS shipping manifests that are stored in a warehouse and go back perhaps to 1996. Plaintiff contended that to search for and to produce those records would consume many man-days of effort by Plaintiff and his wife.[12] Hasbro's reply letter-brief dated July 28, 2007 persisted that, "Documents concerning the location of Plaintiff's customers are absolutely essential to Defendants' ability to defend the case . . . . In any event, it is not overly burdensome for Plaintiff to retrieve U.P.S. manifests from

---

[12] It eventually actually took three people four full days to retrieve and copy the UPS manifests. (Tr. pp.23 – 24)

his warehouse . . . . There are not that many . . . . Plaintiff should produce these and other documents responsive to Hasbro's Requests Nos. 12, 13, and 14." [13]

The parties' respective letter-briefs do not mention "customer lists." No customer list existed. There was no hearing on this matter after the submission of those letter-briefs and prior to the Discovery Order. Nevertheless, the Discovery Order required Plaintiff to produce "customer lists." However, Plaintiff never has had any customer lists. [14] Consequently, there was nothing for the Plaintiff to produce in response to this aspect of the Order, and Plaintiff was under no duty to create customer lists which never existed. Accordingly, Purcell did not violate this aspect of that Order.

Although Purcell brought out the foregoing at the Evidentiary Hearing, the Ruling still concludes that Purcell violated "my order regarding the direction to supply customer lists and other discovery." (pp. 18 – 19) The Ruling then goes on improperly to characterize the Ruling's directive to produce "customer lists" as a directive to produce "customer information" - - whatever "customer information" means. (pp. 18 – 19)

What Plaintiff did do in a good faith attempt to comply with this aspect of the Order was to have three people search boxes in storage and elsewhere to make copies of every single UPS manifest, which are essentially the shipping invoices indicating the name and address of the customers to whom Plaintiff has shipped his products. These three people spent four full work

---

[13] There were actually 5,593 pages of manifests eventually produced. (Tr. pp. 23 – 24)

[14] At the March 4, 2008 hearing, Hasbro's counsel called Mr. Haritatos as a witness. During his examination, Hasbro brought out that in his wife's deposition she mentioned that she accesses the "order screen" on the website "just for the day's work, whatever orders may have come in and you see customer lists and you see the order . . . . Those are the orders that came in that day and then you just process the orders from clicking on each order as you go down through." Mr. Haritatos explained that such information is used to create the UPS label.

Mrs. Haritatos testified in her deposition (pp. 38 – 41 and 124 – 125) that the website order information, including customer information, is transitory and has not been maintained, and that website orders amount for only about 5 – 6 percent of Plaintiff's business. She also explained in her deposition that the UPS shipping invoices/manifests reflect shipments of product sold to customers and that corresponding records are not maintained in Plaintiff's computer system.

days on this project. [Tr. pp. 23 – 24]. Although Plaintiff filed objections under Rule 72 to the Discovery Order, Plaintiff was concerned that the District Judge might not sustain the objections to this aspect of the Order, and might require production of documents within a very short time frame. Accordingly, Plaintiff submitted to Purcell two boxes of the UPS manifests comprising 5,593 pages in late September or early October, 2006, which Purcell maintained, while awaiting Judge Hurd's ruling on the objections. [Tr. pp. 23 – 24].

On October 16, 2006, Purcell terminated his former partnership and left his prior law firm, Wall, Marjama & Bilinski, which was representing Plaintiff, and joined Hiscock & Barclay, LLP. (However, other attorneys with Purcell's former firm continued to handle this lawsuit.) Purcell was denied access to the litigation file by his former law firm, but he unexpectedly received the litigation file, albeit in a disheveled state, on about December 6, 2006. Purcell sent an e-mail to Hasbro's counsel dated December 7, 2006 indicating his unexpected receipt of the litigation file, the disheveled state of the file, and his need to review Judge Hurd's Order dated October 19, 2006. [Pl. Ex. 24]. On December 14, 2006, Purcell called Hasbro's counsel and stated that the UPS manifests were available for inspection and copying. [Hasbro's Ex. 31]. Hasbro's counsel then haggled over where the production would occur, who would pay for the costs of copying, and what form the copying would take. [Pl. Ex. 25 – 31]. Counsel for Hasbro eventually agreed that Plaintiff would provide the boxes to an outside photocopy service of Hasbro's choosing, that such service would copy the manifests onto a computer disc, and that Hasbro would pay the costs associated with that service.[15]

The Ruling maintains that Purcell's conduct is sanctionable because he should have produced the UPS manifests (although that the Discovery Order required only production of the

---

[15]The ultimate charges for the service totaled $930.00. (Pl. Ex. 29) When considering Hasbro's principal counsel's hourly billings, and that such a sum is significant to Plaintiff, one must wonder why would Hasbro engage in such haggling.

non-existent "customer lists") promptly upon his receipt of those manifests in late September or early October, 2006. The Ruling cites two cases allegedly to the effect that a party (and his attorney) must comply with a Magistrate Judg e's order unless a stay of that order is first obtained, and regardless of whether objections under Rule 72 to that order are sustained. The cited cases are not from this Court or from the Second Circuit. With all due respect, the holdings of these cases are flawed, are not controlling, and should not be followed by the District Judge. Moreover, the implicit holdings in other cases (especially those sustaining an objection) do not find any fault with the failure of a party to comply with a Magistrate Judge's order while timely objections are pending.[16]

There are, of course, well-established procedures for seeking the stay of execution of a judgment or an applicable order of the District Judge, either from the District Judge or from the Second Circuit Court of Appeals. Indeed, both Fed R. Civ. P. 62 and Fed. R. App. P. 8 expressly outline the procedure for requesting a stay of a District Judge's order pending appeal to the Court of Appeals. In stark contrast, the Federal Rules of Civil Procedure do not address the situation of a stay of execution of a Magistrate Judge's order pending the ruling by a District Judge on objections under Rule 72. If the procedure of requesting a stay were deemed to be part of the procedures for filing objections under Rule 72, then it is respectfully submitted that the Federal

---

[16]*See, e.g., Gorman v. Polar Electro, Inc.*, 137 F. Supp.2d 223 (E.D.N.Y. 2001) (The Magistrate Judge denied a protective order, ruling that the attorney-client privilege did not apply to certain communications; a year later the District Court Judge vacated and remanded, without any indication of whether a stay was in effect.); *International Brotherhood of Elec. Workers Local No. 181 Retirement Fund v. Casatelli Electric, Inc.*, 168 F.R.D. 130 (N.D.N.Y. 1996) (Magistrate Judge DiBianco ordered the plaintiffs to provide broad information in response to interrogatories, but, even though there was no indication of any stay, the District Court Judge required that only narrower information be provided in an order issued four months later.)

Rules of Civil Procedure would have expressly provided for such a procedure.[17] Moreover, the Local Rules of this Court do not address the issue of stay procedures. Indeed, Local Rule 72.1(b) provides explicit, elaborate directions about filing objections. However, the Local Rule is devoid of any mention of a need for or procedure for requesting a stay of a Magistrate Judge's determination of a non-dispositive matter.[18] The Ruling fails to cite to any decision of this Court addressing a stay requirement or a stay procedure, despite what undoubtedly have been objections under Rule 72 filed with respect to many rulings of the Magistrate Judges in the Northern District of New York. Moreover, nothing in the Discovery Order addressed the matter of a stay.

The very language of Rule 72 implies a stay, since the District Judge "**must** consider timely objections and modify or set aside . . ." (emphasis added). Thus, the status quo is intended to be preserved in order to permit (effective) consideration by the District Judge. Otherwise, Rule 72 would be eviscerated. For example, if a Magistrate Judge ordered a party to produce an attorney's correspondence within five days despite an objection on the basis of attorney-client privilege, the documents were produced to the adversary, an objection under Rule 72 was timely filed, and the District Judge sustained the objection, would the party retrieve from the adversary all copies of the produced documents, an adversary's notes based upon those

---

[17]Moreover, the expedited procedure of filing objections under Rule 72, pursuant to which objections must be filed within ten days, contrasts with the appellate procedure, which can often take years. One may infer by the absence of express language relating to a stay procedure in Rule 72 that the effect of lodging objections would be different from that in connection with an appeal of a judgment or a preliminary injunction order, where stays are expressly to be sought and obtained.

[18]Since a motion to stay is directed to a non-dispositive matter, under the Local Rules of the District, a party would first have to comply with the requirements of Local Rule 7.1(b)2 regarding "meet and confer", setting up a conference with the same Magistrate Judge who issued the order, etc. Then, presumably, a party would be required to wait until a Magistrate Judge might rule on the motion to stay. Moreover, under this District's Local Rules, a party could not move directly before the District Judge, but could seek relief from the District Judge only through the filing of objections to any denial of the motion to stay by the Magistrate Judge (whenever that might be) and noticing a hearing on the objection at some later date (at least 31 days later) according to the particular motion calendar of that judge. Obviously, to follow such procedure is fraught with problems in effectively seeking a timely stay either before the Magistrate Judge, or after any adverse ruling by the Magistrate Judge, before the District Judge.

documents, an adversary's own communications with his client based upon those documents, etc., and would the adversary be required to erase his brain of information obtained from the produced documents?

Also, despite the authority relied upon in the Ruling, some courts have held exactly the opposite. For example, the Eighth Circuit held that it was improper for a Magistrate Judge to award attorneys' fees as a sanction, to specify that the attorneys' fees must be paid by a date certain or else the Magistrate Judge would enter default against the party, and to enter default against the party when the attorneys' fees were not paid by the deadline set by the Magistrate Judge, because the party had filed timely objections to the Magistrate Judge's order. *Treanor v. MCI Telecommunications Corp.*, 150 F.3d 916 (8th Cir. 1998) There is no indication in that case that a stay was requested or granted. Thus, this Eighth Circuit decision stands for the proposition that a party's timely filed objections to a Magistrate Judge's order under Rule 72 suspends any requirement for compliance with the Magistrate Judge's order. Otherwise, any review by the District Judge would be moot.

Finally, the Ruling chastises Purcell because, "He does not cite any case law to the contrary." Yet, Purcell was advised that "no briefs should be filed" in connection with the motions to be heard at the Evidentiary Hearing.

To summarize, this aspect of the Order required Plaintiff to produce "customer lists". Plaintiff has never had any customer lists. When applying the law that sanctions can be imposed only for violation of a "clear" order articulating **specified** discovery, it is clear that no sanctions can be awarded for the alleged non-compliance with this aspect of the Order. Purcell's decision to have Plaintiff search for and photocopy thousands of UPS manifests, in a good faith attempt to

comply with this aspect of the Order, and Plaintiff's expenditure of extraordinary labor in doing so, should have been admired, and not faulted.

(3)   The Portion Of The Order Requiring Production Of "Information Regarding Damages" Is So Vague As To Be Incomprehensible, And Cannot Be Subject To Sanctions For Alleged Non-Compliance

The third and last aspect of the Discovery Order is a directive for Plaintiff to provide "information regarding damages." There is no citation to any particular interrogatory response or to any particular response to a document request. Plaintiff has been seeking a monetary recovery in the nature of Defendants' profits from their trademark infringement as well as Plaintiff's damages in the nature of a reasonable royalty on Defendants' sales of product sold in connection with the infringing trademark. Plaintiff believes that he had provided sufficient information and documents respecting those "damages." Hasbro's June 26, 2006 letter expressly sought "Mr. Haritatos's claimed damages apparently consisting of legal expenses, including Mr. Purcell's bills **in this civil action** and any proceedings before the Trademark Trial and Appeal Board ("TTAB") involving Hasbro, and other documents responsive to Request No. 46." What Plaintiff believed was probably the sole contested issue regarding "damages" pertained to Plaintiff's specific request for an award of its attorneys' fees spent in connection with opposing Hasbro's application to register the trademark "CANDYLAND" in connection with a variety of beverage products. That opposition proceeding was a contested, *inter partes* proceeding before the TTAB in the United States Patent and Trademark Office, which was initiated before the instant lawsuit, and which has been stayed pending the outcome of the instant lawsuit.[19]

---

[19]To the extent that Hasbro was requesting documents pertaining to Plaintiff's attorneys' fees **in this civil action,** as contrasted with those in the TTAB proceeding, such a request is premature until and only if a District Court Judge has ruled pursuant to judgment that Plaintiff is entitled to such an award. Notably, Hasbro has failed to provide similar information and documents pertaining to its own request for its attorneys' fees in connection with both its defense of Plaintiff's claims as well as in connection with its counterclaims.

As mentioned in Plaintiff's letter-brief dated July 26, 2006 (limited by the Magistrate Judge's order to two pages), Plaintiff was concerned about producing copies of invoices from his attorneys in connection with the TTAB proceedings, because, as expressly explained in Plaintiff's letter-brief, of a need "to preserve attorney-client privileged information that might be revealed in connection with such legal expenses paid by Plaintiff."[20]  It will be appreciated that the Discovery Order did not even address Plaintiff's concern over the attorney-client privilege problem.  Despite the obligations in the Local Rules for attorneys to "meet and confer" in an attempt to resolve in good faith discovery disputes,  Hasbro did not consent to Plaintiff's masking or redaction of any portion of the invoices (or whatever other records Hasbro might have been seeking).  Compare Hasbro's action in failing to consent, with Hasbro's unilateral decision to redact its own attorneys' invoices in connection with its request for sanctions.

Plaintiff reiterated at the Evidentiary Hearing that he remains willing to provide redacted copies of his invoices in connection with the TTAB proceeding or to submit them *in camera* to the Magistrate Judge, for the Court to perform the redaction. The Magistrate Judge declined that offer.

The Ruling suggests that Purcell was remiss in not producing redacted copies of his firm's invoices to Plaintiff in connection with the TTAB proceeding, despite the facts that Plaintiff had expressly raised the attorney-client privilege problem associated with the documents in his two-page letter-brief dated July 26, 2006 and that the Discovery Order did not even address Plaintiff's concern or permit any redaction.

---

[20]Plaintiff was billed on an hourly rate basis for work in connection with the TTAB proceeding, unlike the contingency fee arrangement in prosecuting Plaintiff's claims in this civil action.

The Order to provide "information regarding damages" is so vague that it cannot possibly be regarded as a clear order articulating **specified** discovery.[21]  Sanctions may not be awarded for alleged non-compliance of this aspect of the Discovery Order.  Moreover, to the extent that the Order can be deemed as encompassing Plaintiff's attorneys' invoices, Hasbro failed to comply with the Local Rule to meet and confer in good faith to resolve the discovery dispute about redacting privileged information.

4.    The Ruling Illegitimately Criticized Purcell's Conduct In Seeking A Default Judgment Against Defendant Toys 'R Us

The Ruling criticizes Purcell's conduct in connection with seeking a default judgment against Defendant Toys 'R Us-NY LLC ("TRU") as a basis for sanctioning Purcell.

First, a court must provide notice to a party or attorney as to the conduct of the party or attorney that it believes supports sanctions.[22]  The conduct-at-issue was not specified in Hasbro's motion papers, nor was it mentioned at the Evidentiary Hearing.  Therefore, this conduct cannot provide a basis for any sanctions.

After granting TRU an extension of time within which to provide its initial disclosures and to provide responses to Plaintiff's first set of interrogatories and first requests for production of documents, after having received no initial disclosures and no responses, and after having received no communication from TRU asking for further extensions of time, Purcell sent a letter to the Magistrate Judge dated November 28, 2005 requesting a telephonic discovery conference

---

[21]The issue of damages is currently moot.  The District Judge granted the Defendants' motion for partial summary judgment that Plaintiff was not entitled to obtain damages or profits by Order dated October 23, 2007.  [Dkt. 162]  Plaintiff is seeking relief from that aspect of the Order through an interlocutory appeal to the Second Circuit, as permitted by the District Judge's Order dated December 18, 2007.  [Dkt. 168]

[22]"Due process requires that courts provide notice and an opportunity to be heard before imposing **any** kind of sanctions, which includes "'specific' notice of the sanctioning authority being considered and the conduct alleged to be sanctionable." *Ted K. Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997). "The purpose of particularized notice is to put counsel on notice as to the particular factors that he must address if he is to avoid sanctions." *Id.* at 96.  *See also Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87 (2d Cir. 1999). (Award of sanctions reversed where the court did not give the attorney prior notice of the **particular** conduct for which the court was considering imposing sanctions); *Mathias v. Jacobs*, 197 F.R.D. 29, *vacated*, 167 F. Supp. 2d 606 (S.D.N.Y. 2000).

to address the matter.  The Magistrate Judge entered an Order dated November 29, 2005 stating "At the Court's direction, the Clerk will schedule either an in-person or telephone conference." Not having heard anything from the Court by December 9, 2005 about scheduling the conference, Purcell's secretary contacted the Magistrate Judge's chambers to inquire about the scheduling of a conference.  As of January 26, 2006, the Magistrate Judge had not scheduled any conference.  In the meanwhile, TRU provided patently insufficient initial disclosures, including failures to provide any address or telephone number for any individual or to identify the subjects of the information known to any identified individual that TRU may use to support its claims or defenses, as required by Rule 26(e)(1)(A).  TRU still had not provided any responses to Plaintiff's interrogatories and document requests, nor had TRU proffered a date when it would do so.

Plaintiff then filed a motion for entry of default judgment against TRU because TRU "has essentially failed to defend in this action."  By Order dated January 31, 2006, the District Judge denied the motion, stating that motions for entry of default judgment must be filed in accordance with Local Rule 7.1(e), which must include an affidavit in support of the motion, and that motions for default judgment cannot be filed unless there is an entry of default by the clerk under Fed. R. Civ. P. 55(a).  Plaintiff had provided in his Request To Enter Default Against TRU filed February 14, 2006, five different Second Circuit cases and one Southern District of New York case in which the court had entered default judgment under Rule 55 without the clerk's entering default. These cases address situations other than a party's failure to appear and answer, and grant default judgment in situations where a party has engaged in behavior tantamount to a failure to prosecute/defend in a civil action. Despite this variety of Second Circuit law provided to the Court, the Ruling concludes, "This court finds that Mr. Purcell's position regarding this

issue [(that a court may enter judgment by default without the clerk's entry of default)] is **without merit and legally unsupportable**." (emphasis added). The Ruling further declares that such a motion could be brought only under Rule 37, which is in direct conflict with the cases cited by Plaintiff, in which the court (not the clerk) entered default judgment under Rule 55, not Rule 37. The Ruling cites to no authority for the contention that default judgment can be awarded only through the operations of Rule 37.[23]

By Order dated March 22, 2006, the Magistrate Judge scheduled a hearing on the motion for sanctions in the nature of default judgment against TRU for April 14, 2006. Five days later, on March 27, 2006, TRU served its responses to Plaintiff's interrogatories and document requests - - six months after service of the discovery. By Order dated March 28, 2006, the Magistrate Judge ordered a telephonic conference for 3:30 p.m. later that day.

Instead of sanctioning TRU for grossly delinquent litigation (mis)conduct, the Magistrate Judge chastised Purcell for seeking a default judgment against TRU for its belated and insufficient initial disclosures and for TRU's wholesale refusal to provide any responses to Plaintiff's long-standing discovery requests.

The Ruling calls Purcell's conduct in seeking the default judgment "a complete waste of time for this Court as well as all the attorneys involved in this case" [pp. 8 – 9]. Such a contention is based upon the Ruling's errant view that the motion for default judgment was based (solely) upon "Mr. Purcell's complaints about the initial disclosures from [TRU]" [p. 8], which totally overlooks the wholesale refusal of TRU to provide any responses to Plaintiff's interrogatories and document requests. Nevertheless, it appears that the only thing that forced TRU to provide any discovery responses was Plaintiff's filing of a motion for default judgment

---

[23]Purcell's position that "it makes no sense" references the view that default judgment can be sought and rendered only through entry of default by the court clerk (a procedure recited in the Local Rules), when a large body of Second Circuit law holds otherwise.

and the Magistrate Judge's scheduling of a telephonic hearing for that motion. Thus, contrary to the Ruling, the motion was not a complete waste of time, but rather, was the true precipitant that spurred TRU into providing any responses to discovery served six months before.

5.     <u>The Ruling's Portrayal Of The Relationship Between Discovery In The TTAB Proceeding And The Instant Lawsuit Is Flawed</u>

As previously mentioned, Hasbro and Plaintiff, through the same exact attorneys and law firms, previously conducted an *inter partes*, contested trademark opposition proceeding in the TTAB in which discovery substantially overlapped with that in the instant lawsuit.

In the TTAB proceeding, Hasbro itself served one set of interrogatories and four sets of requests for production of documents, conducted an inspection of and photographed Plaintiff's retail store, internally and externally, pursuant to Rule 34, and took the deposition of Plaintiff, the transcript of which comprises 178 pages. [Pl. Ex. 1]. During the Evidentiary Hearing, Hasbro first complained that Plaintiff had obstructed discovery in this lawsuit by not re-producing documents that Plaintiff had already produced to Hasbro's attorneys in connection with discovery in the TTAB proceeding. [Tr. pp. 65 – 66, 73 – 76, 123 – 124]. Hasbro contended that a protective order in the TTAB proceeding precluded **any** information or documents relating to that proceeding from being used in **any** way in the instant lawsuit. During the course of the Evidentiary Hearing, Purcell obtained from his office a copy of the protective order governing confidential information entered by the TTAB and submitted the same to the Court. [Pl. Ex. 35]. The relevant portion of the protective order recites:

> Disclosure of information protected under the terms of this order is intended only to facilitate the prosecution or defense of this case. The recipient of any protected information disclosed in accordance with the terms of this order is obligated to maintain the confidentiality of the information and shall exercise reasonable care in handling, storing, using or disseminating the information.

A careful review of the pertinent language of the protective order reveals that, first, it does not pertain to information or documents other than those designated "confidential". Second, even as to confidentially designated information and documents, it cannot be said that that protective order precludes their use by the same parties in the instant lawsuit, only that the confidentiality should be maintained.[24]   Moreover, Purcell argued during the Evidentiary Hearing that Hasbro's counsel's contention was illegitimate and inexplicable because both Hasbro and Plaintiff had been using information and documents exchanged between them in the TTAB proceeding without objection.

The Ruling (p. 24) belittles Purcell's testimony as to whether he could recall what Plaintiff produced in the TTAB proceeding (over three years ago) and what Plaintiff produced in this litigation (over a span of two and one-half years).   The Ruling further criticizes Purcell because he "conceded that he did not check" despite the fact that there was no prior notice that this issue would be addressed at the Evidentiary Hearing.[25]

Hasbro's counsel, was adamant that he could not use **any** information or documents that Plaintiff provided in connection with the TTAB proceeding, whether designated confidential or not, in connection with the instant civil action, and therefore, Plaintiff needed to re-produce documents that it had already provided to Hasbro in the TTAB proceeding.   Counsel argued that Plaintiff's failure to re-produce the same documents to Hasbro's same attorneys in this lawsuit was reprehensible.   Hasbro's counsel went so far as to tell the Court at the Evidentiary Hearing that the TTAB protective order "says you can only use it in these [(i.e., the TTAB)] proceedings," that he's "never understood that I had the ability as a party to disregard a court

---

[24]This Court entered a separate protective order governing and protecting confidential information in this lawsuit. [Dkt.21]

[25]Again, Purcell contends that this issue was a surprise and that Purcell did not receive fair notice that this issue would be the subject of any possible sanctions.

order. And this is an order of the TTAB", and that "I was not going to risk being in contempt of the TTAB [by using discovery provided by Plaintiff in the TTAB proceeding]." [Tr. 129 – 130].

A series of correspondence between Hasbro's counsel and Purcell completely undermines Hasbro's counsel's representations to the Court during the Evidentiary Hearing. The correspondence comprises letters dated April 17, 2006; May 2, 2006; and May 9, 2006 [*See* Hasbro's Ex. 22, 23, and 24]. In the first letter, Hasbro's counsel stated:

> As you are aware, an order for protecting confidentiality of information covering discovery in the TTAB proceedings limits the use of confidential material to the TTAB proceeding. Neither Hasbro nor Haritatos may use any of the confidential material produced in the TTAB proceeding in this case without the other's express permission. Moreover, Toys "R" Us was not a party to the TTAB proceeding and has not received any of the documents produced therein. Accordingly, please immediately produce all responsive documents produced in the TTAB proceeding or provide us with written permission to use them and provide copies to our co-defendant...as well as the transcript and exhibits to Spero T. Haritatos's February 16, 2005 deposition.

The last sentence is especially interesting because Hasbro's counsel is demanding that Plaintiff produce to Hasbro the transcript of a deposition of Mr. Haritatos that Hasbro itself took.

In the May 2, 2006 responsive letter, Purcell readily permitted the use of all of such documents in the instant civil action:

> With regard to the documents that Mr. Haritatos produced in connection with the TTAB proceeding, Hasbro may use them in connection with the instant federal trademark infringement lawsuit. To the extent that such documents have been designated confidential in connection with the TTAB proceeding, Mr. Haritatos would require that Hasbro treat them as confidential pursuant to the protective order in the federal court lawsuit. Mr. Haritatos also has no objection to Hasbro providing copies of those documents to Co-Defendant Toys 'R Us, however, we need written assurance from Toys 'R Us that it will treat any materials designated as confidential in accordance with the requirements of the protective order in the federal court lawsuit.

During Hasbro's deposition of Mr. Haritatos in this civil action (which took an entire day and the transcript of which is 324 pages in length), Hasbro freely used information and

documents provided by Plaintiff in the TTAB proceeding, including those designated confidential. For example, Hasbro's counsel introduced as deposition Exhibit No. 14 a copy of Plaintiff's Amended And Supplemental Interrogatory Responses in the TTAB proceeding, which he acknowledged as having confidential designations contained therein. He also designated as Exhibit No. 2 in the Haritatos deposition in this civil action a copy of the entire transcript of Mr. Haritatos' deposition in the TTAB proceeding. [*See* pp. 92 and 305 – 306 of the transcript of the deposition of Spero Haritatos taken May 17, 2006 in this action].

When Purcell examined Hasbro's counsel at the Evidentiary Hearing, counsel totally avoided his prior representations to the Court. [Tr. pp. 163 – 169]. When asked:

> Q. Is it your position that this paragraph 11 prohibited the parties from using documents produced in the TTAB proceeding in the instant lawsuit?

Mr. Landsman personally objected on the basis, "he's asking for my legal opinion on that." He was then asked whether he recalled ever asking Purcell, as Plaintiff's representative, for permission to use discovery that was produced in the TTAB proceeding directly in this case, to which counsel responded that he needed to look at the exhibits. Hasbro's counsel was then asked:

> Q. Do you recall instructing any associates in your firm such as Michael Sant'Ambrogio that he could not use the information or the documents from the Trademark Office proceeding in this lawsuit?

To which counsel personally objected "on the grounds of work product privilege". Counsel was then asked:

> Q. If Mr. Sant'Ambrogio had used information or documents from the TTAB proceeding in this lawsuit, would that in your opinion be a violation of the TTAB order?

to which counsel responded "Your Honor, I am not here as a legal expert." The Court sustained his objection, declaring that "this whole line of questioning is tangential". Hasbro's counsel finally conceded:

> A. This is all moot because, as you know, we did eventually reach an agreement that we would use those documents and those depositions in this case.

Thus, Hasbro's counsel's argument misled the Magistrate Judge about whether the TTAB protective order required Plaintiff to re-produce documents that Plaintiff had already produced in the TTAB proceeding to Hasbro's exact same attorneys.

The Ruling also expresses some concern that since Defendant TRU was not part of the TTAB proceeding, then as a non-party to that proceeding, TRU would be at a disadvantage in this lawsuit. However, to the extent that TRU requested information and documents directly from Plaintiff, that information and those documents were provided directly to TRU by Plaintiff. There is absolutely no evidence whatsoever that Plaintiff did not provide proper information or documents to TRU allegedly because of the TTAB proceeding or the protective order entered in that proceeding.

6.   The Ruling's Concern About Plaintiff's Use Of "Boilerplate" Objections Is Unfounded And Belated

Purcell acknowledged using general, common place, "boilerplate" objections to interrogatories and document requests. If a particular objection had not been raised, then it is deemed waived. This was an attempt to guard against an adversary's unexpected or unreasonable view of the scope of any request or how a judge might later determine the scope of a discovery request. However, after asserting these general objections, Purcell made a good faith effort to appropriately answer and respond to each discovery request as Purcell reasonably

understood the parameters of the request.  For example, see Plaintiff's Responses to Hasbro's Interrogatories Nos. 1 and 1(a).  [Hasbro Ex. 7 at pp. 4 – 6].

It is important to note that Hasbro also raised the question of the general, "boilerplate" objections, in connection with its first request for production (and other issues), in its letter-brief dated June 26, 2006 seeking to compel discovery.  The Magistrate Judge's Discovery Order took up, considered, and ruled upon the issues presented in that letter-brief, but did not criticize the general, boilerplate objections and did not compel any modification to the responses. Accordingly, the Discovery Order implicitly denied Hasbro's contentions regarding the alleged impropriety of Plaintiff's responses.  Despite having addressed the issues presented in Hasbro's letter-brief, having considered Hasbro's contentions about the form or adequacy of Plaintiff's responses, and having implicitly denied Hasbro's motion to compel different responses, the Ruling (belatedly) finds fault with those same responses.

There has been no finding whatsoever that Plaintiff failed to provide appropriate information in response to an interrogatory or failed to produce a requested document within the scope of a properly interpreted discovery request.

7.   <u>The Ruling's Concern About Plaintiff's Interrogatory Responses Referring To Deposition Testimony Without Citing The Transcript Pages Is Unfounded</u>

Hasbro also complained in connection with some interrogatory responses (Hasbro Ex. 7) that Plaintiff improperly responded **in part** that the answer to the request could be found in the transcripts of deposition testimony in response to questions already asked by Hasbro and as to which the interrogatory was duplicative.  Plaintiff's position was that when Hasbro had already asked the deponent about the exact same information, contained in the later served interrogatory, Plaintiff could simply indicate that his answer was in that testimony.  It would be an harassment and unduly burdensome for Plaintiff to be required to go through the 500+ pages of transcript of

Plaintiff's own two depositions to designate specifically where he had already provided the answer to that part of the interrogatory. The Ruling found that aspect of Plaintiff's interrogatory responses to be improper. Although these responses to interrogatories were served months before the discovery cut-off date, Hasbro never timely filed any motion to compel, but the Ruling relies upon the responses as allegedly sanctionable conduct.

Hasbro is disingenuous in urging the Magistrate Judge to consider such aspect of the responses as improper. Despite the Magistrate Judge's Hearing Order requiring Hasbro to submit an exhibit list "specifying very briefly . . . the nature of any exhibit" for the Evidentiary Hearing, Hasbro's exhibit list identified as Exhibits 14 – 16 "Excerpts of the Deposition of Spero Haritatos" and "Excerpts of the Deposition of Sharon Haritatos" and "Excerpts from the Deposition of Anna Bushnell" without any page numbers. Purcell objected at the Evidentiary Hearing to the use of those transcripts because the Court ordered that each party "submit a Witness and Exhibit list specifying very briefly the testimony of any witness and the nature of any exhibit." In contrast to an interrogatory response, Hasbro was not entitled to contend that the Court's Order was an "harassment" or "unduly burdensome." However, the Magistrate Judge overruled Plaintiff's objection and found no problem with such general references by Hasbro.

The Ruling unfairly and belatedly berates Purcell for conduct that was less egregious than Hasbro's counsel's own conduct in connection with the Evidentiary Hearing.

8.   The Ruling Unfairly And Belatedly Criticizes Plaintiff's Response To Hasbro's Document Requests Regarding Samples Of Product

The Ruling criticizes generally some of Plaintiff's discovery responses, identifying specifically a response to Hasbro's Document Request No. 1. [Hasbro Ex. 5].

Here again, these responses were the subject of Hasbro's letter-brief dated June 26, 2006 seeking to compel "better" responses which, as discussed earlier, the Magistrate Judge's

Discovery Order implicitly denied.  It is unfair for the Ruling to (belatedly) re-visit this issue in the context of sanctionable conduct.

Plaintiff had provided to Hasbro, in connection with interrogatory responses (both in the TTAB proceeding and again in this litigation), an extensive list of the candy and ice cream products in connection with which Plaintiff has used his "CANDYLAND" trade name and trademark.  [*See, e.g.*, Hasbro Ex. 7, Response to Int. No. 1].  In the TTAB proceeding, Hasbro conducted an inspection of Plaintiff's retail candy store inside and outside and by taking photographs of Plaintiff's extensive display case of products.  Also, photographs of many of Plaintiff's candy and ice cream products are provided on Plaintiff's publicly accessible website.  These products are publicly available for purchase by Hasbro or anyone else.  Plaintiff had also provided Hasbro with photographs of many of those products.

During the Evidentiary Hearing, when pressed for why Hasbro needed samples of the actual products (that were publicly available for purchase by Hasbro), in addition to the list of products as well as the photographs of those products that Plaintiff had already provided to Hasbro, that Hasbro already obtained from its inspection of Plaintiff's retail store premises, and that were available from Plaintiff's website pages, Hasbro's counsel told the Court that he wanted the samples of the products "to see what they come in", *i.e.*, their packaging. [Tr. p. 10].  However, as Purcell emphasized to the Court during the hearing, packaging samples had already been produced to Hasbro.[26]

---

[26]The Ruling also challenges Purcell's testimony regarding uncertainty in understanding Hasbro's counsel's question why Purcell did not respond to the interrogatory by saying "we'll produce to you what we have and we won't produce to you what we don't have because that's how we do it?" [Tr. p. 70]. This would of course require a concession to withdraw all of the various objections.  One can predict that Hasbro would take a radically contrary position if it were required to just "produce what it has" in responding to a document request for all documents "concerning" its sales and advertising of its board games and other products in connection with which it has used the trademark "CANDY LAND".

The Ruling belittles one of Purcell's objections to the interrogatory because many of the products "are apt to melt". However, the validity of this concern is manifested by the fact that Plaintiff has sold ice cream products under the trade name and trademark "CANDYLAND."

9.    The Ruling's Criticism Of Plaintiff's Responses To Certain Requests For Admissions Is Unfounded

Hasbro presented 96 requests for admissions (Hasbro Ex. 13), which related generally to print-outs of website pages selected by Hasbro which Hasbro contends demonstrate that third parties offer candy and candy-related products under trade names and trademarks similar to "CANDYLAND" - - the trademark at issue in this lawsuit. As noted in the Ruling, Plaintiff responded to the overwhelming bulk of these requests for admissions by admitting the request. Hasbro and the Ruling focused on Plaintiff's response to about ten requests, each of which is in a format similar to the one about which Hasbro elicited testimony from Mr. Purcell at the Evidentiary Hearing:

> 19.   Candyland, Inc. in St. Paul, Minnesota offers candy for sale via the internet at www.candylandstorecom.

**Response No. 19.**

> See the General Objections, which are incorporated by reference.

> Plaintiff lacks knowledge or information, Plaintiff has made reasonable inquiry, and the information known or readily obtainable by Plaintiff is insufficient to enable Plaintiff to admit or deny.

At the beginning of the Evidentiary Hearing, Plaintiff acknowledged that he was willing to stipulate that the selected website pages reflected a third party's offering of such products under such trade name or trademark and that the website pages selected by Hasbro are true, accurate, and authentic copies of things Hasbro obtained from the websites on a certain date. [Tr. pp. 47 – 53]. However, the problem with the particular form of the request quoted above is

that it would require Plaintiff to investigate and identify the exact, true legal name of the legal entity that was offering the products on the website and to investigate and determine the "location" of that entity.

The Ruling suggests that such an investigation and confident determination can be made by simply accessing the internet on a computer and visiting the third party websites. Even assuming *arguendo* that a party is required by Rule 36 to conduct such an investigation for information that is not within its possession, custody, or control, the problem with such a website visit is that it still will not reveal information that is sufficient to conclusively admit or deny the above-recited request for admission, which would be binding upon Plaintiff. Plaintiff submits that any investigation of the information within his possession, custody, or control would not give rise to an ability to admit or deny such a request for admission.[27] Accordingly, Plaintiff believes that the response was totally appropriate, and not sanctionable.

The Ruling did not compel Plaintiff to perform any particular investigation or to otherwise supplement the response, perhaps since Hasbro's motion was brought long after the deadline for submitting motions to compel prescribed by Local Rules 7.1(d)(8) and 16.2. The Ruling is unclear as to whether Plaintiff's responses to these particular requests for admissions form any basis for sanctioning Purcell, and apparently simply defers any decision regarding the issue "until a pretrial conference" before Judge Hurd.

10.    The Nature And Calculation Of The Attorneys' Fees Awarded In the Ruling Is Errant And Unsupported

As previously noted above, Hasbro failed to provide a witness and exhibit list pertaining to the nature and amount of its attorneys' fees requested as sanctions, which were required to be

---

[27]The requirement that a party conduct a "reasonable inquiry" in responding to requests for admissions generally does not extend to investigating third parties. *See, e.g., Dublin v. E.F. Hutton Group Inc.,* 125 F.R.D. 372 (S.D.N.Y. 1989) (a party has no duty to inquire of or investigate its former employee).

filed with the Court on February 26, 2008. Plaintiff raised a timely objection at the hearing to this defect in Hasbro's proof. Hasbro's counsel responded that he had not had time to gather all of the documents relating to the attorneys' fees and then said that he thought the Court should first address the issue of whether sanctions in the nature of attorneys' fees were appropriate, and if so, then permit Hasbro to submit evidence concerning the requested attorneys' fees. However, by the Magistrate Judge's Order dated March 17, 2008 directing Hasbro to submit "its documents regarding attorneys' fees" by March 21, 2008, the Magistrate Judge implicitly recognized that these materials should have been presented in Hasbro's witness and exhibit list **prior to** any determination on the appropriateness of sanctions in the nature of attorneys' fees. Hasbro has not offered **any** excuse as to why its witness and exhibit lists were incomplete. Hasbro can show no good cause as to why it should have been relieved from compliance with the Magistrate Judge's Hearing Order regarding the provision of (complete) witness and exhibit lists.

Moreover, Purcell was denied the right to cross-examine both declarants at the Evidentiary Hearing in connection with the statements offered in their declarations that Hasbro submitted after the hearing, on March 19, 2008.[28]

Purcell also raised an objection that Hasbro's submission of several invoices of its law firm included wholesale portions that were admittedly masked or redacted. Hasbro did not obtain the prior consent of the Court to redact the documents, nor did it seek or obtain consent from opposing counsel to do so. Hasbro's conduct in this regard is in stark contrast to its failure to give consent to Plaintiff to redact portions of his law firm's invoices in connection with the

---

[28] Also, as raised in Plaintiff's Response [Dkt. 180], Hasbro submitted a letter-brief with the declarations of Messrs. Landsman and Vanesse and various exhibits to those declarations. Although the Magistrate Judge's deputy courtroom clerk previously told Plaintiff that no briefs should be submitted, Hasbro nonetheless did so, to which Plaintiff objected.

TTAB proceeding upon which Plaintiff was relying in connection with one aspect of his damage recovery.

Plaintiff believes that the unmasked invoices would have revealed important impeachment information. For example, Hasbro argued that its three sets of discovery were belatedly served by mail on January 31, 2007, when the Court-ordered discovery cut-off date was February 28, 2007, because of the timing of Plaintiff's production of the UPS manifests. However, an unmasked time entry dated 1/29/07 states "Review of new requests for admission," but there are no unmasked time entries indicating when the requests for admission were initially drafted for (later) review. Questions regarding the (redacted) time entries might expose the fact that the three sets of discovery were drafted relatively early and could have been served in time to require that responses would be due within the discovery period.

The Ruling finds that all of the foregoing objections to Hasbro's submission regarding the nature and amount of attorneys' fees are "meritless."

As to the specific time entries that were billed by Hasbro's attorneys and for which they sought an award, Plaintiff extensively analyzed, criticized, and objected to the entries in Plaintiff's Response to the March 19, 2008 Submission of Hasbro, Inc. [Dkt. 180]. Those objections, including the specific objections to the work and the time entries, are incorporated herein by reference.

There are two major flaws in this portion of the Ruling. First, a court may award attorneys' fees as sanctions only in connection with "extra" activity by the adversary caused by conduct that is deemed to be sanctionable. Second, many of Hasbro's time entries were either very vague or included a description that co-mingled tasks within one "block billing" entry. Therefore, the Court could not have determined either (1) whether those activities were "extra"

and caused by any sanctionable conduct, and (2) the reasonableness of any of those "extra" activities.[29]

In the context of analyzing whether any of Hasbro's attorneys' time entries reflect "extra" work for conduct that the Ruling eventually found to be sanctionable, it is important to keep in context the nature of Hasbro's motion filed on May 17, 2007.  First, the letter-brief moved for sanctions or to compel.  That aspect of the motion seeking to compel discovery responses was belated and violated the Local Rules.  Moreover, the Ruling does not compel Plaintiff to perform any tasks, or to revise, supplement or amend any of its discovery responses, or to produce any additional documents.  Second, Hasbro pressed ahead for sanctions based upon Hasbro's erroneous reading of the Discovery Order.  Hasbro mistakenly relied upon an aspect of that Order that granted **Plaintiff's** letter-brief dated June 26, 2006, and not Hasbro's letter-brief of the same date.  Who knows how much time Hasbro's several attorneys and paralegals spent in trying to pin sanctions on Purcell based upon a mistaken perception of the Order.  Third, Hasbro continued to seek sanctions for an alleged violation of the Discovery Order because Plaintiff had allegedly produced no documents regarding "the application for the 'Turkey Joints' registration," only to be corrected at the March 4, 2008 hearing that such documents had **already** been provided to Hasbro by letter dated June 1, 2007 - - two months before the issuance of the Order.  Hasbro presented a completely "scattershot" approach to the allegedly offensive and sanctionable conduct by Purcell, including a laundry list of allegedly objectionable discovery

[29]*Soler v. G&U Inc.*, 801 F. Supp. 1956, 1061 (S.D.N.Y. 1992).  Where the court cannot determine the relevance and reasonableness of the number of hours expended because of such co-mingling or block billing, the court will exclude any of those billings from the award calculation.  *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co., Inc.*, 200 U.S. Dist. LEXIS 14714 (E.D.N.Y. 2008).  (A copy of this decision was attached to the Plaintiff's Response (Docket Entry No. 180), thus has been previously provided to the Court.)  "It is the moving party's burden and responsibility to clearly, and in detail, present the hourly rate for legal services performed by various counsel, the specific services rendered, and the time spent in performing these services, to avoid the Court having to speculate or surmise this information." *Barry Malin & Assoc. P.C. v. Nash Metalware Co.*, 849 N.Y.S.2d 752 (Civil Ct. City of N.Y. 2008).  Where the moving party's billing entries are too imprecise to deduce the relevance and reasonableness of the attorneys' fees, the court will deny any award for those fees.  *Id.*

responses.   The Ruling is devoid of any specificity as to which ones of those scattershot accusations were found to be sanctionable.

The Ruling repeatedly finds that work reflected in Hasbro's attorneys' time entries should be awarded because "this work concerns discovery problems."   Such a finding simply cannot stand.   The Ruling fails to provide any link between the specific activities in the time entry and what "extra" time was incurred by Hasbro in connection with conduct that the Ruling specifically found to be sanctionable.[30]

Also noteworthy is the fact that the Magistrate Judge awarded attorneys' fees for time spent in the latter part of January, 2007 in connection with Hasbro's preparation of three sets of discovery that were belatedly served on Plaintiff.   The Ruling does not order Plaintiff to provide responses to that discovery, and any motion to compel that discovery itself would be belated, because it was not presented within ten days of the discovery cut-off date of February 28, 2007, as required by the Local Rules.[31]   Plaintiff adduced testimony at the Evidentiary Hearing that the belatedly served interrogatories were largely identical to and duplicative of interrogatories that Hasbro had already served on Plaintiff long ago.   The requests for admissions also pertained to a newly branded candy product offered by Plaintiff that Hasbro's attorneys found simply by visiting Plaintiff's website.   Plaintiff also relied upon incomplete time entries in January, 2007 to show by implication that the discovery that was belatedly served had been drafted many days

---

[30]On particularly noteworthy aspect of the Ruling is that the time entries for 3/21, 3/22, 3/23, 3/25, 3/26, 3/29, 3/30, and 5/17/07 all seem generally to relate only to the motion to compel or for sanctions that Hasbro eventually filed on May 17, 2007.  However, the motion comprises a two and one-third page letter addressed to the Magistrate Judge, whereas there are about **44 hours billed by 3 different attorneys involved with composing the two and one-third page letter**.  Similarly, the Ruling awarded all of the time entries on 3/22 under KJL and 3/22/07 under MDS, which intermix discovery and summary judgment motions, where work in connection with Hasbro's summary judgment motions could not possibly be germane to the instant matter.  The Ruling characterizes all of these time entries as "concerning discovery problems."

[31]The Ruling seems to be under the mistaken impression that the discovery cut-off date of February 28, 2007 was "under the terms of an agreement reached between counsel about a deadline for the close of 'fact discovery'." [*See* pp. 21 − 22].  However, in this Court's Order dated October 19, 2006, the Court re-set the discovery cut-off date to February 28, 2007: "Discovery is extended to February 28, 2007." [Dkt.95]

prior to its actual service and could have been served in a timely manner, but was not. To the extent that the Ruling suggests that the belatedness of the service was "caused" by any delays in Plaintiff's production of UPS manifests, the Ruling is in error. Moreover, the Ruling does not seem to find that Plaintiff's failure to respond to the belatedly served discovery is sanctionable.

The Ruling also involves the Magistrate Judge's abuse of discretion in not applying the regional hourly rates for practicing in the N.D.N.Y. region, as very recently pronounced by Judge Scullin of this Court in the copyright infringement action of *Paramount Pictures Corp. v. Wayne Hopkins*, Civil Action No. 5:07-cv-00593-FJS-GJD, Dkt. No. 17.

The Magistrate Judge also abused his discretion by awarding attorneys' fees in connection with the Evidentiary Hearing, which were not even requested by Hasbro and as to which Hasbro supplied no documentation. Although Purcell does not dispute the time spent by Hasbro's attorneys at the Evidentiary Hearing, the Ruling fails to provide any reduction for Hasbro's time spent at the hearing making errant accusations against Purcell, Hasbro's otherwise unsuccessful efforts to compel discovery (no discovery was ordered or compelled), or Hasbro's otherwise unsuccessful efforts to establish a finding of sanctionable conduct.

11.  Conclusion.

In order to award any sanctions for violating a court discovery order, the order must be clear, unambiguous and directed to specified discovery. To the extent that the Discovery Order may be considered clear, unambiguous and directed to specified discovery, Purcell did not violate the Discovery Order, and hence sanctions may not be awarded under either Rule 37 or 28 U.S.C. § 1927.

Rule 37 also may not be used as a basis to award attorneys' fees as sanctions if any failure to comply with the Discovery Order "was substantially justified or other circumstances

make the award of expenses unjust." The Ruling is devoid of any express finding regarding this important, critical factor. Even assuming *arguendo* that Purcell did fail to comply with any aspect of the Discovery Order, Purcell submits that any such failure was substantially justified or that the circumstances associated with any such failure would make an award of attorneys' fees unjust.

Section 1927 allows a court, in its discretion, to award attorneys' fees against an attorney only where there is clear evidence that the attorney has multiplied the proceedings unreasonably and vexatiously, by taking actions completely without any merit and in bad faith.[32, 33] Even when disregarding the Court's failure to give to Purcell appropriate prior notice of the specific conduct that it was considering as forming the basis for any award under Section 1927, when disregarding the Court's implicit denial of relief to Hasbro regarding Plaintiff's allegedly deficient discovery responses, and when disregarding the Court's unfair restriction on Plaintiff's ability to address the discovery issues and the sanctions issues, Purcell submits that there is no basis for the Court to be empowered to award sanctions under Section 1927, and further, that even if the Court were so empowered, it would be an abuse of the Court's discretion to award sanctions in the circumstances extant here.

Hasbro's inexcusably belated submission of evidence of attorneys' fees, in violation of the Hearing Order, should be stricken. Moreover, the Ruling failed to make the required determination of what fees were incurred in connection with only "extra" legal work caused by specific conduct found to be sanctionable and improperly awarded fees for time entries only

---

[32]The Ruling concludes (p. 28) that "Purcell's conduct **unnecessarily** multiplied proceedings in this case." Even if this finding were correct, it falls short of the legal, statutory standard of "multiplied the proceedings unreasonably and vexatiously."

[33]The Ruling often uses the terminology "lack of good faith", even in conclusion on page 28 of the Ruling. Purcell submits that such a finding, even assuming the same to be correct, does not satisfy the standard of finding "bad faith".

generally directed to "discovery problems." The Ruling also erred by not applying the hourly

rates for attorneys' fees awards recently set by District Judge Scullin.

For the foregoing reasons, Purcell objects to the Ruling. Purcell asks that his objections

be sustained, that the Ruling be vacated and set aside, that no sanctions be awarded against him,

or Plaintiff, and that Hasbro's motion for sanctions be denied in all respects. Purcell also seeks

such other and further favorable relief as the Court deems just and proper.

**DATED**: April 10, 2008

                                HISCOCK & BARCLAY, LLP

                                By:_____
                                     Robert E. Purcell
                                     Bar Roll No. 510595

                                *Attorneys for Plaintiff*
                                Office and Post Office Address
                                One Park Place
                                300 South State Street
                                Syracuse, New York  13202
                                Telephone  (315) 425-2802
                                Facsimile  (315) 425-8594
                                rpurcell@hiscockbarclay.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2008, I filed the foregoing document with the Clerk of

the Court using the CM/ECF system, which sent notification of such filing to the following:

Kim J. Landsman, Esq.
Patterson Belknap Webb & Tyler, LLP
1133 Avenue of the Americas
New York, New York  10036-6710
kjlandsman@pbwt.com

John G. McGowan, Esq.
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, New York  13202
jmcgowan@bsk.com

_____
Jill Kirby