# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SPERO HARITATOS,

                         Plaintiff,    :        05 Civ. 930 (DNH/GJD)

       - against -

HASBRO, INC. and
TOYS "R" US-NY LLC,

                    Defendants.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## MEMORANDUM OF LAW OF DEFENDANT HASBRO, INC. IN OPPOSITION TO PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S MEMORANDUM DECISION AND ORDER ASSESSING SANCTIONS

Kim J. Landsman, Esq.
(Bar Roll No. 513,364)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone: (212) 336-2980
Facsimile: (212) 336-2985

*Attorneys for Defendant Hasbro, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................1

THE SANCTIONS MOTION, HEARING, AND ORDER ................................3

A.  Hasbro's Motion for Sanctions and Other Relief ...............................3

B.  The Sanctions Order ......................................................5

    1.  Mr. Purcell Flouted Two Discovery Orders ...............................6

        a.  The Magistrate Judge's August 11, 2006, Order...........................6

        b.  District Judge Hurd's October 19, 2006, Order .........................8

C.  Mr. Purcell Engaged in Obstructionist
Discovery Tactics.......................................................10

    1.  Mr. Purcell Made Inappropriate Boilerplate Objections that Were Not
Consistent with a Good Faith Argument and Were Instead Interposed
to Cause Unnecessary Delay and Increase the Cost of Litigation. .................10

    2.  Mr. Purcell Improperly Objected to Producing Documents Previously
Requested by Hasbro in the TTAB Proceeding................................12

    3.  The Deficiencies Were Significant. .....................................13

    4.  Mr. Purcell Flouted the Responsibility Imposed in Responding to
Requests to Admit under Rule 36. ......................................14

    5.  Mr. Purcell Violated Rule 33(d) by Answering Interrogatories with
General References to Deposition Transcripts. .............................16

D.  The Remedies...........................................................17

ARGUMENT...............................................................18

I.  THE STANDARD OF REVIEW FOR THE SANCTIONS ORDER
IS WHETHER IT IS "CLEARLY ERRONEOUS" OR
"CONTRARY TO LAW."...................................................18

II.  SANCTIONS AGAINST MR. PURCELL WERE JUSTIFIED
UNDER FED. R. CIV. P. 37. ...............................................20

III.  SANCTIONS WERE CORRECTLY AWARDED PURSUANT TO
28 U.S.C. SECTION 1927 AND THE COURT'S INHERENT POWER..............22

i

IV.   FILING OBJECTIONS DOES NOT AUTOMATICALLY STAY A MAGISTRATE JUDGE'S NON-DISPOSITIVE ORDER. ...................................25

V.   MR. PURCELL'S OTHER OBJECTIONS TO THE  SANCTIONS ORDER SHOULD BE REJECTED...................................................................................27

A.   The Discovery Orders Were Not "Vague."...........................................27

B.   The Discovery Orders Required the Production  of "All Outstanding Discovery." ..........................................................................29

    1.  Customer Lists .................................................................................30

    2.  Damages............................................................................................30

    3.  "Turkey Joints" Registration.........................................................31

C.   Mr. Purcell Engaged in Obstructive Tactics Regarding Hasbro's Requests for Admissions. ......................................32

D.   Mr. Purcell Engaged in Numerous Other Dilatory Discovery Tactics........................................................................................32

VI.   THE CALCULATION OF ATTORNEYS' FEES WAS NEITHER CLEARLY ERRONEOUS NOR CONTRARY TO LAW. ...................................33

VII.   HASBRO SHOULD BE AWARDED THE COSTS AND FEES OF THIS APPEAL................................................................................................36

CONCLUSION.................................................................................................37

## TABLE OF AUTHORITIES

**Cases**

**Page(s)**

In re 60 E. 80th St. Equities, Inc.,
218 F.3d 109 (2d Cir. 2000)................................................................................36

Alpha Lyracom Space Communications, Inc. v. COMSAT Corp.,
968 F. Supp. 876 (S.D.N.Y. 1996) .....................................................................36

Apex Oil Co. v. Belcher Co. of N.Y., Inc.,
855 F.2d 1009 (2d Cir. 1988)..............................................................................24

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Co. of Albany,
493 F.3d 110 (2d Cir. 2007)...............................................................3, 17, 18, 33, 35

Brignoli v. Balch, Hardy & Scheinman, Inc., No. 86-CV-4103, 1989 WL
146767 (S.D.N.Y. Dec. 1, 1989)..........................................................................24

Bundy American Corp. v. K-Z Rental Leasing, Inc.,
No. 00 CV 260, 2001 WL 237218 (N.D.N.Y. Mar. 9, 2001)......................................36

Chadwick v. Janecka,
312 F.3d 597 (3d Cir. 2002).................................................................................28

Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.,
602 F.2d 1062 (2d Cir. 1979)...........................................................................15, 32

Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine,
951 F.2d 1357 (2d. Cir. 1991)..............................................................................20

Dunbar v. Ballymore Co., ,
No. 88-CV-108, 1991 WL 273302 (N.D.N.Y Dec. 19, 1991)....................................28

Easley v. Cromartie,
532 U.S. 234 (2001)...........................................................................................18

Fonar Corp. v. Deccaid Services, Inc.,
983 F.2d 427 (2d Cir. 1993).................................................................................28

Glendora v. Press,
No. 1:07-CV-0940, 2007 WL 3254242 (N.D.N.Y. Nov. 2, 2007)...............................19

Gore v. The RBA Group, Inc.,
No. 03-CV-9442, 2008 WL 857530 (S.D.N.Y. March 31, 2008) ...............................22

Gorman v. Polar Electro, Inc.,
    137 F. Supp.2d 223 (E.D.N.Y. 2001) ........................................................................26

International Brotherhood of Electrical Workers Local No. 181 v.
    Casatelli Electric, Inc.,168 F.R.D. 130 (N.D.N.Y. 1996)......................................26, 27

Izzo v. ING Life Ins. & Annuity Co.,
    235 F.R.D. 177 (E.D.N.Y. 2005)..............................................................................24

JSC Foreign Economic Ass'n Technostroyexport v. Int'l Dev. and Trade
    Servs., Inc., No. 03-CV-5562, 2005 WL 1958361
    (S.D.N.Y. Aug. 16, 2005) .......................................................................................21

In re Lernout & Hauspie Securities Litigation,
    219 F.R.D. 28 (D. Mass. 2003)................................................................................26

Lewis v. City of Albany Police Dep't, --- F.Supp.2d ----, No. 1:04-CV-
    152, 2008 WL 1826326, (N.D.N.Y. April 24, 2008).................................................35

Litton Inds., Inc. v. Lehman Bros.  Kuhn Loeb, Inc.,
    124 F.R.D. 75 (S.D.N.Y. 1989) ...............................................................................25

MacDraw, Inc. v. CIT Group Equip. Fin.,
    73 F.3d 1253 (2d Cir. 1996).....................................................................................23

Oliveri v. Thompson,
    803 F.2d 1265 (2d Cir. 1986)..............................................................................22, 23

Pascale v. G.D. Searle & Co.,
    90 F.R.D. 55 (D.R.I. 1981) ......................................................................................28

Phillips v. Raymond Corp.,
    213 F.R.D. 521 (N.D. Ill. 2003)...........................................................................19, 20

Residential Funding Corp. v. DeGeorge Fin. Corp,
    306 F.3d 99 (2d Cir. 2002).......................................................................................24

Revson v. Cinque & Cinque P.C.,
    221 F.3d 71 (2d Cir. 2000)................................................................................3, 5, 23

Sterling Promotional Corp. v. General Accident Ins. Co., 86 Fed. Appx.
    441 (2d Cir. 2004)....................................................................................................15

Source Enterprises, Inc. v. Tanners Ave. Corp.,
    No. 04-CV-1788, 2004 WL 2471536 (S.D.N.Y. Nov. 3, 2004)...............................24

iv

Thomas E. Hoar, Inc. v. Sara Lee Corp.,
    900 F.2d 522 (2d Cir. 1990) ..................................................................18

Thompson v. Keane,
    No. 95 Civ. 2442, 1996 WL 229887 (S.D.N.Y. May 6, 1996) ......................19

Trafalgar Power, Inc. v. Aetna Life Ins. Co.,
    427 F. Supp. 2d 202 (N.D.N.Y. 2006) ......................................................18

Treanor v. MCI Telecommunications Corp.,
    150 F.3d 916 (8th Cir. 1998) ..................................................................27

Tse v. UBS Fin. Servs., Inc., ,
    No. 03-CV-6234, 2008 WL 463719 (S.D.N.Y. Feb. 19, 2008) ....................24

United States v. International Brotherhood of Teamsters,
    948 F.2d 1338 (2d Cir. 1991) ..................................................................23

United States v. United States Gypsum Co.,
    333 U.S. 364 (1948) ..............................................................................18

White v. Burt Enters.,
    200 F.R.D. 641 (D. Colo. 2000) ..............................................................26

Zahran v. First Union Bank,
    No. 01 CV 8922, 2007 WL 2962651 (N.D. Ill. Oct. 4, 2007) ....................33

**Statutes**

Fed. R. Civ. P. 26(a)(5) ..............................................................................31

Fed. R. Civ. P. 36(a) ...........................................................................2, 5, 14, 15

Fed. R. Civ. P. 37...............................................................3, 4, 5, 20, 21, 23, 36, i

Fed. R. Civ. P. 37(a)(5)(A) ..........................................................................20

Fed. R. Civ. P. 37(b)(2)(C) ..........................................................................20

Fed. R. Civ. P. 72(a) .........................................................................18, 19, 26, 27

Fed. R. Civ. P. 72(b) .....................................................................................26, 27

28 U.S.C. § 636(b)(1)(A)...........................................................................18, 19

28 U.S.C. § 1927.....................................................................3, 4, 5, 21, 22, 23, 24, 25

Defendant Hasbro, Inc. ("Hasbro") respectfully submits this memorandum of law in opposition to the objections filed by Robert Purcell and plaintiff Spero Haritatos ("plaintiff" or "Haritatos") to the Memorandum Decision and Order Entered March 28, 2008, Dkt. No. 181 ("Sanctions Order").

## PRELIMINARY STATEMENT

The contrast between Magistrate Judge DiBianco's clear, carefully reasoned Sanctions Order and Mr. Purcell's rambling array of unapologetic nitpicking, contradictions, and excruciating parsing of words is the best argument why sanctions were justified, indeed necessary. Through all of Mr. Purcell's obfuscation, the following actions remain essentially undisputed:

1.      Mr. Purcell disobeyed two discovery orders:  Magistrate Judge DiBianco's August 11, 2006, order to respond within thirty days to "all outstanding discovery" and District Judge Hurd's October 16, 2007, order rejecting the objections to Magistrate Judge DiBianco's order and directing that "all outstanding discovery" be produced by November 30, 2006.  The first time after August 2006 that Mr. Purcell produced any new documents was in January 2007, and as of the hearing he still could not say that plaintiff had produced everything required by the order.

2.      Mr. Purcell objected to producing documents in this case because he claimed they had already been produced in a prior TTAB proceeding notwithstanding the facts that:

a.      He knew that he had objected to many of the same requests in the TTAB proceeding and that those objections were the subject of a motion by Hasbro to compel when he had succeeded in staying the TTAB proceeding.  He therefore should have known that

his objection on the basis of prior production was factually wrong.  Mr. Purcell was reminded of this in an April 17, 2006, letter.  See Hasbro Ex. 22 at page 2.

        b.     He knew that Hasbro's co-defendant Toys "R" Us – NY LLC ("TRU") was not a party to the TTAB proceeding and therefore had received none of the prior discovery.  Sanctions Order at 27.

        c.     He knew that the TTAB discovery was covered by a Confidentiality Order that, fairly read, would prevent Hasbro from using in this court or disclosing to its co-defendant at least part of the TTAB discovery.

        3.     By putting the same lengthy boilerplate objections into every response to every document request and interrogatory, Mr. Purcell made a mockery of his certification under Rule 26(g) that the objections were consistent with the Federal Rules and not interposed to harass, delay, or increase the cost of litigation.  The lengthy boilerplate Specific Objections on top of boilerplate General Objections made it difficult to understand what he was and was not producing and forced opposing counsel to read through a plethora of patently inappropriate objections.

        4.     His refusal to undertake "reasonable inquiry" before denying requests to admit, his argument that no inquiry at all was required, and his contention that he was entitled to a blanket denial based on a quibble with a word in any given request contradicts the clear language of Rule 36(a) and the Advisory Committee Notes thereto, which state that denial may not be based on lack of knowledge if the information is "readily obtainable" and that where part of a request is true it must be admitted, with the party allowed to "qualify or deny the remainder."  The information Hasbro requested to be admitted was readily obtainable on the Internet and Hasbro even provided the specific URLs to find it.

5.     Mr. Purcell's objections to words like "evidencing" and "concerning" that are commonly used in discovery requests and, as to the latter, encouraged by the Local Rules of the Southern and Eastern Districts of New York (courts in which Mr. Purcell is admitted, Hearing Tr. at 106) were not reasonable and, to the contrary, vexatious.

There was more than sufficient basis for assessing sanctions under Rule 37 for failing to obey "an order to provide or permit discovery," under 28 U.S.C. § 1927 for "multipl[ying] the proceedings in any case unreasonably and vexatiously," and the Courts' inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  Revson v. Cinque & Cinque P.C., 221 F.3d 71, 78 (2d Cir. 2000).

The actual fees awarded followed an orderly procedure of having Hasbro submit the required information and allowing plaintiff adequate time and briefing to criticize the information and amount requested.  The award itself carefully followed the Second Circuit's latest enunciation of the method of assessing fees, Arbor Hill Concerned Citizens Neighborhood Ass'n v. Co. of Albany, 493 F.3d 110 (2d Cir. 2007).  The Magistrate Judge correctly held that Hasbro as a reasonable client had justification for hiring its regular outside counsel from New York City to represent it here, though he ultimately allowed an hourly rate only slightly higher than that prevailing in Syracuse but substantially lower than the usual rates in New York City.

## THE SANCTIONS MOTION, HEARING, AND ORDER

### A.     Hasbro's Motion for Sanctions and Other Relief

In a letter dated May 17, 2007, counsel for Hasbro wrote to Magistrate Judge DiBianco pursuant to the direction of his law clerk "seeking direction from the Court on presenting a motion for discovery sanctions against Plaintiff and his counsel, Robert Purcell, or to compel discovery."  That letter set out the basis for the sanctions motion as follows:

Plaintiff has refused to produce patently relevant discovery requested as far back as October 2005 in direct violation of two orders of this Court. He flouted your Honor's Order of August 11, 2006, requiring him to respond to Hasbro's May 31, 2006, discovery requests "immediately" and produce all discovery responsive to Hasbro's October 27, 2005, and May 31, 2006, discovery demands within thirty days, as well as Judge Hurd's October 19, 2006, affirmance of the August 11 Order, which ordered Plaintiff to produce 'all outstanding discovery' (which would include Hasbro's September 15, 2006, discovery requests) by November 30. In the meantime, Plaintiff has wasted Hasbro's and the Court's time by, as the Court previously noted, filing numerous "trivial" motions that have "create[d] unnecessary work since they do not involve significant issues." (March 28, 2006 Conf. Tr. at 23:24-24:2.) It is time for Plaintiff and his counsel to face the consequences of their discovery abuses, which have unnecessarily driven up the cost of litigating this case.

Hasbro Ex. 36 at 1-2 (footnote omitted).[1]

The letter carefully set out the sanctions requested and the legal basis for them. Hasbro sought sanctions in the form of attorneys' fees because it had "expended considerable resources chasing down discovery it has yet to receive, moving for relief from the Court, and responding to Plaintiff's trivial motions." It noted the District Court's authority to do so under Rule 37 and 28 U.S.C. § 1927, as well as its inherent power to manage its affairs.

The letter also put Messrs. Haritatos and Purcell on notice that Hasbro sought an order "pursuant to Fed. R. Civ. P. 37(b)(2)(A)-(B) and Local Civil Rule 7.1(i), that certain facts for which discovery has been thwarted should be conclusively established, and Plaintiff should be precluded from introducing new evidence on those issues at any point in the future." Hasbro Ex. 36 at 2.

---

[1]    Exhibits referenced herein were admitted into evidence at the sanctions hearing held by Magistrate Judge DiBianco. Plaintiff's exhibits are referred to as "Plaintiff's Ex. _" and Hasbro's as "Hasbro Ex. _." A complete set of Hasbro's exhibits will be submitted to Chambers under separate cover.

4

As a third alternative, and as a sanction under Fed. R. Civ. P. 36(a) for inadequate responses to the requests to admit, Hasbro asked that the requests for admission be deemed admitted.  Finally, as the last alternative, Hasbro requested another order compelling full and complete responses to Hasbro's outstanding discovery requests.   Hasbro Ex. 36 at 2-3.

Mr. Purcell responded in a letter dated May 22, 2007, that did not address the sanctions motion, but merely complained that a motion to compel was untimely and that Hasbro "failed to articulate what documents have allegedly been withheld by Plaintiff and failed to demonstrate any 'meet and confer' regarding the alleged deficiencies."  Hasbro Ex. 37 at 1. Hasbro submitted a reply of just over three pages that detailed the discovery deficiencies, as well as the numerous attempts to meet and confer to cure them.  Hasbro Ex. 38.[2]

On January 31, 2008, Magistrate Judge DiBianco ordered a hearing on the motion to take place March 4, 2008, and ordered the parties to submit witness lists, and exhibit lists "specifying very briefly the testimony of any witnesses, and the nature of any exhibit" no later than a week before the hearing.  Dkt. 169  The factual basis for Hasbro's motion is set out below.

**B.    The Sanctions Order**

This Court assessed sanctions against Mr. Purcell under Rule 37 for failing to comply with discovery orders, under 28 U.S.C. § 1927 for multiplying the proceedings "unreasonably and vexatiously," and under its inherent power "'to manage its affairs to achieve the orderly and expeditious disposition of cases.'"  Sanctions Order at 3-6 (quoting Revson v. Cinque & Cinque P.C., 221 F.3d 71, 78 (2d Cir. 2000)).

The Sanctions Order identified a pattern of abuse of the process, including:

---

[2]    Mr. Purcell's complaint that Hasbro was given a limit of four pages to respond to his two-page letter, Objections at 2 (citing Dkt. 131), is petty and absurd, in light of the fact that Mr. Purcell had challenged Hasbro to provide detail and the fact that no page limit had been imposed on his letter responding to the request for sanctions and other remedies.

### 1.    Mr. Purcell Flouted Two Discovery Orders

"Mr. Purcell did **not** follow court orders regarding discovery" – specifically, he disobeyed the Magistrate Judge's August 11, 2006, order compelling discovery and Judge Hurd's October 19, 2006, affirmance of the August 11, 2006, order that itself ordered that "[a]ll outstanding discovery must be produced by November 30, 2006." Sanctions Order at 13-16 (emphasis in original).

### a.    The Magistrate Judge's August 11, 2006, Order

Magistrate Judge DiBianco's August 11, 2006, order (Dkt. No. 68) (referred to herein as "August 11 Order") adjudicated disputes raised in four letter motions of the plaintiff and a June 26, 2006, response by Hasbro that requested the Court to compel discovery. Three aspects of the order are of particular relevance to the sanctions motion.

In ruling on Hasbro's letter motion, Magistrate Judge DiBianco rejected plaintiff's argument that Hasbro's motion to compel was untimely both as to plaintiff's inadequate responses to requests served October 27, 2005, and plaintiff's refusal to respond at all to requests served May 31, 2006. Plaintiff's position as to the latter was not based on the Court's pretrial order, which did not distinguish between factual and expert discovery, but on the parties' informal agreement to complete factual discovery by May 31, which plaintiff had stymied by blocking discovery. Sanctions Order at 7. The Court held:

> Plaintiff's position in this case is unreasonable, and this problem will be solved by this court's order extending discovery deadlines. To the extent that plaintiff's objection to production of this information is that it has been requested too late, then plaintiff should produce the requested information ***immediately*** since the deadlines will now be extended. This court will no longer be involved in ***minor*** disputes in which it appears that the parties are simply attempting to avoid or delay disclosure of information or simply arguing that one party is not going to produce information because the other party has not produced it.

6

Dkt. 68 (Hasbro Ex. 1) at 7-8 (quoted in Sanctions Order at 7) (emphasis in original).

Magistrate Judge DiBianco rejected plaintiff's arguments against relevancy of the requested documents: "A review of the discovery requested by defendant Hasbro shows that the information that Hasbro is seeking in its discovery requests is relevant to the issues in this action, and thus, should be produced." Dkt. 68 (Hasbro Ex. 1) at 8 (quoted in Sanctions Order at 8). The Order mentioned three things, "including customer lists," as examples of relevant requests, but they were only examples and not the entirety of what was compelled.

Hasbro's June 26, 2006, letter distilled by categories inadequate responses to ten separate document requests served October 27, 2005. The letter motion requested that Haritatos be ordered to produce documents in response to requests numbered 12, 13, 14, 15, 25, 26, 27, 38, 39 and 46 from the October 27, 2005, requests and "to respond to Hasbro's First Set of Interrogatories and Hasbro's Second Set of Requests For Production [served May 31, 2006] by a date certain." Hasbro Ex. 34 at 5-6.

The August 11, 2006, order required that **all** of this discovery be produced within thirty days. Twice, the order stated: "**All outstanding discovery relating to the letter-motions discussed above**, and to the extent that it has not already been produced, must be produced by both parties within thirty (30) days of the date of this order." Dkt. No. 68 (Hasbro Ex. 1) at 8 and 9 (emphasis added).

Although plaintiff was ordered to "immediately" produce information as to which he had made a timeliness objection, he did not. Not only did he not respond immediately to Hasbro's second set of document requests and first set of interrogatories served May 31, 2006, but he did not even respond within the thirty-day deadline for producing all outstanding discovery. He served objections to each of the second set of document requests and objections

7

with limited information to the first set of interrogatories on September 18, 2006.  Hasbro Exs. 7

and 9.  It was not until January 2008 that he produced any documents at all in response to the

Court's order.  Plaintiff's Ex. 29.

**b.    District Judge Hurd's October 19, 2006, Order**

Plaintiff filed objections to the August 11, 2006, order but did not attempt to stay

it.  Contrary to his contention at the hearing, Mr. Purcell was reminded by an October 6, 2006,

letter of the obligation to obey a Magistrate Judge's non-dispositive order unless and until it was

stayed:

> Although Haritatos has appealed the [Magistrate Judge's] Order,
> that does not stay it, and the appeal to Judge Hurd does not justify
> disobedience of a court order.  Any withholding of documents that
> the Court has ordered to be produced is a contempt of that order.

Hasbro Ex. 27 at 2-3; see Sanctions Order at 18.

At any rate, on October 19, 2006, the District Judge denied the objections and

issued a blanket order that "**All outstanding discovery** must be produced by November 30,

2006."  Dkt. No. 95 (Hasbro Ex. 2) at 2 (emphasis added).

Plaintiff produced nothing by September 11 (the deadline set by Magistrate Judge

DiBianco) or by November 30, 2006 (the deadline set by District Judge Hurd).  The only

discovery response received from Haritatos since the two orders consisted of several thousand

mail receipts that were sent to the copying service on January 8, 2007.  Plaintiff's Ex. 29.

Mr. Purcell did not notify Hasbro's counsel of any attempt to provide documents

responsive to the orders until an e-mail on December 7, 2006, in which Mr. Purcell stated:  "I

believe that I have in my possession two very large boxes of courier records for shipping candy

products, but I do not know if they have been Bates stamped or otherwise cataloged or **whether**

**the ruling applies to other documents as well**."  Plaintiff's Ex. 24 (emphasis added).  In a

8

December 14, 2006, voicemail, Mr. Purcell stated that he had two boxes of "stuff that Spero and Sharon Haritatos got together, I think it was about two or more months ago." He did not represent that the material in question fully complied with the Magistrate Judge's order – only that "It **may be some of the stuff** that the magistrate's order required them to produce." Hasbro Ex. 31 (emphasis added).

      Mr. Purcell did not communicate again until December 27, 2006, when he asked in response to a December 18 voicemail from Hasbro's counsel, that the latter "Please suggest how you would like to proceed with the inspection." Hasbro's counsel responded within twenty minutes: "As with all prior documentary discovery, please have the documents copied and sent to us. **Bill us for that if you wish.**" Plaintiff's Ex. 15, 2d page (emphasis added). Thus, contrary to Mr. Purcell's contention, Hasbro's counsel did not "haggle[] over where the production would occur, who would pay for the costs of copying, and what form the copying would take." Objections at 15. Mr. Purcell was told to follow prior procedure by copying the material and, if necessary, billing Hasbro for the costs.

      More importantly, Mr. Purcell has never, even as of the hearing, represented that the boxes of documents copied at Hasbro's expense comprised all the documents Plaintiff was ordered to produce, as shown in the following:

> Q.    My question was did you ever confirm that those two boxes of documents were all of the documents that Haritatos was ordered to produce?
>
> A.    They weren't all the documents that were ordered to be produced by the August 11th order.

Hearing Tr. 110:17-110:21.

9

**C.    Mr. Purcell Engaged in Obstructionist Discovery Tactics.**

The Magistrate Judge found that Mr. Purcell engaged in "'obstructionist' discovery by making unsupported objections, irrelevant objections, duplicative objections, and by making arguments about discovery that were not supported by existing federal law."  Sanctions Order at 15.  The following obstructionist behavior was cited in addition to his blatant disregard of the two discovery orders.

**1.    Mr. Purcell Made Inappropriate Boilerplate Objections that Were Not Consistent with a Good Faith Argument and Were Instead Interposed to Cause Unnecessary Delay and Increase the Cost of Litigation.**

Mr. Purcell employed mind-numbing, repetitive boilerplate specific objections to virtually every discovery request on top of the boilerplate general objections, such that "except for a few rare instances . . . , the specific objections are a **waste of time, not appropriate for the request**, and result in an enormously wasteful amount of unnecessary reading."

Set forth below is an example of Plaintiff's response to Hasbro's document requests.

> Request No. 1:  Two samples of any actual or intended products and services by Plaintiff in the United States that bear Plaintiff's CANDYLAND mark.
>
> Response:   Plaintiff incorporates by reference its General Objections set forth above.  Plaintiff also objects to Request No. 1 to the extent Request No. 1 is vague, ambiguous, and unintelligible.  Plaintiff also objects to Request No. 1 as overbroad, oppressive, and unduly burdensome and seeks information outside the scope of discovery permitted by the Federal Rules of Civil Procedure.  Plaintiff further objects to Request No. 1 to the extent that Request No. 1 calls for information that is not relevant to the subject matter of this proceeding, is not relevant to the claim or defense of any party, and is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff objects to Request No. 1 to the extent Request No. 1 seeks information not in the possession, custody, or control of Plaintiff.

> Without waiving its General Objections, and the specific objections made above, Plaintiff responds as follows:  Plaintiff does not have any samples of any actual or intended services since, services by their nature are intangible.  Plaintiff objects to providing any samples of actual intended products specially because many of the products are apt to melt.  Plaintiff previously produced to Hasbro photographs of his retail store, which photographs depict various products offered by Plaintiff with the CANDYLAND mark.  Plaintiff also refers Hasbro to Plaintiff's website for further depictions regarding his products.

Hasbro Ex. 5 pages 4-5.

There is, of course, nothing vague, overbroad, or irrelevant about obtaining samples of products that allegedly show use of the trademark at issue, and the request was made at a time when plaintiff himself was shipping product.  Hearing Tr. at 72:3-73:11.  As the Court will see if it has the inclination and endurance to read through all of them, Mr. Purcell interposed the same boilerplate objections to every one of Hasbro's fifty-seven document requests and virtually all of its interrogatories.  See Hearing Tr. at 67:6-25, 98:7-99:3.

Worse, Mr. Purcell asserted in his objections and maintained at the hearing that the word "concerning" when used in a document request was vague,[3] notwithstanding the fact that the judges of the Southern and Eastern Districts of New York put it into a local rule making it a preferred term for use in document requests.  See Local Civil Rule 26.3(a)(7) of the Southern and Eastern Districts of New York; Hearing Tr. 106-09

These repetitive boilerplate objections "were not made in good faith."  They were "**a waste of time, not appropriate for the request**, and result[ed] in an enormously wasteful

---

[3]    After a paragraph of boilerplate objections, some of which were repeated again after the purported "response," Mr. Purcell stated in response to Request Nos. 1, 5, 7, 8, 9, and 10 of Hasbro's second set of document requests that he "especially object[ed] to the vagueness of the term 'concerning.'"  He "especially object[ed]" to the vagueness of the term 'evidencing'" in response to Request Nos. 2, 3, 4, and 6 of Hasbro's second set of document requests.  Hasbro Ex. 9.  Mr. Purcell did not "especially" object to "concerning" as vague in response to the first set of document requests.  Hasbro Ex. 5.

amount of unnecessary reading" that "result[ed] in unnecessary expense to Hasbro."  Sanctions

Order at 14 (emphasis in original).

### 2.    Mr. Purcell Improperly Objected to Producing Documents Previously Requested by Hasbro in the TTAB Proceeding.

Mr. Purcell improperly refused to produce documents allegedly produced[4] in a

prior TTAB proceeding notwithstanding the Court's ruling "during a March 26, 2006 telephone

discovery conference that such an objection was problematic since the Trademark proceeding

was **not** before this court."  Sanctions Order at 15.  Magistrate Judge DiBianco found this to be

one of many "troubling areas."  Sanctions Order at 27.  The problems with Mr. Purcell's position

are numerous and were explicitly stated by Hasbro in an April 17, 2006, letter (Hasbro Ex. 22):

A.     "Toys 'R' Us was not a party to the TTAB proceeding and ha[d] not

received any of the documents produced therein."  Hasbro Ex. 22 page 1; Sanctions Order at 27.

B.     The TTAB had issued a protective order providing that "Disclosure of

information protected under the terms of this order is intended only to facilitate the prosecution

or defense **of this case**."  Plaintiff's Ex. 25, page 23 (emphasis added).  As the Magistrate Judge

held, "the language of the protective order in the TTAB would certainly cause some hesitation

about using the documents from the TTAB proceeding in this litigation."  Sanctions Order at 27.

Accordingly, the April 17, 2006, letter asked Mr. Purcell to "immediately produce all responsive

documents produced in the TTAB proceedings or provide us with written permission to use them

and provide copies to our do-defendant."  Hasbro Ex. 22 page 1.  Mr. Purcell did not claim to

have done either.  The most that Mr. Purcell said in response to that was that "when I tell them

---

[4]     We say "allegedly produced" because, as Mr. Purcell admitted in the hearing, many of the documents he said he had produced in the Trademark proceeding had not in fact been produced because he had objected to producing them.  He did not know or remember what he had already produced and to what he had objected.  Hasbro Exs. 22 at page 2 and 23 at page 2; Hearing Tr. At 73:12-76:17.

these documents have already been produced, **implicitly** I'm saying use them."  Hearing Tr. 131.

The Magistrate Judge found that "Mr. Purcell's hyper-technical views about words, court orders,

and local rules flies squarely in the face of this type of reasoning, and the court does not find

good faith with respect to that response."  Sanctions Order at 27.

        C.      In several responses Mr. Purcell asserted that documents had been

produced in the TTAB proceeding but he had in fact refused to do so.  Those requests had been

the subject of a motion to compel discovery still pending in the TTAB when Haritatos succeeded

in suspending the proceeding.  Hasbro Ex. 22 page 2 (referring to responses to Request Nos. 10,

11, 12, and 28).  Equally troubling were the responses where Mr. Purcell had said in the TTAB

proceeding that he would produce documents but did not.  Id. (referring to responses to Request

Nos. 15 and 38).

### 3.    The Deficiencies Were Significant.

        The deficiencies in discovery were not just one or two missing items of discovery

or interrogatory responses.  Putting aside the January 31, 2007, discovery requests,[5] plaintiff

either provided deficient responses or refused to respond to over 40 document requests and

numerous interrogatories and requests to admit, as shown in the chart below:

| Hasbro Discovery Requests | Haritatos' Missing/Deficient Responses |
|---|---|
| October 27, 2005 Requests for Production | 1, 7, 12, 13, 14, 15, 38, 39, 46 |
| May 31, 2006 Requests for Production | 1, 2, 3, 7, 8, 9 |
| May 31, 2006 Interrogatories | 1(a)-(g), 2, 19, 20, 21, 29, 30, 36, 37, 38, |
| September 15, 2006 Requests to Admit | 52, 53, 57, 58, 59, 60, 63, 66, 67, 68, 70, 71, 72 |

---

[5]    The January 31, 2007, requests were part of the motion to compel, which was not
adjudicated because it was not within the exception to the order staying the case while Haritatos
pursues his appeal of the summary judgment decision.  Although Purcell's behavior was
criticized in the Sanctions Order for refusing to respond to them because they were two days late,
after his compliance with a court order to produce was months late, that refusal was not
considered an independent basis for the sanctions.

Hasbro Exs. 3-9; 12-17.

### 4. Mr. Purcell Flouted the Responsibility Imposed in Responding to Requests to Admit under Rule 36.

Mr. Purcell refused to make or have his client make the "reasonable inquiry" required under Fed. R. Civ. P. 36(a) so that the party can and does state, if refusing to answer, "that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny." In fact, as shown at the hearing, most of the requests for admissions could be answered by viewing websites, the locations of which had been specified in the requests to admit. Sanctions Order at 19-21, Hasbro. Exs. 13, 39-48.[6]

Mr. Purcell's flouting of his responsibilities under Rule 36 is epitomized in his response to Request to Admit number 19: "Candyland, Inc. in St. Paul, Minnesota offers candy for sale via the internet at www.candylandstore.com." He responded that "Plaintiff lacks knowledge or information, Plaintiff has made reasonable inquiry, and the information known or readily obtainable by Plaintiff is insufficient to enable Plaintiff to admit or deny." Hasbro Ex. 13.

The most cursory visit to the www.candylandstore.com website reveals all that was asked to be admitted.  See Hasbro Ex. 39.  Even if Mr. Purcell's quibble were to be taken

---

[6]    Mr. Purcell says that it is unclear whether any responses to requests for admission were deemed insufficient or formed any basis for the award of attorneys' fees. Objections at 1. The Sanctions Order at 20 found that Mr. Purcell's "answers denying that simply visiting a website address which was stated in the request for admission would have given plaintiff more information is not supported by the evidence, and is not credible." The Sanctions Order later explicitly mentions his "failure to check the law governing" Rule 36 as among the failures that "clearly show his lack of good faith." Sanctions Order at 28. Given that lack of good faith in discovery responses is a sine qua non of sanctions, it is hard to see how Mr. Purcell could doubt that his "contortion[s] of logic and common sense" with respect to the requests to admissions were part of the package of consistent bad faith behavior leading to sanctions.

seriously that he could not be sure of the entity running the website, see Hearing Tr. at 119, lines

1-8, that would simply trigger the obligation under Rule 36(a):

> A denial shall fairly meet the substance of the requested admission,
> and when good faith requires that a party qualify an answer or
> deny only a part of the matter of which an admission is requested,
> the party shall specify so much of it as is true and qualify or deny
> the remainder.

Mr. Purcell tried to evade the fact that he defaulted on his responsibilities by

offering to stipulate **at the sanctions hearing** "that the selected website pages reflected a third

party's offering of such products under such trade name or trademark and that the website pages

selected by Hasbro are true, accurate, and authentic copies of things Hasbro obtained from the

websites on a certain date." Objections at 32. That offer might have been useful at the time of

answering the requests to admit or even in connection with Hasbro's summary judgment motion,

but coming at the sanctions hearing was too late. See Cine Forty-Second Street Theatre Corp. v.

Allied Artists Pictures Corp., 602 F.2d 1062, 1068 (2d Cir. 1979) ("if parties are allowed to flout

their obligations, choosing to wait to make a response until a trial court has lost patience with

them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result

directly contrary to the overall scheme of the federal discovery rules.... Any other conclusion

would encourage dilatory tactics, and compliance with discovery orders would come only when

the backs of counsel and the litigants were against the wall.") (internal citations and quotation

marks omitted). See also Sterling Promotional Corp. v. General Accident Ins. Co., 86 Fed.

Appx. 441, 444 (2d Cir. 2004) ("[Plaintiff's president's] eleventh-hour attempt to comply does

not alter the fact that [plaintiff] repeatedly failed to comply and violated a court order in the

process.").

**5.    Mr. Purcell Violated Rule 33(d) by Answering Interrogatories with General References to Deposition Transcripts.**

Numerous responses to Hasbro's interrogatories refer generally to deposition transcripts. See Responses to Interrogatory Nos. 1a, 1b, 1c, 1d, 1e, 1f, 1g, and 2 in Hasbro Ex. 7 (instructing Hasbro to "refer to the transcripts of Plaintiff's testimony at depositions taken in connection with the Trademark Office opposition proceeding and in the instant lawsuit, as well as the transcript of the depositions of Olga and Sharon Haritatos in connection with the instant lawsuit"). Nothing in the Federal Rules permits such a response.

Rule 33(d) provides an option to produce and specify "business records" in answer to an interrogatory where the burden of deriving the information is "substantially the same" for either party. Even so, however, the answering party must specify the records "in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be obtained."

Mr. Purcell's reference to numerous deposition transcripts satisfies none of the requirements of Rule 33(d), as Mr. Purcell admitted. Sanctions Order at 25; Hearing Tr. 100. They are not business records, the burden of extracting the requested information is not the same for Hasbro's counsel as for Haritatos, and, at any rate, there was no specification in sufficient detail to permit Hasbro's counsel to locate and identify the requested information. Mr. Purcell was trying to incorporate by reference hundreds of pages of deposition transcripts, almost all of which would have little connection to the requested information.[7]

---

[7]    Mr. Purcell tries to draw an inapt parallel between his violation of Rule 33(d) by referring to deposition transcripts and Hasbro's initial designation of deposition transcripts as exhibits at the hearing. Objections at 29-30. The exhibit list Hasbro served referred to the transcripts in general, while the binder given at the beginning of the hearing contained a few specific pages. When Mr. Purcell objected to the transcripts, not on the grounds of admissibility but just because specific pages had not been designated, Hasbro's counsel immediately offered not to have them introduced into evidence but to use them only on impeachment of witnesses. Hearing Tr. at

16

**D.      The Remedies**

Magistrate Judge DiBianco deferred to the trial that portion of Hasbro's request seeking preclusion of evidence at trial and deferred to a lifting of the stay (pending Haritatos's appeal of partial summary judgment) the motion to compel discovery. He granted Hasbro an award of the attorneys fees incurred because of Mr. Purcell's obstructionist tactics.

Hasbro was ordered on March 17, 2008, to "submit documents regarding attorney fees by ordinary or overnight mail by 2 PM on 3/21/2008." Dkt No. 176. Hasbro did so on March 20, and Mr. Purcell was then given to March 26 to respond, including a brief. Dkt. No. 178.

Hasbro's submission (Dkt. No. 183) was in the form of declarations from Messrs. Landsman and Vanasse, along with a brief letter explaining how the billing rates requested fit into the latest Second Circuit case on the manner of determining attorneys fees, Arbor Hill Concerned Citizens Neighborhood Ass'n v. Co. of Albany, 493 F.3d 110 (2d Cir. 2007). Hasbro sought $39,126.70 in fees for 84.9 hours of work dealing with Mr. Purcell's obstruction of discovery and the motion for sanctions itself.

Mr. Landsman's declaration showed the time spent by each attorney or paralegal, with attached contemporaneous time records, and the background, billing rates, and experience of each lawyer. The declarations of Messrs. Vanasse and Landsman showed why Hasbro as a "reasonable, paying client" paid hourly rates significantly lower than those prevailing among the major New York City law firms but higher than those prevailing in the Syracuse area. Dkt. No. 183.

---

61:2-11. The Magistrate Judge resolved it by giving Mr. Purcell time to look at the few specific pages and make any objection before the end of the hearing. Hearing Tr. at 62-63. It was a minor procedural issue quickly resolved, not a problem of failure to comply with a Federal Rule on discovery.

The Sanctions Order carefully followed <u>Arbor Hill</u> to come up with an award of $15,989.75, less than half of that requested.  It reduced some associate time that was considered duplicative and modified the hourly rates

> to allow a rate slightly higher than the Northern District but substantially **below** the usual rates in the Southern District of New York.  Mr. Landsman has a vast amount of experience in this specialty area of law; has requested a very reasonable number of hours; has extensive expertise; and is clearly the attorney chosen by a willing client. The court notes that Mr. Landsman knows the **entire** background of related proceedings before the Trademark Office, is completely familiar with Hasbro's business, and has clearly shown his expertise about Hasbro in this case.  While Hasbro might have hired an attorney in the Northern District for this litigation, they are entitled to hire an attorney familiar to them who has done extensive work for them on these types of cases.

Sanctions Order at 34-35 (emphasis in original).

## **ARGUMENT**

## I.     **THE STANDARD OF REVIEW FOR THE SANCTIONS ORDER IS WHETHER IT IS "CLEARLY ERRONEOUS" OR "CONTRARY TO LAW."**

Monetary sanctions for noncompliance with discovery orders are non-dispositive matters "committed to the discretion of the magistrate, reviewable by the district court under the 'clearly erroneous or contrary to law' standard."  <u>Thomas E. Hoar, Inc. v. Sara Lee Corp.</u>, 900 F.2d 522, 525 (2d Cir. 1990) (citations omitted); <u>see also</u> <u>Trafalgar Power, Inc. v. Aetna Life Ins. Co.</u>, 427 F. Supp. 2d 202, 212 (N.D.N.Y. 2006); 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

An order is clearly erroneous if the reviewing court is "'left with the definite and firm conviction that a mistake has been committed.'" <u>Easley v. Cromartie</u>, 532 U.S. 234, 242 (2001) (quoting <u>United States v. United States Gypsum Co.</u>, 333 U.S. 364, 395 (1948)).  An order is "contrary to law" "when it fails to apply or misapplies relevant statutes, case law or rules

18

of procedure." Thompson v. Keane, No. 95 Civ. 2442, 1996 WL 229887, at *2 (S.D.N.Y. May 6, 1996) (internal quotation marks omitted) (App. A).[8]

Mr. Purcell's argument that "there is no reason for the District Judge to give deference to a Magistrate Judge's ruling under a 'clearly erroneous' standard, despite the wording of Rule 72,'" (Br. at 9 n.8), should be rejected as a blatant invitation to ignore the clear language of that Federal Rule as well as a statute (inasmuch as the deference standard stated in Rule 72 is the same as that stated in 28 U.S.C. § 636(b)(1)(A)). To the extent that the argument is based on a court's power to reconsider prior rulings, it is misplaced, because the standard for reconsideration is at least as strict as the "clearly erroneous or contrary to law" standard of Rule 72(a). "A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice."). Glendora v. Press, No. 1:07-CV-0940, 2007 WL 3254242, at *3 (N.D.N.Y. Nov. 2, 2007) (Mordue, C.J.) (App. B).

The only case Mr. Purcell cites for his argument against the "clearly erroneous" standard, Phillips v. Raymond Corp., 213 F.R.D. 521 (N.D. Ill. 2003), rejected a Magistrate Judge's order as "overly restrictive as a matter of a law" – i.e., "contrary to law." Id. at 525. Because no timely objection had been made to the Magistrate Judge's order at issue in Phillips, the District Judge also relied on the power to reconsider a prior ruling, which he did because the Magistrate Judge had issued a "pressured oral ruling" "based ... on the partial and conflicting versions" of the discovery dispute presented by the parties at oral argument without the benefit of

---

[8]     Cases cited herein that are not officially published will be submitted to the Court in a separate Appendix.

"any prior review of written materials or authorities" and without the additional "submissions that have been furnished to the [District] Court." Id. at 524.

The Sanctions Order·was entered upon careful review after a daylong evidentiary hearing on notice. Accordingly, Phillips provides no authority for departing from the clearly erroneous or contrary to law standard and, as shown above in the statement of facts and also discussed below, the Sanctions Order does not just pass muster under that strict standard, but was entirely correct.

## II.   SANCTIONS AGAINST MR. PURCELL WERE JUSTIFIED UNDER FED. R. CIV. P. 37.

The court may assess attorneys' fees and reasonable expenses against a party, his attorney, or both when the adverse party successfully moves to compel discovery. Fed. R. Civ. P. 37(a)(5)(A). A party, his lawyer, or both may also be required to pay an opponent's attorneys' fees for failure to obey a discovery order. Fed. R. Civ. P. 37(b)(2)(C). Rule 37(b)(2) is not limited to violations of orders adjudicating motions to compel discovery, but applies to violations of any order, written or oral, that is "clearly articulated" and requires "specified discovery." See Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1363 (2d. Cir. 1991). The fees assessed may cover those incurred in making a motion to compel, those caused by the failure to comply with the discovery, or both, as the circumstances dictate. Rule 37(a)(5)(A), 37(b)(2)(C).

Mr. Purcell's only objection specific to Rule 37 is his claim that Magistrate Judge DiBianco did not make specific findings that Mr. Purcell's failure to comply with the discovery orders was not substantially justified or that the award of attorneys fees was not otherwise unjust. Objections at 7. One answer to that is that no such finding is required. Rule 37 "places the burden on the disobedient party to avoid expenses [including attorneys' fees] by showing that his

failure is justified or that special circumstances make an award of expenses unjust." <u>JSC Foreign</u>

<u>Economic Ass'n Technostroyexport v. Int'l Dev. and Trade Servs., Inc.</u>, No. 03-CV-5562, 2005

WL 1958361, at *11 (S.D.N.Y. Aug. 16, 2005) (<u>quoting</u> 1970 Advisory Committee Notes to

Rule 37(b) (App. C)).  Mr. Purcell made no showing of any kind with regard to either point and

so did not even attempt to carry his burden.

      More importantly, however, one can do more than just "readily glean from the

tenor of the [Sanctions Order]," as Mr. Purcell phrases it, that the Magistrate Judge found that his

failure to comply with the discovery orders "was not substantially justified and that there were no

circumstances that would make an award of attorneys' fee unjust."  Objections at 7.  Those

findings are quite explicit.

      Although "a finding of bad faith or willful misconduct is not required before the

Court can award attorneys' fees" under Rule 37, <u>JSC</u>, 2005 WL 1958361, at *12, the Magistrate

Judge explicitly found bad faith from Mr. Purcell's own admissions:

> Even a cursory reading of Mr. Purcell's testimony shows that he admitted not following Rule 33 of the Federal Rules of Civil Procedure (SH at 99); admitted that he never withdrew the redundant and meritless boilerplate objections (SH at 71); admitted not producing documents (SH at 75); admitted never asking for clarification of my August 11, 2006 order which he claims was not specific enough (SH at 82); admitted he did not turn over legal invoices (SH at 35); and admitted he did not check whether the documents he refused to produce in this litigation were actually produced in the TTAB before telling defendant to find the information somewhere within those documents (SH at 74).  These admissions, plus Mr. Purcell's failure to check the law governing Rules 33, 36, appeals from Magistrate Judges' orders, and his own obligations all clearly show his lack of good faith.  In addition to violating two court orders, Mr. Purcell's conduct has unnecessarily multiplied proceedings in this case.  The court finds, therefore, that Mr. Purcell is subject to sanctions in the form of attorneys fees and costs resulting from his conduct under both Rule 37 and 28 U.S.C. § 1927.

Sanctions Order at 27-28. "Lack of good faith" in Mr. Purcell's actions and positions surely

encompasses a finding that they were "not substantially justified."

Furthermore, the Magistrate Judge quite explicitly found circumstances crying out

for compensation by an award of attorneys fees:

> As this court has clearly found, Mr. Purcell's actions have
> multiplied the proceedings in this case, and the time spent on the
> motion for sanctions is only **one part of the excessive time spend
> by Hasbro in this case,** which includes multiple telephone
> conferences and multiple responses by Hasbro to Mr. Purcell's
> numerous applications to this Court."

Sanctions Order at 32 (emphasis in original).

## III.   SANCTIONS WERE CORRECTLY AWARDED PURSUANT TO
28 U.S.C. SECTION 1927 AND THE COURT'S INHERENT POWER.

Section 1927 provides for sanctions against counsel who "so multiplies the

proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Sanctions under

Section 1927 are warranted "when the attorney's actions are so completely without merit as to

require the conclusion that they must have been undertaken for some improper purpose such as

delay." Oliveri v. Thompson, 803 F.2d 1265, 1274 (2d Cir. 1986). The findings quoted above in

Part II more than satisfy that standard.

Mr. Purcell refers to a dictionary definition of the word "vexatious" in support of

his argument that § 1927 sanctions are appropriate only where the complained-of conduct was

intended to "serve **solely** as an annoyance." Objections, 8 (emphasis in original).[9] Mr. Purcell's

position finds no support in – and is in fact contradicted by – the case law. To impose sanctions

---

[9]      Mr. Purcell also criticizes the Sanctions Order's discussion of his conduct in connection
with an attempt to get a default judgment against Toys "R" Us. He correctly notes that this was
not part of the discovery misconduct for which Hasbro sought sanctions, but that does not make
it irrelevant, since vexatiousness is a matter of context over the life of the case. As one judge has
put it, "Vexatiousness is not conduct that necessarily can be captured in a snap-shot, but instead
may in some circumstances be discovered only over the life of a case." Gore v. The RBA Group,
Inc., No. 03-CV-9442, 2008 WL 857530 at *8 (S.D.N.Y. March 31, 2008) (App. D).

under § 1927, a court simply must find bad faith on the part of the attorney, <u>United States v. International Brotherhood of Teamsters</u>, 948 F.2d 1338, 1345 (2d Cir. 1991) ("Bad faith is the touchstone of an award under this statute.") and clear evidence that the offending party acted for improper purposes, <u>Revson v. Cinque & Cinque, P.C.</u>, 221 F.3d 71, 78 (2d Cir. 2000).  The Second Circuit has repeatedly held that "dilatory tactics" constitute just such improper purpose. <u>See</u> <u>MacDraw, Inc. v. CIT Group Equip. Fin.</u>, 73 F.3d 1253, 1261 (2d Cir. 1996) ("By its terms, § 1927 looks to unreasonable and vexatious multiplication of proceedings; it imposes an obligation upon attorneys throughout the entire litigation to avoid dilatory tactics."); Gregory P. Joseph, Sanctions:  The Federal Law of Litigation Abuse Section 23(B)(1), at 3-29 (4th ed. 2008) ("There is no doubt, in any Circuit, that bad faith is sufficient to satisfy the 'vexatious[ness] standard [of section 1927].").

As quoted above at pages 23 through 24, the Magistrate Judge found bad faith based on Mr. Purcell's own admissions.

Mr. Purcell complains that the Sanctions Order "did not indicate which portion of the award was based upon Rule 37 as contrasted with Section 1927," Objections at 1, but he cites nothing requiring such specificity.  The overlap of his refusal to comply in good faith with discovery orders (Rule 37) with his multiplying the proceedings vexatiously (§ 1927) is quite extensive in this case.  The convergence of those two aspects of his misbehavior with the Court's inherent power to punish them is complete:  "[T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is ... that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." <u>Oliveri v. Thompson</u>, 803 F.2d 1265, 1273 (2d Cir.1986).

Judge DiBianco's finding of bad faith from multiple failures to comply with discovery obligations and two discovery orders is in complete accord with the case law. Repeated failures to produce documents "particularly after the entry of a Court order directing production of the documents, constitutes bad faith on the part of [the non-producing party's] counsel." Izzo v. ING Life Ins. & Annuity Co., 235 F.R.D. 177, 190 (E.D.N.Y. 2005) (citing Apex Oil Co. v. Belcher Co. of N.Y., Inc., 855 F.2d 1009, 1019-1020 (2d Cir. 1988) (affirming district court's award of sanctions under Section 1927 where defense counsel refused to timely produce documents); see also Source Enterprises, Inc. v. Tanners Ave. Corp., No. 04-CV-1788, 2004 WL 2471536, at *4-5 (S.D.N.Y. Nov. 3, 2004) (noting that sanctions could be imposed under Section 1927 for counsel's persistent failure to respond to plaintiff's discovery requests) (App. E); Brignoli v. Balch, Hardy & Scheinman, Inc., No. 86-CV-4103, 1989 WL 146767, at *14 (S.D.N.Y. Dec. 1, 1989) (ordering sanctions under Section 1927 where counsel repeatedly refused to produce documents, despite counsel's contentions that the documents were not withheld intentionally and that he believed that the documents had already been produced) (App. F).

Whether or not a discovery order has even been issued, "a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." Residential Funding Corp. v. DeGeorge Fin. Corp, 306 F.3d 99, 106-07 (2d Cir. 2002). Courts in the Second Circuit have "often awarded attorneys' fees to sanction a party who disregards her discovery obligations" under their inherent powers. Tse v. UBS Fin. Servs., Inc., No. 03-CV-6234, 2008 WL 463719, at *36 (S.D.N.Y. Feb. 19, 2008) (collecting cases) (App. G).

24

Finally, Mr. Purcell's argument that there "is absolutely no incentive for Mr. Purcell (or his client) to unreasonably multiply these proceedings" because he has been retained on a contingency fee basis, Objections at 8, is both irrelevant and absurd. To the extent that he can drive up the annoyance and expense of the litigation to Hasbro while doing as little as possible himself to respond to discovery requests, he increases the opportunity to force a monetary settlement and increases the ratio of monetary recovery to time expended that a settlement would bring.

The Magistrate Judge found that Mr. Purcell obstructed discovery in bad faith, and there was more than adequate support in the record to award sanctions under § 1927 and the court's inherent powers.

## IV.    FILING OBJECTIONS DOES NOT AUTOMATICALLY STAY A MAGISTRATE JUDGE'S NON-DISPOSITIVE ORDER.

Mr. Purcell's contention that he did not disobey Magistrate Judge DiBianco's August 11 Order because his objections automatically stayed compliance is really beside the point. When the objections were rejected and Judge Hurd ordered that discovery be completed by November 30, 2006, Mr. Purcell disobeyed that order as well. Even if he were allowed to disobey Judge DiBianco's order until Judge Hurd issued his, Mr. Purcell would still be appropriately subject to sanctions because he flouted both.

The contention that filing objections stays a Magistrate Judge's order has, however, rightly been rejected in this circuit, by courts elsewhere, and by a leading treatise. To so hold would only add further delay; it would "not only encourage the filing of frivolous appeals, but would grind the magistrate system to a halt." Litton Inds., Inc. v. Lehman Bros. Kuhn Loeb, Inc., 124 F.R.D. 75, 79 (S.D.N.Y. 1989) The argument is also legally incorrect because it would eliminate the distinction between Fed. R. Civ. P. 72(a), which states that a

Magistrate Judge issues an order as to non-dispositive matters, and Fed. R. Civ. P. 72(b), which

calls for a report and recommendation. See, e.g., White v. Burt Enters., 200 F.R.D. 641, 642 (D.

Colo. 2000) ("A magistrate's order will not determine anything if it can be automatically stayed

by filing an objection. Indeed, such an interpretation would essentially reduce the magistrate's

order to the status of a recommendation [under Rule 72(b)] where an objection is raised.") See

also, e.g., 7(Part 2) James W. Moore et al., Moore's Federal Practice 3d 72.10[4], at 72-50 (3d

ed. 2007); In re Lernout & Hauspie Securities Litigation, 219 F.R.D. 28, 30 (D. Mass. 2003).

      Mr. Purcell argued that if a Magistrate Judge's order was not automatically stayed

pending the District Judge's resolution of any objections, then "any review by the District Judge

would be moot." Objections at 18. This is no more true of an appeal from Magistrate Judge to

District Judge than it is of an appeal from the District Court to the Court of Appeals, which Mr.

Purcell concedes has no automatic stay.

      Mr. Purcell cites two cases where objections to a Magistrate Judge's order were

resolved partly in the objector's favor. Objections at 16, n.16. Neither of those cases required a

stay, because neither compelled action by a specific date. In Gorman v. Polar Electro, Inc., 137

F. Supp.2d 223, 224 (E.D.N.Y. 2001), the Magistrate Judge had denied a protective order against

certain discovery. There was no order at issue to produce the discovery by a specific date. In

International Brotherhood of Electrical Workers Local No. 181 v. Casatelli Electric, Inc., 168

F.R.D. 130 (N.D.N.Y. 1996), the Magistrate Judge issued a ruling adjudicating objections to

various types of discovery. That ruling allowed some discovery, limited others, and decided that

some of the limitations could be re-visited "on an appropriate factual showing." Id. at 132.

Again, there is no indication that the Magistrate Judge's discovery order required compliance by

a specific date.

Mr. Purcell asserts that (then) District Judge Pooler cut back on the "broad information in response to interrogatories" ordered by the Magistrate Judge and "required that only narrower information be provided" in her subsequent order on the objections.  Objections at 16 n.16.  In fact, Judge Pooler's only modification was to add to the discovery ordered – she ruled that some additional, limited information should be provided in response to two interrogatories that the Magistrate Judge had ruled irrelevant.  Id. at 133.[10]

To the extent that Treanor v. MCI Telecommunications Corp., 150 F.3d 916, 919 (8th Cir. 1998) (cited in Objections at 18), may be read to the contrary, we respectfully submit that it is not persuasive because it is against the weight of overwhelming authority to the contrary, was based on a very complex set of facts and procedural errors by the District Court, and dealt with the severe and dispositive issue of dismissal with prejudice as a sanction for disobeying a discovery order.  In so doing, the order at issue crossed the line from being a non-dispositive matter governed by Rule 72(a) to a dispositive motion governed by Rule 72(b).

## V.   MR. PURCELL'S OTHER OBJECTIONS TO THE SANCTIONS ORDER SHOULD BE REJECTED.

### A.   The Discovery Orders Were Not "Vague."

Judge DiBianco's August 11, 2006 Order required Mr. Purcell to produce "**All** outstanding discovery relating to the letter-motions discussed above, and to the extent that it has not already been produced, must be produced by both parties within thirty (30) days of the date of this order."   Dkt. No. 68 (Hasbro Ex. 1) at 8 and 9 (emphasis added).  Judge Hurd's October

---

[10]   Nine objections to the Magistrate Judge's order were asserted.  Judge Pooler rejected Objections 1,2, 3, 5, 6, 8, and 9.  She noted that Objection 4 and portions of Objection 6 had been withdrawn.  As to Objection 7, which sought to "overturn the magistrate's finding of irrelevance with respect to educational and employment information sought in Interrogatory Nos. 19(b-c) and 54(e-f), Judge Pooler "modif[ied] the magistrate judge's order only to the extent that defendants are directed to provide the requested educational and employment information with respect to the Britelli defendants and their son."  168 F.R.D. at 132-34.

19, 2006, order denying Mr. Purcell's objections to Magistrate Judge DiBianco's order was equally explicit: "**All** outstanding discovery must be produced by November 30, 2006." Dkt. No. 95 (Hasbro Ex. 2) at 2 (emphasis added). As noted more extensively above, Mr. Purcell failed to produce **any** documents before the deadlines set by these orders.[11]

Mr. Purcell cites <u>Fonar Corp. v. Deccaid Services, Inc.</u>, 983 F.2d 427, 429 (2d Cir. 1993) for the proposition that a "district court may punish for disobedience of an order only if the order is clear and unambiguous." In <u>Fonar</u>, the district court enjoined defendant from "using plaintiff's copyrighted 'Maintenance Software'" but never defined what software this included. The affidavit in support of the TRO defined it only as "all software other than 'Operational Software'"; "Operational Software" itself was not defined. It was therefore impossible to tell what software of plaintiff's the order had enjoined defendant from using and so sanctions for disobeying the order were improper. <u>Id.</u> <u>See also</u> <u>Pascale v. G.D. Searle & Co.</u>, 90 F.R.D. 55 (D.R.I. 1981) (order was ambiguous where it was left to defendant to determine the burden of compiling information in response to interrogatories). Here, neither Judge DiBianco's August 11 Order nor Judge Hurd's October 19, 2006, Order left any doubt as to what constituted compliance – production of "[a]ll outstanding discovery."

Moreover, Mr. Purcell never sought clarification of the August 11 Order. His objections to it focused on alleged burden and relevance. Dkt. 71; <u>see</u> <u>Dunbar v. Ballymore Co.</u>, No. 88-CV-108, 1991 WL 273302 (N.D.N.Y Dec. 19, 1991) (noting that if the plaintiffs "believed the order was ambiguous, plaintiffs immediately should have sought further instruction

---

[11]     Mr. Purcell's attack on the validity of these orders is improper in the context of the award of sanctions for his noncompliance therewith. Much as a "person held in civil contempt cannot attack the validity of the underlying order with which the person has not complied," <u>Chadwick v. Janecka</u>, 312 F.3d 597, 610 (3d Cir. 2002), Mr. Purcell can not justify his failure to comply with the discovery orders by arguing that they were somehow improper.

28

from the court, rather than pursuing the course of delay revealed in the record on the present

motion") App. H).  Indeed, Magistrate Judge DiBianco noted that Mr. Purcell "clearly admitted

that he *never asked this court* to clarify the August 11, 2006 order." Sanctions Order at. 25)

(emphasis in original). [12]

### B.    The Discovery Orders Required the Production of "All Outstanding Discovery."

Equally unpersuasive is Mr. Purcell's claim that the Discovery Orders were

limited to the three categories of outstanding discovery the Magistrate Judge listed merely as

illustrative of the deficiencies in Plaintiff's document production.  The relevant passage reads as

follows:

> A review of the discovery requested by defendant Hasbro shows that the information that Hasbro was seeking in its discovery requests is relevant to the issues in this action, and thus, should be produced. Hasbro has requested information, **including** customer lists; the application for the "Turkey Joints" registration; and information regarding damages. This court finds that this information is relevant and discoverable, given the protective order that has been entered in this case. **All outstanding discovery relating to the letter-motions discussed above** [including, most notably, that of Hasbro], **and to the extent that it has not already been produced, must be produced by both parties within thirty (30) days of the date of this order.**

Dkt. No. 68 (Hasbro Ex. 1) at 8.  The Court noted that the "information that Hasbro was seeking

it its discovery requests is relevant to this action, and thus, should be produced."  This

information "includ[ed]" (not consisted of) customer lists, the application for the "Turkey Joints"

---

[12]    In his Objections at 10-11, Mr. Purcell points to some confusion at the hearing, unfortunately introduced by Hasbro's counsel, concerning which party's June 26, 2006, letter motion was referred to in the penultimate paragraph of the August 11 Order (Hasbro Ex.1).  It was plaintiff's letter motion to extend the discovery cutoff (Dkt. No. 59) that was referred to in that paragraph rather than Hasbros' letter motion to compel (Dkt. No. 60).  Hasbro's counsel apologized for the confusion, see Hearing Tr. at 87:22-23, which lasted for only a short period of time before a lunch break, and was quickly remedied by the Magistrate Judge.  Hearing Tr. at 87:-20.  That confusion does not detract from the clarity of the order compelling "All outstanding discovery relating to the letter-motions discussed above," which included Hasbro's letter motion also dated June 26, 2006 (Dkt. No. 60), that sought to compel discovery and that was discussed in the August 11 Order at 7-8.

registration, and information regarding damages. The word "including" shows that the order was not limited to those three categories of documents. Indeed, Mr. Purcell only said that the boxes he belatedly produced "**may** be **some** of the stuff that the magistrate's order required [plaintiff] to produce." Hasbro Ex. 31 (emphasis added)..

### 1.    Customer Lists

Mr. Purcell argues regarding the invoices belatedly produced and his non-production of customer lists alternatively (and inconsistently) that "[n]o customer lists existed," Objections, 14, and that it was burdensome to "search for and photocopy thousands of UPS manifests," Objections, 18. However, Mr. Purcell did not even communicate with Hasbro's counsel regarding these documents until December 7, after the discovery deadline, and did so then only to discuss how to produce them. Importantly, he did **not** state that these invoices were the only documents he was required to produce, but Mr. Purcell has not, in any event, explained his failure to timely produce even those documents he admits were within the scope of the Discovery Orders.

### 2.    Damages

With regard to documents concerning damages, Hasbro had requested in its Second Set of Requests to Plaintiff for Production of Documents and Things damages documents including lists of customers (Request #2), documents evidencing sales in New York City (Request #3), Plaintiff's Schedule C (Form 1040) Profits or Loss from Business (Request #4), legal fees and costs incurred in the litigation and related proceedings (Requests #7-9), and "All documents concerning any other damages claimed in this action" (Request #10). There is no basis in fact for Mr. Purcell's argument that the Court's order directing Plaintiff to provide "information regarding damages" was "so vague as to be incomprehensible" because "[t]here is no citation to any particular interrogatory response or to any particular response to a document

request." Mr. Purcell knew exactly what documents Hasbro had requested in its document requests and detailed in the letter motion to compel that Magistrate Judge DiBianco granted in ordering that the "information that Hasbro was seeking in its discovery requests....should be produced." Dkt. No. 68 (Hasbro Ex. 1) at 8.

Mr. Purcell attempts to justify his refusal to produce redacted copies of his firm's bills by noting that Hasbro never initiated the meet-and-confer process to approve his production of the bills in redacted form. This inverts the prescribed course of events. The obligation to produce those documents existed upon service of the demand to which they were responsive. Hasbro had no obligation to initiate the meet-and-confer process to give permission to Mr. Purcell to redact the irrelevant or privileged portions of his bills to Plaintiff. Indeed, Mr. Purcell *did not even seek such permission.* If Mr. Purcell needed to withhold privileged material in his bills, he could have done so and produced a privilege log, as provided for by Fed. R. Civ. P. Rule 26(a)(5), or he could have initiated the process of conferring rather than doing nothing at all. Notably, even to this day, Mr. Purcell makes no pretence of having complied with this portion of the August 11 Order.

### 3.    "Turkey Joints" Registration

Mr. Purcell claims that he had produced the application for the "Turkey Joints" registration well before he was ordered to do so in the August 11 Order. Objections at 12. He nowhere explains why, if that is the case, he not only never mentioned that alleged fact in the objections he filed to the August 11 Order or in subsequent correspondence, but instead continued to argue against having to produce those documents. Dkt. 71 (Memorandum of Law at 3 of objections to the August 11 Order). This is just another example of tactics that are vexatious and multiply the proceedings.

31

**C.    Mr. Purcell Engaged in Obstructive Tactics Regarding Hasbro's Requests for Admissions.**

Magistrate Judge DiBianco noted that Mr. Purcell's "answers denying that simply visiting a website address which was stated in the request for admission would have given plaintiff more information is not supported by the evidence, and is not credible." The Sanctions Order at 28 explicitly refers to Mr. Purcell's "failure to check the law governing" Rule 36 requests for admissions as being among the failures that "clearly shows his lack of good faith." Given that lack of good faith in discovery responses is the *sine qua non* of sanctions, it is hard to see how Mr. Purcell could doubt that his "contortion[s] of logic and commons sense" with respect to the requests for admissions were part of his pattern of consistent bad faith leading to sanctions. Magistrate Judge DiBianco properly declined Mr. Purcell's eleventh hour attempt to correct this unbroken pattern of obstruction by offering to stipulate to the disputed admission **at the sanctions hearing itself.** Objections at 32. To head off sanctions, that offer should have been made and negotiated long before Hasbro had to move to compel. See Cine Forty-Second Street, 602 F.2d at 1068 ("compulsion of performance in the particular case at hand is not the sole function of Rule 37 sanctions. Under the deterrence principle…hopelessly belated compliance should not be accorded great weight").

**D.    Mr. Purcell Engaged in Numerous Other Dilatory Discovery Tactics**

Mr. Purcell's Objections skirt the real problem with his repeated and indiscriminate use of boilerplate objections to discovery requests. These objections waste the Court's and parties' time by making it impossible to identify what discovery has been produced notwithstanding the objections and what is being withheld because of the objections. These baseless objections properly contributed to the sanctions imposed upon Mr. Purcell. See, e.g.,

<u>Zahran v. First Union Bank</u>, No. 01 CV 8922, 2007 WL 2962651 (N.D. Ill. Oct. 4, 2007) (granting sanctions against party for, inter alia, responding to discovery requests with "boilerplate objections, stating only that the request was irrelevant and burdensome") (App. I).

Mr. Purcell was also properly admonished for referencing entire depositions in answers to interrogatories. Sanctions Order at 25 and 28. As Mr. Purcell admitted, nothing in Rule 33(d) permits such a reference in lieu of an answer. Hearing Tr. 100. The rule only permits reference to business records produced in lieu of answer, and then only if the burden of finding the answer in the business records is equal between the parties and the answering party identify specific documents rather than referring vaguely to an entire production. Fed. R. C. P. 33(d).

## VI.    THE CALCULATION OF ATTORNEYS' FEES WAS NEITHER CLEARLY ERRONEOUS NOR CONTRARY TO LAW.

The Sanctions Order carefully followed <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 493 F.3d 110 (2d Cir. 2007). That opinion is not just the most recent appellate decision on calculating attorneys fees, but also represents a significant restatement and rethinking of the subject. [13]

The Court of Appeals abandoned use of the term "lodestar" and what had become a too-rigid adherence to the "forum rule" – the presumption that the hourly rate to be awarded should be that prevailing in the forum – in setting the hourly rates to be awarded. "The meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness. This opinion abandons its use." <u>Id.</u> at 117. The Court used instead "what we think is more aptly termed the "presumptively reasonable fee" that the district court may

---

[13]    The decision was amended at 2008 WL 961313 (2d Cir. Apr. 10, 2008) to expand the discussion in footnote 2 of fee awards for attorneys working *pro bono*. (App. J).

adjust "to account for a plaintiff's reasonable decision to retain out-of-district counsel." Id. at

112.

It further noted that the "dispute concerning the 'forum rule'" and when to depart

from it

> is but a symptom of a more serious illness: Our fee-setting
> jurisprudence has become needlessly confused -- it has come
> untethered from the free market it is meant to approximate. We
> therefore suggest that the district court consider, in setting the
> reasonable hourly rate it uses to calculate the "lodestar," what a
> reasonable, paying client would be willing to pay, not just in
> deciding whether to use an out-of-district hourly rate in its fee
> calculation.

Id.

"The reasonable hourly rate is the rate a paying client would be willing to pay."

Id. at 117.   Here, as opposed to contingency fee or pro bono cases, there is no need approximate

the "free market" to determine the "reasonable hourly rate" that a "reasonable, paying client"

would pay:  Hasbro **is** a reasonable paying client in a free market working with regular outside

counsel at a negotiated discount.  It chose to hire counsel from outside the forum for good

reasons, as found in the Sanctions Order:

> Mr. Landsman has a vast amount of experience in this specialty
> area of law; has requested a very reasonable number of hours; has
> extensive expertise; and is clearly the attorney chosen by a willing
> client. The court notes that Mr. Landsman knows the **entire**
> background of related proceedings before the Trademark Office, is
> completely familiar with Hasbro's business, and has clearly shown
> his expertise about Hasbro in this case.  While Hasbro might have
> hired an attorney in the Northern District for this litigation, they
> are entitled to hire an attorney familiar to them who has done
> extensive work for them on these types of cases.

Sanctions Order at 34-35 (emphasis in original).

Mr. Purcell should be the last to complain about Hasbro's choice of counsel from

outside the forum, since he stated, in response to a motion to disqualify him made and later

withdrawn by Toys "R" Us, that he is the only lawyer in the Syracuse area other than perhaps one at his firm and another at the firm representing Toys "R" Us with the necessary expertise in trademark law and practice and in federal litigation "who could competently represent Mr. Haritatos." Plaintiff's Ex. 1 ¶¶ 12-13. Magistrate Judge DiBianco did "not totally agree with Mr. Purcell's statement that he is one of the only people in Syracuse that can properly handle a trademark action," but "agree[d] with Mr. Landsman that Hasbro is entitled to competent counsel outside of the Northern District of New York." Sanctions Order at 34 n.4.

The Magistrate Judge would have been justified and within his discretion to award Hasbro the fees it actually paid, since it was "'clear that a reasonable paying client would have paid those higher rates.'" Sanctions Order at 30 (quoting Arbor Hill, 493 F.3d at 119). He instead gave Mr. Purcell quite a break by awarding fees based on associate hourly rates at the Syracuse going rate and by "modify[ing] the hourly rates for Attorney Landsman to allow a rate slightly higher than the Northern District but substantially **below** the usual rates in the Southern District of New York." Sanctions Order at 34-35. The Sanctions Order rejected most of Mr. Purcell's objections to the amount of time for which Hasbro sought reimbursement, but carefully reviewed the time records to reduce or disallow certain time, and arrived at a relatively modest award of $15,989.75. Sanctions Order at 32-39.

The Objections to the calculation of attorney fees display the propensity for annoying nitpicking that warranted the sanctions in the first place. Mr. Purcell accuses Hasbro of a "unilateral decision to bifurcate the hearing" (Objections at 5) because it followed a common and customary procedure of motion for an award and then submitting the detail required for an assessment of actual amounts upon direction of the Court. See, e.g., Lewis v. City of Albany Police Dep't, --- F.Supp.2d ----, No. 1:04-CV-152, 2008 WL 1826326 at *13, (N.D.N.Y. April

24, 2008) (App. K; <u>Bundy American Corp. v. K-Z Rental Leasing, Inc.</u>, No. 00 CV 260, 2001 WL 237218 at *2 (N.D.N.Y. Mar. 9, 2001) (App. L).  Mr. Purcell was given ample time with no page limit to oppose the hourly rates and the calculation of hours.  Dkt. No. 178.

He complains about Hasbro redacting out time entries for which it did not seek attorneys fees, Objections at 34-35, but, as stated in the Landsman Declaration, the only redactions were of time charges relating to other tasks in the case "that were not directly related to [Hasbro's] motion to compel discovery and for sanctions." Dkt. No. 183 ¶ 6.  There was no reason to submit time entries for time not claimed.

## VII.    HASBRO SHOULD BE AWARDED THE COSTS AND FEES OF THIS APPEAL.

Where a litigant's appeal of an order is taken in "bad faith," an award of attorneys fees under Rule 37 is just as appropriate as in any other appellate context.  <u>In re 60 E. 80th St. Equities, Inc.</u>, 218 F.3d 109, 119 (2d Cir. 2000).  With regard to objections to a Magistrate Judge's order, where the objections are "'an unconscionable waste of judicial resources,' 'frivolous in the extreme,' and 'entirely without basis,'" it is appropriate to order the objecting party to "pay [the non-objecting party's] costs and fees incurred in opposing Plaintiffs' objections to the Magistrate Judge's order." <u>Alpha Lyracom Space Communications, Inc. v. COMSAT Corp.</u>, 968 F. Supp. 876, 886, 895 (S.D.N.Y. 1996) (quoting Magistrate Judge's order).

Mr. Purcell did little more in his Objections to Judge DiBianco's Sanctions order than confirm the propriety of that award by providing further demonstration of his bad faith conduct in this litigation.  None of the objections interposed genuinely take issue with the Sanctions Order's findings or holdings.  Instead, Mr. Purcell engaged in yet more disingenuous hair-splitting under the guise of argumentation.  As his objections are without basis, frivolous,

and an "unconscionable waste of judicial resources", Hasbro should be awarded its costs and fees on this appeal.

The time Mr. Landsman and an associate spent on opposing Mr. Purcell's Objections is estimated to be at least seventy hours. Hasbro respectfully requests leave to submit an application setting out the necessary detail upon direction of the Court.

## **CONCLUSION**

Magistrate Judge DiBianco rendered an extensive and carefully reasoned opinion based on careful factfinding and well-settled law, after affording Mr. Purcell full opportunity to present his defense. Mr. Purcell has provided no sufficient basis to overturn it.

Dated: May 6, 2008                    Respectfully Submitted,

/s/ Kim J. Landsman
Kim J. Landsman
(Bar Roll No. 513,364)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone: (212) 336-2980
Fax: (212) 336-2985

*Attorneys for Defendant Hasbro, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing MEMORANDUM OF

LAW OF DEFENDANT HASBRO, INC. IN OPPOSITION TO PLAINTIFF'S OBJECTIONS

TO THE MAGISTRATE JUDGE'S MEMORANDUM DECISION AND ORDER ASSESSING

SANCTIONS to be filed with the Court, with copies served electronically on the counsel set

forth below on May 6, 2008:

> Robert E. Purcell, Esq.
> Hiscock & Barclay
> Attorneys for Plaintiff Spero Haritatos
> One Park Place
> Syracuse, New York 13202
> (315) 422-2131
> rpurcell@hiscockbarclay.com

/s/___Kim J. Landsman_____
Kim J. Landsman

38