STATE OF NEW YORK SUPREME COURT
COUNTY OF ONONDAGA

---

MARJAMA MULDOON BLASIAK & SULLIVAN LLP  )
                                    )
      Stakeholder, Claimant and Declaratory Plaintiff   )
                                     )  **SUMMONS**
        -and-                            )
                                     )  Index No.
SPERO HARITATOS, HISCOCK & BARCLAY, LLP,  )
ROBERT E. PURCELL and                      )
ONE BEACON INSURANCE CO.,               )2008|8562
                                     )
      Stakeholder, Claimants, and Declaratory Defendants)

---

TO THE ABOVE-NAMED INTERPLEADER DEFENDANTS:

     **YOU ARE HEREBY SUMMONED** to answer the Interpleader Complaint in this action, which is served upon you together with this Summons, and to serve a copy of your Answer upon the undersigned counsel for Interpleader Plaintiff within twenty (20) days after the service of this Summons exclusive of the day of service where service is made by delivery upon you personally within the state, or within thirty (30) days after completion of service where service is made in any other manner. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the Interpleader Complaint.

Plaintiff designates Onondaga County as place of trial as three of the Stakeholders, the Marjama Firm, the Hiscock Firm and Robert E. Purcell, all reside in Onondaga County.

Date: October 29, 2008

                                     _____
                                     James R. Muldoon, Esq.
                                     MARJAMA MULDOON BLASIAK & SULLIVAN LLP
                                     250 South Clinton St., Suite 300
                                     Syracuse, NY 13202
                                     Telephone:   (315) 425-9000
                                     Facsimile:    (315) 425-9114
                                     *Attorneys for Interpleader Plaintiff Stakeholder*

STATE OF NEW YORK SUPREME COURT
COUNTY OF ONONDAGA

| | | |
|---|---|---|
| MARJAMA MULDOON BLASIAK & SULLIVAN LLP | ) | |
| | ) | |
| Stakeholder, Claimant and Declaratory Plaintiff | ) | Index No. 2008/8562 |
| | ) | |
| -and- | ) | RJI No. |
| | ) | |
| SPERO HARITATOS, HISCOCK & BARCLAY, LLP, | ) | |
| ROBERT E. PURCELL and | ) | |
| ONE BEACON INSURANCE CO., | ) | |
| | ) | |
| Stakeholder, Claimants, and Declaratory Defendants) | | |

## INTERPLEADER AND DECLATORY JUDGMENT COMPLAINT

Stakeholder, Claimant and Declaratory Judgment Plaintiff, Marjama Muldoon Blasiak & Sullivan LLP ("Marjama Firm") as and for its Interpleader and Declaratory Judgment Complaint, alleges as follows:

1.      This is an Interpleader Action commenced pursuant to New York CPLR §1006 and a Declaratory Judgment Action pursuant to New York §§3001 and 3017 to determine the various rights and interests in the three sources of money paid to or on behalf of Spero Haritatos and/or to his attorneys in the course and settlement of a trademark infringement lawsuit brought in the U.S. District Court for the Northern District of New York entitled *Haritatos v. Hasbro, Inc. et al.*, Civil Action No. 05-CV-00930 (DNH/GJD) ("Hasbro litigation").

2.      The funds that are the subject of this action include the amount paid in settlement by the defendants in the Hasbro litigation, the funds paid by One Beacon Insurance Company, Inc. ("One Beacon") to the Marjama Firm and the funds paid by One Beacon to Hiscock & Barclay, LLP ("Hiscock Firm") as payment for legal services incurred in the defense of counterclaims for trademark infringement, trademark dilution and/or unfair competition, asserted against Spero Haritatos ("Haritatos") by Defendant Hasbro, Inc., which were potentially covered under the terms of an insurance policy issued by One Beacon Insurance Co.

3.     Various stakeholders and claimants have made claims to or received payments from each of these sums of money. The Marjama Firm seeks a declaratory judgment determining the various claimants' interests in these monies and the validity and enforceability of purported agreements entered into by various parties regarding these monies.

4.     This action is brought in Supreme Court for the County of Onondaga County as three of the stakeholders/claimants, the Marjama Firm, the Hiscock Firm and Robert E. Purcell ("Purcell"), all reside in Onondaga County.

5.     The Marjama Firm is a limited liability partnership having its principal place of business at 250 South Clinton Street, Syracuse, New York. During the relevant times, the Marjama Firm has operated under the names of Wall Marjama & Bilinski, LLP, and Marjama & Bilinski LLP.

6.     Haritatos is an individual residing 321 N. Doxtator Ave., Rome, New York. David Grow is an attorney and a member of McMahon and Grow Law Firm, a New York partnership having its principal place of business in Rome, New York. During various relevant times and activities set forth below, Attorney Grow acted as attorney and agent for Haritatos.

7.     The Hiscock Firm is a limited liability partnership having a principal place of business at 300 South State Street, Syracuse, New York.

8.     Purcell is an individual residing at Harvest Hill Road, Jamesville, New York. Purcell was a partner in the Marjama Firm but not a member of the Management Committee of the Marjama Firm from approximately March 2005 through October 16, 2006 when he resigned from the Marjama Firm. Since on or about October 17, 2006, Purcell has been a partner in the Hiscock Firm.

9.     One Beacon is a foreign corporation, authorized to do business in the State of New York, and having a principal place of business at 6400 Sheridan Drive, P.O. Box 50, Williamsville, New York.

10.     In July 2005, Purcell requested authority from the then Management Committee of the Marjama Firm to accept the representation of Haritatos in a trademark infringement litigation under a contingency fee arrangement.

2

11.     On July 13, 2005, the Management Committee authorized the representation under certain conditions proposed by Purcell: namely that Purcell would receive no credit used to calculate distribution of firm profits unless and until the client realizes a monetary recovery, and then only to the extent the firm actually received payment of its contingent fee. Moreover, representation was also expressly conditioned upon Haritatos paying the out-of-pocket costs and disbursements associated with the Hasbro litigation.

12.     Purcell then prepared and sent a proposed engagement letter dated July 22, 2005, to Haritatos, who upon information and belief was represented in the negotiation of the engagement letter by Attorney Grow.  The engagement letter was countersigned by Haritatos on July 23, 2005.

13.     The engagement letter includes many provisions that are relevant to the present Interpleader action including the following:

   a.  Representation does not extend to any counterclaims other than those incidental to Haritatos original trademark infringement claims. (¶ 2)

   b.  In addition to the contingent fee, the firm would be entitled to receive and retain any award of costs or attorneys fees. (¶ 4d)

   c.  Haritatos also expressly agreed to pay or reimburse the firm for all costs incurred in connection with the litigation including expert witness fees. (¶¶ 5, 8)

   d.  The firm was expressly given retaining and charging liens. (¶ 7)

14.     On July 25, 2005, the Marjama Firm filed a complaint on behalf of Haritatos against Hasbro, Inc. and Toy's "R" US-NY LLC asserting various claims related to a trademark owned by Haritatos for CANDYLAND used in connection with candy.

15.     On September 12, 2005, Hasbro answered the complaint and asserted a counterclaim for trademark infringement and trademark dilution of its famous CANDYLAND trademark for use in connection with board games ("affirmative counterclaims").   Hasbro also asserted defenses and counterclaims directed to the cancellation of Haritatos' trademark ("incidental counterclaims").

16.     The defense of the Hasbro's affirmative counterclaims was not included within the terms of Haritatos' engagement letter (see ¶¶ 2 and 4(e) of engagement letter).

3

However, the counterclaims may have been covered under Haritatos' general liability policy held by One Beacon Insurance Company ("One Beacon").

17.     Upon information and belief, Haritatos notified his insurance company, One Beacon, of the Hasbro counterclaims and One Beacon issued a reservation of rights letter dated January 5, 2006, which in pertinent part provides:

> With regard to Mr. Haritatos' defense of Hasbro's counterclaim, PGIC is willing to afford separate counsel to defend Mr. Haritatos. PGIC declines any obligation to pay for the costs of Mr. Haritatos' affirmative claims against Hasbro and Toys'R'Us. However, since the issues between Mr. Haritatos' affirmative claims against Hasbro and the defense of the Hasbro counterclaim are likely to have substantial overlap, PGIC would be willing to discuss an agreement providing for the equitable division of attorney's fees between Mr. Haritatos and PGIC if a single attorney can be retained to represent all of Mr. Haritatos' interests in the underlying matter.

18.     On or about January 10, 2006, One Beacon indicated that it was willing to retain the Marjama Firm to defend Hasbro's counterclaims for Haritatos' alleged trademark infringement, dilution of Hasbro's famous CANDYLAND trademark and unfair competition.

19.     One Beacon retained the Marjama Firm to represent Haritatos on the counterclaims and agreed pay to the Marjama Firm one half of attorney's hourly rate and fifty percent of the costs incurred in the Hasbro litigation to be deemed to be related to the costs of the defense of the counterclaims.

20.     Over the course of representing Haritatos in the Hasbro litigation, attorneys of the Marjama Firm performed over 420 hours of services in connection with the Hasbro litigation.

21.     At Marjama Firm standard billing rates for this work, the reasonable value of this work is approximately $139,900.00.

22.     Over the course of represent Haritatos in the Hasbro litigation, bills for attorney services and costs and disbursements were provided to One Beacon.

23.     One Beacon paid to the Marjama Firm approximately $58,746.49 in connection with the legal services supplied by the Firm's attorneys

24.     One Beacon paid approximately $25,076.53 to the Marjama Firm and paid an expert witness approximately $6,067.50 in connection with the agreed upon share of the costs and disbursements.

25.     The payments from One Beacon to the Marjama Firm for its fifty percent share of the costs and disbursements incurred in the Hasbro litigation were applied to pay those costs.

26.     Approximately $31,472.88 of monies paid by One Beacon to the Marjama Firm attributable to the legal services of its attorneys was paid to cover costs and disbursements incurred by the Marjama Firm in the course of the Hasbro litigation.

27.     Purcell directed that approximately $8,787.50 of monies paid by One Beacon to the Marjama Firm attributable to the legal services of its attorneys be applied to credit an invoice for legal services provided to Haritatos not related to the Hasbro litigation.

28.     On October 16, 2006, Purcell resigned from the Marjama Firm.

29.     Shortly thereafter, in October 2006, Purcell joined the Hiscock Firm as a partner.

30.     On Friday, November 3, 2006, Haritatos notified the Marjama Firm that he elected to terminate the Marjama Firm's representation in the Hasbro litigation and other pending matters and to have the Hiscock Firm substitute in as counsel in the Hasbro litigation.

31.     On Tuesday, November 7, 2006, the Marjama Firm commenced transferring electronic copies of files related to the Hasbro litigation to Purcell and the Hiscock Firm.

32.     On several occasions in November and December 2006, the Marjama Firm requested that Purcell state the authority and basis on which Purcell had applied the monies paid by One Beacon to the Marjama Firm for legal services to bills on behalf of Haritatos. Purcell never responded these requests.

33.     On December 1, 2006, after the payment by One Beacon of the last invoice issued to One Beacon by the Marjama Firm, all remaining Haritatos files were transferred to the Hiscock Firm.

34.     From early 2006 through Purcell's departure, Purcell directed the Marjama Firm's accounting staff to apply the monies paid to the Marjama Firm by One Beacon for

legal services incurred in defense of the counterclaims to pay for Haritatos' share of costs and expenses.

35.     Further based upon post-representation communications from Attorney Grow, Purcell purportedly negotiated an arrangement in which Purcell offered Haritatos as an inducement to continue his action against Hasbro the monies paid to the Marjama Firm by One Beacon for Purcell's services.

36.     Purcell purportedly offered the Marjama Firm's funds paid by One Beacon for legal services to be used not only to pay Haritatos' 50% share of costs and disbursements not covered by One Beacon, but also offered to pay to Haritatos any balance of insurance monies paid to the Marjama Firm for legal services above and beyond those costs.

37.     Purcell's offer and purported arrangement was made without the knowledge of any other attorneys at the Marjama Firm and without authority of the partnership to pay or commit the Firm's funds to such an enterprise.

38.     Purcell had no authority to bind the Marjama Firm to unethical or illegal agreements or arrangements.

39.     Upon information and belief, after November 3, 2006, the Hiscock Firm entered into a similar arrangement with One Beacon, whereby One Beacon would pay to the Hiscock Firm one half of the attorney's standard billing rate and fifty percent (50%) of the costs and disbursements incurred in the Hasbro litigation deemed to be incurred in defense of Hasbro's affirmative counterclaims.

40.     Upon information and belief, in or around November 2006, the Hiscock Firm has entered into an agreement with Haritatos under which the Hiscock Firm agreed to pay and/or credit to Haritatos all monies received by One Beacon attributable to the fees for legal services incurred in the course of the Hasbro litigation.

41.     In and about June 2007, a confidential arbitration was held with respect to the various obligations owed between the Marjama Firm and its former partner Purcell. The arbitration involved, in part, a common set of operative facts involved with this Interpleader and Declaratory Judgment Action. The arbitration resulted in an Award dated September 25, 2007 and a Supplemental Award dated October 25, 2007.

42.     In a special proceeding before the Supreme Court, Onondaga County, entitled *In the Arbitration between Robert E. Purcell and Marjama & Bilinski, LLP*, Index No. 2007-

6

3255 the Award and Supplemental Award were confirmed by Order dated April 10, 2008. The special proceeding involved, in part, a common set of operative facts involved with this Interpleader and Declaratory Judgment Action. The record of the special proceeding was sealed by order of Justice John D. Cherundolo.

43.     At least one of the issues litigated in the arbitration and special proceeding between Purcell and the Marjama Firm, and the claims of the stakeholders to this action, potentially subject the Marjama Firm to multiple payments to differing parties of the same monies.

44.     One provision of the Order of Justice Cherundolo awarded a charging lien in the amount of $30,828.00 against Purcell and the Hiscock Firm for the unreimbursed expenses incurred by the Marjama Firm during the course of the Hasbro litigation.

45.     In September 2008, the Hasbro litigation was settled. A sum was paid to the benefit of Haritatos, which is presently being held by the Hiscock Firm.

46.     Haritatos claims he is entitled to be paid and/or credited all monies received by the Marjama Firm from One Beacon attributable to legal services performed by its attorneys in defense of the affirmative counterclaims in the Hasbro litigation after payment of costs.

47.     Haritatos claims he is entitled to be paid and/or credited all monies received by the Hiscock Firm from One Beacon attributable to legal services performed by its attorneys in defense of the affirmative counterclaims in the Hasbro litigation after payment of costs.

### FIRST CLAIM OF THE MARJAMA FIRM

48.     The Marjama Firm repeats and realleges paragraphs 1-47 as if fully restated herein.

49.     Haritatos discharged the Marjama Firm from its contingency representation of Haritatos with respect to the Hasbro litigation without cause.

50.     The Marjama Firm is entitled to a *quantum meruit* recovery of the reasonable value of the legal services it provided in the course of the Hasbro litigation.

7

## SECOND CLAIM OF THE MARJAMA FIRM

51.     The Marjama Firm repeats and realleges paragraphs 1-50 as if fully restated herein.

52.     The Marjama Firm is entitled to monies it advanced toward costs and disbursements paid in the course of representing  Haritatos in the course of the Hasbro litigation

## THIRD CLAIM OF THE MARJAMA FIRM

53.     The Marjama Firm repeats and realleges paragraphs 1-52 as if fully restated herein.

54.     As an alternative to the *quantum meruit* recovery, the Marjama Firm is entitled to a proportional share of the gross recovery received by or on behalf of Haritatos from the Hasbro litigation.

## FOURTH CLAIM OF THE MARJAMA FIRM

55.     The Marjama Firm repeats and realleges paragraphs 1-54 as if fully restated herein.

56.     The Marjama Firm is entitled to a charging lien pursuant to New York Judiciary Law § 475 and the common law on the settlement proceeds held by the Hiscock Firm in the amount of the unreimbursed costs and disbursements the Marjama Firm paid and either the reasonable value of its legal services provided or its proportional share of the Gross Recovery.

57.     The Marjama Firm is entitled to an Order directing payment from the settlement proceeds in satisfaction of its charging lien.

## FIFTH CLAIM OF THE MARJAMA FIRM

58.     The Marjama Firm repeats and realleges paragraphs 1-57 as if fully restated herein.

59.     The Marjama Firm is entitled to retain all monies received by One Beacon paid to the Marjama Firm in relation to the legal services provided by its attorneys.

8

## SIXTH CLAIM OF THE MARJAMA FIRM

60.     The Marjama Firm repeats and realleges paragraphs 1-59 as if fully restated herein.

61.     The purported agreement between Purcell and Haritatos and/or Attorney Grow to pay to the benefit of Haritatos the monies received by the Marjama Firm from One Beacon for legal services of its attorneys is unenforceable as it violates the New York Professional Lawyer's Code of Responsibility, the common law and New York public policy, as an unethical arrangement for the splitting of legal fees with non-lawyer Haritatos.

62.     Therefore, the Marjama Firm is entitled to retain all monies received by One Beacon paid to the Marjama Firm in relation to the legal services provided by its attorneys.

## SEVENTH CLAIM OF THE MARJAMA FIRM

63.     The Marjama Firm repeats and realleges paragraphs 1-62 as if fully restated herein.

64.     The purported agreement between Purcell and Haritatos and/or Attorney Grow to pay to the benefit of Haritatos the monies received by the Marjama Firm from One Beacon for legal services of its attorneys is unenforceable as it as it constitutes champerty and maintenance and/or violates the New York Judiciary Law § 488, the common law and New York public policy.

65.     Therefore, the Marjama Firm is entitled to retain all monies received by One Beacon paid to the Marjama Firm in relation to the legal services provided by its attorneys.

## EIGHTH CLAIM OF THE MARJAMA FIRM

66.     The Marjama Firm repeats and realleges paragraphs 1-65 as if fully restated herein.

67.     In the event that the purported agreement between Purcell and Haritatos and/or Attorney Grow to pay to the benefit of Haritatos the monies received by the Marjama Firm or the Hiscock Firm from One Beacon for legal services of its attorneys incurred during the Hasbro litigation is enforceable, any amounts paid or credited to Haritatos are part of the gross recovery under the terms of the engagement between Haritatos and the Marjama Firm.

68.     As an alternative to *quantum meruit* recovery above, the Marjama Firm is entitled to a proportional share of the contingency fee on the Gross Recovery, including any portion of the.

## NINTH CLAIM OF THE MARJAMA FIRM

69.     The Marjama Firm repeats and realleges paragraphs 1-68 as if fully restated herein.

70.     The Hiscock Firm has asserted that if the purported agreement between Purcell and Haritatos and/or Attorney Grow to pay to the benefit of Haritatos the monies received by the Marjama Firm from One Beacon for legal services of its attorneys is unenforceable, then the monies received by the Marjama Firm and the Hiscock Firm must be repaid to One Beacon.

71.     The Marjama Firm is entitled to retain all monies received by One Beacon paid to the Marjama Firm in relation to the legal services provided by its attorneys.

**WHEREFORE**, Stakeholder-Claimant-Declaratory Judgment Plaintiff the Marjama Firm demands the following relief:

(a)     a monetary award in the amount of $139,900.00 based on the reasonable value of the legal services provided on behalf of Haritatos in the course of the Hasbro litigation;

(b)     a monetary award in the amount of $31,472.88 based on the unreimbursed costs and disbursements paid by the Marjama Firm on behalf of Haritatos in the course of the Hasbro litigation;

(c)     in the alternative of a *quantum meruit* award, a monetary award in the amount of the proportional share of the contingency fee based on the gross recovery of Haritatos;

(d)     a charging lien against the settlement proceeds held by the Hiscock Firm in the amounts of the monetary recovery under paragraphs (a), (b) and/or (c) above;

(e)     an Order directing payment of monetary awards from the settlement proceeds held by the Hiscock Firm sufficient to satisfy the charging lien;

(f)     a declaratory judgment that the Marjama Firm is entitled to retain all monies paid to it by One Beacon attributable to legal services provided by attorneys of the Marjama Firm in the course of the Hasbro litigation;

(g)     a declaratory judgment that the purported agreement between Purcell and Haritatos and/or Attorney Grow is unenforceable as it constitutes an unethical division of legal fees with a nonlawyer in violation of the New York Lawyer's Code of Professional Responsibility;

(h)     a declaratory judgment that the purported agreement between Purcell and Haritatos and/or Attorney Grow is unenforceable as it constitutes illegal champerty and maintenance in violation of the New York Judiciary Law, the common law and public policy.

Date:  October 29, 2008

James R. Muldoon
MARJAMA MULDOON BLASIAK & SULLIVAN LLP
250 South Clinton St., Suite 300
Syracuse, NY 13202
Telephone:     (315) 425-9000
Facsimile:      (315) 425-9114